**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| EDGE SYSTEMS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AGELESS SERUMS LLC,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Edge Systems LLC ("Edge") brings this complaint for patent infringement against Defendant Ageless Serums LLC ("Ageless") and alleges as follows:

### I.  THE PARTIES

1.　　　Edge is a California corporation having its principal place of business at 2277 Redondo Ave., Signal Hill, CA 90755.

2.　　　Ageless Serums LLC is a Texas limited liability company having its principal place of business at 6140 Highway 6, Suite 226, Missouri City, Texas 77459.

### II.  JURISDICTION AND VENUE

3.　　　This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq*.

4.　　　This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.　　　This Court has personal jurisdiction over Ageless because Ageless has a continuous, systematic, and substantial presence within Texas and this judicial district.  For

- 1 -

example, Ageless is a business entity formed under the laws of Texas, and it has a principal place of business in this judicial district at 6140 Highway 6, Suite 226, Missouri City, Texas.  Ageless also sells and offers for sale infringing products in this judicial district and/or sells such products into the stream of commerce knowing they will be sold in Texas and this judicial district.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Ageless has a regular and established place of business in this judicial district and because Ageless has committed acts of infringement by selling and/or offering to sell infringing products in this judicial district.  Venue is also proper because Ageless resides in this district.

### III.  GENERAL ALLEGATIONS

**A.     The Edge Patents and Technology**

7.     Edge is a worldwide leader in the design, development, manufacture, and sale of high-quality skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems.  These systems rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with a therapeutic solution, called a "serum," that moisturizes and protects the treated skin surface.  Edge markets and sells these systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians and aestheticians at medical spas.

8.     Edge's flagship skin resurfacing and rejuvenation system – the revolutionary HydraFacial MD® system – is the premier hydradermabrasion system sold in the United States. That system is shown below.  In addition to the HydraFacial MD® system, Edge designs, develops, manufactures and sells other hydradermabrasion systems, including the HydraFacial® Tower™, the HydraFacial® Allegro™, the HydraFacial® Wave™, the HydraFacial® Elite™, HydraFacial® Nectre™, and the HydraFacial® Core™ systems.  These Edge hydradermabrasion systems are referred to herein collectively as "the HydraFacial® Systems."



9.      Edge and its customers also offer hydradermabrasion treatments using the HydraFacial® Systems.  These treatments are offered under the HydraFacial® service mark. Both the HydraFacial® Systems themselves and the associated HydraFacial® treatment techniques are protected by numerous U.S. patents.

10.     On November 4, 2003, the USPTO duly and lawfully issued U.S. Patent No. 6,641,591 ("the '591 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct copy of the '591 Patent is attached hereto as Exhibit 1.

11.     On March 16, 2010, the USPTO duly and lawfully issued U.S. Patent No. 7,678,120 ("the '120 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct copy of the '120 Patent is attached hereto as Exhibit 2.

12.     On September 7, 2010, the USPTO duly and lawfully issued U.S. Patent No. 7,789,886 ("the '886 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct copy of the '886 Patent is attached hereto as Exhibit 3.

13.     On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct copy of the '513 Patent is attached hereto as Exhibit 4.

14.     On October 18, 2016, the USPTO duly and lawfully issued U.S. Patent No. 9,468,464 ("the '464 Patent"), titled "METHODS FOR TREATING THE SKIN USING VACUUM."  A true and correct copy of the '464 Patent is attached hereto as Exhibit 5.

15.     On January 24, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,550,052 ("the '052 Patent"), titled "CONSOLE SYSTEM FOR THE TREATMENT OF SKIN."  A true and correct copy of the '052 Patent is attached hereto as Exhibit 6.

16.     Edge is the owner of all right, title, and interest in the '591 Patent, the '120 Patent, the '886 Patent, the '513 Patent, the '464 Patent and the '052 Patent (collectively, "the Asserted Patents").

17.     With the exception of the '052 Patent, the Asserted Patents expired in August 2020.  However, Ageless has been inducing end users to infringe the Asserted Patents since at least 2017 and therefore infringed the expired Asserted Patents while those patents were in effect.

**B.**     **Ageless and Its Infringing Serum Products**

18.     Ageless is in the business of promoting and selling serums for use with hydradermabrasion machines manufactured by others, including machines that infringe Edge's patents.  For example, Ageless sells to customers who provide hydradermabrasion treatments using infringing machines such as the Ageless Glow MD, the BioXFusion MD, the BioXFusion Mini, the Aqua Skin Facial, and the Aqua Skin Facial Table Top.

19.     Ageless has infringed system claims in the Asserted Patents by selling serum products and inducing its customers to combine the serum with an infringing machine to form a patented system.  Ageless has infringed method claims in the Asserted Patents by selling serum products and inducing its customers to use those serums with infringing machines to perform a patented skin-treatment technique.

20.     The serums that Ageless sells for use in infringing systems and techniques include its Pure Aqua, Skin Deep Prep, Salicylic Wash, Ageless Antioxidant, Ageless Antioxidant Plus, and Peptide Infusion serums (the "Ageless Serums").

21.     Ageless instructs its customers on its website and elsewhere to use the Ageless Serums in a manner that infringes the Asserted Patents.

**C.**     **The Parties' History**

22.     Ageless Managing Partner Rene Chlumecky was employed by Edge as an independent sales representative from February 28, 2011 to March 12, 2012.  Mr. Chlumecky founded Ageless shortly after leaving left Edge.

23.     Early in 2017, Edge learned that Ageless was selling an infringing hydradermabrasion device, the Ageless Glow MD ("Ageless Glow Device"), with the Ageless Glow Handpiece, as well as the Ageless Serums for use therewith.  On April 10, 2017, Edge filed a patent-infringement suit against Ageless in the Central District of California ("the 2017

Lawsuit"). Edge asserted a number of patents from its hydradermabrasion portfolio, including the '591 and '513 Patents at issue in this case. During the 2017 Lawsuit, Ageless revealed that it was merely a distributor for Image Microderm, Inc. ("IMD"), the manufacturer of the Ageless Glow Devices. Ageless agreed to cease sales of the Ageless Glow Device and Handpiece, and the 2017 Lawsuit was dismissed without prejudice.

24.     Although Ageless agreed to stop selling the Ageless Glow Device and Handpiece, it continued to sell Ageless Serums for use with that machine and another hydradermabrasion machine sold by IMD that was structurally and functionally the same as the Ageless Glow Device (the "BioXFusion MD"). Ageless also continued to sell Ageless Serums for use with a similar machine sold by IMD called the "BioXFusion Mini" (collectively the BioXFusion MD and BioXFusion Mini are the "IMD Devices"). In so doing, Ageless induced additional infringement of Edge's patents and has profited (and is profiting) from that infringement.

25.     On December 1, 2017, Edge filed suit for patent infringement against IMD. Edge's complaint alleged, *inter alia*, direct infringement for its sales of the IMD Devices and indirect infringement for inducing customers to infringe Edge's method patents ("the IMD Lawsuit"). Edge asserted a number of patents from its hydradermabrasion portfolio, including the '591, '886, '464, '513, and '052 Patents at issue in this case. IMD ultimately conceded that the IMD Devices, and the use thereof, infringed Edge's patents. *See* Exhibit 7 (Final Consent Judgement of Willful Infringement) at ¶¶ 7-8, 11, and 13.

