**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| EDGE SYSTEMS LLC,<br><br>Plaintiff<br><br>v.<br><br>AGELESS SERUMS LLC,<br><br>Defendant.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>                Counterclaimant,<br><br>EDGE SYSTEMS LLC, a California limited liability company; THE BEAUTY HEALTH COMPANY, a Delaware corporation; CLINT E. CARNELL, an individual; and DOES 1 through 100, inclusive<br><br>                Counterclaim Defendants. | Civil Actions No: 4:20-cv-04335<br><br>Hon. George C. Hanks, Jr.<br><br>JURY TRIAL DEMANDED |

**DEFENDANT AND COUNTERCLAIMANT'S FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS**

COMES NOW, Defendant and Counterclaimant Ageless Serums LLC ("Ageless"), hereby files its Amended Answer and Affirmative Defenses to Plaintiff's Complaint for Patent Infringement, as well as its Counterclaims, and would respectfully show the Court the following:

Defendant and Counterclaimant's First Amended Answer and Affirmative Defenses to Plaintiff's Complaint and Counterclaims

Page **1** of **49**

## I.     THE PARTIES[1]

1.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph pertaining to the Plaintiff's residency.

2.     Admitted.

## II.     JURISDICTION AND VENUE

3.     Defendant states that the allegations contained in this paragraph constitute legal conclusions for which no answer is required.

4.     Defendant states that the allegations contained in this paragraph constitute legal conclusions for which no answer is required.

5.     Defendant denies that it sells and offers for sale infringing products.  Defendant states that the remaining allegations contained in this paragraph constitute legal conclusions for which no answer is required.

6.     Defendant denies that it has committed any acts of infringement.  Defendant states that the remaining allegations contained in this paragraph constitute legal conclusions for which no answer is required.

## III.     GENERAL ALLEGATIONS

### A.     The Edge Patents and Technology

7.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

8.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

---

[1] Defendant's responses correspond to the numeric paragraphs delineated in the Complaint.

9.      Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

10.      Defendant admits that Exhibit 1 to the Complaint purports to be a copy of the '591 Patent but denies that this Exhibit is representative of any of the Plaintiff's claims.  Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the remaining allegations contained in this paragraph.

11.      Defendant admits that Exhibit 2 to the Complaint purports to be a copy of the '120 Patent but denies that this Exhibit is representative of any of the Plaintiff's claims.  Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the remaining allegations contained in this paragraph.

12.      Defendant admits that Exhibit 3 to the Complaint purports to be a copy of the '886 Patent but denies that this Exhibit is representative of any of the Plaintiff's claims.  Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the remaining allegations contained in this paragraph.

13.      Defendant admits that Exhibit 4 to the Complaint purports to be a copy of the '513 Patent but denies that this Exhibit is representative of any of the Plaintiff's claims.  Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the remaining allegations contained in this paragraph.

14.      Defendant admits that Exhibit 5 to the Complaint purports to be a copy of the '464 Patent but denies that this Exhibit is representative of any of the Plaintiff's claims.  Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the remaining allegations contained in this paragraph.

15.      Defendant admits that Exhibit 6 to the Complaint purports to be a copy of the '052

Patent but denies that this Exhibit is representative of any of the Plaintiff's claims.  Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the remaining allegations contained in this paragraph.

16.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

17.     Denied.

**B.      Ageless and Its Infringing Serum Products**

18.     Paragraph 18 of the Complaint states a legal conclusion to which no response is required.  To the extent a response a required, the allegations are denied.

19.     Denied.

20.     Denied.

21.     Denied.

**C.      The Parties' History**

22.     Defendant admits that Mr. Chlumecky was employed at Edge at the dates identified in the Complaint but denies the remaining allegations.

23.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

24.     Denied.

25.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

26.     Defendant is without knowledge or information sufficient to form a reasonable belief as to the truth of the allegations contained in this paragraph.

27.     Denied.

D.      **Ageless's Inducement of Infringement**

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

IV.      **COUNT I: INDUCED INFRINGEMENT OF THE '591 PATENT**

36.     Defendant incorporates its prior responses to each and every allegation contained in the paragraphs above.

37.     Denied.

38      Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

V.      **COUNT II: INDUCED INFRINGEMENT OF THE '120 PATENT**

43.     Defendant incorporates its prior responses to each and every allegation contained in the paragraphs above.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

### VI.      COUNT III: INDUCED INFRINGEMENT OF THE '886 PATENT

49.     Defendant incorporates its prior responses to each and every allegation contained in the paragraphs above.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

### VII.      COUNT IV: INDUCED INFRINGEMENT OF THE '464 PATENT

56.     Defendant incorporates its prior responses to each and every allegation contained in the paragraphs above.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

**VIII.   <u>COUNT V: INDUCED INFRINGEMENT OF THE '513 PATENT</u>**

63.   Defendant incorporates its prior responses to each and every allegation contained in the paragraphs above.

64.   Denied.

65.   Denied.

66.   Denied.

67.   Denied.

68.   Denied.

69.   Denied.

**IX.   <u>COUNT VI: INDUCED INFRINGEMENT OF THE '052 PATENT</u>**

70.   Defendant incorporates its prior responses to each and every allegation contained in the paragraphs above.

71.   Denied.

72.   Denied.

73.   Denied.

74.   Denied.

75.   Denied.

76.   Denied.

77.   Denied.

78.   Denied.

**X.   <u>PRAYER FOR RELIEF</u>**

The allegations in this paragraph call for a legal conclusion, for which no response is necessary.   To the extent the allegations in this paragraph imply any liability on the part of

Defendant, such allegations are expressly denied.  Defendants further deny that Plaintiff is entitled to the relief prayed for in this paragraph.

## XI.    <u>DEMAND FOR JURY TRIAL</u>

Defendant admits that a jury trial has been demanded.

## <u>AFFIRMATIVE DEFENSES</u>

By asserting these affirmative defenses, Ageless does not admit that it necessarily bears the burden of proof or persuasion for any of the defenses or issues alleged below.  Moreover, at this time, Ageless has insufficient information and knowledge upon which to form a belief as to whether additional defenses are or may later become available to it.  Ageless reserves the right to amend its responses to the Complaint to add, delete, or modify defenses based on additional facts and legal theories which it may or will learn, including that which may be divulged through clarification of the Complaint, through discovery, through change or clarification of governing law, or through further analysis of Plaintiff's allegations and claims in this litigation.  Subject to the foregoing, for its affirmative defenses in this action, Ageless hereby presently asserts and alleges the following affirmative defenses:

## <u>FIRST AFFIRMATIVE DEFENSE</u>

### (Non-Infringement Of The Claims Of The Patents-In-Suit)

Ageless has not induced anyone to infringe, is not inducing anyone to infringe, and will not induce anyone to infringe, willfully, literally or under the doctrine of equivalents of any valid and enforceable claims of the patents-in-suit against Ageless.

## SECOND AFFIRMATIVE DEFENSE

### (Invalidity Of The Claims Of Patents-In-Suit)

The claims of the patents-in-suit against Ageless are invalid and/or unenforceable for failure to satisfy the requirements of Title 35 of the United States Code, including, without limitation, one or more of *35 U.S.C. Sections 101, 102, 103, 112, 116* and/or for nonstatutory double patenting.

## THIRD AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Edge's Complaint, including one or more claims alleged therein, fails to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Unclean Hands, And/Or Laches)

The equitable doctrines of waiver, estoppel, unclean hands, and/or laches bar at least one or more of Edge's claims for damages and other relief.  Among other grounds supporting these defenses, Edge has known of the sale of Ageless's Serums since at least August 2017, but nevertheless waited until filing this lawsuit until December 14, 2020.  Edge has also violated federal and state antitrust and unfair competition law by illegally trying to prevent Ageless from competing with Edge. See Counterclaim Count I below.

## FIFTH AFFIRMATIVE DEFENSE

### (Prosecution Laches)

Edge has forfeited its rights to its patents and its ability to enforce them under the doctrine of prosecution history laches for unreasonable and undue delay in prosecution.

## SIXTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

Plaintiff has lost the right to enforce its patents because of its efforts to try to restrain trade beyond the rights its patents allow. See Counterclaim Count I below.

## SEVENTH AFFIRMATIVE DEFENSE

### (No Knowledge, Aiding Or Abetting Or Influence To Induce Infringement)

Ageless did not knowingly induce anyone to infringe the patents-in-suit, had no knowledge or belief that there was a probability that a patent existed and that any of Ageless' acts would cause infringement of any of Edge's patents, did not aid or abet any alleged direct infringer in infringing any of Edge's patents, or try to induce, persuade or convince anyone to infringe any of Edge's patents, including, but not limited to, by combining Ageless' Serum with any equipment sold or service provided by any third party.

## EIGHTH AFFIRMATIVE DEFENSE

### (No Willful Infringement)

Plaintiff is not entitled to an order trebling or increasing damages pursuant to 35 U.S.C. Section 284 because Ageless has not willfully induced the infringement of the patents-in-suit.

## NINTH AFFIRMATIVE DEFENSE

### (Lack of Standing and Injury)

Edge lacks standing, including because it has not suffered economic injury.  As alleged in Ageless' Answer and below in Ageless' Counterclaim, Ageless is not responsible for any injury Edge claims to have suffered for any of the allegations and claims asserted in its Complaint.

## TENTH AFFIRMATIVE DEFENSE

### (Absence of Irreparable Harm)

Edge's claims for injunctive relief are barred because Edge has not suffered irreparable harm and has an adequate remedy at law.  Even in the unlikely event Ageless is determined to be liable for some or all of Edge's claims, Edge has an adequate remedy at law for monetary damages that does not permit equitable or injunctive relief.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Expired Patents and Inequitable Relief)

Edge's claims for injunctive relief are barred because such relief would be inequitable and because four of the five patents at-issue in this lawsuit expired before this action was filed.  Also,

given the facts alleged in Ageless' Counterclaims below (including Edge's antitrust and unfair competitive practices), it would be inequitable to award any of the equitable relief Edge seeks in its Complaint.

