# EXHIBIT I

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

EDGE SYSTEMS LLC,
a California limited liability company,
and AXIA MEDSCIENCES, LLC,
a Delaware limited liability company,

       Plaintiffs,

   v.

Rafael Newton Aguila, a/k/a Ralph Aguila,
an individual, d/b/a Hydradermabrasion Systems,

       Defendant.

_____/

## COMPLAINT

    Plaintiffs Edge Systems LLC ("Edge") and Axia MedSciences, LLC ("Axia") (collectively, "Plaintiffs"), for their Complaint against Defendant Rafael Newton Aguila, a/k/a Ralph Aguila, d/b/a Hydradermabrasion Systems ("Aguila"), hereby allege as follows:

## THE PARTIES

    1.    Edge is a California limited liability company organized and existing under the laws of the state of California, having a principal place of business at 2277 Redondo Avenue, Signal Hill, California, 90755, which owns rights in the trademarks, service marks and trade names at issue in this lawsuit ("Edge's MARKS").

    2.    Edge manufactures spa and skin treatment products, and hydradermabrasion systems, and sells and distributes them throughout the United States, including in this Judicial District.

    3.    Axia is a Delaware limited liability company having a principal place of business at 23 Hallmark Circle, Menlo Park, California, 94025.

    4.    Axia is the owner of the patents at issue in this case, and Edge is the exclusive licensee of those patents.

5.      Upon information and belief, Aguila is an individual residing in this Judicial District, having an address of 5338 SW 57th Avenue South Miami, Florida 33155.

<u>**JURISDICTION AND VENUE**</u>

6.      Upon information and belief, Defendant conducts business throughout the United States, including in this Judicial District.

7.      This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this judicial district including by selling and offering for sale infringing products in this Judicial District and selling into the stream of commerce knowing that such products would be sold in this state and Judicial District.

8.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b), and by Plaintiffs' choice of venue.

9.      This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiffs' claims for trademark infringement, false designation of origin, unfair competition and patent infringement pursuant to 15 U.S.C. §§ 1114 and 1125(a), and 35 U.S.C. § 271 arise under the laws of the United States. This Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

<u>**GENERAL ALLEGATIONS**</u>

**Plaintiff Edge's Products and Associated Intellectual Property Rights**

10.      Edge designs and sells skin health devices, including spa and skin treatment products and hydradermabrasion systems.

11.      Edge is at the forefront of the aesthetic industry and has worked continuously to bring new technology and breakthrough processes to the market.  Edge has grown to become an iconic brand and is now widely recognized throughout the United States.

12.      Edge's premier product is its revolutionary HydraFacial MD® hydradermabrasion system (the "Edge Machine"), an innovative non-ablative facial rejuvenation system.  The Edge Machine bears unique and distinctive trade dress which consists of the overall design and configuration of the product, as shown in the photograph below (the "Edge Trade Dress").



***THE EDGE MACHINE***

     13.    As a result of its highly acclaimed, innovative skin health devices and technology, Edge has grown at an impressive pace.

     14.    Edge diligently protects its intellectual property rights in its products and technology by obtaining patents in the U.S. and around the world.  Edge also filed and registered numerous federal trademarks in the United States that are used in connection with its products and services.

     15.    Edge is the owner of U.S. Trademark Registration No. 2,992,734, which is registered with the United States Patent and Trademark Office ("U.S.P.T.O") on September 6, 2005 on the Principal Register for the mark THE EDGE SYSTEM.  Trademark Registration No. 2,992,734 is associated with the following goods: Medical apparatus, namely, systems comprised primarily of a vacuum source and hand piece used for medical body care treatments, microdermabrasion, and massage therapy.  A true and correct copy of the certificate of registration of Trademark Registration 2,992,734 is attached hereto as Exhibit 1.

16.     Edge is the owner of U.S. Trademark Registration No. 3,500,086, which was registered with the U.S.P.T.O on September 9, 2008 on the Principal Register for the mark HYDROPEEL.  Trademark Registration No. 3,500,086 is associated with the following goods: Medical apparatus and instruments for resurfacing and nourishing tissue.  A true and correct copy of the certificate of registration of Trademark Registration 3,500,086 is attached hereto as Exhibit 2.

