# EXHIBIT J

Brenton R. Babcock (SBN 162,120)
brent.babcock@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiffs
EDGE SYSTEMS LLC and
AXIA MEDSCIENCES, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company, and AXIA MEDSCIENCES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>Defendant. | Civil Action No. 17-cv-2720<br><br>**COMPLAINT FOR PATENT INFRINGEMENT, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Edge Systems LLC, ("Edge") and Axia Medsciences, LLC ("Axia") (collectively, "Plaintiffs") hereby complain of Ageless Serums LLC ("Defendant") and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the patent and trademark infringement claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has original subject matter jurisdiction over the unfair competition claims in this action pursuant to 28 U.S.C. § 1338(b).

2. This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this judicial district including by selling and offering for sale infringing products in this judicial district, and by committing acts of infringement in this judicial district, including but not limited to selling infringing products directly to consumers and/or retailers in this district and selling infringing products into the stream of commerce knowing such products would be sold in California and this district, which acts form a substantial part of the events or omissions giving rise to Plaintiffs' claim.

3. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), 1391(d), and 1400(b).

## II. THE PARTIES

4. Plaintiff Edge is a California corporation having its principal place of business at 2277 Redondo Ave., Signal Hill, CA 90755.

5. Plaintiff Axia is a Delaware limited liability company having its principal place of business at 23 Hallmark Circle, Menlo Park, California, 94025.

/ / /

/ / /

/ / /

- 1 -

6.     Plaintiffs are informed and believe and, based thereon, allege that Ageless Serums LLC is a Texas limited liability company having its principal place of business at 4101 W Green Oaks, Suite 305406, Arlington, Texas 76016.

7.     Plaintiffs are informed and believe and, based thereon, allege that Defendant has committed the acts alleged herein within this judicial district.

### III.  GENERAL ALLEGATIONS

8.     Edge is a worldwide leader in microdermabrasion and hydradermabrasion systems.  Edge has spent considerable time, effort and money to develop its proprietary technology including the HydraFacial MD® hydradermabrasion system.

9.     To protect its substantial investment, Edge has obtained the rights to various patents and patent applications throughout the world.

10.     On October 9, 2001, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 6,299,620 ("the '620 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS."  A true and correct copy of the '620 Patent is attached hereto as Exhibit 1.

11.     On November 4, 2003, the USPTO duly and lawfully issued U.S. Patent No. 6,641,591 ("the '591 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct copy of the '591 Patent is attached hereto as Exhibit 2.

12.     On November 29, 2011, the USPTO duly and lawfully issued U.S. Patent No. 8,066,716 ("the '716 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '716 Patent is attached hereto as Exhibit 3.

13.     On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '513 Patent is attached hereto as Exhibit 4.

14.     Axia is the owner of all right, title, and interest in the '620 Patent, the '591 Patent, the '716 Patent, and the '513 Patent (collectively, "the Asserted Patents"), which are each exclusively licensed to Edge.

15.     Edge has provided proper and sufficient notice to the public that its products are patented under each of the Asserted Patents by marking its products pursuant to 35 U.S.C. § 287.

16.     Edge is the owner of U.S. Trademark Registration No. 4,317,059 for the mark HydraFacial ("HydraFacial Mark").  Trademark Registration No. 4,317,059 for the HydraFacial Mark was registered with the USPTO on April 9, 2013, on the Principal Register.  Trademark Registration No. 4,317,059 is associated the following goods: medical apparatus and instruments for peeling and resurfacing tissue.  Trademark Registration No. 4,317,059 is also associated with the following services:  medical spa services, namely, minimally and non-invasive cosmetic and body fitness therapies.  A true and correct copy of the certificate of registration of Trademark Registration 4,317,059 is attached hereto as Exhibit 5.