26.     Ageless also sold Ageless Serums for use with the Aqua Skin Facial and Aqua Skin Facial Table Top hydradermabrasion machines (the "Aesthetic Devices") sold by Aesthetic Skin Systems LLC ("Aesthetic"). On June 22, 2017, Edge filed suit for patent infringement against Aesthetic, alleging direct and infringement of several patents in its hydradermabrasion

portfolio (the "Aesthetic Litigation"). The Aesthetic Litigation was resolved by a consent judgment in which Aesthetic agreed to discontinue selling the Aesthetic Devices.

27. Even after the termination of the Aesthetic Litigation, Ageless continued to sell Ageless Serums to end users who had already purchased the discontinued Aesthetic Devices, thereby inducing additional infringement of Edge's patents and profiting from that infringement.

**D.   Ageless's Inducement of Infringement**

28. Ageless was aware that the use of the Ageless Serums with non-Edge hydradermabrasion machines – including the Ageless Device, the IMD Devices and the Aesthetic Devices – during the lifetime of the Asserted Patents would infringe those patents. Despite this knowledge, Ageless continued to sell Ageless Serums for use with those devices, and it expressly targeted purchasers of those infringing devices. It also provided instructions for using the Ageless Serums with any and all hydradermabrasion devices despite knowing that many of the devices on the market were infringing. Thus, Ageless intentionally induced end users to take actions that Ageless knew would infringe the Asserted Patents, or it was willfully blind to the risk that the actions it was inducing would infringe those patents.

29. Ageless knew of the Asserted Patents or was willfully blind to their existence. Ageless's managing partner, Rene Chlumecky, learned during his employment with Edge that Edge's products and services were protected by an extensive patent portfolio. Mr. Chlumecky was therefore familiar with the Asserted Patents that were in effect during his tenure at the company: the '591 Patent, the '120 Patent, and the '886 Patent.

30. In addition, Ageless had actual knowledge of the '591 and '513 Patents from the 2017 Litigation, in which the Ageless Device were accused of infringing those patents.

31. Further, Ageless had actual knowledge of the Asserted Patents in 2017 from its close relationship with IMD. Ageless was acting as a distributor for IMD in 2017, and it also

sold serums for use in IMD-manufactured machines.  Because all of the Asserted Patents except the '120 Patent were asserted in the IMD Lawsuit filed in that year, Ageless was aware of those patents.  Exhibit 7.  Ageless would have known or should have known about the '120 Patent because it is a continuation of the '591 Patent.

32.     Further, as a supplier of serums for use in Aesthetic Devices, Ageless would have been aware of the Aesthetic Litigation, which involved many of the Asserted Patents.

33.     In addition, Edge and Ageless were competitors in the aesthetic skin resurfacing industry when Ageless began selling the Ageless Serums.  Through Mr. Chlumecky's experience as a former Edge employee and an Edge competitor, Ageless knew that Edge was an industry leader.  Ageless's website repeatedly mentions Edge's HydraFacial technology.  *See e.g.*, https://agelessserums.com/compare-hydrafacial-to-ageless-serums.html (last visited December 14, 2020).  Given this familiarity, Ageless would have necessarily researched Edge and its patent portfolio.  As part of that research, Ageless would have visited Edge's website, where at least the '591,  '513,  '886,  '120  and  '052  Patents  are  prominently  listed.  *See* https://hydrafacialco.com/patents/ (last visited December 14, 2020).

34.     Despite its knowledge of the Asserted Patents, Ageless intentionally induced owners of non-Edge hydradermabrasion machines to take actions Ageless knew would infringe the Asserted patents, namely, incorporating Ageless Serums into non-Edge machines to form infringing hydradermabrasion systems and provide infringing skin-treatment services.  At a minimum, Ageless was willfully blind to the risk that the actions it was inducing would infringe.

35.     Ageless has infringed and infringes the '052 Patent, and it infringed each of the other Asserted Patents before it expired.  Ageless's infringing actions were and are unauthorized, willful, intentional and deliberate.  Ageless has infringed the Asserted Patents with reckless disregard for Edge's patent rights.

## IV.  COUNT I: INDUCED INFRINGEMENT OF THE '591 PATENT

36.    Edge reiterates and re-alleges the allegations of paragraphs 1-35 of this Complaint as if set forth fully herein.

37.    Ageless knowingly and intentionally infringed the '591 Patent through, for example, intentionally selling Ageless Serums to owners of infringing hydradermabrasion machines for use in those machines, and by providing instructions that enabled owners of such machines to use Ageless Serums in their machines.  The foreseeable and intended result of these actions was that end users combined their machines with Ageless Serums to form hydradermabrasion systems which embodied patented systems of the '591 Patent and which, when used to perform skin-treatment services, practiced patented methods of the '591 Patent.

38.    Ageless had actual knowledge of the '591 Patent at least as early as 2017. Despite its knowledge of the '591 Patent, Ageless sold Ageless Serums and intentionally induced its customers to use those serums in a manner that infringed the '591 Patent, including customers who owned the Ageless Device, IMD Devices and Aesthetic Devices.  Ageless knew – or was willfully blind to the likelihood – that its actions would induce end users to infringe the '591 Patent during the lifetime of the patent.  Ageless intended that end users infringe so that it could profit from that infringement.

39.    As shown in the exemplary chart below, owners of IMD Devices that Ageless induced to infringe the '591 Patent practiced at least claim 10 of that patent.

| Claim Language | Induced Infringement |
|---|---|
| 10. A method for treating the skin surface of a patient, comprising: | Ageless induced customers to use Ageless Serums with IMD Devices as part of a method for treating the skin surface of a patient.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>IMD conceded that this limitation is satisfied when IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| positioning a treatment device against a patient's skin creating a treatment region at a skin treatment site, | During use, the handpiece of the IMD Devices is positioned against a patient's skin, creating a treatment region at a skin treatment site, as shown below:<br><br><br><br>IMD conceded that this limitation is satisfied when IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| the treatment device comprising at least one media entrance port; | The IMD Devices have at least one media entry port, as shown below:<br><br><br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| directing at least one flowable treatment medium through said at least one entrance port; | In use, the handpiece directs at least one flowable treatment medium (i.e., Ageless Serum) through the entrance port in the tip of the handpiece.<br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13.<br><br>In addition, Ageless instructs users to direct at least one flowable media through the handpiece.  *See* |

| | |
|---|---|
| | https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |
| wherein the treatment medium is sterile water or a saline solution; | Ageless provides sterile water (Pure Aqua) and saline solutions for use with IMD Devices, and instructions for using these solutions with various hydradermabrasion devices. Each of the Ageless Serums includes sodium benzoate, a salt, and is therefore a saline solution. *See* https://agelessserums.com/products.html (last visited December 14, 2020). |
| translating the treatment device over the skin treatment site whereby the combination of an abrasive structure carried by the treatment device and the flowable treatment medium removes dermal tissue; and | During use, the IMD Devices are translated over the skin treatment site. The movement of the abrasive structure of the handpiece over the skin treatment site and the flow of the treatment medium abrades the skin, whereby dermal tissue is removed at the skin treatment site.  IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| aspirating dermal treatment media and any removed dermal tissue from the treatment region. | The IMD Devices include a vacuum source in communication with the tip of the handpiece.  In use, the vacuum source applies suction to the tip of the handpiece to draw spent treatment media and removed skin from the treatment site.  IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |

40.     To take another example, the chart below demonstrates how use of an Ageless

Serum with an Aesthetic Device practices at least claim 10 of the '591 Patent.