## TWELFTH AFFIRMATIVE DEFENSE
### (Unlawful Tying and Illegality)

One or more of Edge's claims are barred because they are illegal and constitute unlawful tying in violation of federal and state antitrust laws.  *See e.g.* Sherman Act *15 U.S.C. § 1* and the Clayton Act *(15 U.S.C. § 114),* as well as State law *(see e.g., Texas Business and Commerce Code Section 15.0(e).*  *See also* Counterclaim Count I below.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Causation)

Ageless is not the cause of any of the claims alleged or relief sought in the Complaint.  Any of the injuries Edge claims to have suffered, were not caused by Ageless.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (No Damages)

Edge's claims are barred because there has been no damage in any amount by reason of any act alleged against Ageless.

## FIFTEENTH AFFIRMATIVE DEFENSE)
### (Reservation of Additional Defenses

Ageless presently has insufficient knowledge or information on which to form a belief as to whether there may be additional, as yet unstated, affirmative defenses.  Thus, subject to discovery and other proceedings and developments in this action, Ageless expressly reserves its right to assert additional affirmative defenses when and if they are appropriate

## RESERVATION OF ADDITIONAL DEFENSES

Ageless reserves the right to assert such other defenses, if such defenses are discovered during the course of this litigation.

## COUNTERCLAIMS

For its Counterclaims against Counterclaim Defendants Edge Systems LLC, The Beauty Health Company, Clinton E. Carnwell, and Does 1 through 100 (sometimes collectively referred to herein as "Edge"), Counterclaim Plaintiff Ageless Serums LLC ("Ageless") states and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over these Counterclaims pursuant to *28 U.S.C. Sections 1331, 1338, 2201* and *2202*, as well as the *Lanham Act, 35 U.S.C. Sections 1051 et seq.*

2.      This Court has personal jurisdiction over Edge because Counterclaim-Defendant has invoked the jurisdiction of this Court by filing a Complaint herein.  The remaining Counter Defendants are believed to actively conduct business in the State of Texas and have voluntarily agreed to enter an appearance in this action in any event.

3.      Venue is proper in this District pursuant to *28 U.S.C. Section 1391.*

## THE PARTIES

4.      Counterclaimant Ageless is a limited liability company organized and existing under the laws of Texas with its principal place of business at 6140 Highway 6, Suite 226, Missouri City, Texas 77459.

5.      Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant Edge is a California corporation having its principal place of business at 2165 E. Spring Street, Long Beach, California 90806.

6.      Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant The Beauty Health Company ("Beauty Health") is a Delaware corporation, having its principal place of business at 2165 E. Spring Street, Long Beach, California 90806.  Ageless is informed and believes, and on that basis alleges, that Beauty Health actively participated in the conduct alleged below, including, but not limited to, because of the misconduct of its CEO (Counterclaim Defendant Clinton E. Carnell).

7.      Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant Clint E. Carnell ("Carnell") is an individual residing in Long Beach, California.  Ageless is further informed and believes, and thereon alleges, that Carnell served as the Chief Executive Officer of Edge and is currently the Chief Executive Officer of Beauty Health.  Ageless is informed and believes, and on that basis alleges, that Carnell actively participated in the conduct alleged below.

8.      Ageless is currently unaware of the identity of those parties named herein as Does 1 through 100 and the specific role they may have played in the conduct alleged below.  Nevertheless, Ageless is informed and believes, and thereon alleges, that each of these parties is responsible for some or all of the conduct alleged below and therefore liable to Ageless for one or more of the claims alleged below.  Ageless will amend this Counterclaim once the identity of these parties and their conduct and role becomes fully known to Ageless.  Unless otherwise alleged, all Counterclaim Defendants are hereinafter sometimes collectively referred to as "Edge."

## EDGE'S HISTORY AND GROWTH

9.      Edge was founded in 1997.  Edge holds itself out today as the first United States manufacturer to design and sell microdermabrasion systems and to have created the category of hyrdrodermabrasion.  As alleged further below, Ageless is informed and believes, and on that basis alleges, that Edge owns a blocking book of patents for the HydraFacial systems it created and sold.  According to Edge, Edge's HydraFacial Systems are patented products with 38 awarded and 18 patents pending.  In addition, according to Edge, its products are available in over 87 countries with over 18,000 delivery services globally and millions of treatments performed each year.  Edge has experienced significant growth since the company was originally founded in 1997.  As alleged below, Edge has also been part of a large number of acquisitions and mergers with public companies who have significant resources which have also contributed to a large increase in revenue and increased market power for Edge.

10.     For example, in December 2016, two healthcare-focused private equity firms, Linden Capital Partners ("Linden") and DW Healthcare Partners ("DWHP"), jointly acquired Edge with a reported "vision to invest in the global expansion of the HydraFacial brand."  At that

time, Ageless is informed and believes that Counter-Defendant Carnell was named as CEO of Edge. Ageless is further informed Linden and DWHP have helped Edge to expand internationally and to sell at least 18,000 systems worldwide at a minimum. In 2016, at the time of the Linden/DWHP acquisition, Ageless is informed Edge had 140 employees and generated $48 million in net annual sales. From that point forward, however, revenue grew under the leadership of Carnell and Linden/DWHP, with revenue climbing to over $66 million in 2017. Edge has also reported that there was a growth of 52% in annualized sales and 38% annualized EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) growth between 2016 and 2019. Thereafter, Edge's share of the hydrodermabrasion market growth continued to climb to $119 million by 2020.

11.    HydraFacial Equipment is offered and sold by Edge to mom-and-pop spas and to the most luxurious hotel destinations such as the Mandarin Oriental and the Four Seasons. Edge has recently announced that it believes it can reach 12% of the United States population, and that "demand has returned swiftly after company Covid-related spa shutdowns." Edge has also recently announced that it expects "rapid growth for the foreseeable future," with revenue to rise 57% in 2021 and 38% by 2022, "with profits also continuing to grow." Edge now projects it should reach $250 million through the sale of its Equipment and consumables (including its serums) to $250 million by 2022, and increasing thereafter. According to Edge, half of this $250 million (or $125 million) in revenue is obtained by the sale of consumables (including serums manufactured and sold by Edge).

12.    In May 2017, Edge announced a name change and became known as The HydraFacial Company. After changing its name, Counterclaim Defendant Carnell became CEO of The HydraFacial Company, which Ageless is informed and believes, and on that basis alleges, was a d/b/a for Edge.

13.    In 2020, a public company named Vesper Healthcare ("Vesper") acquired HydraFacial at a purchase price consisting of $975 million payable at closing, and up to an additional $75 million subject to certain contingencies.

14.     On December 8, 2020, Counterclaim-Defendant Beauty Health (a publicly traded company) acquired HydraFacial under the terms of a merger agreement.  Pursuant to the merger agreement, the aggregate merger consideration payable to the stockholders of HydraFacial was paid in a combination of stock and cash equal to $975,000,000, subject to certain adjustments. HydraFacial is now part of Beauty Healthcare, which is publicly traded on NASDAQ under the symbol "SKIN".  When Beauty Healthcare merged with HydraFacial, Counter-Defendant Carnell was appointed CEO of Beauty Health and, Ageless is informed and believes, and on that basis alleges, that he continues to operate as CEO of Beauty Health to the present day.

## GENERAL ALLEGATIONS

15.     In its Complaint, Edge maintains that "it is a *worldwide leader* in the design, development, manufacturer, and sale of skin resurfacing systems and rejuvenation systems, including microdermabrasion and hydrodermabrasion systems."  *See* Complaint at para. 7. (Emphasis supplied).  As part of these systems, Edge claims to be able to rejuvenate skin by using a *separate product* which it calls a "therapeutic solution, called a 'serum,' that moisturizes and protects the treated skin surface."  *Id.*    Edge also alleges that its "flagship system is its revolutionary HydraFacial MD® system, which is the *premier hydrodermabrasion system* sold in the United States."  *Id* .at para. 8.  (emphasis supplied).  Edge has also alleged that "Edge's HydraFacial MD® System [and Edge's other hydrodermabrasion systems] are *so revolutionary* that [they are] protected by numerous United States patents." *Id.* (emphasis supplied).  Based upon these allegations and other information Edge has stated it provides to its customers-licensees, Ageless is informed and believes, and on that basis alleges, that Edge and the other Counter Defendants in this action have obtained market power for the HydraFacial Systems they sell in the United States, including having obtained a competitive advantage not shared by its competitors in the relevant market for hydrodermabrasion systems Edge manufactures and sells.  Although Edge sells its products worldwide, the relevant market for purposes of this Counterclaim is the United States.  Because Edge owns a blocking book of patents, and because the HydraFacial Systems are considered to be a unique product according to Edge, Edge's competitors (actual and potential) are

prohibited from selling products using Edge's patented technology.  Ageless is further informed and believes, and on that basis alleges, that in contrast to its Equipment, Edge does not have market power for the serums it manufactures and sells which are sold separately from Edge's HydraFacial Systems.  As explained further below, there can be no question that Edge's Systems and serums are offered and sold as ***separate products***.  This is established, among others, by Edge's own License Agreement(s) with its customers-licensees, blocking book of patents, and by the conditions and penalties Edge imposes on its customers-licensees if they do not purchase and solely use Edge's Serums with Edge's Systems.  Ageless is also informed and believes, Edge is able to sell its Equipment at significantly higher prices than its competitors yet still generate significant revenues and profits by the sale of its patented HydraFacial Systems, with consumer demand for Edge's Equipment and related treatments increasing despite Edge's higher pricing according to Edge and others.