17.     Edge is the owner of U.S. Trademark Registration No. 4,114,466, which was registered with the U.S.P.T.O on March 20, 2012 on the Principal Register for the mark VORTEX-FUSION.  Trademark Registration No. 4,114,466 is associated with the following goods: Microdermabrasion apparatus.  A true and correct copy of the certificate of registration of Trademark Registration 4,114,466 is attached hereto as Exhibit 3.  The marks registered in U.S. Trademark Registration Nos. 2,992,734, 3,500,086, and 4,114,466 shall hereinafter be referred to collectively as the Edge Registered Marks.

18.     All of the Edge Registered Marks have been continuously used in U.S. commerce and registered on the Principal Register of the U.S.P.T.O.  Trademark Registration Nos. 2,992,734 and 3,500,086 have been registered on the Principal Register of the U.S.P.T.O. for more than five years from the issuance of the registrations and are the subject of Declaration filings with the U.S.P.T.O. under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and are therefore deemed to be incontestable.

19.     Since at least as early as 1999, Edge has continuously used variations of its chevron-styled "E" logo formed by three triangles ("Chevron E-Logo").

         

*1999-2011*                          *2011-PRESENT*

20.     Edge has continuously used its Chevron E-Logo in interstate commerce in connection with the advertisement, promotion and sale of the Edge's spa and skin treatment products, including the Edge Machine.

21.     Edge is the owner of common law rights in the marks EDGE SYSTEMS, ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, DERMABUILDER, and GLYSAL.

22.     Since its founding in 1997, Edge has continuously used the EDGE SYSTEMS mark in interstate commerce to identify itself and in connection with the advertisement, promotion and sale of its spa and skin treatment products, including the Edge Machine.

23.     Edge has continuously used the marks ACTIV-4, ANTIOX-6, and BETA-HD since at least as early as 2006 in connection with the advertisement, promotion and sale of its spa and skin treatment products.

24.     Edge has continuously used the marks DERMABUILDER and GLYSAL since at least as early as 2010 in connection with the advertisement, promotion and sale of its spa and skin treatment products.

25.     Edge has continuously used the mark ANTIOX+ since at least as early as 2013 in connection with the advertisement, promotion and sale of its spa and skin treatment products. The Chevron E-Logo and the marks, EDGE SYSTEMS, ACTIV-4, ANTIOX+, ANTIOX-6, BETA-HD, DERMABUILDER, and GLYSAL marks shall hereinafter be collectively referred to as the "EDGE$^{TM}$ Marks."

26.     Edge uses its EDGE$^{TM}$ Marks on its products, letterhead, envelopes, business cards, company banners, website, email signatures, pens, mugs, t-shirts, collared shirts, and windbreakers.

27.     Edge advertises its products and services at trade shows, seminars, and through trade publications, social media, search engine optimization, emails, and webinars.  In the past five years alone, Edge has spent approximately $4 million advertising its products and services in connection with the Edge Registered Mark, the EDGE$^{TM}$ Marks and the Edge Trade Dress.

28.     In addition to Edge's own advertising, important national media outlets have featured Edge and its products and reinforced the public's association between Edge and Edge's Registered Marks, the EDGE$^{TM}$ Marks and the Edge Trade Dress.  A sample of such media includes: *People Magazine, Allure*, *The Hollywood Reporter, Tampa Bay Times*, *New Beauty*, *OK! Magazine*, *Star Magazine*, *Elle Beauty Book*, *Harper's Bazaar Magazine*, *Essence*, *Simply Her*, *Examiner.com*, and *In Style*.

29.     Edge's products have also been shown on *Good Day L.A., The Doctors, KLBK News, Great Day Houston,* and *Real Housewives of Beverly Hills*.

30.     Edge's products have received widespread public attention and acclaim, including being awarded the "Best Equipment for the Face" by LNE & Spa in 2011 and 2012.

31.     Promotional materials and advertisements of Edge's products that include Edge's Registered Marks and EDGE[TM] Marks and prominently display the Edge Trade Dress have been distributed and are recognized by consumers and are famous throughout the United States.  As a result of Edge's substantial efforts, Edge's Registered Marks, EDGE[TM] Marks and the Edge Trade Dress have become extremely valuable to Edge as an identifier of the company, its products, and the substantial goodwill Edge has earned in the market.  Edge's Registered Marks, EDGE[TM] Marks and the Edge Trade Dress have become synonymous in the consumer's mind with Edge.