17.     Edge is the owner of U.S. Trademark Registration No. 5,020,133 for the mark  ("Chevron-E Logo").  Trademark Registration No. 5,020,133 for the Chevron-E Logo was registered with the USPTO on August 16, 2016, on the Principal Register.  Trademark Registration No. 5,020,133 is associated the following goods and services: cleaning preparations for microdermabrasion machines; non-medicated skin care preparations, namely, lotions and serums; medical apparatus and instruments for use in peeling and resurfacing tissue

- 3 -

procedures; and, medical spa services, namely, minimally and non-invasive cosmetic and body fitness therapies. A true and correct copy of the certificate of registration of Trademark Registration 5,020,133 is attached hereto as Exhibit 6.

18. The HydraFacial Mark and the Chevron-E Logo shall collectively be referred to as the "Edge Registered Marks." The Edge Registered Marks have not been abandoned, cancelled or revoked.

19. Edge is the owner of common law rights in the mark ANTIOX-6.

20. Edge has continuously used the mark ANTIOX-6 since at least as early as 2005 in connection with the advertisement, promotion and sale of its spa and skin treatment products.

21. Edge advertises its products and services at trade shows, seminars, and through trade publications, social media, search engine optimization, emails, and webinars. Edge has spent millions of dollars advertising its products and services in connection with the Edge Registered Marks and the ANTIOX-6 mark (collectively, "Edge Marks").

22. In addition to Edge's own advertising, important national media outlets have featured Edge and its products and reinforced the public's association between Edge and the Edge Marks. A sample of such media includes: *People Magazine, Allure*, *The Hollywood Reporter, Tampa Bay Times*, *New Beauty*, *OK! Magazine*, *Star Magazine*, *Elle Beauty Book*, *Harper's Bazaar Magazine*, *Essence*, *Simply Her*, *Examiner.com*, and *In Style*.

23. Edge's products have also been shown on *Good Day L.A., The Doctors, KLBK News, Great Day Houston,* and *Real Housewives of Beverly Hills*.

24. Edge's products have received widespread public attention and acclaim, including being awarded the "Best Equipment for the Face" by LNE & Spa numerous times.

/ / /

- 4 -

25.    Promotional materials and advertisements of Edge's products that include the Edge Marks have been distributed and are recognized by consumers and are famous throughout the United States.  As a result of Edge's substantial efforts, the Edge Marks have become extremely valuable to Edge as an identifier of the company, its products, and the substantial goodwill Edge has earned in the market.  The Edge Marks have become synonymous in consumers' minds with Edge.

26.    Edge sells its products to many consumers, including dermatologists, plastic surgeons, and health spas. Edge's products and services are offered at thousands of locations throughout the United States, including in all 50 states.

27.    As a result of the widespread use, advertising, promotion, media exposure and display of each of the Edge Marks, (a) the public has come to recognize and identify products bearing any of the Edge Marks as emanating from Edge, (b) the public recognizes that products bearing any of the Edge Marks constitute high quality products that conform to the specifications created by Edge, and (c) each of the Edge Marks has established strong secondary meaning and extensive goodwill.

28.    Edge has provided the public with notice of its rights in the Edge Registered Marks by using the symbol "®" in connection with those marks. Similarly, Edge has provided the public with notice of its rights in the ANTIOX-6 mark by using the symbol "™" in connection with that mark.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  COUNT I

## PATENT INFRINGEMENT (35 U.S.C. § 271)

29.     Plaintiffs repeat and re-allege the allegations of paragraphs 1-28 of this Complaint as if set forth fully herein.

30.     This is a claim for patent infringement under 35 U.S.C. § 271.

31.     Plaintiffs are informed and believe and, based thereon, allege that Defendant has knowingly and intentionally infringed and continues to infringe the '591 Patent, either literally or under the doctrine of equivalents, through the manufacture, use, sale, offer for sale, and/or import into the United States of its Ageless Glow MD product.  As an example, the claim chart below demonstrates that Defendant's Ageless Glow MD product infringes Claim 1 of the '591 Patent.