| Claim Language | Induced Infringement |
|---|---|
| 10. A method for treating the skin surface of a patient, comprising: | Ageless induced customers to use Ageless Serums with Aesthetic Devices as part of a method for treating the skin surface of a patient.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |
| positioning a treatment device against a patient's skin creating a treatment region at a skin treatment site, | During use, the handpiece of the Aesthetic Devices is positioned against a patient's skin, creating a treatment region at a skin treatment site, as shown below:<br> |
| the treatment device comprising at least one media entrance port; | The Aesthetic Devices have at least one media entry port, as shown below:<br> |
| directing at least one flowable treatment medium through said at least one entrance port; | In use, the handpiece directs at least one flowable treatment medium (i.e., Ageless Serum) through the entrance port in the tip of the handpiece.  Ageless instructs users to direct at least one flowable media through the handpiece.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |
| wherein the treatment medium is sterile water or a saline solution; | Ageless provides sterile water (Pure Aqua) and saline solutions for use with IMD Devices, and instructions for using these solutions with various hydradermabrasion devices. Each of the Ageless Serums includes sodium benzoate, a salt, and is therefore a saline solution.  *See* https://agelessserums.com/products.html   (last visited December 14, 2020). |

| | |
|---|---|
| translating the treatment device over the skin treatment site whereby the combination of an abrasive structure carried by the treatment device and the flowable treatment medium removes dermal tissue; and | During use, the Aesthetic Devices are translated over the skin treatment site. The movement of the abrasive structure of the handpiece over the skin treatment site and the flow of the treatment medium abrades the skin, whereby dermal tissue is removed at the skin treatment site.  |
| aspirating dermal treatment media and any removed dermal tissue from the treatment region. | The Aesthetic Devices include a vacuum source in communication with the tip of the handpiece. In use, the vacuum source applies suction to the tip of the handpiece to draw spent treatment media and removed skin from the treatment site.  |

41.    Thus, Ageless indirectly infringed at least claim 10 of the '591 Patent under 35 U.S.C. § 271(b).  As a direct and proximate result of its infringement, Ageless has derived and received gains, profits and advantages.  Edge has been damaged by Ageless's activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

42.     Ageless's infringement was willful.  Pursuant to 35 U.S.C. § 284, Edge is entitled to augmented damages.  Because Ageless acted willfully, this is an exceptional case.  Edge is therefore entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## V.  **COUNT II: INDUCED INFRINGEMENT OF THE '120 PATENT**

43.     Edge reiterates and re-alleges the allegations of paragraphs 1-42 of this Complaint as if set forth fully herein.

44.     Ageless knowingly and intentionally infringed the '120 Patent through, for example, intentionally selling Ageless Serums to owners of infringing hydradermabrasion machines for use in those machines, and by providing instructions that enabled owners of such machines to use Ageless Serums in their machines.  The foreseeable and intended result of these actions was that end users combined their machines with Ageless Serums to form hydradermabrasion systems which, when used to perform skin-treatment services, practiced patented methods of the '120 Patent.

45.     Ageless had actual knowledge of the '120 Patent at least as early as 2017. Despite its knowledge of the '120 Patent, Ageless sold Ageless Serums and intentionally induced its customers to use those serums in a manner that infringed the '120 Patent, including customers who owned Ageless Device, IMD Devices and Aesthetic Devices.  Ageless knew – or was willfully blind to the likelihood – that its actions would induce end users to infringe the '120 Patent during the lifetime of the patent.  Ageless intended that end users infringe so that it could profit from that infringement.

46.     As shown in the exemplary charts below, owners of Aesthetic Devices that Ageless induced to infringe the '120 Patent practiced at least claims 1 and 2 of that patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A method for abrading skin of a patient, comprising: | Ageless induced customers to use Ageless Serums with Aesthetic Devices as part of a method for treating the skin surface of a patient. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |
| (a) placing a working end of a skin treatment device against the skin of the patient; | During use, the handpiece of the Aesthetic Devices is positioned against a patient's skin, creating a treatment region at a skin treatment site, as shown below:  |
| (b) drawing the skin against an abrading surface on a skin interface on the working end of the skin treatment device by applying suction to the skin through an aspiration opening in the working end, the abrading surface comprising apexes extending upwardly from the abrading surface and the apexes having sharp edges; | The Aesthetic Devices include a vacuum source that communicates with the aspiration opening of the tip being used. In use, the suction generated by the vacuum source draws the patient's skin against the abrading surface of the tip.  |



| | |
|---|---|
| (c) moving the treatment device across the skin while the sharp edge of the apexes remain stationary with respect to the working end of the skin treatment device; | In use, the user moves the handpiece across the patient's skin while the sharp edges of the abrading surface of tip remains stationary relative to the skin interface, as shown in the below exemplary tip.  |
| (d) abrading the skin drawn against the sharp edge of the apexes while continuously applying suction through the aspiration opening; and | In use, the vacuum source supplies continuous suction through the aspiration opening. The negative pressure keeps the patient's skin drawn against the sharp edges of the apexes of the tip being used. As shown in the below example, the skin is abraded against the sharp-edged apexes as the treatment device moves across the skin.  |

| | |
|---|---|
| (e) removing skin debris through the aspiration opening in the working end of the skin treatment device. | Debris that results from the skin abrasion is drawn through the aspiration opening in any of the tips of the Aesthetic Devices' handpiece, as shown in the below example.<br><br><br><br>VACUUM SOURCE DRAWS<br>DEBRIS FROM SKIN INTERFACE<br>THROUGH ASPIRATION OPENING |

| Claim Language | Induced Infringement |
|---|---|
| 2. The method of claim 1, further comprising providing a fluid to the skin. | In use, a fluid (i.e., Ageless Serum) is provided to the skin through the handpiece and tips. Ageless instructs users to provide fluid to the skin using the Aesthetic Devices. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>Ageless provides sterile water (Pure Aqua) and saline solutions for use with the Aesthetic Devices, and instructions for using these solutions with various hydradermabrasion devices. *See* https://agelessserums.com/products.html (last visited December 14, 2020). |



47.     Thus, Ageless indirectly infringed at least claims 1-2 of the '120 Patent under 35 U.S.C. § 271(b).  As a direct and proximate result of Ageless's acts of infringement, Ageless has derived and received gains, profits and advantages.  Edge has been damaged by Ageless's activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

48.     Ageless's infringement was willful.  Pursuant to 35 U.S.C. § 284, Edge is entitled to augmented damages.  Because Ageless acted willfully, this is an exceptional case.  Edge is therefore entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## VI.  COUNT III: INDUCED INFRINGEMENT OF THE '886 PATENT

49.    Edge reiterates and re-alleges the allegations of paragraphs 1-48 of this Complaint as if set forth fully herein.

50.    Ageless knowingly and intentionally infringed the '886 Patent through, for example, intentionally selling Ageless Serums to owners of infringing hydradermabrasion machines for use in those machines, and by providing instructions that enabled owners of such machines to use Ageless Serums in their machines.  The foreseeable and intended result of these actions was that end users combined their machines with Ageless Serums to form hydradermabrasion systems which, when used to perform skin-treatment services, practiced patented methods of the '886 Patent.

51.    Ageless had actual knowledge of the '886 Patent at least as early as 2017. Despite its knowledge of the '886 Patent, Ageless sold Ageless Serums and intentionally induced its customers to use those serums in a manner that infringed the '886 Patent, including customers who owned Ageless Device, IMD Devices and Aesthetic Devices.  Ageless knew – or was willfully blind to the likelihood – that its actions would induce end users to infringe the '886 Patent during the lifetime of the patent.  Ageless intended that end users infringe so that it could profit from that infringement.