16.     **Separate Products.**  The fact that Edge sells its Serums as a separate product from its HydraFacial Systems is unquestionably proven, among others, by the terms of Edge's Trademark License Agreements.  Edge sells its Systems to customers across the United States pursuant to "trademark licensing programs," which allows Edge's customers-licensees to use and take advantage of Edge's "HYDRAFACIAL" Mark (hereinafter the "HydraFacial Mark") when offering and ***providing HydraFacial treatments, provided Edge's customers-licensees render the treatments by exclusively purchasing and using Edge's HydraFacial Systems with Edge's Serums***.  *Id.*  Attached hereto as **Exhibit A** is what Edge characterizes are "sample Trademark License Agreements" that it alleges it enters into with its customers-licensees and requires its customers-licensees to sign as a condition of selling, using and promoting Edge's HydraFacial Systems and Edge's Mark, which are expressly stated to be conditional upon "…***the Licensee solely and exclusively uses Licensor's [Edge's] serums and/or consumables in the operation of the Purchased Equipment.***" Id. at para. 1.1(a) (emphasis supplied).  In accord, *see id.* at para. 3.1.  Should any customer-licensee fail to comply with the terms of the Agreements and use only Edge's Serums with the use of Edge's Equipment, the license and other rights granted under the

Trademark License Agreement provide that the right to use Edge's Mark shall immediately terminate; other rights are forfeited (including warranties); and Edge is entitled to certain stated relief (including the right to collect monetary damages, injunctive relief and the payment of attorney fees should it prevail in the resolution or litigation of any dispute). *Id.* at paras. 1.1(a), 10.1 and 16.  Thus, by the terms of Edge's License Agreements, ***Edge itself has confirmed that its Equipment and Serum are sold as separate products***.  The fact that there are two separate products at issue in this case is also proven by the fact Edge charges a ***separate price*** for its Serums as part of the purchase and use of Edge's Equipment and the rendition of HydraFacial treatments using Serums Edge and its customers-licensees offer consumers.

17.     Not only are a customer's-licensee's right to use the HydraFacial Mark terminated if a competitor's serum is used, there are other consequences if a customer-licensee does not purchase and use exclusively Edge's Serums with Edge's HydraFacial Equipment that proves that an illegal tie has occurred under federal and Texas antitrust laws.  This includes, but is not limited to, a customer-licensee's ability to use Edge's Tower machines (such as the HydraFacial MD system) (one of Edge's "Tying Products") which prominently displays Edge's HydraFacial Mark on Edge's Equipment.  The HydraFacial Mark that customers-licensees are prohibited from using or displaying if they purchase serum from anyone other than Edge includes a flat screen monitor that displays a user interface screen where the HydraFacial Mark appears.  Ageless is informed and believes, and thereon alleges, that the display of the HydraFacial Mark on the user interface screen is preprogrammed.  As such, Ageless is informed and believes, and on that basis alleges, that a customer-licensee cannot remove the Edge Mark from the flat screen monitor after its purchase of Edge's HydraFacial Equipment, even though Edge claims its License Agreement requires that a customer-licensee stop all use of the Edge Mark if a consumer-licensee uses or purchases serum from a third party.  Therefore, if the right to use the HydraFacial Mark is terminated, Ageless is informed and believes, and on that basis alleges, that a customer-licensee must also discontinue use of the HydraFacial Equipment that it purchased because the HydraFacial Mark cannot be removed from it.  These circumstances result in customers-licensees having to use

Edge's Serum (the "Tied Product") in order to use Edge's Equipment (the "Tying Product") since, as a practical matter, Edge's HydraFacial Mark cannot be removed from Edge's Equipment.  At the same time, Ageless has verified it does not know of anyone who has hidden or masked the HydraFacial Mark after their right to use the Mark ended.  A copy of an image of Edge's HydraFacial MD Equipment is shown on **Exhibit B** hereto showing how the HydraFacial Mark appears, among others, on the preprogrammed flat screen monitor.

18.     Edge also imposes additional conditions and penalties on customers-licensees that not only result in the forfeiture of their ability to use the HydraFacial Mark if they do not use Edge's Serum with Edge's Equipment (as the License Agreement mandates). For example, as part of Edge's so-called "Authenticity Campaign," Ageless is informed and believes, and on that basis alleges, that Edge sent an email to its customer-licensees on or about August 13, 2020, ***advising them that their license to use the Edge System would be revoked if anyone purchased or used a third party's serum, such that Edge's customer licensees not only forfeit their right to use Edge's HydraFacial Mark, but are also unable to market or provide HydraFacial services or treatments.*** As such, Edge's customers-licensees are required to purchase Edge's Serums exclusively from Edge as a condition of using the HydraFacial Equipment which they purchased from Edge for the exact purpose they purchased Edge's Equipment, *i.e.,* to provide HydraFacial services and treatments.  Other benefits of owning HydraFacial Equipment are also revoked by Edge in the event its customer-licensees purchase or use third party serums with Edge's HydraFacial Equipment.  This includes the loss of preferred pricing, removal from Edge's "Find a Provider" site and loss of device support, training and education, and so-called LINQ benefits (which include free marketing materials, giveaways, and business building tools).  Therefore, in effect, a customer/licensee is required to purchase Edge's Serum solely from Edge as a condition of not only using Edge's Mark, ***but also as a condition of purchasing and using Edge's Equipment for the exact purpose for which they acquired it***.  Because Edge unlawfully ties the purchase of Edge's Equipment to the purchase and use of Edge's Serums, the HydraFacial Equipment is rendered worthless and cannot be purchased or used unless a customer-licensee also purchases

Serum solely from Edge.  A copy of the Carnell August 13, 2020 Edge email reflecting the terms of the "Authenticity Campaign" is quoted fully below at paragraph 24 of this Counterclaim.

19.    For its part, Counterclaimant Ageless has designed, developed, and sold high-quality serums that can be used, among others, for use with Edge's HydraFacial Systems (hereinafter the "Ageless Serums").  As is its legal right, like others, Ageless lawfully and fairly competes in the sale of serums it sells with those serums sold by Edge. To avoid any possible confusion, Ageless also prominently displays a notation on its website that the term HydraFacial "is a trademarked name and should be noted throughout the website."  By lawfully engaging in comparative advertising and the sale of Ageless Serums, Ageless is not engaged in direct or indirect trademark or patent infringement.  In fact, Edge has never sued Ageless for direct infringement of any of its patents because of the sale by Ageless of any of its Serums.  Instead, in this action, Edge has sued Ageless based upon a claim of ***induced infringement*** for selling its serums to third parties.

20.    Apart from Edge's efforts to try to expand its market share and to establish monopoly power for the sale of Edge's Serums that Edge has obtained for Edge's patented Equipment, and because of the additional reasons discussed below, the sale, use and advertisement of Ageless' and other competitor's serums according to Edge is prohibited for use with Edge's patented Equipment.  Stated differently, because of Edge's illegal tie, Ageless and other actual or potential competitors are prohibited from offering or selling their serums for use with Edge's patented Equipment—thereby unlawfully depriving them of the ability to sell their serums to consumers at competitive prices and to profit from their lawful sales.  Consumers and Edge's customers-licensees would otherwise be free to purchase any serum they desired if Edge did not improperly try to expand its market power and patent monopoly by tying the sale and use of Edge's patented Equipment to the purchase and use of a product (*i.e.*, Edge's Serums) that is neither patented and has not and would not allow Edge to sue its competitors for patent infringement. Many consumers have stated they would prefer to purchase Ageless Serums instead of Edge's Serums because they are cheaper and of higher quality.

21.     By demanding consumers, including Edge's customers-licensees, to purchase Edge's Serums as a condition of using Edge's Equipment, Edge's Trademark License Agreement combined with the additional conditions Edge has imposed under the terms of its "Authenticity Campaign" are, among others, illegal because they constitute an unlawful tie in violation of United States and Texas antitrust and unfair business practices laws, including, but not limited to, the *Sherman Act* (*15 U.S.C. Section 1*), the *Clayton Act* (*15 U.S.C. Section 14*) and *Texas Business and Commerce Code Section 15.05(e)*.

22.     Based upon Edge's illegal effort to try to expand its patent monopoly by prohibiting the purchase of serums from anyone other than Edge, Edge deprives Ageless and Edge's other competitors from profiting from the sale of their serums for use with Edge's patented Equipment in spite of the fact that there have been many consumer testimonials attesting to their belief that Ageless' Serums are better, cheaper and of higher quality than Edge's Serums.

23.     To further prevent consumers and Edge's customers-licensees from using third party serums, Edge has also falsely represented to them that Ageless' Serums are "inferior" and of "lower quality," and will not work "properly" or "effectively" with Edge's Equipment rather than Edge's Serum (in fact may be "harmful" to them) -- and therefore, may not be purchased or used by consumers or Edge's customers-licensees when purchasing and operating Edge's HydraFacial Equipment and the treatments provided by them.

24.     Thus, as part of Edge's so-called "Authenticity Campaign," HydraFacial customers were sent an August 13, 2020 email from Edge and Beauty Health and their CEO (Counterclaim Defendant Clint E. Carnell) containing a video link of Carnell which appears at https://vimeo.com/446939770/53853b87ea?utm_source=Elite+ML+LAUNCH +Announcement+7.27.2020&utm_campaign=5da70ce5cd-EMAIL_CAMPAIGN_2020_ 02_24_07_03_COPY_01&utm_medium=email&utm_term=0_ac68df26ed-5da70ce5cd-583560574&mc_cid=5da70ce5cd&mc_eid=[1a71e34242.  This August 13, 2020 email communication is reproduced below:



HydraFacial Nation,

Now more than ever, the HydraFacial® brand will play a critical role for your business - as our investments in our brand and in you are driving business through our collective doors and enhancing your capabilities and offerings.  During the past several months (while navigating through this trying pandemic which has affected us all), The HydraFacial Company has increased our social reach and awareness, has received over **1 Billion media impressions YTD**, and remains the top facial treatment search term based on Google search comparisons.   To ensure this momentum continues and that the brand stays strong, The HydraFacial Company is introducing a **new authenticity campaign** – with the simple goal of protecting our consumers, our brand, and you -- by making sure that the HydraFacial experience remains true and exceptional.   Please listen in as Clint Carnell, CEO, introduces this new initiative and then read below for more detail:



As Clint stated, unfortunately some providers are promoting HydraFacials but using *inferior, third party serums*. This gives those clients an *inferior (or, even worse, possibly harmful)* experience, which - in turn - damages the HydraFacial brand and lessens our collective success.   Emphasis supplied.  That can't happen. We have the highest quality standards for our serums, and we constantly re-invest in our brand and tools, trainings, and new products to help bring customers into your practices.   For those of you that are good partners in building the HydraFacial brand (and the VAST majority of you <u>are</u> good partners), we thank you and will continue to support you with all the following programs. For any offending providers who use third party serums (*and bring this risk and harm to the HydraFacial family), the following changes will take place:*

- **<u>Preferred Pricing</u>**. Providers who use third party serums will no longer receive our preferred pricing. *The new price list for these providers can be seen here.*  [Emphasis supplied.]