32.     Edge sells its products to many consumers, including dermatologists, plastic surgeons, and health spas.

33.     Edge products and services are offered at more than 2,500 locations throughout the United States, including all 50 states.

34.     Edge has continuously operated a website since 1999, displaying Edge's trademarks in connection with the sales and promotion of its product, and Edge's website has reached over 56,000 individual users since July 2013.

35.     Edge has a sales force of over 60 employees in the United States covering each of the 50 states.  Edge has been selling products in the state of Florida since 2000, and has sold products bearing the Edge Trade Dress in Florida since at least as early as 2010.  Over the last five years, Edge has generated over $93 million in revenue, including over $48 million in revenue from sales of the Edge Machine, which bears the Edge Trade Dress.

36.     By virtue of the extensive usage, advertising, promotion, and media exposure of the Edge Registered Marks, EDGE[TM] Marks and the Edge Trade Dress, these marks and trade dress have become famous and well-known among the trade, the public, and consumers in the United States, have acquired significant goodwill and public recognition, and have become strong source identifiers of Edge's goods and services and are entitled to a wide scope of protection.

37.     Edge has promoted its goods and services under the Edge Registered Marks,  the EDGE[TM] Marks, and the Edge Trade Dress, and Edge's innovative technology in its products are also protected by utility patents, including United States Patent Nos. 6,299,620, 6,641,591, 7,678,120, 7,789,886, 8,066,716, and 8,337,513 (collectively, the "patents-in-suit").

38.     On October 9, 2001, U.S. Patent No. 6,299,620 ("the '620 Patent"), entitled "INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '620 Patent is attached hereto as Exhibit 6.  Edge is the exclusive licensee of the '620 Patent.

39.     On November 4, 2003, U.S. Patent No. 6,641,591 ("the '591 Patent"), entitled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '591 Patent is attached hereto as Exhibit 7.  Edge is the exclusive licensee of the '591 Patent.

40.     On March 16, 2010, U.S. Patent No. 7,678,120 ("the '120 Patent"), entitled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '120 Patent is attached hereto as Exhibit 8.  Edge is the exclusive licensee of the '120 Patent.

41.     On September 7, 2010, U.S. Patent No. 7,789,886 ("the '886 Patent"), entitled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '886 Patent is attached hereto as Exhibit 9.  Edge is the exclusive licensee of the '886 Patent.

42.     On November 29, 2011, U.S. Patent No. 8,066,716 ("the '716 Patent"), entitled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '716 Patent is attached hereto as Exhibit 10.  Edge is the exclusive licensee of the '716 Patent.

43.     On December 25, 2012, U.S. Patent No. 8,337,513 ("the '513 Patent"), entitled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS," was duly and legally issued by the United States Patent and Trademark Office.  A copy of the '513 Patent is attached hereto as Exhibit 11.  Edge is the exclusive licensee of the '513 Patent.

44.     Edge has provided proper and sufficient notice to the public that its products are patented under each of the patents-in-suit by marking its products pursuant to 35 U.S.C. § 287.

## Defendant's Infringing Activities

45.     In October, 2014, Edge was surprised to learn that one of its main competitors, Lumenis, was offering what appeared to be a copycat version of the Edge Machine on the website www.hydradermabrasion.com (the "Website").   When Edge contacted Lumenis, it learned that Lumenis was just as surprised by the Website.   After further evaluation, Edge and Lumenis both learned that the Website was actually registered to the Defendant.   Upon information and belief, Defendant was using Lumenis' trade name and trademarks to advertise its Hydradermabrasion MD machine (the "Accused Product").

46.     On or about October 27, 2014, Edge sent the Defendant a cease and desist letter and asked that it stop infringing the patents-in-suit.

47.     Upon information and belief, Lumenis separately asked that Defendant stop using its trade name and trademarks.

48.     Soon thereafter, Defendant changed its Website.   Defendant now uses the Website to blatantly pass itself off as Edge.   The Website adopts Edge's name and misappropriates the Edge Marks to sell the Accused Product.   Defendant has gone to great lengths to assume Edge's identity, including filing its own trademark applications for the mark EDGE SYSTEMS.