| Claim 1 of US 6,641,591 | Exemplary Disclosure of Accused Product |
|---|---|
| A system for treating the skin surface of a patient, comprising: | The Ageless Glow MD is a system for treating a patient's skin.  Ageless's website labels the Ageless Glow MD as "the first portable or stationary non-diamond fluid based facial INFUSION unit of it's [sic] kind." http://agelessserums.com/ageless-Glow-md-device-handpiece-ageless-nanopen.html (last visited April 7, 2017) ("Ageless Website") |

| | |
|---|---|
| (a) an instrument body with a distal working end that defines a skin interface portion for contacting the skin; | The Ageless Glow MD is sold with, for example, the Ageless Glow Handpiece ("Ageless Glow Handpiece") shown below.  *See* Ageless Website The Ageless Glow Handpiece includes an instrument body with a distal working end that defines a skin interface portion for contacting skin;  |

| (b) a first aperture arrangement in said skin interface consisting of at least one port in communication with a treatment media source; | The Ageless Glow Handpiece includes an aperture or opening in the skin interface portion that is in communication with a treatment media source.<br><br>port in communication with a treatment media source<br><br>output for treatment media<br>treatment media |
| (c) a second aperture arrangement in said skin interface consisting of at least one port in communication with a vacuum source for removing treatment media and removed tissue from the skin interface; and | The Ageless Glow Handpiece includes a second aperture or opening in the skin interface portion that is in communication with a vacuum source for removing treatment media and removed tissue from the skin interface:<br><br>port in communication with a vacuum source<br><br>vacuum source |

- 8 -

| | | |
|---|---|---|
| | | When in use, the Ageless Glow Handpiece dispenses treatment media onto the skin, and the vacuum source of the Ageless Glow MD suctions dead skin and used treatment media into a waste compartment. |
| (d) wherein the skin interface comprises an abrading structure with substantially sharp edges for abrading tissue. | As shown below, the skin interface portion of the Ageless Glow Handpiece includes several abrading structures with substantially sharp edges that are used to abrade the skin:  |

32.     Plaintiffs are informed and believe and, based thereon, allege that Defendant has knowingly and intentionally infringed and continues to infringe the '620 Patent, either literally or under the doctrine of equivalents, through the manufacture, use, sale, offer for sale, and/or import into the United States of its Ageless Glow Handpiece.

33.     As an example, the Ageless Glow Handpiece infringes at least claim 21 of the '620 Patent because: the Ageless Glow Handpiece is an instrument for treating surface layers of a patient's skin; the body of the Ageless Glow Handpiece has a working end; this working end has (1) a suction port that can be coupled to a negative pressurization source (i.e., a vacuum source), (2) a fluid port that can be coupled to a fluid source, as shown in the claim chart above, and (3) a skin interface portion, which is also shown above; the skin interface surface of the Ageless Glow Handpiece includes abrading structures, as shown above, that form a skin-abrading surface; and, skin debris created by

movement of the abrading structures of the Ageless Glow Handpiece across the skin—as well as any fluid deposited on the skin by the fluid port—can be removed from the surface of the skin through the suction port.

34. Plaintiffs are informed and believe and, based thereon, allege that Defendant has knowingly and intentionally infringed and continues to infringe the '716 Patent, either literally or under the doctrine of equivalents, through the manufacture, use, sale, offer for sale, and/or import into the United States of its Ageless Glow MD.

35. As an example, the Ageless Glow MD infringes at least claim 1 of the '716 Patent. The Ageless Glow MD is a system for treating a skin surface of a patient. As shown below, the Ageless Glow Handpiece of the Ageless Glow MD is an instrument body that has a main body and a working end. The working end has an outer periphery and a skin interface that has an abrading structure that is comprised of several ridge elements, where each ridge element is configured to abrade skin.



*AGELESS GLOW HANDPIECE*

As shown in the claim chart above, the skin interface of the Ageless Glow Handpiece includes an opening at the skin interface portion that is configured to aspirate skin and/or fluid. This opening is coupled to a remote vacuum source that is used to apply negative pressure (i.e., suction) to the skin surface. As shown in the photograph above, the outer periphery of the Ageless Glow

Handpiece completely surrounds or circumscribes the plurality of ridge elements and the aspiration opening.