52.    As shown in the exemplary charts below, owners of IMD Devices that Ageless induced to infringe the '886 Patent practiced at least claims 1-3 of that patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A method for treating a skin surface of a patient, comprising: | Ageless induced customers to use Ageless Serums with IMD Devices as part of a method for treating the skin surface of a patient.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| | |
|---|---|
| (a) applying against the skin surface of a patient an instrument body with a longitudinal axis and a distal working end, said distal working end comprising a working surface that carries an abrading structure comprising a plurality of sharp elements for engaging and abrading the skin surface together with a vacuum source coupled to at least one aperture about said working surface, the abrading structure and the at least one aperture positioned within a raised outer periphery that completely circumscribes the abrading structure and the at least one aperture; | During use, the handpiece of the IMD Devices, which has an instrument body with a longitudinal axis and a distal working end, is positioned against a patient's skin, as shown below:<br><br><br><br>The handpiece of the IMD Devices can be used with the tips supplied therewith.  When the exfoliation tip is attached to the handpiece, the tip forms the working surface of the handpiece.  The exfoliation tip includes an abrading structure having a plurality of edges, which are sharp elements for engaging and abrading the patient's skin, as shown below.<br><br><br><br>EXFOLIATION TIP<br><br>The skin interface portion includes an aperture arrangement, which is the large central bore of the working end of the handpiece.  This aperture arrangement is coupled to a vacuum source in the IMD Devices.  As shown below, the distal working end of the handpiece includes a raised periphery that completely encircles the abrading structure and the at least one aperture. |

<table>
<tr><td></td><td>

IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13.</td></tr>
<tr><td>(b) translating the working surface over the skin surface to thereby abrade the skin surface; and</td><td>During use, the user translates (moves) the handpiece of the IMD Devices across the patient's skin to abrade the skin.



IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13.</td></tr>
<tr><td>(c) contemporaneously actuating the vacuum source to thereby cause suction engagement of the skin surface against the raised outer periphery and the plurality of sharp elements of the working surface and to aspirate skin debris through the at least one aperture.</td><td>While the user moves the handpiece across the patient's skin, the vacuum source of the IMD Devices applies suction at the working surface of the handpiece.  The suction provided by the vacuum source draws the patient's skin against the raised outer periphery and the sharp elements of the exfoliation tip.  The suction draws skin debris through the aperture of the tip while the tip continues to move across the skin to facilitate treatment.

IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13.</td></tr>
</table>

| Claim Language | Induced Infringement |
|---|---|
| 2. The method as in claim 1 further comprising the step of providing a fluid to the skin to enhance suction engagement of the skin against the working surface. | In use fluid (i.e., Ageless Serum) is provided to the skin, which enhances the suction engagement against the working surface.<br><br><br><br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| Claim Language | Induced Infringement |
|---|---|
| 3. The method as in claim 2 wherein the fluid is provided from a fluid source to a distal region of the instrument body. | In use, a fluid (i.e., Ageless Serum) is provided to the skin through the handpiece and tips from a fluid source. Ageless instructs users to provide fluid to the skin using the IMD Devices.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br><br><br>Ageless provides sterile water (Pure Aqua) and saline solutions for use with the Aesthetic Devices, and instructions for using these solutions with various hydradermabrasion devices.  *See* https://agelessserums.com/products.html (last visited December 14, 2020). |

53.    To take another example, the charts below demonstrate how use of an Ageless Serum with an Aesthetic Device practices at least claims 1-3 of the '886 Patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A method for treating a skin surface of a patient, comprising: | Ageless induced customers to use the Ageless Serums with the Aesthetic Devices as part of a method for treating the skin surface of a patient. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |
| (a) applying against the skin surface of a patient an instrument body with a longitudinal axis and a distal | During use, the handpiece of the Aesthetic Devices, which has an instrument body with a longitudinal axis and a distal working end, is positioned against a patient's skin, as shown below: |

working end, said distal working end comprising a working surface that carries an abrading structure comprising a plurality of sharp elements for engaging and abrading the skin surface together with a vacuum source coupled to at least one aperture about said working surface, the abrading structure and the at least one aperture positioned within a raised outer periphery that completely circumscribes the abrading structure and the at least one aperture;



The handpiece of the Aesthetic Devices can be used with the tips supplied therewith. When a tip is attached to the handpiece, the tip forms the working surface of the handpiece. The tips include an abrading structure having a plurality of edges, which are sharp elements for engaging and abrading the patient's skin, as shown below.



As shown in the exemplary tip below, the tips also include a raised outer periphery that encompasses an aperture and the abrading structure. The Aesthetic Devices include a vacuum source communicatively coupled with the aperture of the tip being used. The vacuum source is configured to generate suction through the aperture which draws the patient's skin against the abrading structure of the tip.



| | In use, the user translates (moves) the handpiece of the Aesthetic Devices across the patient's skin to abrade the skin. |
|---|---|
| (b)   translating   the   working surface over the skin surface to thereby abrade the skin surface; and | In use, the user translates (moves) the handpiece of the Aesthetic Devices across the patient's skin to abrade the skin.<br><br> |
| (c) contemporaneously actuating the vacuum source to thereby cause suction engagement of the skin surface against the raised outer periphery and the plurality of sharp elements of the working surface and to aspirate skin debris through the at least one aperture. | While the user moves the handpiece across the patient's skin, the vacuum source of the Aesthetic Devices applies suction at the working surface of the handpiece.   The suction provided by the vacuum source draws the patient's skin against the raised outer periphery and the sharp elements of the tips.   The suction draws skin debris through the aperture of the tip while the tip continues to move across the skin to facilitate treatment. |



| Claim Language | Induced Infringement |
|---|---|
| 2. The method as in claim 1 further comprising the step of providing a fluid to the skin to enhance suction engagement of the skin against the working surface. | In use, fluid (i.e., Ageless Serum) is provided to the skin, which enhances the suction engagement against the working surface. |

| Claim Language | Induced Infringement |
|---|---|
| 3. The method as in claim 2 wherein the fluid is provided from a fluid source to a distal region of the instrument body. | In use, a fluid (i.e., Ageless Serum) is provided to the skin through the handpiece and tips from a fluid source. Ageless instructs users to provide fluid to the skin using the Aesthetic Devices. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |



Ageless provides sterile water (Pure Aqua) and saline solutions for use with the Aesthetic Devices, and instructions for using these solutions with various hydradermabrasion devices. *See* https://agelessserums.com/products.html (last visited December 14, 2020).

54.     Thus, Ageless indirectly infringed at least claims 1-3 of the '886 Patent under 35 U.S.C. § 271(b).  As a direct and proximate result of its infringement, Ageless has derived and received gains, profits and advantages.  Edge has been damaged by Ageless's activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

55.     Ageless's infringement was willful.  Pursuant to 35 U.S.C. § 284, Edge is entitled to augmented damages.  Because Ageless acted willfully, this is an exceptional case.  Edge is therefore entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

### VII.  COUNT IV: INDUCED INFRINGEMENT OF THE '464 PATENT

56.     Edge reiterates and re-alleges the allegations of paragraphs 1-55 of this Complaint as if set forth fully herein.