- **<u>Customer Acquisition and Provider Status</u>**. Providers using third party serums will also be removed from our "Find a Provider" site, *and their licenses*

*will be revoked such that they are no longer able to market or provide HydraFacial services.*  [Emphasis supplied.]

- **Device Support.** *Using non-HydraFacial serums voids the warranty on your device, and we will no longer service or repair devices in which third party serums are used.  Offending providers will also NOT be eligible to receive the new Elite ML upgrade, with enhanced protocols and additional treatment categories.*  [Emphasis supplied.]

- **Training & Education.** *Offending providers will no longer be able to access our online resources such as Insider and Connect, nor will they be eligible to participate in live training events such as HFX, Sprout, or Jump Start.*  [Emphasis supplied.]

**Rewards**. *Third party serum users will have their LINQ status reset, and they will be ineligible for LINQ benefits (including any free marketing materials, giveaways, and business building tools).*  [Emphasis supplied.]  These actions are necessary for us to *protect the brand* and the experience that so many of us have all spent so much time building together.  Emphasis supplied.  Ensuring that our customers' experiences are best in class and keeping the trust of those customers who believe they are receiving a HydraFacial are our top priorities.  As Clint said, the money you spend on consumables directly supports our marketing efforts to help drive new clients to your practices – and new client acquisition is one of the biggest expenses for a provider.  Our good partners have nothing to worry about – but *if it's possible that YOU have not been following our brand authenticity standards and you don't want to lose all of these benefits*, the time to change is now! We are committed to this partnership and want to make sure that you are too.  [Emphasis supplied.]

**Let's Do This Together!**

The HydraFacial Company

**COUNTERCLAIM COUNT I**
**(VIOLATION OF FEDERAL AND TEXAS ANTITRUST LAWS—SHERMAN**
**ACT §1; CLAYTON ACT §§ 3 AND 14 AND TEXAS BUSINESS AND**
**COMMERCE CODE 15.05(e)**

25. Ageless repeats and re-alleges the allegations of paragraphs 1-25 of this Counterclaim as if set forth fully herein.

A. **THE RELEVANT MARKETS**

1. **The HydraFacial Equipment (The "Tying Product")**

26. Edge claims it is a "***worldwide leader***" in the design, development, manufacture, and sale of "high-quality" resurfacing and rejuvenation systems, including hydra-dermabrasion systems. Emphasis supplied. Edge calls its Equipment and the services that are offered with it, including its treatments "HydraFacial" — which takes its name from the root word hydrate. According to Edge, HydraFacial treatments include a 3-stage process that can be completed within a 30-minute session. This process includes rejuvenating skin by cleaning and exfoliating the skin surface, extracting debris, and then "nourishing" the skin's surface with solutions called "serums." This regimen according to Edge, uses a ***patented medical-grade hydrodermabrasion device***, including a patented vortex technology hand piece, that Edge claims "gently" vacuums out pores while pushing in, and activates and enhances the skin by moisturizing, brightening, and protecting it. Among other guidance, Edge's User Guide states the HydraFacial handpiece works with Edge's HydraFacial Systems "to store serum and control serum flow allowing for personalized treatments."

27. The use of serums however is only included with a HydraFacial treatment ***if the customer pays a separate additional price for the serum***. Thus, Edge clearly offers and sells its serums as a ***separate product***. According to Edge, its patented cleaning, rejuvenation, and resurfacing process performed as part of a HydraFacial treatment uses Edges' patented, proprietary machines – including what Edge characterizes as its "flagship" product, *i.e.* Edge's HydraFacial MD. This Equipment and other patented Edge HydraFacial Equipment (so-called "delivery machines) provides a treatment that Edge maintains is the "***most effective type of facial you can***

*get*." Emphasis added.  Edge markets and sells its Systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas. Unlike Botox, Edge's HydraFacial treatments are noninvasive, meaning that they do not require surgery or other invasive treatment as part of a HydraFacial treatment.

28.    In addition to Edge's patented products, there are alternate products and systems for noninvasive skin resurfacing and rejuvenation treatments available in the United States.  They include:

- ***Microdermabrasion*** (which uses a crystal or diamond-tip device to sand the skin in order to remove the thick, outer layers).   However, unlike the manual extractions performed through sanding in microdermabrasion, HydraFacial uses a vacuum tip to cleanse and remove impurities.  As such, Edge maintains that its HydraFacial method is gentler, less painful and more effective.  According to Edge: "[as] Edge expands its international footprint, it will meet some resistance from the cheaper Chinese serums and alternative products like microdermabrasion, especially in the developing world.  Continued esthetician and favorable media coverage will be essential ***to keeping the brand premium*** in international expansion."  Emphasis supplied.  Thus, Edge currently claims, among others, that it has ***strong brand recognition*** in the United States and throughout the world, and intends to try to increase it.

- Other forms of non-invasive skin rejuvenation treatments also include ***micro needling***, also known as collagen therapy.  This process helps rejuvenate the skin using tiny needles that pierce the outermost layer, which forces the skin to produce more collagen.  However, the primary drawback of micro needling is it has been reported to cause scarring and to come with a higher risk of infection.

- ***Chemical peels*** can also be used as a possible alternate to HydraFacials.  Both HydraFacial and chemical peels work by removing dead skin cells.  Chemical peels employ acids, however.  As such, they have been reported to not be for everyone.  Due to the acids chemical peels use, they are generally not recommended for those with certain skin disorders. Also, while chemical peels may be effective for those with lighter skin tones, HydraFacial is reported to be

recommended for people of any skin tone.  Chemical peels also need to be avoided if a person is nursing, pregnant, or has eczema, dermatitis, rosacea, or psoriasis.  On the other hand, it is reported HydraFacials can be used by people with hyper-sensitive skin, and that it is actually recommended for treating rosacea and dry, peeling skin.

- *Intense pulsed light ("IPL")* is also known as a possible alternate choice for HydraFacials.  IPL is a photo rejuvenation cosmetic skin procedure that employs laser-like pulses of non-coherent light to fix sunspots, age spots, blotches, large pores, and other common skin conditions.  These lights penetrate into the skin and cause the collagen and blood vessels to constrict, which may help to reduce the appearance of redness and age lines.  IPL treatments are also reported to have drawbacks.  For one, they allegedly don't work on all discolorations.  Side effects have also been reported to include redness, enlarged pores, and the appearance of aged skin for several weeks following treatment.  Some people have also reported that the treatment affected their teeth that had fillings, causing discomfort similar to chewing on tinfoil.  IPL treatments are also reported not to be a good choice for people with surface discoloration, rosacea, and other skin issues.

29.     Edge has filed a Complaint against Ageless in a second action that is currently pending in the Central District of California entitled *Edge Systems LLC v. Ageless Serums LLC*, CD Cal. Case No. 2:20-cv-09669 ( the "California Action").  Among other allegations in the California Action, Edge has alleged that:

> "Edge's flagship system is its revolutionary HydraFacial MD system*, which is the premier hydra-dermabrasion system sold in the United States.  Edge's HydraFacial system is so revolutionary that is protected by numerous United States patents*.  In addition to the HydraFacial system, Edge designs, develops and manufactures and sells *other patented hydra-dermabrasion system*s, including the HydraFacial Tower, HydraFacial Allegro, the HydraFacial Wave, the HydraFacial Elite, the HydraFacial Nectre and the HydraFacial Core systems" [which Edge defines as "the HydraFacial Systems"]. *Id*. [Emphasis supplied.]

30.     Ageless is informed and believes, and on that basis alleges, that Edge has consistently charged a much higher price (which Edge has stated is "*inelastic*") for its patented HydraFacial Systems than its competitors charge.  At the same time, Edge has stated that its higher

pricing has not resulted in reduced consumer demand for its Equipment.  On information and belief, Edge charges as much as $25,000 to $30,000 per System.  The sale of Edge's Equipment according to Edge accounts for roughly 49% of Edge's sales.  By contrast, Ageless is informed and believes, and on that basis alleges, that other hydrodermabrasion skin resurfacing and rejuvenation equipment is sold at significantly lower prices despite high consumer demand for this type of equipment even though competitive products are used for a similar purpose with similar intended results.  For example, Ageless is informed and believes, and on that basis alleges, that a company called Cosmetic Solutions sells its equipment at a price ranging from only a couple of hundred dollars to less than $12,000.  In this Counterclaim, Edge's HydraFacial Systems (Equipment) and the treatment they provide are what Ageless alleges are the "Tying Product(s)."  The relevant geographic market for the sale of Edge Equipment and the treatments Edge offers as part of the use of its Equipment is in the United States.

31.     Like its Equipment, Ageless is informed and believes, and on that basis, alleges that HydraFacial treatments also generally cost more than competitive treatments.  For example, Ageless is informed and believes, and on that basis, alleges that as a general rule of thumb, HydraFacials costs anywhere between $150 and $300 per treatment (with serums added at a ***separate price*** if the consumer wants to include them as part of a treatment).  By comparison, microdermabrasion is less, at approximately $75 to $200 per session.  Similarly, chemical peels can go as little as $150 per peel.  Ageless is informed and believes, and on that basis alleges, that despite higher pricing this too has not lowered what Edge alleges is rising consumer demand for Edge's treatments, including because Edge's Equipment, according to Edge is a unique, patented product and because Edge claims it has ***high brand recognition and consumer loyalty***.

32.     In fact, according to Edge and market analysts, given HydraFacial's established brand, customer loyalty and Edge's monopoly over what it claims is unique, patented Equipment, Edge claims it is able to implement "***value creation levels***," including "***annual price increases***" for its products.  Emphasis supplied.  In addition, because of Edge's brand recognition, customer loyalty and patents, Edge is able to charge higher prices not only for Edge's Equipment, but also

for its treatments.  This can be proven by, among others, the growing increase in sales and revenue obtained by Edge in the United States despite the depressed 2020 levels that were caused by Covid. Despite not having market power for its Serums, Edge now seeks to exploit and expand its market power it has for its patented Equipment, by tying the purchase and use of its Equipment to the purchase and use of Edge's nonpatented Serums – thereby not only increasing Edge's profits and revenue, but also excluding competition in the Tied Market.