49.     On November 1, 2014, Defendant filed a Trademark/Service Mark Application with the United States Patent & Trademark Office for the mark "Edge Systems (stylized and/or with design)."   The application was assigned Serial No. 86442086 (the "'086 Application").   The '086 Application claims a date of First Use in Commerce of March 21, 1996.   The '086 Application was filed with a declaration pursuant to 15 U.S.C. § 1051(a) signed by Rafael N. Aguila (Defendant), affirming the truth of all statements made in the application.   Upon information and belief, Defendant's declaration is fraudulent.

50.     Upon information and belief, Defendant has also started using the website www.edge-systems.com (the "Website II")—which incorporates Edge's trade name in the domain name—to advertise the same infringing material.    Shown below is a screen shot of Defendant's new homepage, which appears on both the Website and the Website II.





*DEFENDANT'S WEBSITE*

51.     Upon information and belief, at least one of Defendant's "Regional Sales Managers" passes himself off as being affiliated with Edge and even includes "Edge Systems" in the signature lines of his emails.

52.     Upon information and belief, Defendant's receptionist greets callers as having called "Edge Systems."

53.     Defendant's actions have had a profound and confusing effect on the market.  A customer that purchased one of Defendant's knock-off machines even approached Edge seeking training for what she believed was an authentic Edge product.

54.     Defendant has even confused some of Edge's seasoned employees as to its affiliation with Edge.

55.     Defendant's Accused Product, as advertised on the Website and Website II, copies every aspect of the Edge Machine, including the Edge Trade Dress.





*THE EDGE MACHINE*                    *ACCUSED PRODUCT*

56.     Defendant is providing Defendant's products and services under trademarks, trade names, and/or service marks, including the ![EDGE] mark, which is confusingly similar to Edge's Chevron E-Logo.

57.     Defendant is providing Defendant's products and services under trademarks, trade names, and/or services marks, including the mark EDGE SYSTEMS.

58.     Defendant's EDGE SYSTEMS mark copies Edge's trade name and is virtually identical to Edge's federally registered mark THE EDGE SYSTEM.

59.     Defendant is providing Defendant's products and services under trademarks, trade names, and/or services marks, including the mark HYDRAPEEL.

60.     Defendant's HYDRAPEEL mark is virtually identical to Edge's federally registered mark HYDROPEEL.

61.     Defendant is providing Defendant's products and services under trademarks, trade names, and/or services marks, including the mark CYCLONIC-FUSION.

62.     Defendant's CYCLONIC-FUSION mark is confusingly similar to Edge's federally registered VORTEX-FUSION mark.

63.     Defendant's ACTIV-4 mark is identical to Edge's common law mark ACTIV-4.

64.     Defendant's ANTIOX-PLUS mark is virtually identical to Edge's common law mark ANTIOX+.

65.     Defendant's ANTIOX-6 mark is identical to Edge's common law mark ANTIOX-6.

66.     Defendant's BETA-HD mark is identical to Edge's common law mark BETA-HD.

67.     Defendant's DERMABUILDER mark is identical to Edge's common law mark DERMABUILDER.

68.     Defendant's GLYSAL mark is identical to Edge's common law mark GLYSAL.

69.     Defendant infringes the Edge Registered Marks, EDGE$^{TM}$ Marks and Edge Trade Dress in an attempt to falsely associate its products and services with Edge or to otherwise trade upon Edge's valuable reputation and customer goodwill in Edge's Registered Marks, EDGE$^{TM}$ Marks and Edge Trade Dress and high quality products sold in connection with these trademarks.

70.     Edge did not consent to Defendant's use of the Edge Registered Marks, EDGE$^{TM}$ Marks and Edge Trade Dress, or any other feature of Edge's products or services that help identify it to consumers.

71.     Defendant's use of the Edge Registered Marks, EDGE$^{TM}$ Marks, and Edge Trade Dress is designed and intended to cause confusion, mistake or deception as to the source of Defendant's products and services, and has caused actual confusion and mistake, which has deceived consumers into believing that Defendant's products and services are Edge's products and services.

72.     Edge is informed and believes, and thereon alleges, that it is Defendant's purpose to cause consumers and potential customers to believe that Defendant's products and services are associated with Edge when in truth and fact they are not.

73.     As a direct and proximate result of Defendant's actions, Defendant has created a likelihood of injury to Edge's business reputation and goodwill, caused a likelihood of consumer confusion, mistake and deception as to the source of origin or relationship of Edge's and Defendant's goods and services, and has otherwise competed unfairly with Edge by unlawfully trading on and using Edge's Registered Marks, EDGE$^{TM}$ Marks and Edge Trade Dress without Edge's permission or consent.