36.     Plaintiffs are informed and believe and, based thereon, allege that Defendant has knowingly and intentionally infringed and continues to infringe the '513 Patent, either literally or under the doctrine of equivalents, through the manufacture, use, sale, offer for sale, and/or import into the United States of its Ageless Glow Handpiece.

37.     As an example, the Ageless Glow Handpiece infringes at least claim 1 of the '513 Patent.  The Ageless Glow Handpiece is a system for treating skin.  The Ageless Glow Handpiece is a handheld device that has a main body, with a working end on the distal end of that main body.  The Ageless Glow Handpiece has an outer periphery that extends along its distal end.  As shown below, the Ageless Glow Handpiece has several surface elements that extend distally from the working end of the device.



surface elements that extend distally from the working end

As shown above, these surface elements are positioned within an interior area that is circumscribed by the outer periphery.  Each of these surface elements includes at least one sharp edge that is configured to abrade skin when the Ageless Glow Handpiece is moved relative to a skin surface.  As shown in the claim chart above, the Ageless Glow Handpiece has an opening on the working end that is configured to be placed in fluid communication with a vacuum

source via a passageway, where the passageway is configured to remove debris away from the working end when the vacuum source is activated. As shown in the photographs above, the entire circumference of the Ageless Glow Handpiece's outer periphery is configured to contact a skin surface during a treatment procedure.

38. Plaintiffs are informed and believe and, based thereon, allege that Defendant had actual knowledge of each of the Asserted Patents.

39. Defendant's acts of infringement of each of the Asserted Patents were undertaken without permission or license from Plaintiffs.

40. Defendant's actions constitute willful and intentional infringement of each of the Asserted Patents. Defendant infringed each of the Asserted Patents with reckless disregard of Plaintiffs' patent rights. Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of each of the Asserted Patents. Defendant's acts of infringement of each of the Asserted Patents were not consistent with the standards of commerce for its industry.

41. As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages in an amount that are not presently known to Plaintiffs.

42. Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

43. Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

44. Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

45. Defendant will continue to infringe Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

## V. __COUNT II__

## __TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)__

46.    Edge repeats and re-alleges the allegations of paragraphs 1-45 of this Complaint as if set forth fully herein.

47.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

48.    Defendant operates the website agelessserums.com.

49.    On various places throughout Defendant's website, Defendant uses Edge's registered Hydrafacial® trademark.

50.    This use of Edge's Hydrafacial® trademark has occurred and is occurring without Edge's consent.

51.    Defendant's use of the Hydrafacial® trademark occurs without use of the "®" symbol and without any acknowledgement that Edge is the owner of the Hydrafacial® trademark.

52.    Defendant's use of the Hydrafacial® trademark is likely to cause consumer confusion in that consumers are likely to believe there is some association or connection between Edge and Defendant or Defendant's products.

53.    Defendant's website also includes a photograph of an Edge bottle that clearly and prominently displays Edge's registered Chevron-E logo.

54.    This use of Edge's Chevron-E logo has occurred and is occurring without Edge's consent.

55.    Defendant's use of the Chevron-E occurs without any acknowledgement that Edge is the owner of the Chevron-E logo.

56.    Defendant's use of the Chevron-E logo is likely to cause consumer confusion in that consumers are likely to believe there is some association or connection between Edge and Defendant or Defendant's products.

/ / /

- 13 -

57.     Defendant's unauthorized use of the Edge Registered Marks has occurred in commerce in connection with Defendant's sale of its own competing products.

58.     Edge is informed and believes, and thereon alleges, that Defendant's use of the Edge Registered Marks occurred with the intent to unfairly compete with Edge, to trade upon Edge's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendant's products are associated with, sponsored by, originate from, or are approved by Edge, when they are not.

59.     Defendant's activities constitute willful and intentional infringement of the Edge Registered Marks in total disregard of Edge's proprietary rights, and were done despite Defendant's knowledge that the use of the Edge Registered Marks was and is in direct contravention of Edge's rights.