57.     Ageless knowingly and intentionally infringed the '464 Patent through, for example, intentionally selling Ageless Serums to owners of infringing hydradermabrasion

machines for use in those machines, and by providing instructions that enabled owners of such machines to use Ageless Serums in their machines.  The foreseeable and intended result of these actions was that end users combined their machines with Ageless Serums to form hydradermabrasion systems which, when used to perform skin-treatment services, practiced patented methods of the '464 Patent.

58.     Ageless had actual knowledge of the '464 Patent at least as early as 2017. Despite its knowledge of the '464 Patent, Ageless sold Ageless Serums and intentionally induced its customers to use those serums in a manner that infringed the '464 Patent, including customers who owned Ageless Device, IMD Devices and Aesthetic Devices.  Ageless knew – or was willfully blind to the likelihood – that its actions would induce end users to infringe the '464 Patent during the lifetime of the patent.  Ageless intended that end users infringe so that it could profit from that infringement.

59.     As shown in the exemplary chart below, owners of IMD Devices that Ageless induced to infringe the '464 Patent practiced at least claim 1 of that patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A method of treating a skin surface of a subject, comprising: | Ageless Induced customers to use Ageless Serums with IMD Devices as part of a method for treating the skin surface of a patient. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| positioning a handheld device against a skin surface of the subject, the handheld device comprising: | During use, the handpiece of the IMD Devices is positioned against a patient's skin, creating a treatment region at a skin treatment site, as shown below: |

| | |
|---|---|
| | <br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| a body comprising a housing; | The IMD Devices have a body with a housing, as shown below:<br><br><br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| a working end portion positioned along a first end of the body, the working end portion comprising a distal end configured to contact the skin surface, wherein the working end portion comprises a perimeter along the distal end; | When a tip is attached to the handpiece of the IMD Devices, the tip forms the working end portion, with a perimeter in contact with the skin surface.<br><br><br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| | |
|---|---|
| a first aperture arrangement comprising at least one first port located along or near the working end portion, the at least one first port being in fluid communication with a vacuum source via at least one passageway; and | The tips for the IMD Devices contain at least one first port located along the working end portion, which is in fluid communication with a vacuum source via a passageway.<br><br><br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used.  Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| a second aperture arrangement comprising at least one second port located along or near the working end portion, the at least one second port being in fluid communication with a treatment media source; | The IMD Devices have a second port located along the working end that is in fluid communication with a treatment media source containing fluid (i.e., Ageless Serum).<br><br> |



IMD conceded that this limitation is satisfied when the IMD Devices are used. Exhibit 7 at ¶¶ 7-8, 11, and 13.

| | |
|---|---|
| activating the vacuum source to simultaneously deliver a treatment media to the skin surface through the at least second port, wherein the treatment media comprises a liquid, and to aspirate spent treatment media through the at least one first port and the at least one passageway, thereby selectively providing a volume of the treatment media to the skin surface of the subject; | In use, the IMD Devices use the suction generated by the vacuum source to aspirate debris and spent media from the working end of the handpiece, while simultaneously facilitating the delivery of treatment media (i.e., Ageless Serum) through the port of the second aperture arrangement of tip. This is illustrated in the below example.<br><br><br><br>IMD conceded that this limitation is satisfied when the IMD Devices are used. Exhibit 7 at ¶¶ 7-8, 11, and 13.<br><br>In addition, in use, a fluid (i.e., Ageless Serum) is provided to the skin through the handpiece and tips from a fluid source. Ageless instructs users to provide fluid to the skin using the Aesthetic Devices. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>Ageless provides sterile water (Pure Aqua) and saline |

| | |
|---|---|
| | solutions for use with the Aesthetic Devices, and instructions for using these solutions with various hydradermabrasion devices. *See* https://agelessserums.com/products.html (last visited December 14, 2020). |
| wherein activating the vacuum source facilitates delivery of treatment media to subsurface skin tissue of the subject and causes adjacent skin surface to at least partially puff up to facilitate the treatment method. | In use, the localized suction created at the working end of the handpiece by the vacuum source engages the patient's skin and causes the skin to expand toward the tip. This expansion or puffing up of the skin allows the treatment media (i.e., Ageless Serum) provided through the second aperture arrangement of the tip to penetrate the outer skin layer and reach subsurface skin tissue, thereby facilitating the treatment.  |

60.     To take another example, the chart below demonstrates how use of an Ageless Serum with an Aesthetic Device practices at least claim 1 of the '464 Patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A method of treating a skin surface of a subject, comprising: | Ageless induced customers to use Ageless Serums with Aesthetic Devices as part of a method for treating the skin surface of a patient. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). |
| positioning a handheld device against a skin surface of the subject, the handheld device comprising: | During use, the handpiece of the Aesthetic Devices is positioned against a patient's skin, creating a treatment region at a skin treatment site, as shown below: |

| | |
|---|---|
| |  |
| a body comprising a housing; | The Aesthetic Devices have a body with a housing, as shown below: |
| a working end portion positioned along a first end of the body, the working end portion comprising a distal end configured to contact the skin surface, wherein the working end portion comprises a perimeter along the distal end; | When a tip is attached to the handpiece of the Aesthetic Devices, the tip forms the worked portion, with a perimeter in contact with the skin surface. |

| a first aperture arrangement comprising at least one first port located along or near the working end portion, the at least one first port being in fluid communication with a vacuum source via at least one passageway; and | The tips for the Aesthetic Devices contain at least one first port located along the working end portion, which is in fluid communication with a vacuum source via a passageway. As shown in the examples below.  |
|---|---|
| a second aperture arrangement comprising at least one second port located along or near the working end portion, the at least one second port being in fluid communication with a treatment media source; | The Aesthetic Devices have a second port located along the working end that is in fluid communication with a treatment media source containing fluid (i.e., Ageless Serum), as shown in the examples below.  |



activating the vacuum source to simultaneously deliver a treatment media to the skin surface through the at least second port, wherein the treatment media comprises a liquid, and to aspirate spent treatment media through the at least one first port and the at least one passageway, thereby selectively providing a volume of the treatment media to the skin surface of the subject;

In use, the Aesthetic Devices use the suction generated by the vacuum source to aspirate debris and spent media from the working end of the handpiece, while simultaneously facilitating the delivery of treatment media (i.e., Ageless Serum) through the port of the second aperture arrangement of tip.   This is illustrated in the below example.



In addition, in use, a fluid (i.e., Ageless Serum) is provided to the skin through the handpiece and tips from a fluid source.  Ageless instructs users to provide fluid to the skin using the Aesthetic Devices.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).

Ageless provides sterile water (Pure Aqua) and saline solutions for use with the Aesthetic Devices, and instructions for using these solutions with various

| | |
|---|---|
| | hydradermabrasion devices. *See* https://agelessserums.com/products.html (last visited December 14, 2020). |
| wherein activating the vacuum source facilitates delivery of treatment media to subsurface skin tissue of the subject and causes adjacent skin surface to at least partially puff up to facilitate the treatment method. | In use, the localized suction created at the working end of the handpiece by the vacuum source engages the patient's skin and causes the skin to expand toward the tip. This expansion or puffing up of the skin allows the treatment media (i.e., Ageless Serum) provided through the second aperture arrangement of the tip to penetrate the outer skin layer and reach subsurface skin tissue, thereby facilitating the treatment.  |

61.     Thus, Ageless indirectly infringed at least claim 1 of the '464 Patent under 35 U.S.C. § 271(b). As a direct and proximate result of its infringement, Ageless has derived and received gains, profits and advantages. Edge has been damaged by Ageless's activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

62.     Ageless's infringement was willful. Pursuant to 35 U.S.C. § 284, Edge is entitled to augmented damages. Because Ageless acted willfully, this is an exceptional case. Edge is therefore entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## VIII.   COUNT V: INDUCED INFRINGEMENT OF THE '513 PATENT

63.     Edge reiterates and re-alleges the allegations of paragraphs 1-62 of this Complaint as if set forth fully herein.