> 2.   **Edge's HydraFacial Serums (The "Tied Product")**

33.   In its Complaint in the California Action, Edge has alleged that: "Edge also designs, develops, manufactures, and sells high quality serums for use in the HydraFacial Systems. These serums include Activ-4, Antiox+, Antiox-6, Beta-HD Clear, and the HydraFacial Dermabuilder serums."   Edge's Serums are hereinafter collectively referred to as "the HydraFacial Serums" or "Tied Product(s)".

34.   Skin care serums are generally fat-based formulations that have gathered steam in cosmetic care products. Their popularity and high demand stems, among other factors, on the back of higher hydrating characteristics than most products use for moisturizing.  Ageless is informed that demand for serums is very high and increasing even though it is a discretionary (not essential) product that consumers purchase.  Unlike its competitors, Edge has stated that (other than during the COVID period) Edge has not suffered from a decline in sales, revenue or demand -- again proving that Edge has Market or monopoly power in the Tying Market in contrast to its competitors whose revenue and sales are believed to have declined.

35.   Edge's nonpatented HydraFacial Serums and noninfringing serums sold by third parties can all be used with Edge's Systems and in the rendition of HydraFacial treatments despite Edge's false claim that competitive serums cannot be "properly" or "effectively" used with Edge's Equipment, and, according to Edge, may in fact be "harmful."   Currently competitors cannot sell competing products, including because Edge maintains they are prohibited from doing so because Edge has a blocking book of patents covering Edge's Equipment.  Thus, Edge has the ability to both control prices and exclude competition for the

Tied Product.

36.     As shown in the picture attached hereto as **Exhibit C**, Edge's Equipment has serum ports that store the serum for use as part of a HydraFacial treatment. What in part makes Edge's treatment unique according to Edge is the application of serums as moisturizers as part of a single, 30-minute HydraFacial treatment through the use of a patented Vortex Technology hand piece that is sold with Edge's Equipment.  A picture depicting how Edge's Systems look and how they clean and remove impurities and apply moisturizers as part of a 30-minute HydraFacial treatment is attached hereto as **Exhibit D**.

37.     For its part, Ageless sells Serums that can be used with Edge's HydraFacial Systems. In its Complaint in the California Action, Edge has alleged as much: "Ageless is in the business of promoting and selling serums for use with hydra-dermabrasion systems manufactured by others, including the Edge hydra-dermabrasion systems."  Edge does not allege that its Equipment patents or any other patent prohibits Ageless from selling its Serums with Edge's HydraFacial Equipment, as part of any HydraFacial treatment or directly infringes any of Edge patents.  In fact, Edge has never sued Ageless (or, as far as Ageless is aware, any other third party) for direct patent infringement by offering or selling competitive serums.  Instead, Edge has filed this lawsuit in Texas claiming Ageless has ***induced patent infringement by third parties*** who are potential competitors to Edge for the sale of what Edge alleges in this action and others are Edge's unique, patented HydraFacial Systems.

38.     As shown, Edge's HydraFacial Systems and Edge's HydraFacial Serums are indisputably sold as ***separate products***.  As alleged above, this is evidenced, for among other reasons, by the terms of the Edge License Agreements attached hereto which state, among other terms, that: "[in] recognition that the HydraFacial system and equipment and the Perk system and equipment ***only operate properly and effectively with the use of Licensor's [Edge's] serum and solutions and consumables, Licensee agrees to purchase solutions used in the Purchased Equipment solely and exclusively from Licensor or its authorized distributor in good standing.***"  *See* **Exhibit A** hereto at 3.1 and 2 (emphasis supplied). Edge

also charges a *separate price* for the use of Edge's Serums as part of a HydraFacial treatment. As alleged above, Edge also currently has an "Authenticity Campaign" *that requires its customers-licensees to separately purchase Edge's Serums as a condition of providing HydraFacial treatments and services*. Thus, by the terms and conditions found in Edge's contracts and its stated policies, it is indisputable that Edge's HydraFacial Systems (or Equipment) are sold separately from Edge's Serums.

39.    The relevant market for the "Tied Product" in this Counterclaim is Edge's Serums consisting of those Serums that Edge alleges it manufactures and sells in the United States and which Edge demands its customers-licensees use to the exclusion of any competitive product with Edge's Equipment and treatments (hereinafter the "Tied Product(s)"). There are a number of other actual or potential competitors that sell serums that could otherwise be used with Edge's HydraFacial Systems instead of Edge's Serums. In fact, Ageless is informed and believes, and on that basis alleges, that Edge currently allows a limited number of third parties to sell serums for use with its HydraFacial Equipment and treatments (including Murad Inc., ZO Skin Health Inc. and Paul Nassif M.D. Inc.). At the same time, Edge prohibits other actual or potential competitors (like Ageless, Zemits, OOMNEX and Adonyss) from selling serums even though they could in fact be "properly and effectively" used with Edge's patented HydraFacial Systems at competitive prices and with consumers seeking to purchase them instead of Edge Serums. Ageless is informed and believes, and on that basis alleges, that third-party serums can in fact be used properly and effectively as a substitute for Edge's Serums with the same results as Edge's Serums as part of a HydraFacial treatment. A copy of a section from Ageless' website showing the compatibility of Ageless Serums sold at competitive prices which can be used as a substitute for HydraFacial Serums is attached hereto as **Exhibit E**.

### 3.    Edge's Market Power

40.    **Blocking Book of Patents:** Edge's patent portfolio includes a "blocking book" of strikingly similar patents containing system, apparatus, and method claims relating

to hydrodermabrasion technology, including, but not limited to, at least the following eight patents:  U.S. Patent No. 6,641,591; U.S. Patent No. 7,678,120; U.S. Patent No. 7,789,886; U.S. Patent No. 8,337,513; U.S. Patent No. 9,468,464; U.S. Patent No. 9,550,052; U.S. Patent No. 8,066,716; and U.S. Patent No. 9,775,646.

41.    In an effort to stifle competition and monopolize the hydrodermabrasion market for the record sales of Edge's Equipment, Edge has waged a decade-long campaign to aggressively enforce these patents and to preclude competition for the Tying Product.  Over the past ten years, Edge has brought no less than ten different patent infringement lawsuits in four different jurisdictions against eight different defendants.  True and correct copies of the Complaints filed in these cases are attached hereto as **Exhibits F through N**: (1) *Edge Systems LLC v. Bio-Therapeutic, Inc.*, C.A. No. 2:11-cv-04993-JFW (C.D. Cal.) – filed 6/13/11 (**Exhibit F**); (2) *Edge Systems LLC v. Image Microderm Inc.*, C.A. No. 2:14-cv-04428 (C.D. Cal.) – filed 6/9/14 (**Exhibit G**); (3) *Edge Systems LLC v. Naumkeag Spa & Medical Supplies, LLC*, C.A. No. 2:14-cv-04663 (C.D. Cal.) – filed 6/17/14 (**Exhibit H**); (4) *Edge Systems LLC v. Aguila*, C.A. No. 1:14-cv-24517-KMM (S.D. Fla.) – filed 11/2/14 (**Exhibit I**); (5) *Edge Systems LLC v. Ageless Serums LLC*, C.A. No. 2:17-cv-02720 (C.D. Cal.) – filed 4/10/17 (**Exhibit J**); (6) *Edge Systems LLC v. Aesthetic Skin Systems LLC*, C.A. No. 2:17-cv-04597 (C.D. Cal.) – filed 6/22/17 (**Exhibit K**); (7) *Edge Systems LLC v. Image Microderm Inc.*, C.A. No. 2:17-cv-8699 (C.D. Cal.) – filed 12/1/17 (**Exhibit L**); (8) *Edge Systems LLC v. Venus Concept USA Inc.*, C.A. No. 18-cv-62588-UU (S.D. Fla.) – filed 10/26/18 (**Exhibit M**); (9) *Edge Systems LLC v. Cartessa Aesthetics, LLC*, C.A. No. 2:20-cv-06082 (E.D.N.Y.) – filed 12/14/20 (**Exhibit N**); and now this action (10) *Edge Systems LLC v. Ageless Serums LLC*, C.A. No. 4:20-cv-04335 (S.D. Tex.) – filed December 22, 2020.

42.    **Edge's Claimed High Brand Recognition and Customer Loyalty:**  Edge also claims to have ***high brand*** recognition and ***customer loyalty*** that allows it to preclude competition in the Tied Product market.  As alleged above, Ageless is informed and believes, and on that basis alleges, Edge also charges more for its Equipment than any of its competitors.  At the same time,

by tying the purchase and use of its Equipment to the purchase of Edge's Serums, there is reduced competition in the market for the Tied Product, *i.e.* serums that could otherwise be sold and used with Edge's Equipment by its competitors. As a result, there is a substantial amount of actual or potential business measured by dollar-volume that is foreclosed to competition because of Edge's illegal tie.

43.     According to Edge, it operates a "razor and blade" model with "highly attractive blended gross margins of 75%." The "razor" according to Edge is its ***HydraFacial Equipment (which it calls a "delivery machine") estimated at $25K-30K per unit and accounting for "roughly 49% of sales.*** Emphasis supplied. In addition, what Edge calls the "razorblade," Edge states that **10% of the $200/session [or treatment] fee comes from the use of consumables (including serums) that HydraFacial sells to estheticians. Edge further states: "[t]heir recurring revenue (the sale of consumables like serum) currently represents 51% of sales and will grow bigger as a % of sales as the install base of delivery equipment expands**." Emphasis supplied. For 2022 alone, Edge has stated it projects with 18,000 units already sold and 3,000 users ($30,000 each), and $8,500 consumables (including serums) per unit, HydraFacial ***"will reach $250 million in revenue just by keeping up with its past performance."*** Emphasis supplied. Thus, it is clearly Edge's intent and business model to try to sell more of its high cost HydraFacial Equipment in a market it monopolizes to try to increase revenue for the sale of its unpatented Serums. Edge is now seeking to accomplish this by illegally tying the purchase and use of its Equipment conditioned upon the purchase and use of Edge's Serums.