74.     Edge is informed and believes, and thereon alleges, that Defendant's wrongful acts alleged in this Complaint are willful and deliberate.

75.     Edge's wrongful acts alleged in this Complaint have caused damage to Edge in an amount to be determined at trial, and such damages will continue to increase unless Edge is enjoined from its wrongful actions and infringement.

76.     Edge's wrongful acts alleged in this Complaint have caused Edge to suffer irreparable injury to its business.  Edge will suffer substantial loss of goodwill and reputation unless and until Defendant is enjoined from its wrongful actions complained of herein.

### FIRST CLAIM FOR RELIEF

### INFRINGEMENT OF THE PATENTS-IN-SUIT

(35 U.S.C. § 271)

77.     Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-76 above.

78.     This is a claim for patent infringement under 35 U.S.C. § 271.

79.     Defendant, through its agents, employees, and servants, has and continues to knowingly, intentionally, and willfully infringe the '620 Patent by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least claim 1 of the '620 Patent, including, for example, the Accused Product.

80.     Defendant, through its agents, employees, and servants, has and continues to knowingly, intentionally, and willfully infringe the '591 Patent by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least claim 1 of the '591 Patent, including, for example, the Accused Product.

81.     Defendant, through its agents, employees, and servants, has and continues to knowingly, intentionally, and willfully infringe the '120 Patent by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least claim 1 of the '120 Patent, including, for example, the Accused Product.

82.     Defendant, through its agents, employees, and servants, has and continues to knowingly, intentionally, and willfully infringe the '886 Patent by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least claim 1 of the '886 Patent, including, for example, the Accused Product.

83.     Defendant, through its agents, employees, and servants, has and continues to knowingly, intentionally, and willfully infringe the '716 Patent by making, using, selling, offering for sale, and/or importing into the United States products that are covered by at least claim 1 of the '716 Patent, including, for example, the Accused Product.

84.     Defendant, through its agents, employees, and servants, has and continues to knowingly, intentionally, and willfully infringe the '513 Patent by making, using, selling,

offering for sale, and/or importing into the United States products that are covered by at least claim 1 of the '513 Patent, including, for example, the Accused Product.

85.     Defendant had actual knowledge of the patents-in-suit through correspondence with Edge, including, for example, the October 27, 2014 cease and desist letter.

86.     Defendants' customers also infringe each of the patents-in-suit by using, selling, offering for sale, and/or importing into the United States the Accused Product.

87.     Upon information and believe, Defendant knew that its customers would infringe each of the patents-in-suit by using, selling, offering to sell, and/or importing into the United States infringing products, including, for example, the Accused Product.

88.     Upon information and believe, Defendant had the specific intent to induce its customers to infringe the patents-in-suit by using, selling, offering to sell, and/or importing into the United States infringing products, including, for example, the Accused Product.

89.     Upon information and believe, Defendant induced infringement of the patents-in-suit.

90.     Defendant's actions constitute infringement of the patents-in-suit in violation of 35 U.S.C. § 271(a) and (b).

91.     Each of Defendant's infringing activities is without the consent of, authority of, or license from Edge or Axia.

92.     Upon information and belief, Defendant's infringement of each of the patents-in-suit was and is willful and deliberate.  Defendant infringed the patents-in-suit with reckless disregard of Plaintiffs' patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of each of the patents-in-suit. Defendant's acts of infringement of the patents-in-suit were not consistent with the standards for the industry.

93.     Defendant's acts of infringement have caused damage to Plaintiffs in an amount to be determined at trial.  Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for Defendant's infringing acts.  Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing its claims of patent infringement.

94.     Defendant's infringement of the patents-in-suit is causing irreparable harm to Plaintiffs, for which there is no adequate remedy at law.  Defendant's infringement will continue,

and will continue to cause irreparable harm to Edge, unless Defendant's infringement is enjoined by this Court.

## SECOND CLAIM FOR RELIEF

## TRADEMARK INFRINGEMENT

### (15 U.S.C. § 1114)

95.     Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-76 above.