60.     Edge is informed and believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from the use of the Edge Registered Marks in an amount that is not presently known to Edge.  By reason of Defendant's unauthorized and improper use of the Edge Registered Marks, Edge has been damaged and is entitled to monetary relief in an amount to be determined at trial.

61.     Pursuant to 15 U.S.C. § 1117, Edge is entitled to damages for Defendant's acts complained of herein, up to three times Defendant's unlawful profits and Edge's actual damages as fixed by this Court, and its reasonable attorneys' fees for the necessity of bringing this claim.

62.     Due to Defendant's unauthorized and improper use of the Edge Registered Marks, Oakley has suffered and continues to suffer great and irreparable injury, for which Edge has no adequate remedy at law.  Edge is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendant to stop use of Edge's Registered Marks.

# VI.  COUNT III

## FEDERAL UNFAIR COMPETITION & FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)

63.     Edge repeats and re-alleges the allegations of paragraphs 1-62 of this Complaint as if set forth fully herein.

64.     This is a claim for unfair competition and false designation of origin under 15 U.S.C. § 1125(a), arising from Defendant's unauthorized use of Edge's ANTIOX-6™ trademark, as well as Defendant's unauthorized use of the Edge Registered Marks.

65.     The Edge bottle depicted on Defendant's website prominently displays Edge's ANTIOX-6™ trademark.

66.     This use of Edge's ANTIOX-6™ trademark has occurred and is occurring without Edge's consent.

67.     Defendant's use of the ANTIOX-6™ trademark occurs without any acknowledgement that Edge is the owner of the ANTIOX-6™ trademark.

68.     Defendant's use of the ANTIOX-6™ trademark is likely to cause consumer confusion in that consumers are likely to believe there is some association or connection between Edge and Defendant or Defendant's products.

69.     Defendant's unauthorized use of the ANTIOX-6™ trademark has occurred in commerce in connection with Defendant's sale of its own competing products.

70.     Defendant's use of the ANTIOX-6™ trademark without Edge's consent constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Edge, or as to the origin, sponsorship, or approval

/ / /

of Defendant's goods and/or commercial activities by Edge in violation of 15
U.S.C. § 1125(a), and constitutes unfair competition with Edge.

71.    Similarly, Defendant's use of the Edge Registered Marks without
Edge's consent constitutes a false designation of origin, false or misleading
description of fact, or false or misleading representation of fact, which is likely
to cause confusion, or to cause mistake, or to deceive as to the affiliation,
connection, or association of Defendant with Edge, or as to the origin,
sponsorship, or approval of Defendant's goods and/or commercial activities by
Edge in violation of 15 U.S.C. § 1125(a), and constitutes unfair competition
with Edge.

72.    Edge is informed and believes, and thereon alleges, that
Defendant's actions were undertaken willfully with full knowledge of the falsity
of such designation of origin and false descriptions or representations.

73.    Edge is informed and believes, and thereon alleges, that Defendant
has derived and received, and will continue to derive and receive, gains, profits,
and advantages from Defendant's false designation of origin, false or misleading
statements, descriptions of fact, false or misleading representations of fact,
and/or unfair competition in an amount that is not presently known to Edge.  By
reason of Defendant's actions, constituting false designation of origin, false or
misleading statements, false or misleading descriptions of fact, false or
misleading representations of fact, and/or unfair competition, Edge has been
damaged and is entitled to monetary relief in an amount to be determined at
trial.

74.    Pursuant to 15 U.S.C. § 1117, Edge is entitled to damages for
Defendant's acts constituting false designation of origin, false or misleading
statements, false or misleading descriptions of fact, false or misleading
representations of fact, and/or unfair competition, up to three times Defendant's

/ / /

unlawful profits and Edge's actual damages as fixed by this Court, and its reasonable attorneys' fees for the necessity of bringing this claim.