64.     Ageless knowingly and intentionally infringed the '513 Patent through, for example, intentionally selling Ageless Serums to owners of infringing hydradermabrasion machines for use in those machines, and by providing instructions that enabled owners of such machines to use Ageless Serums in their machines.  The foreseeable and intended result of these actions was that end users combined their machines with Ageless Serums to form hydradermabrasion systems that embodied patented systems of the '513 patent.

65.     Ageless had actual knowledge of the '513 Patent at least as early as 2017. Despite its knowledge of the '513 Patent, Ageless sold Ageless Serums and intentionally induced its customers to use those serums in a manner that infringed the '513 Patent, including customers who owned Ageless Device, IMD Devices and Aesthetic Devices.  Ageless knew – or was willfully blind to the likelihood – that its actions would induce end users to infringe the '513 Patent during the lifetime of the patent.  Ageless intended that end users infringe so that it could profit from that infringement.

66.     As shown in the exemplary charts below, owners of IMD Devices that Ageless induced to infringe the '513 Patent practiced at least claims 1, 2, 4 and 6 of that patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A system for treating skin, comprising: | Defendant induced customers to use Ageless Serums with IMD Devices, forming the patented system.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).  The IMD Devices, combined with the Ageless Serums, are systems for treating skin.<br><br>IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| | |
|---|---|
| a handheld device comprising a main body and a working end along a distal end of the main body; | The IMD Devices include a handheld device that includes a main body. The handpiece also includes a working end along the distal end of the handpiece, as shown in the below example.<br><br><br><br>IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| an outer periphery extending along the distal end of the handheld device; | The handpiece of the IMD Devices includes an outer periphery that extends along its distal end, as shown below.<br><br><br><br>IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| at least one surface element extending distally from the working end of the handheld device, said at least one surface element being positioned within an interior area circumscribed by the outer periphery; | The exfoliation tip supplied with the IMD Devices includes at least one surface element that extends distally from the working end of the handheld device, as shown below. When used with the IMD Devices' handpiece, the at least one surface element of this tip is encompassed by the outer periphery of the handpiece. |



| | |
|---|---|
| | IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| wherein the at least one surface element comprises at least one sharp edge configured to abrade skin when said handheld device is moved relative to a skin surface; and | The exfoliation tip supplied with the IMD Devices includes sharp edges configured to abrade skin when the handpiece is moved across the skin, as shown in the below example. |
| | IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| at least one opening along the working end of the handheld device; | The working end of the handpiece has at least one opening, which is the large central bore of the working end of the handpiece. |

| | |
|---|---|
| |  IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| wherein the at least one opening is configured to be placed in fluid communication with a vacuum source via a passageway, said passageway being configured to convey debris away from the working end when said vacuum source is activated; and | The IMD Devices include a vacuum source. The handpiece is configured so that the opening is in communication with the vacuum source through a passageway, with the passageway configured to convey debris away from the working end when the vacuum source is activated, as illustrated in other representative claims above  IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure. | The entire circumference of the outer periphery of the handpiece of the IMD Devices is designed to contact a skin surface during a treatment procedure.    IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| Claim Language | Induced Infringement |
|---|---|
| 2. The system of claim 1, further comprising at least one inflow port located along the working end, wherein said at least one inflow port is configured to deliver a flowable media to the skin during a treatment. | The handpiece of the IMD Devices includes an inflow port that is in communication with a flowable media source. The inflow port is designed to deliver flowable media to the skin during treatment.<br><br>IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.<br><br>In addition, Ageless provided a flowable media source to customers (i.e., bottles of Ageless Serums). Ageless further induced customers to connect the bottles to the IMD Devices as media sources, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |

| Claim Language | Induced Infringement |
|---|---|
| 4. The system of claim 2, wherein the at least one inflow port is in fluid communication with a fluid media reservoir. | The inflow port is in fluid communication with a fluid media reservoir in the IMD Devices.<br><br>IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.<br><br>In addition, Ageless provided a flowable media reservoir to customers (i.e., bottles of Ageless Serums). Ageless further induced customers to connect the bottles to the IMD Devices as media reservoirs, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |

| Claim Language | Induced Infringement |
|---|---|
| 6. The system of claim 4, wherein the fluid media reservoir comprises a remote reservoir that is separate from the handheld device. | The IMD Devices include a fluid media reservoir that is remote from the handpiece, as shown in the below examples. |



*BioXFusion MD*          *BioXFusion Mini*

IMD conceded that the IMD devices satisfy this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.

In addition, Ageless provided a flowable media source to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the IMD Devices as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020).

67.     To take another example, the charts below demonstrate how use of an Ageless Serum with an Aesthetic Device practices at least claims 1, 2, 4 and 6 of the '513 Patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A system for treating skin, comprising: | Ageless induced customers to use Ageless Serums with Aesthetic Devices, forming the patented system.  *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>The Aesthetic Devices, combined with the Ageless Serums, are systems for treating skin, as shown below: |

|  |  |
|---|---|
| a handheld device comprising a main body and a working end along a distal end of the main body; | The handpiece of the Aesthetic Devices is a handheld device that includes a main body.  The handpiece of the Aesthetic Devices can be used with various tips, for example the tips supplied therewith.  When one of the tips is attached to the handpiece, the tip forms the working end along the distal end of the handpiece, as shown in the below example.<br><br> |
| an outer periphery extending along the distal end of the handheld device; | All of the tips supplied with the Aesthetic Devices include an outer periphery that extends from the distal end of the tip, as shown in the example below.<br><br> |

| | |
|---|---|
| at least one surface element extending distally from the working end of the handheld device, said at least one surface element being positioned within an interior area circumscribed by the outer periphery; | The tips supplied with the Aesthetic Devices include a surface element that extends from the distal end of the tip and is encompassed by the outer periphery, as shown in the below examples.<br><br> |
| wherein the at least one surface element comprises at least one sharp edge configured to abrade skin when said handheld device is moved relative to a skin surface; and | Tips supplied with the Aesthetic Devices include a sharp-edged surface element configured to abrade skin when moved across the skin, as shown in the below example.<br><br> |
| at least one opening along the working end of the handheld device; | Tips supplied with the Aesthetic Devices include an opening and a media inflow port extend along the working end of the handpiece, as shown in the below example. |

| | |
|---|---|
| |  |
| wherein the at least one opening is configured to be placed in fluid communication with a vacuum source via a passageway, said passageway being configured to convey debris away from the working end when said vacuum source is activated; and | Tips supplied with the Aesthetic Devices include an opening that places the vacuum source in communication with the working end, as shown in the below example.  In use, the vacuum source applies suction to the skin surface through the aspiration opening to remove debris and abraded skin from the working surface.<br><br> |
| wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure. | Tips supplied with the Aesthetic Devices include an outer periphery configured to contact the skin in use, as shown in the below example.<br><br> |

| Claim Language | Induced Infringement |
|---|---|
| 2. The system of claim 1, further comprising at least one inflow port located along the working end, wherein said at least one inflow port is configured to | The handpiece of the Aesthetic Devices can be used with various tips, for example the tips supplied therewith.  When attached to the handpiece, the tip forms the working end. Tips supplied with the Aesthetic Devices include a media inflow port that is in communication with a flowable media |

deliver a flowable media to the skin during a treatment.

source. As shown in the below example, flowable media is delivered to the skin through the media inflow port to facilitate therapy and enhance suction between the skin interface and the skin.