44.     Edge has further advertised: "[w]hile the upfront cost of a HydraFacial delivery machine and training time is fairly high, **the economics gained by the esthetician are highly compelling**." Edge has stated that a standard $200 HydraFacial treatment yields a 90% gross margin/$180 gross profit to the esthetician," ***and that adding consumables (like serums) can lead to greater profits***. Edge further promotes its products by claiming that an esthetician can expect a large amount of annual revenue: "[a]ssuming 60 treatments per month at a $200 session, that's **$144,000 of revenue or $129,600 of profit a year for the esthetician**." Emphasis supplied.

45.     Edge also maintains that "HydraFacial is known for its ***strong customer loyalty***" which is a further barrier to competition.  Emphasis supplied.  In fact,  Edge itself claims that there is not serious competition in the Tying Product Market.  According to Edge "while there are very few direct competitors to HydraFacial, Chinese knockoffs known as HydraPeel (or AquaPeel) exist. **However, these competitors have failed to gain any meaningful traction outside of the Greater Chinese market.  Likewise, alternative procedures such as microdermabrasion have not mounted a serious challenge."**  Emphasis supplied.

46.     While Edge claims to be the industry leader in the hydrodermabrasion market (and thereby have market power in the market for the sale and use of its patented Equipment and the treatments they are designed to provide), there are numerous companies that would otherwise be able to compete with Edge at competitive prices in the Tied Market.  Among other competitive products, Edge has alleged that its competitors manufacture and sell products that include Image MicroDerm, Inc. and Aesthetic Skin Systems LLC which offer to perform services and treatments that could otherwise fairly compete with Edge's HydraFacial Systems and treatments, who Ageless is informed and believes, are required to charge a lower price than Edge.

47.     In addition to Ageless, other companies compete with Edge in the manufacture and sale of HydraFacial serums.  Some of these other serum manufacturers and sellers not only include Ageless, but others like Zeemits, OOMNEX and Adonyss that advertise they can be used with any hydrodermabrasion equipment, including Edge's HydraFacial Systems.

48.     Edge further claims it has ***high brand recognition*** which allows it to keep its product pricing higher than its competitors and is a further barrier to competition even though others charge less for their products and services.  Thus, Edge maintains "…**branding power matters a LOT in the beauty industry (think Hermes or Louis Vuitton) with high price inelasticity, and HydraFacial is the undisputed leader."**  Emphasis supplied.

49.     Similarly, Edge further maintains that: "**[g]iven HydraFacial's established brand and leading market position, it has unique value creation levels it can pull, including annual price increase for consumables [like serums].**"  Emphasis supplied. Nevertheless, because of

Edge's contracts and "Authenticity Campaign," the purchase and use of Edge's HydraFacial Equipment is now conditioned upon a customer-licensee purchasing and using only Edge's Serums -- which stifles competition for the purchase and use of competitive products and has an onerous effect on an appreciable number of buyers in the serum market.  Edge's efforts to expand its patents to non-patented and non-infringing products constitutes an illegal tie in violation of federal and State law.  *See Sherman Act § 1; Clayton Act §§ 3 and 14;* and *Texas Business and Commerce Code §15.05(e ).*

50.     Ageless is further informed and believes, and on that basis alleges, that because of Edge's unlawful tying agreements and policies, Edge has restrained commerce, including by enabling Edge to exclude competition, and to set prices higher for Edge Equipment and treatments than those of third parties who could otherwise sell competitive products and offer treatments at a lower price.  At the same time, this conduct has precluded Ageless and other actual or potential competitors from selling serums to Edge's customers-licensees at significant loss to Ageless and other competitors.  Because of Ageless' illegal tie, there is significant loss to Ageless and other competitors which would otherwise allow these parties to share in the lucrative consumables and services markets that Edge states has allowed it to earn $125 million in revenue in 2020 alone, with increased sales and profits projected thereafter. Obviously, these sales and profits could be shared  if Edge did not prohibit the sale of non-patented, non-infringing serums for use with Edge's patented HydraFacial Equipment.  Not only are competitors harmed by Edge's illegal conduct. Consumers are also harmed by Edge's conduct by being unable to purchase and use third party products and services at a competitive price which many prefer to the purchase of Edge's products and treatments.  Thus, Edge's unlawful use of its market power in one market to try to expand it to a second market in which it does not have market power results in harm to competitors, consumers and creates consumer welfare loss.  A substantial amount of commerce is thereby affected by Edge's illegal tying.

51.     Because of Edge's unlawful and anticompetitive conduct, Ageless has suffered and is entitled to monetary damages (including compensation for pecuniary losses), trebled pursuant

to 28 U.S.C. § 15, as well as injunctive relief (including a court order restraining Edge from continuing to tie separate products).

## COUNTERCLAIM COUNT II

## UNFAIR COMPETITION UNDER COMMON LAW)

52.     Ageless repeats and re-alleges the allegations of paragraphs 1-51 of this Counterclaim as if set forth fully herein.

53.     Edge's conduct as alleged above, including, but not limited to, its unlawful tying and false statements about the quality of Ageless' serum, constitutes unfair competition under Texas common law as it arises out of business conduct which is contrary to honest practice in industrial or commercial matters.

54.     Because of Edge's unfair conduct, Ageless is informed and believes, and thereon alleges, that Edge has derived and received, and will continue to derive and receive, gains, profits, and advantages from Edge's unfair competition in an amount not presently known by Ageless.

55.     By its actions, Edge has injured and violated the rights of Ageless and has irreparably injured Ageless, and such irreparable injury will continue unless Edge is enjoined by this Court.

56.     Ageless' willful acts of unfair competition under Texas common law constitute oppression, malice, defamation, and false advertising.  Accordingly, in addition to monetary damages, Ageless is entitled to both compensatory and exemplary damages.

## COUNTERCLAIM COUNT III

## (DEFAMATION AND FALSE ADVERTISING)

57.     Ageless repeats and re-alleges the allegations of paragraphs 1-56 of this Counterclaim as if fully set forth herein.

58.     The development of Ageless Serums began in 2014.  Three commercially available HydraFacial base formulations were analyzed, and include Active4, BetaHD, and Antioxidant.  An outside chemist analyzed the ingredients and reformulated the serums in order to improve upon updated standards, such as aqua solubility.  These became the Ageless Serums.  The manufacturer

of the Ageless Serums is registered with the U.S. Food and Drug Administration (FDA) and is fully licensed for cosmetic manufacturing.  As a licensed manufacturer, Ageless must adhere to strict CGMP controls to ensure batch consistency and quality for the Ageless Serums and standards of the Independent Cosmetic Manufacturers and Distributors (ICMAD), Society of Cosmetic Chemists (SCC), and the Better Business Bureau.  The manufacturing facility has clean manufacturing and filling rooms, as well as full R&D, QA and analytical labs.

59.     Ageless is informed that, on several instances, an Edge representative and Edge's employees have characterized Ageless Serums as "inferior," "less effective," and even potentially "harmful" to consumers and Edge's customers and by making similar false statements (including, but not limited to, as part of Counter-Defendants' Trademark License Agreement and Edge's "Authenticity Campaign" discussed above).  These statements are false and known to be false by Counter Defendants since Ageless Serums are not in fact "inferior" to Edge's's Serums, "less effective," "less efficient" or potentially "harmful" -- which are objective statements of fact that can be disproven.  Ageless does not presently know all names of the specific Edge employees or representatives who made these false statements about Ageless' products (other than those identified in these Counterclaims such as false statements by Counter Defendant Carnell), but only knows from what Ageless customers have informed Ageless that these were either Edge employees or representatives.

60.     In addition to these statements, Ageless is aware that Edge has also described Ageless Serums as "lower quality products" or by using similar descriptions.  This too is false since Ageless Serums are not of a "lower quality" than Edge's Serums and Edge knows it.  Edge has also made false and defamatory statements about Ageless Serums in at least its Trademark License Agreement.  For example, Section 3.1 of the Agreement states that "the HydraFacial system and equipment…*only function properly and effectively* with the use of Licensor's serum solutions and consumables," thus falsely representing that other serum solutions and consumables, such as Ageless Serums, do not and will not allow competitive serums or consumables to function "properly" or "effectively" with HydraFacial Systems when in fact they do.  *See* **Exhibit A** hereto

at Section 3.1 (emphasis supplied) and Section 2 thereof. These statements are, as alleged above, false since the HydraFacial System and Equipment do function "properly" and "effectively" with Ageless Serums, and these factual statements can also be disproven.

61. Ageless is informed and believes, and on that basis alleges, that in approximately November, 2020, a Hala Tailfour of Aurora Medi Spa, East Lansing, Michigan was approached by a HydraFacial representative who aggressively marketed HydraFacial serums to her and characterized the Ageless serums as "inferior."

62. Upon information and belief, on approximately November 11, 2020, a Daniel and Melissa Coats of Cocoa Beach Spa, Melbourne, Florida, were emailed a letter from HydraFacial informing them among other things that their license to use any HydraFacial Marks had been terminated, that their LINQ status had been reset and that they would no longer receive loyalty pricing, and their warranty on their HydraFacial device was revoked. The letter also discussed the "Authenticity Campaign" message that was emailed to all HydraFacial customers on August 13, 2020, which included a video of Edge's CEO Carnell and written materials which characterized serums, such as Ageless Serums, as "inferior, third party serums."

63. Upon information and belief, on approximately January 29, 2021, a Bonnie Benedetto of Philadelphia, Pennsylvania was approached by a HydraFacial representative and received similar statements from Edge and its employees.

64. Upon information and belief, on or about March 2, 2021, Marissa Hervey of St. Petersburg, Florida informed Rene Chlumecky of Ageless that the CEO of Edge had sent out a video that asked all of Edge's customers to stop using "non HydraFacial products" or risk losing their licensing rights. Ageless believes that this video described above is the same video described above regarding Edge's "Authenticity Campaign."