96.     This is a claim for trademark infringement under 15 U.S.C. § 1114.

97.     Without Edge's permission, Defendant has used in commerce reproductions, copies or colorable imitations of the Edge Registered Marks in connection with the sale, offering for sale, distribution, advertising, and/or promotion of Defendant's products and services.

98.     Without Edge's permission, Defendant is reproducing, copying, or colorably imitating the Edge Marks and applying such reproductions, copies, or colorable imitations to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, advertising, and/or promotion of Defendant's products and services.

99.     Defendant's use of these copies or colorable imitations of the Edge Registered Marks is likely to cause confusion, or to cause mistake, or to deceive.

100.    Defendant's wrongful acts as alleged in its Complaint constitute willful and intentional infringement of the Edge Registered Marks.  Defendant engaged in such activities with the intent to unfairly compete against Edge, to trade upon Edge's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant's products and services are associated with, sponsored by, originated from, or are approved by Edge, when in truth and fact they are not.

101.    Edge is informed and believes, and thereon alleges, that Defendant had actual knowledge of Edge's ownership and prior use of the Edge Registered Marks and willfully and maliciously violated Edge's trademark rights under 15 U.S.C. § 1114 without Edge's consent.

102.    Edge is informed and believes, and thereon alleges, that Defendant's infringement has been willful and deliberate, which renders this an exceptional case within the meaning of 15 U.S.C. § 1117.

103.    As a direct and proximate result of Defendant's actions, Edge has been damaged and is entitled to monetary relief in an amount to be determined at trial.

104.    As a direct and proximate result of Defendant's actions, Edge has suffered and continues to suffer great and irreparable injury, for which Edge has no adequate remedy at law.

105.    Defendant will continue its actions, constituting trademark infringement, unless enjoined by this Court.

## THIRD CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

106.    Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-76 above.

107.    This is a claim for false designation of origin, false or misleading description of fact or false or misleading representation of fact, and unfair competition under 15 U.S.C. § 1125(a).

108.    Defendant's use of marks, trade names and logos that are confusingly similar to the Edge Registered Marks and the EDGE$^{TM}$ Marks without Edge's consent in connection with the sale, offering for sale, distribution, advertising, and/or promotion of Defendant's products and services constitutes a false designation of origin, a false or misleading description or representation of goods and services, tending wrongfully and falsely to describe or represent a connection between Edge's and Defendant's goods and services.

109.    Edge is informed and believes, and thereon alleges, that Defendant had actual knowledge of Edge's ownership and prior use of the Edge Marks and the EDGE$^{TM}$ Marks prior to its infringing acts and has acted knowingly, willfully and maliciously with intent to trade upon Edge's goodwill and to injure Edge.

110.    Defendant's use of trade dress that is confusingly similar to the Edge Trade Dress without Edge's consent in connection with the sale, offering for sale, distribution, advertising, and/or promotion of the Accused Product constitutes a false designation of origin, a false or misleading description or representation of goods and services, tending wrongfully and falsely to describe or represent a connection between Edge's and Defendant's products.

111.    Edge is informed and believes, and thereon alleges, that Defendant had actual knowledge of Edge's ownership and prior use of the Edge Trade Dress prior to its infringing acts and has acted knowingly, willfully and maliciously with intent to trade upon Edge's goodwill and to injure Edge.

112.    Defendant's wrongful acts as alleged in this Complaint constitute false designation of origin, false or misleading description of fact or false or misleading representation of fact, and unfair competition under 15 U.S.C. § 1125(a).

113.    As a direct and proximate result of Defendant's actions, constituting false designation of origin, false or misleading description of fact or false or misleading representation of fact, and unfair competition, Edge has been damaged and is entitled to monetary relief in an amount to be determined at trial.

114.    As a direct and proximate result of Defendant's actions, constituting false designation of origin, false or misleading description of fact or false or misleading representation of fact, and unfair competition, Edge has suffered and continues to suffer great and irreparable injury, for which Edge has no adequate remedy at law.

115.    Defendant will continue its actions, constituting false designation of origin, false or misleading description of fact or false or misleading representation of fact, and unfair competition, unless enjoined by this Court.

## FOURTH CLAIM FOR RELIEF
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (Florida Common Law Unfair Competition)

116.    Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-76 above.