75. Due to Defendant's actions, constituting false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, and/or unfair competition, Edge has suffered and continues to suffer great and irreparable injury, for which Edge has no adequate remedy at law. Edge is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendant to stop use of Edge's ANTIOX-6™ trademark.

## VII. <u>COUNT IV</u>
## <u>CALIFORNIA UNFAIR COMPETITION</u>

76. Edge repeats and re-alleges the allegations of paragraphs 1-75 of this Complaint as if set forth fully herein.

77. This is a claim for unfair competition, arising under California Business & Professions Code § 17200, *et seq.* and California common law.

78. Defendant's acts of trademark infringement and false designation of origin complained of herein constitute unfair competition with Edge under the common law and statutory laws of the State of California, particularly California Business & Professions Code § 17200 *et seq.*

79. Edge is informed and believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's unfair competition in an amount that is not presently known to Edge. By reason of Defendant's wrongful acts as alleged in this Complaint, Edge has been damaged and is entitled to monetary relief in an amount to be determined at trial.

80. By its actions, Defendant has injured and violated the rights of Edge and has irreparably injured Edge, and such irreparable injury will continue unless Defendant is enjoined by this Court.

81.     Edge is informed and believes that Defendant's unfair competition has been willful, wanton, and oppressive, entitling Edge to punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs pray for judgment in their favor against Defendant for the following relief:

A.     An Order adjudging Defendant to have infringed the Asserted Patents under 35 U.S.C. § 271;

B.     A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from (1) making, using, selling, offering to sell, and/or importing Defendant's Ageless Glow MD Device and Ageless Glow Handpiece, and (2) infringing the Asserted Patents in violation of 35 U.S.C. § 271, either directly or indirectly;

C.     An accounting for all of Defendant's gains, profits, and advantages derived by Defendant's infringement of the Asserted Patents in violation of 35 U.S.C. § 271, and an Order that Defendant pay to Plaintiffs actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, in accordance with 35 U.S.C. § 284;

D.     An Order for a trebling of damages and/or exemplary damages because of Defendant's willful conduct pursuant to 35 U.S.C. § 284;

E.     An Order adjudging that this case is exceptional under 35 U.S.C. § 285 and ordering Defendant to pay to Plaintiffs their reasonable attorney fees incurred in this action;

F.     An Order adjudging Defendant to have infringed the Edge Marks, to have falsely designated the origin of Defendant's goods and services; and to have competed unfairly with Edge;

G.    A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from using the Edge Marks or any confusingly similar marks;

H.    An accounting to determine Defendant's profits resulting from its trademark infringement, false designation of origin, and unfair competition, and an award monetary relief to Edge in an amount to be fixed by the Court in its discretion as it finds just, including:

        1.  all profits received by Defendant from sales and revenues of any kind made as a result of its infringing actions; and

        2.  all damages sustained by Edge as a result of Defendant's acts of trademark infringement, false designation of origin, and unfair competition.

I.    An Order that such profits and damages be trebled and awarded to Edge pursuant to 15 U.S.C. § 1117;

J.    An Order adjudging this to be an exceptional case under 15 U.S.C. § 1117 and ordering Defendant to pay to Edge its reasonable attorney fees incurred in this action;

K.    An Order awarding Edge punitive damages under California law;

L.    An Order awarding pre-judgment and post-judgement interest and costs as fixed by the Court; and

M.    Such other and further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 10, 2017          By: */s/ Ali S. Razai*
                               Brenton R. Babcock
                               brent.babcock@knobbe.com
                               Ali S. Razai
                               ali.razai@knobbe.com

                               Attorneys for Plaintiffs
                               EDGE SYSTEMS LLC and
                               AXIA MEDSCIENCES, LLC

- 20 -

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.


Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: April 10, 2017        By: */s/Ali S. Razai*
                                 Brenton R. Babcock
                                 brent.babcock@knobbe.com
                                 Ali S. Razai
                                 ali.razai@knobbe.com


                             Attorneys for Plaintiffs
                             EDGE SYSTEMS LLC and
                             AXIA MEDSCIENCES, LLC

25676819