In addition, Ageless provided a flowable media source to customers (i.e., bottles of Ageless Serums). Ageless further induced customers to connect the bottles to the Aesthetic Devices as media sources, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020).

| Claim Language | Induced Infringement |
|---|---|
| 4. The system of claim 2, wherein the at least one inflow port is in fluid communication with a fluid media reservoir. | As shown in the below example, flowable media is delivered from the fluid media source to the skin through the media inflow port to facilitate therapy. |

|  | In addition, Ageless provided a flowable media reservoir to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the Aesthetic Devices as media sources, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |
|---|---|

| Claim Language | Induced Infringement |
|---|---|
| 6. The system of claim 4, wherein the fluid media reservoir comprises a remote reservoir that is separate from the handheld device. | The Aesthetic Devices include a fluid media reservoir that is remote from the handpiece and communicates with the handpiece and through a supply line, as shown in the example below.<br><br><br><br>In addition, Ageless provided a fluid media reservoir to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the Aesthetic Devices as media sources, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |

- 47 -

68.     Thus, Ageless indirectly infringed at least claims 1, 2, 4 and 6 of the '513 Patent under 35 U.S.C. § 271(b).   As a direct and proximate result of its infringement, Ageless has derived and received gains, profits and advantages.   Edge has been damaged by Ageless's activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

69.     Ageless's infringement was willful.   Pursuant to 35 U.S.C. § 284, Edge is entitled to augmented damages.   Because Ageless acted willfully, this is an exceptional case.   Edge is therefore entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

## IX.  COUNT VI: INDUCED INFRINGEMENT OF THE '052 PATENT

70.     Edge reiterates and re-alleges the allegations of paragraphs 1-69 of this Complaint as if set forth fully herein.

71.     Ageless has knowingly and intentionally infringed the '052 Patent through, for example, intentionally selling Ageless Serums to owners of infringing hydradermabrasion machines for use in those machines, and by providing instructions that enabled owners of such machines to use Ageless Serums in their machines.   The foreseeable and intended result of these actions was that end users combined their machines with Ageless Serums to form hydradermabrasion systems that embodied patented systems of the '052 patent.

72.     Ageless had actual knowledge of the '052 Patent at least as early as 2017. Despite its knowledge of the '052 Patent, Ageless sold Ageless Serums and intentionally induced its customers to use those serums in a manner that infringed the '052 Patent, including customers who owned Ageless Glow MD, BioXFusion MD, and Aqua Skin Facial Devices.   Ageless knew – or was willfully blind to the likelihood – that its actions would induce end users to infringe the '052 Patent during the lifetime of the patent.   Ageless intended that end users infringe so that it could profit from that infringement.

73.     As shown in the exemplary charts below, owners of IMD's BioXFusion MD that Ageless induced to infringe the '052 Patent practiced at least claims 1 and 4 of that patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A system for performing a skin treatment procedure, the system comprising: | Ageless induced customers to use Ageless Serums with the BioXFusion MD, forming the patented system. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020). The BioXFusion MD, combined with the Ageless Serums, is a system for treating skin.<br><br>IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid; | The BioXFusion MD has a console that included a manifold in communication with two fluid containers (i.e., bottles of Ageless Serums) that are each configured to store a liquid treatment material. The manifold includes a collection of tubing within the console that is located in the region shown in the examples below.<br><br><br><br><br><br>IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| | |
|---|---|
| | In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums). Ageless further induced customers to connect the bottles to the BioXFusion MD as media sources, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |
| a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The handpiece of the BioXFusion MD can be used with the tips supplied therewith. These tips are configured to contact the skin of a subject in use.<br><br><br><br>IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | The distal end of the supply line of the BioXFusion MD connects to the proximal end of the handpiece to place the handpiece in fluid communication with the manifold of the console, as shown in the examples below.<br><br><br><br>IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |

| | |
|---|---|
| wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The manifold of the BioXFusion MD allows the user to select which treatment material is desired to flow to the handpiece in use, as shown in the example below.  In addition, the manifold of the BioXFusion MD is designed to control, and controls, the flow of treatment material from either fluid container (i.e., bottles of Ageless Serums), to the handpiece using knobs on the front of the console. |



SUPPLY CONDUIT WITH WASTE CONDUIT

HANDPIECE ASSEMBLY

USER INPUT DEVICE CONTROLS MANIFOLD BY ENABLING SELECTION OF TREATMENT MATERIAL THAT FLOWS TO HANDPIECE IN USE



MANIFOLD CONFIGURED TO CONTROL FLOW OF TREATMENT MATERIAL

FLUID CONTAINERS IN COMM. WITH MANIFOLD

IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.

In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the BioXFusion MD as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/how-to-hang-bottles.html https://agelessserums.com/index.html (last visited 12/14/2020).

| | |
|---|---|
| a vacuum source; | The BioXFusion MD includes a vacuum source.<br><br><br><br>IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13. |
| a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and | The BioXFusion MD includes a supply conduit that includes a waste conduit, as shown below.<br><br><br><br>In use, the waste conduit is in fluid communication with the opening of the tip of the handpiece and is operatively connected to the vacuum source.  This allows the vacuum source to draw spent treatment media and abraded skin back to the console. This is illustrated in the below examples with reference to the exfoliation tip. |



IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.

| | |
|---|---|
| wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and | The manifold of the BioXFusion MD allows the user to select which treatment material (i.e., Ageless Serum) is desired to flow to the handpiece by operating a switch on the console.  Use of the switch permits the user to select the treatment material from either the first or second fluid container (i.e., bottles of Ageless Serums).  The manifold responds according to the user input by placing the selected fluid container in communication with the handpiece for use. |



IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.

In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums). Ageless further induced customers to connect the bottles to the BioXFusion MD as media sources, thereby inducing customers to form the patented system. *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020).

| | |
|---|---|
| wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. | The BioXFusion MD uses the suction generated by the vacuum source to aspirate debris and spent media through the opening of the tip while also providing new media from the first or second fluid containers through the supply conduit delivery opening to the tip, as shown in the below example.<br><br><br><br>IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.<br><br>In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the BioXFusion MD as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |

| Claim Language | Induced Infringement |
|---|---|
| 4.   The   system   of claim   1, wherein the first fluid container or the at least a second fluid container is releasably coupled to the manifold. | Each of the two fluid containers is releasably coupled to the manifold to allow refilling and replacement of the containers, as shown in the example below. |



IMD conceded that the BioXFusion MD satisfies this limitation. Exhibit 7 at ¶¶ 7-8, 11, and 13.

In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to replace the fluid containers in the BioXFusion MD with fluid containers it supplies by connecting Ageless Serum bottles to the BioXFusion MD as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020).