65. Also, upon information and belief, on approximately August 28, 2020, Gale Pingleton of Clearwater, Florida contacted Rene Chlumecky of Ageless regarding Edge's "Authenticity Campaign" and expressed her disappointment that Edge would characterize persons who use Ageless Serums as "offenders" and that she believed Ageless Serums were "very good"

and not inferior products as characterized by Edge.

66.     By its actions (including under the terms of its Trademark License Agreement and its "Authenticity Campaign"), Ageless is informed and believes, and on that basis alleges, that Edge has deliberately induced one or more of Ageless' customers-licensees to terminate their business relations with Ageless.

67.     There is not now and has never been legal justification or right for Edge to have engaged in such unfair, illegal actions.

68.     Because of Edge's unlawful and unfair conduct as alleged herein, Ageless has lost customers and profits, revenue and other benefits it might otherwise have preserved and/or obtained.

69.     Edge's acts complained of herein have caused Ageless to suffer substantial monetary loss and irreparable injury.  Ageless will continue to suffer substantial loss and irreparable injury unless and until Edge is enjoined from continuing to interfere with Ageless' ability to sell its serums to customers-licensees.

70.     Edge's acts complained of herein have been willful and deliberate, thereby entitling Ageless to exemplary damages.

71.     Edge's statements about Ageless and the quality of its products are false, and known to be false by Edge.

72.     Edge was at all times relevant hereto aware that its statements were false and/or unsupported and knew that the statements made by it would and did cause serious injury to Ageless.

73.     In truth, Ageless' products are not of "inferior quality" or "less effective" than Edge's Serums.  Instead Ageless' Serums work equally well (if not better) with Edge's Equipment than Edge's Serums do, and create equal, if not superior, skin care results.  They also are not "harmful" and work "properly" and "effectively" with Edge's Equipment.

74.     Edge's acts complained of herein have caused Ageless to suffer substantial monetary loss and irreparable injury.  Ageless will continue to suffer substantial loss and

irreparable injury unless and until Edge is enjoined from defaming Ageless and making false statements about Ageless and its products.

75.     Edge's acts complained of herein entitle Ageless to compensatory damages and other relief and, because they have been willful and deliberate, entitle Ageless to exemplary damages.

## COUNTERCLAIM COUNT IV

## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

76.     Ageless repeats and re-alleges the allegations of paragraphs 1-75 of this Counterclaim as if fully set forth herein.

77.     Ageless has valuable business relations with third parties who have purchased Ageless' products, which have led to economic benefit to Ageless and the probability of future economic benefit to Ageless.

78.     At all times relevant hereto, Ageless is informed and believes, that Edge has been aware of some or all of these valuable business relationships.  In fact, as alleged above, Edge and its representatives have communicated with several of Ageless' customers to deter them from continuing to do business with Ageless.

79.     By its actions (including under the terms of its Trademark License Agreement and Edge's "Authenticity Campaign"), Ageless is informed and believes, and on that basis alleges, that Edge has deliberately induced one or more of Ageless' customers-licensees to terminate their business relations with Ageless.

80.     There is not and has never been legal justification or right for Edge to have engaged in such unfair, illegal actions.

81.     Because of Edge's unlawful and unfair conduct as alleged herein (including because of its antitrust violations, unfair competition, and defamation), Ageless has lost customers and profits, revenue, and other benefits it might otherwise have preserved or obtained.

82.     Edge's acts complained of herein have caused Ageless to suffer substantial monetary loss and irreparable injury.   Ageless will continue to suffer substantial loss and

irreparable injury unless and until Edge is enjoined from continuing to interfere with Ageless' ability to sell its serums to customers-licensees.

83.    Edge's acts complained of herein have been willful and deliberate, thereby entitling Ageless to exemplary damages.

## COUNTERCLAIM COUNT V

## (DECLARATION OF NON-INFRINGEMENT OF THE ASSERTED PATENTS)

84.    Ageless incorporates by reference the preceding paragraphs of these Counterclaims as though fully set forth herein.

85.    This Counterclaim is for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, and seeks a declaration under the patent laws of the United States that Ageless does not infringe— either directly or indirectly, literally or under the doctrine of equivalents—the asserted claims of U.S. Patent No. 6,641,591 ("the '591 Patent"), U.S. Patent No. 7,678,120 ("the '120 Patent"), U.S. Patent No. 7,789,886 ("the '886 Patent"), U.S. Patent No. 8,337,513, ("the '513 Patent"), U.S. Patent No. 9,468,464 ("the '464 Patent"), and U.S. Patent No. 9,550,052 ("the '052 Patent") (collectively, the "Asserted Patents").  This Counterclaim relates directly to claims asserted by Edge in its Complaint.  Edge's Complaint alleges that Ageless's sale of accused skin serums constitutes induced infringement of the Asserted Patents.  Ageless contends that it has not induced and is not inducing infringement of the Asserted Patents.  Therefore, an actual controversy exists between the parties under Article III of the United States Constitution.

86.    Edge cannot prevail on its claim for induced infringement of the Asserted Patents for at least the reasons set forth in the paragraphs below.

87.    Ageless did not have knowledge of the '120 patent, the '886 patent, the '464 patent, or the '052 patent until they were first asserted in Edge's Complaint in this case in late December 2020.  Ageless also did not engage in any conduct that could be considered willful blindness regarding the existence of those patents during the time of the alleged infringing conduct specified in the Complaint.  As a result, Ageless cannot be held liable for inducing infringement of these patents.

88.     Further, as to the expired '120, '886, and '464 patents, because Ageless first learned of the existence of these patents with the filing of this lawsuit in December 2020 after the patents expired in August 2020, that is insufficient knowledge for purposes of inducement prior to the filing of the suit.

89.     As to the '591 and the '513 patents, Ageless never knowingly induced any third party to infringe these patents and never had any intent to induce others to infringe these patents. Specifically, nothing in Ageless' website or communications with customers (including any promotional materials that Ageless is aware of) shows that Ageless specifically intended its customers to infringe these patents or that Ageless knew that by purchasing the Ageless Serums that the customers' actions would possibly lead to infringement of the asserted claims of these patents.

90.     In this action, Edge has alleged that Ageless allegedly induced the infringement of the patents-in-suit by inducing third parties to infringe the patents by using particular accused devices, *i.e.*, the IMD devices and Aesthetics devices.   However, Ageless' website (agelessserums.com), where Ageless sells and markets its accused serums, does not promote the use of its serums to be specifically used in any IMD or Aesthetic device.

91.     Moreover, Ageless had no reason to believe that use of its accused serums in these accused devices would meet the limitations of the asserted claims of the Asserted Patents, or that any of its actions would induce infringement.

92.     Ageless has no control over the actions of its customers, including what its customers do with the serums after they are purchased.   Ageless has no knowledge that any customers have combined any of the accused serums with any of the underlying allegedly directly infringing IMD or Aesthetic devices in a hydradermabrasion procedure to achieve the systems and methods of the asserted claims of the Asserted Patents, much less any knowledge at any relevant time.

93.     In sum, Ageless has never had specific intent to induce infringement of the Asserted Patents, has never had knowledge that supplying its accused serums to customers would induce

others to directly infringe the Asserted Patents, and does not promote its serums for use with the allegedly directly infringing IMD or Aesthetic devices.

94.     Additional bases for non-infringement may exist, and Ageless reserves the right to assert such additional bases after Edge complies with its discovery obligations and produces documents and things relating to, for example, the underlying accused directly infringing hydradermabrasion devices, including but not limited to producing physical samples of the devices.

95.     Accordingly, Ageless is entitled to a declaratory judgment that it has not and does not infringe—either directly or indirectly, literally or under the doctrine of equivalents—the asserted claims of the Asserted Patents.

<u>**COUNTERCLAIM COUNT VI**</u>

<u>**(DECLARATION OF INVALIDITY OF THE ASSERTED PATENTS)**</u>

96.     Ageless incorporates by reference the preceding paragraphs of these Counterclaims as though fully set forth herein.

97.     This Counterclaim is for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, and seeks a declaration under the patent laws of the United States that the asserted claims of the Asserted Patents are invalid.  This Counterclaim relates directly to claims asserted by Edge in its Complaint.  Edge contends that the claims of the Asserted Patents are valid by virtue of having been "duly and lawfully issued" by the United States Patent and Trademark Office ("USPTO") (*see* Complaint, at ¶¶ 10-15).  Ageless contends that the asserted claims of the Asserted Patents are invalid.  Therefore, an actual controversy exists between the parties under Article III of the United States Constitution.

98.     The asserted claims of the Asserted Patents are invalid under 35 U.S.C. §§ 102, 103 and/or 112 for at least the reasons stated in Defendant Ageless Serums LLC's Preliminary Invalidity Contentions Pursuant to S.D. Texas Patent Local Rule 3-3, served in this action on July 2, 2021.

99.     For example, the asserted claims of the '591 patent are anticipated and/or rendered

obvious by at least the following prior art references, alone or in combination: German Patent 4,237,940 ("Berens"); U.S. Patent No. 3,540,432 to Ayre; International Application Publication WO 1999/020336 ("Tavger"); FDA Consumer magazine March-April 1998, *Alpha Hydroxy Acids for Skin Care: Smooth Sailing or Rough Seas?*; U.S. Pat. No. 4,866,202 ("Weil"); WO 99/37229 ("Coleman"); U.S. Pat. No. 5,759,185 ("Grinberg"); U.S. Pat. No. 3,608,553 ("Balamuth"); German Patent No. 33 38 057 ("Helmut"); CA 2227956; JP H0542060A; US 6,264,666 ("Coleman"); WO1999/23951 ("Greenberg"); CA 2227956; US 2721555 ("Jenney"); and/or Applicant Admitted Prior Art (AAPA).