117.    This is a claim for unfair competition, arising under the common law of the State of Florida.

118.    By reason of all of the foregoing, Defendant is engaged in unfair competition with Edge by using the trade names, trademarks, trade dress and service marks of Edge in connection with the rendering, advertising and promotion of the sale of products and rendering of services, which has actually deceived or is likely to deceive and confuse the public into believe that Defendant's products and services and business are those of Edge, or are sponsored by, licensed by, endorsed by, or otherwise associated with Edge and by misappropriating or attempting to

misappropriate the Edge Registered Marks, the EDGE$^{TM}$ Marks and the Edge Trade Dress and the goodwill and reputation which are associated therewith.

119.    By reason of all of the foregoing, Edge is being irreparably damaged by Defendant's activities in the manner set forth above and will continue to be irreparably damaged unless Defendant is enjoined from continuing to commit the aforesaid acts.  Edge has no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**

**FRAUD ON THE U.S.P.T.O.**

120.    Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-76 above.

121.    In the '086 Application, Defendant was required to identify the "date of the applicant's first use of the mark in commerce," pursuant to 15 U.S.C. § 1051(a)(2).

122.    Defendant knowingly misrepresented the date of "applicant's first use in commerce" in the '086 application as March 21, 1996.

123.    Defendant knew that it did not use the mark EDGE SYSTEMS in commerce on March 21, 1996, or any time before, but misrepresented to the U.S.P.T.O. that it used the mark prior to Edge's first use in 1997.

124.    Defendant intends to decive the U.S.P.T.O. with its false representations.

125.    Defendant has used its trademark application as evidence of its alleged ownership in the mark EDGE SYSTEMS and has made infringing use of the mark, as described above. Defendant's actions have threatened Edge's business reputation and the goodwill it has built in its marks.

126.    Because of Edge's prior rights in the mark EDGE SYSTEMS and because of Defendant's fraud on the U.S.P.T.O., the Court should order that the U.S.P.T.O. abandon the '086 application.

**SIXTH CLAIM FOR RELIEF**

**FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**

(Florida Deceptive and Unfair Trade Practices Act)

127.    Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-76 above.

128.     This is a claim for violation of the Florida Deceptive and Unfair Trade Practices Act under Chapter 501 of the Florida Statutes.

129.     By reason of all of the foregoing, Defendant's actions actually deceive or are likely to deceive and mislead the public into believing that Defendant is Edge or a licensee of Edge or is authorized, endorsed, sponsored or approved by Edge or that Defendant's products and services or business activities originate with or are connected or associated with Edge, when they are not.

130.     By reason of all of the foregoing, Defendant's actions constitute willfully unfair and deceptive conduct in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*. and unfair competition under Florida common law.

131.     By reason of all the foregoing, Edge is being irreparably damaged by Defendant's activities in the manner set forth above and will continue to be irreparably damaged unless Defendant is enjoined from the aforesaid acts.  Edge has no adequate remedy at law.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiffs pray for judgment and seek relief as follows:

A.     That the Court enter judgment in favor of Plaintiffs and against Defendant on all claims for relief alleged herein;

B.     A judgment that Defendant has infringed U.S. Patent Nos. 6,299,620, 6,641,591, 7,678,120, 7,789,886, 8,066,716 and 8,337,513;

C.     Preliminary and permanent injunctions against further infringement by Defendant of U.S. Patent Nos. 6,299,620, 6,641,591, 7,678,120, 7,789,886, 8,066,716, and 8,337,513;

D.     An award of damages for Defendant's infringement of U.S. Patent Nos. 6,299,620, 6,641,591, 7,678,120, 7,789,886, 8,066,716 and 8,337,513;

E.     A declaration that Defendant's infringement of U.S. Patent Nos. 6,299,620, 6,641,591, 7,678,120, 7,789,886, 8,066,716 and 8,337,513 was and is willful, and that this is an exceptional case under 35 U.S.C. § 285;

F.     A trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

G.     An award of attorneys' fees and non-taxable costs under 35 U.S.C. § 285 on account of Defendant's willful infringement;

H.      That Defendant and its agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with Defendant, be temporarily, preliminarily, and permanently enjoined and restrained from engaging in, and assisting or inducing, directly or indirectly, others to engage in the following activities:

1.  infringing Edge's trademark rights in its federally registered Edge Registered Marks;

2.  using any of the Edge Registered Marks, or any other mark, symbol, or logo that is confusingly similar to any of the Edge Registered Marks, on or in connection with any goods or services;