74.     To take another example, the charts below demonstrate how use of an Ageless Serum with the Aesthetic Aqua Skin Facial device practices at least claims 1 and 4 of the '052 Patent.

| Claim Language | Induced Infringement |
|---|---|
| 1. A system for performing a skin treatment procedure, the system comprising: | Ageless induces customers to use Ageless Serums with the Aqua Skin Facial, forming the patented system. *See* https://agelessserums.com/ageless-facial-protocols.html (last visited December 14, 2020).<br><br>The Aqua Skin Facial, combined with the Ageless Serums, is a system for treating skin, as shown below:<br><br> |
| a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid; | The Aqua Skin Facial has a manifold in communication with four fluid containers (i.e., Ageless Serum containers) that are configured to store a liquid treatment material.  The manifold includes a collection of tubing within the console that is located as shown in the example below. |

| | |
|---|---|
| | In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the Aqua Skin Facial as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020). |
| a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The handpiece of the Aqua Skin Facial can be used with various tips supplied therewith.  Tips supplied with the Aqua Skin Facial are configured to contact the skin in use.<br><br> |
| a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | The distal end of the supply line of the Aqua Skin Facial connects to the proximal end of the handpiece to place the handpiece in communication with the vacuum source and manifold of the console, as shown in the example below.<br><br> |

| wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The manifold of the Aqua Skin Facial is controlled by the user input device and user input. The user input device allows the user to select which treatment material is desired to flow to the handpiece in use, as shown in the example below. The manifold then places the fluid container corresponding to the selected treatment material in communication with the handpiece for use. |
|---|---|
| |  |
| a vacuum source; | The console of the Aqua Skin Facial contains the fluid media source, vacuum source, and manifold of the system. |
| |  |

| | |
|---|---|
| a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and | Tips supplied with the Aqua Skin Facial include an opening which places the tip being used in communication with the handpiece of the Aqua Skin Facial. The supply line includes a waste conduit and places the handpiece and the tip being used in communication with the media source and vacuum source of the console. |



In use, the waste conduit is in communication with the opening of one of the tips to allow the vacuum source to draw spent treatment media and abraded skin back to the console in use. This is illustrated in the below example.



| | |
|---|---|
| wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least | The manifold of the Aqua Skin Facial is controlled by the user input device and user input. In use, the system permits the user to select, through the user input device, the treatment material (i.e., Ageless Serum) desired to be used and supplied to the |

| | |
|---|---|
| second fluid container to be delivered through the supply conduit to the handpiece assembly; and | handpiece and tip in use.  The manifold responds according to the user input by placing the selected fluid container (i.e., bottle of Ageless Serum) in communication with the handpiece and tip for use. |



In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the Aqua Skin Facial as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020).

| | |
|---|---|
| wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. | Tips supplied with the Aqua Skin Facial include an opening.  In use, the Aqua Skin Facial uses the suction generated by the vacuum source to aspirate debris and spent media through the opening of the tip being used while also providing new media through the supply conduit delivery opening to the tip, as shown in the below example. |

DELIVERY OPENING    OPENING

← TIP

SUCTION GENERATED BY THE VAC.
SOURCE OF THE CLOSED-LOOP SYSTEM
SIMULTANEOUSLY USES SUCTION TO
DRAW DEBRIS AND SPENT MEDIA
THROUGH OPENING TO WASTE CONDUIT
WHILE PROVIDING FRESH MEDIA
THROUGH SUPPLY CONDUIT AND
DELIVERY OPENING TO THE TIP

In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to connect the bottles to the Aqua Skin Facial as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html  (both last visited December 14, 2020).

| Claim Language | Induced Infringement |
|---|---|
| 4.   The   system   of claim   1, wherein the first fluid container or the at least a second fluid container is releasably coupled to the manifold. | Each of the four fluid containers of the Aqua Skin Facial is releasably  coupled  to  the  manifold  to  allow  refilling  and replacement of the containers, as shown in the example below. |



In addition, Ageless provides fluid containers to customers (i.e., bottles of Ageless Serums).  Ageless further induced customers to replace the fluid containers in the Aqua Skin Facial with fluid containers it supplies by connecting Ageless Serum bottles to the Aqua Skin Facial as media sources, thereby inducing customers to form the patented system.  *See* https://agelessserums.com/index.html; https://agelessserums.com/how-to-hang-bottles.html (both last visited December 14, 2020).

75.     Thus, Ageless indirectly infringed and infringes at least claims 1 and 4 of the '052 Patent under 35 U.S.C. § 271(b).  As a direct and proximate result of its infringement, Ageless has derived and received gains, profits and advantages.  Edge has been damaged by Ageless's activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

76.     Ageless's infringement was and is willful.  Pursuant to 35 U.S.C. § 284, Edge is entitled to augmented damages.  Because Ageless acted willfully, this is an exceptional case. Edge is therefore entitled to recover its reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

77.     Ageless's infringement has caused and is causing Edge irreparable injury for which Edge has no adequate remedy at law.

78.     Unless enjoined by this Court, Ageless will continue to infringe Edge's patent rights and cause Edge further irreparable injury.

## X.  <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff Edge Systems LLC prays for the following relief:

A.      A judgment in favor of Edge and against Ageless on all claims alleged herein;

B.      A judgment that Ageless has violated 35 U.S.C. § 271 by inducing infringement of U.S. Patent Nos. 6,641,591; 7,678,120; 7,789,886; 8,337,513; 9,468,464 and 9,550,052 during the term of each patent;

C.      An accounting of all gains, profits and advantages that Ageless derived from its infringement of the Asserted Patents;

D.      An order that Ageless pay actual damages in the form of Edge's lost profits or other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty, as provided by 35 U.S.C. § 284;

E.      An injunction barring Ageless, its officers, directors, agents, employees, attorneys, and any others acting in concert with Ageless, from (1) selling or offering to sell serums for use with skin-treatment devices encompassed by the claims of the '052 Patent, or (2) otherwise infringing the '052 Patent in violation of 35 U.S.C. § 271;

F.      An order trebling or otherwise increasing damages pursuant to 35 U.S.C. § 284 because of Ageless's willful infringement;

G.      An order finding this case exceptional under 35 U.S.C. § 285 and requiring Ageless to pay Edge its reasonable attorneys' fees incurred in this action;

H.      Pre-judgment and post-judgement interest and costs as fixed by the Court; and

I.      Such other and further relief as the Court may deem just and proper.

## XI.  DEMAND FOR JURY TRIAL

Plaintiff Edge Systems LLC hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

BAKER BOTTS L.L.P.

Dated:   December 22, 2020          By:  */s/ Paul R. Morico*
                                    Paul R. Morico
                                    State Bar No. 00792053
                                    Brandon Chen
                                    State Bar No. 24095814
                                    One Shell Plaza
                                    910 Louisiana Street
                                    Houston, Texas 77002
                                    Telephone: (713) 229-1234
                                    Facsimile: (713) 229-1522
                                    paul.morico@bakerbotts.com
                                    brandon.chen@bakerbotts.com

                                    OF COUNSEL:

                                    Craig S. Summers (*pro hac vice* pending)
                                    Email: craig.summers@knobbe.com
                                    Ali S. Razai (*pro hac vice* pending)
                                    Email: ali.razai@knobbe.com
                                    Sean M. Murray (*pro hac vice* pending)
                                    Email: sean.murray@knobbe.com
                                    Karen M. Cassidy (*pro hac vice* pending)
                                    Email: karen.cassidy@knobbe.com
                                    **Knobbe, Martens, Olson & Bear, LLP**
                                    2040 Main Street, Fourteenth Floor
                                    Irvine, CA  92614
                                    Telephone: (949) 760-0404
                                    Facsimile: (949) 760-9502

                                    ATTORNEYS FOR PLAINTIFF
                                    EDGE SYSTEMS LLC