100.    The asserted claims of the '120 patent are anticipated and/or rendered obvious by at least the following prior art references, alone or in combination: German Patent 4,237,940 C2 issued to Berens; U.S. Patent No. 3,540,432 to Ayre; International Application Publication WO 1999/020336 to Tavger; FDA Consumer magazine March-April 1998, *Alpha Hydroxy Acids for Skin Care: Smooth Sailing or Rough Seas?*; JP H0542060A; U.S. Pat. No. 6,264,666; WO 99/37229; CA 2227956; DE 33 38 057; U.S. Pat. No. 5,562,643; WO 1999/23951 ("Greenberg"); and/or Applicant Admitted Prior Art (AAPA).

101.    The asserted claims of the '886 patent are anticipated and/or rendered obvious by at least the following prior art references, alone or in combination: German Patent 4,237,940 ("Berens"); U.S. Patent No. 3,540,432 ("Ayre"); International Application Publication WO 1999/020336 to Tavger; FDA Consumer magazine March-April 1998, *Alpha Hydroxy Acids for Skin Care: Smooth Sailing or Rough Seas?*; DE 33 38 057 A1; JP H0542060A; U.S. Pat. No. 6,264,666; WO 99/37229; CA 2227956; U.S. Pat. No. 5,562,643; WO1999/23951 and/or Applicant Admitted Prior Art (AAPA).

102.    The asserted claims of the '513 patent are anticipated and/or rendered obvious by at least the following prior art references, alone or in combination: German Patent No. 4,237,940 C2 ("Berens"); U.S. Patent No. 3,540,432 ("Ayre"); U.S. Patent No. 4,997,437 ("Grieshaber"); U.S. Patent 5,810,842 ("Di Fiore"); U.S. Pat. No. 6,032,071 and its corresponding PCT publication; WO 96/16698 ("Binder"); U.S. Pat. No. 5,759,185 ("Grinberg"); U.S. Pat. No.

3,608,553 ("Balamuth"); U.S. Patent No. 5,437,372 ("Per-Lee"); German Patent No. 33 38 057 A1  ("Helmut"); US 6,200,292; JP H0542060A; WO1999/23951 ("Greenberg"); US 6,200,292; US 2721555 ("Jenney"); U.S. Pat. No. 5,562,643 ("Johnson '643"); U.S. Pat. No. 6,264,666 ("Coleman") and/or Applicant Admitted Prior Art (AAPA).

103.    The asserted claims of the '464 patent are anticipated and/or rendered obvious by at least the following prior art references, alone or in combination: German Patent No. 4,237,940 C2 ("Berens"); International Application Publication WO 1999/020336 ("Tavger"); German Patent No. 33 38 057 A1 ("Helmut"); CA 2227956; JP H0542060A; WO1999/23951 ("Greenberg"); CA 2227956; FDA Consumer magazine March-April 1998, *Alpha Hydroxy Acids for Skin Care: Smooth Sailing or Rough Seas?*; US 6,264,666 ("Coleman"); U.S. Pat. No. 5,562,643 ("Johnson '643"); and/or Applicant Admitted Prior Art (AAPA).

104.    The asserted claims of the '052 patent are anticipated and/or rendered obvious by at least the following prior art references, alone or in combination: WO 97/00707 ("Pohl"); U.S. Pat. No. 6,162,232 ("Shadduck 232"); U.S. Pat. No. 6,264,666 or the publication WO 99/37229 ("Coleman"); International Publication WO 2004/108091 ("Raad"); U.S. Pat. No. 3,608,553 ("Balamuth"); U.S. Pat. No. 6,247,997 to Khalaj ("Khalaj"); U.S. Pat. No. 5,378,231 to Johnson ("Johnson"); U.S. Pat. Appl. Pub. No. 2005/0137655 ("MacFarland"); and/or Applicant Admitted Prior Art (AAPA).

105.    A person of ordinary skill in the art would have been motivated to combine the above cited references for numerous reasons.  For example, the reason, motivation or suggestion to modify or combine the references in the manner claimed can be found in the explicit and/or implicit teachings of the prior art as a whole, the general knowledge of those skilled in the art, including knowledge of trends in the field and knowledge that the art is of special interest or importance in the field, common sense, predictability, expectations, design incentives or need, market demand or pressure, market forces, and from the fact that the references are in the same field of endeavor and/or seek to solve a common problem.

106.    Further, the prior art references—as well as the Asserted Patents—were part of the

same field of skin treatments.  A person of ordinary skill in the art would have been aware of these references and products, and would not have to reach out beyond the field to make any combination.

107.    In addition, a person having ordinary skill in the art would be motivated to combine any of the references because all of the claim elements were identified, predictable solutions, and involved techniques frequently applied in the field of skin treatment, including but not limited to: creating a working tip that contacted the skin along the entirety of a periphery, utilizing abrading surfaces to abrade skin, vacuuming away remaining skin, and other non-inventive combinations asserted in the asserted claims of the Asserted Patents.

108.    By the time of the Asserted Patents, one of ordinary skill in the art would have been very familiar with various solutions for sealing, particularly the solutions that are as simple as shown by the Asserted Patents.  Because only a finite number of predictable solutions were possible—that is, where should one locate a seal to block a channel, and should the seal rotate with the shaft or remain stationary with the housing—a person of ordinary skill in the art would have had good reason to pursue the known options and obvious variations of those known options.

109.    The prior art identified above is analogous prior art within the same field.  Thus, one of ordinary skill in the art would be motivated to combine any of the prior art with any other of the prior art identified above given the similarity in the art and the solutions sought, particularly where a piece of art specifically references or discusses another piece of art.  These references provide interrelated teachings, and one of ordinary skill would look to all of these references when seeking to solve the problems purportedly solved by the Asserted Patents.

110.    In sum, one of skill in the art would have been motivated to combine these references by education, knowledge, and experience, by the state of the prior art as a whole, and/or by the nature of the problem to be solved in view of common sense and the teachings of the known art.  Moreover, one of ordinary skill in the art would have been well-equipped with sufficient education, knowledge, skill and training to make the specific combinations with a reasonable expectation of success.

111. In addition, the asserted claims of the Asserted Patents are invalid under 35 U.S.C. § 112 at least because they are indefinite, lack written description, and are not enabled.

112. For example, at least claim 1 of the '591 patent, claim 1 of the '120 patent, claim 2 of the '886 patent, claim 2 of the '513 patent, claim 1 of the '464 patent, and claim 1 of the '052 patent, are indefinite and therefore invalid under 35 U.S.C. § 112 because they fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

113. For example, at least claim 7 of the '591 patent, claim 2 of the '120 patent, claim 2 of the '886 patent, claim 2 of the '513 patent, and claim 1 of the '464 patent, are invalid because they fail to satisfy the written description requirement of 35 U.S.C. § 112.

114. For example, at least claim 7 of the '591 patent, claim 2 of the '120 patent, claim 2 of the '886 patent, claim 2 of the '513 patent, and claim 1 of the '464 patent, are invalid because they fail to satisfy the enablement requirement of 35 U.S.C. § 112.

115. Accordingly, Ageless is entitled to a declaratory judgment that the asserted claims of the Asserted Patents are invalid pursuant to 35 U.S.C. §§ 102, 103, and/or 112.

## **PRAYER FOR RELIEF**

Wherefore, Ageless prays for entry of judgment as follows:

1. dismissing Edge's complaint with prejudice;

2. declaring that Ageless has not infringed or induced infringement of any of its asserted or any other patents;

3. declaring that the asserted claims of the Asserted Patents are invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and/or 112.

4. declaring that Edge has no legal right in or the ability to enforce any of its asserted patents, that they are invalid, unenforceable and expired, as well as trying to prohibit Ageless or anyone else from manufacturing, selling, advertising or using competitive serums, including, but not limited to, those that can be used with Edge's Equipment and treatments, or promoting competitive serums in internet advertising or otherwise;

5. declaring that Ageless has not engaged in act of unfair competition, false

advertising, or receipt of stolen goods;

6. declaring that Edge has suffered no injury, including injury to its business reputation or loss of potential customers-licensees, as a result of Ageless' manufacture, sale, use or advertisement of Ageless' Serums;

7. enjoining Counter Defendants, as well as their agents, servants, employees, and attorneys, and all persons in active concert or participation with them, from continuing to make false statements about Ageless or any of its products and from or disparaging Ageless or any of its products, directly or indirectly charging infringement, or instituting any further action for infringement of the Asserted Patents or any other patent against Ageless, its officers, directors, principals, agents, employees, or its customers-licensees;

8. enjoining Counter Defendants as well as their agents, servants, employees, and attorneys and all persons in active concert or participation with them from interfering with Ageless' existing or potential business relations or from engaging in any conduct that is based upon the claims Ageless has asserted in its Counterclaims in this action;

9. finding each Counter Defendant liable for Ageless' damages and trebled damages as requested by Ageless and requiring them to pay Ageless' damages in a sum to be proven at trial;

10. awarding Ageless treble damages, including pursuant to *15 U.S.C. Section 15* and Texas law, for Counter Defendants' misconduct, including but not limited to, Counter Defendants' illegal tying in violation of federal and Texas antitrust laws;

11. awarding Ageless punitive and exemplary damages against all Counter Defendants;

12. awarding Ageless its reasonable attorneys' fees and costs; and

13. awarding Ageless such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Andy Nikolopoulos
Andy Nikolopoulos
State Bar No. 24044852
Fox Rothschild LLP
Saint Ann Court
2501 N. Harwood Street, Suite 1800
Dallas, TX 75201
(214) 231-5776 - direct
(972) 404-0516 - fax
anikolopoulos@foxrothschild.com

James E. Doroshow
(admitted *pro hac vice*)
Fox Rothschild LLP
10250 Constellation Blvd.
Suite 900
Los Angeles CA 90067
(310) 228-6990 – direct
(310) 556-9828 – fax
jdoroshow@foxrothschild.com

Jeff E. Schwartz
(admission forthcoming)
JESchwartz@foxrothschild.com
Austen C. Endersby
(*Pro hac vice* forthcoming)
AEndersby@foxrothschild.com
2020 K Street, NW
Washington, DC 20006
Telephone:  (202) 461-3100
Facsimile:   (202) 461-3102

***Attorneys for Defendant***
***Ageless Serums LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of July, 2021, this document was served on counsel of record via the electronic case filing system of the Court.


<u>/s/ Andy Nikolopoulos</u>
Andy Nikolopoulos