3.  manufacturing, using, displaying, distributing, or selling any goods or services that infringe any of the Edge Registered Marks;

I.      That the court issue an *Ex Parte* Order under 15 U.S.C. § 1114(1)(a) authorizing and requiring the immediate seizure of all infringing materials and business records in the care, custody or control of Defendant;

J.      That Defendant be required to deliver all labels, signs, prints, packages, wrappers, receptacles, advertisements and other materials bearing any of the Edge Registered Marks pursuant to 15 U.S.C. §1118;

K.      That Defendant be required to account to Edge for any and all profits derived by its acts of trademark infringement complained of in this Complaint;

L.      That, because of the exceptional nature of this case resulting from Defendant's deliberate infringing actions, this Court award to Edge all reasonable attorneys' fees, costs and disbursements incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

M.      That Edge be awarded damages for Defendant's trademark infringement pursuant to 15 U.S.C. § 1117 in the form of Defendant's profits, damages sustained by Edge, and the costs of the action, together with prejudgment and post-judgment interest;

N.      That Defendant and its agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with Defendant, be temporarily, preliminarily, and permanently enjoined and restrained from engaging in, and assisting or inducing, directly or indirectly, others to engage in the following activities:

    1.   Using any of the Edge Registered Marks, the EDGE<sup>TM</sup> Marks, the Edge Trade Dress, or any other mark or trade dress that is confusingly similar thereto;

    2.   falsely designating the origin of Defendant's goods;

    3.   unfairly competing with Edge in any manner whatsoever;

    4.   falsely advertising Defendant's products;

    5.   causing a likelihood of confusion or injuries to Edge's business reputation; and

    6.   manufacturing, using, displaying, distributing, or selling any products or services that use marks, trade dress, trade names or logos that are confusingly similar to the Edge Registered Marks, the EDGE<sup>TM</sup> Marks, the Edge Trade Dress, or any other mark or trade dress that is confusingly similar thereto;

O.    That Defendant be required to account to Edge for any and all profits derived by its acts of false designation of origin, false or misleading description of fact or false or misleading representation of fact, and unfair competition complained of in this Complaint;

P.    An Order directing the United States Patent & Trademark Office to abandon with prejudice Application No. 86442086 for the mark EDGE SYSTEMS.

Q.    That Defendant be adjudged to have willfully and maliciously infringed the Edge Registered Marks, the EDGE<sup>TM</sup> Marks, and the Edge Trade Dress in violation of Edge's common law rights under Florida common law;

R.    That Defendant be adjudged to have willfully and maliciously infringed the Edge Registered Marks, the EDGE<sup>TM</sup> Marks, and the Edge Trade Dress in violation of Florida Deceptive and Unfair Trade Practices Act under Chapter 501 of the Florida Statutes;

S.    An award to Edge against Defendant of such punitive damages as are appropriate in view of Defendant's willful conduct and bad faith;

T.    An award to Edge of the costs in this action including Edge's reasonable attorneys' fees;

U.    That Plaintiffs have and recover the costs of this civil action, including reasonable attorneys' fees;

V.    An award of pre-judgment and post-judgment interest and costs of this action against Defendant;

W.    An award of taxable costs

X.    Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues so triable.


Respectfully submitted,


Dated:    November 26, 2014          By:  _s/ Richard Guerra_
                                          James A. Gale, Esq. (FBN371726)
                                          Email:  jgale@feldmangale.com
                                          Richard Guerra (FBN 689521)
                                          Email : rguerra@feldmangale.com
                                          **FELDMAN GALE**
                                          One Biscayne Tower, 30th Floor
                                          2 South Biscayne Blvd.
                                          Miami, FL 33131
                                          Telephone:  (305) 358-5001
                                          Facsimile:  (305) 358-3309


                                          Brenton R. Babock, Esq. (*pro hac vice pending*)
                                          Email:  brent.babock@knobbe.com
                                          Ali S. Razai, Esq. (*pro hac vice pending*)
                                          Email:  ali.razai@knobbe.com
                                          **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                                          2040 Main Street, Fourteenth Floor
                                          Irvine, CA  92614
                                          Telephone: (949) 760-0404
                                          Facsimile: (949) 760-9502


                                          *Attorneys for Plaintiffs,*
                                          EDGE SYSTEMS LLC and
                                          AXIA MEDSCIENCES, LLC