# EXHIBIT L

Brenton R. Babcock (SBN 162,120)
brent.babcock@knobbe.com
Paul A. Stewart (SBN 153,467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile: 949-760-9502

Attorneys for Plaintiffs
EDGE SYSTEMS LLC and
AXIA MEDSCIENCES, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company, and AXIA MEDSCIENCES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>IMAGE MICRODERM INC., a Nevada corporation,<br><br>Defendant. | Case No.: 2:17-cv-8699<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Edge Systems LLC ("Edge") and Axia MedSciences, LLC ("Axia") (collectively, "Plaintiffs") hereby complain of Image MicroDerm Inc. ("IMD") and allege as follows:

## I.   <u>THE PARTIES</u>

1.     Edge is a California limited liability company having a principal place of business at 2277 Redondo Avenue, Signal Hill, California, 90755.

2.     Edge manufactures spa and skin treatment products, including Edge's HydraFacial™ hydradermabrasion systems and Delphia™ microdermabrasion systems, and sells and distributes them throughout the United States, including in this Judicial District.

3.     Axia is a Delaware limited liability company having a principal place of business at 23 Hallmark Circle, Menlo Park, California, 94025.

4.     Plaintiffs are informed and believe and, based thereon, allege that IMD is a Nevada corporation that has a regular and established place of business in this district at 632 W. Elk Ave., Glendale, California, 91204.

## II.   <u>JURISDICTION AND VENUE</u>

5.     This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq.* Accordingly, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     Because IMD has a regular and established place of business in this district at 632 W. Elk Ave., Glendale, California, 91204, this Court has personal jurisdiction over IMD due to IMD's continuous, systematic, and substantial presence within this judicial district.

7.     In addition, this Court has personal jurisdiction over IMD because IMD is selling and offering for sale infringing products in this judicial district, and by committing acts of infringement in this judicial district, including but not limited to selling infringing products directly to consumers and/or retailers in this district and selling infringing products into the stream of commerce

knowing such products would be sold in this district, which acts form a substantial part of the events or omissions giving rise to Plaintiffs' claim.

8.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b).  IMD has a regular and established place of business in this district at 632 W. Elk Ave., Glendale, California, 91204, and has committed acts of infringement in this district.

## III.    GENERAL ALLEGATIONS

9.      Edge is a worldwide leader in microdermabrasion and hydradermabrasion systems.  Edge has spent considerable time, effort and money to develop its proprietary technology, including the HydraFacial MD® hydradermabrasion system.

10.     To protect its substantial investment, Edge has obtained the rights to various patents and patent applications throughout the world.

11.     On November 4, 2003, the United States Patent and Trademark Office ("USPTO") duly and lawfully issued U.S. Patent No. 6,641,591 ("the '591 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS."  A true and correct copy of the '591 Patent is attached hereto as Exhibit 1.

12.     On September 7, 2010, the USPTO duly and lawfully issued U.S. Patent No. 7,789,886 ("the '886 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '886 Patent is attached hereto as Exhibit 2.

13.     On November 29, 2011, the USPTO duly and lawfully issued U.S. Patent No. 8,066,716 ("the '716 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '716 Patent is attached hereto as Exhibit 3.

14.     On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '513 Patent is attached hereto as Exhibit 4.

15.     On October 18, 2016, the USPTO duly and lawfully issued U.S. Patent No. 9,468,464 ("the '464 Patent"), titled "METHODS FOR TREATING THE SKIN USING VACUUM." A true and correct copy of the '464 Patent is attached hereto as Exhibit 5.

16.     On January 24, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,550,052 ("the '052 Patent"), titled "CONSOLE SYSTEM FOR THE TREATMENT OF SKIN."  A true and correct copy of the '052 Patent is attached hereto as Exhibit 6.

17.     On October 3, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,775,646 ("the '646 Patent"), titled "DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM."  A true and correct copy of the '646 Patent is attached hereto as Exhibit 7.

18.     Axia is the owner of all right, title, and interest in the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent which are each exclusively licensed to Edge.

19.     Edge is the owner of all right, title, and interest in the '052 Patent.

20.     IMD makes, uses, sells, offers to sell, and/or imports into the United States the BioXFusion MD ("Accused MD Product") and the smaller BioXFusion Mini ("Accused Mini Product").  The Accused MD Product and Accused Mini Product shall hereinafter be collectively referred to as the Accused Products.

/ / /

/ / /



21.     The Accused MD Product, shown above, infringes each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, the '052 Patent, and the '646 Patent (collectively, the "Asserted Patents").





22.     The Accused Mini Product, shown above, infringes each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent.

23.     Each of the Accused Products is a system for treating the skin surface of a patient. The Accused Products each include a handpiece and a variety of tips, examples of which are shown in the photograph below.



24.     The handpiece (i.e., handheld device) in each of the Accused Products has (1) a port that can be attached to a vacuum source that is housed in the Accused Product, and (2) a port that can attach to at least one fluid source that is housed in the Accused Product. The handpiece in each of the Accused Products defines a skin interface portion.

25.     For each of the Accused Products, at least some of the tips that are used with the handpiece of the Accused Product have abrading structures with substantially sharp edges to abrade the skin. When the Accused Products are in use, the vacuum creates a seal between the skin interface portion of the handpiece and the patient's skin. The Accused Products deposit fluid, for example a skin treatment media that may be housed in each respective product,

1   on the patient's skin through the port in the handpiece. The vacuum source at

2   least aids in depositing the fluid onto the patient's skin. When the handpiece is

3   used with a tip that has an abrading structure, such as those shown above, the

4   handpiece abrades the patient's skin, which can result in skin cells and/or debris.

5   The suction from the vacuum source can carry away skin cells, debris, and/or

6   fluid from the patient's skin through the skin interface portion of the handpiece

7   and into a waste container.

8       26.     Plaintiffs are informed and believe and, based thereon, allege that

9   IMD sells its infringing products, including the Accused Products, to its

10  customers.

11      27.     IMD's customers also infringed each of the Asserted Patents by

12  using infringing product that they acquired from IMD.

13      28.     IMD had actual knowledge of each of the '591 Patent, the '886

14  Patent, the '716 Patent, and the '513 Patent no later than April 8, 2014, when

15  Plaintiffs sent IMD a letter demanding that IMD stop infringing those patents

16  and other patents. Plaintiffs are informed and believe and, based thereon, allege

17  that IMD had actual knowledge of the '052 Patent because it researched Edge's

18  patent portfolio after receiving Edge's cease and desist letter, but at least

19  through the filing of this Complaint. IMD had actual knowledge of the '464

20  Patent no later than July 19, 2017, when Plaintiffs sent IMD a letter demanding

21  that IMD stop infringing that patent and other patents. IMD has actual

22  knowledge of the '646 Patent at least through the filing of this Complaint.

23      29.     Plaintiffs are informed and believe and, based thereon, allege that

24  IMD knew that its customers would infringe each of the Asserted Patents by, for

25  example, using its infringing products, including, for example, the Accused

26  Products, during the respective terms of the Asserted Patents.

27      30.     Plaintiffs are informed and believe and, based thereon, allege that

28  IMD had the specific intent to induce and did induce its customers to infringe

each of the Asserted Patents by, for example, using products that infringe the Asserted Patents, including, for example, the Accused Products, during the respective term of the Asserted Patents.

31.    IMD's acts of infringement of the Asserted Patents were undertaken without permission or license from Plaintiffs.

32.    IMD's actions constitute willful and intentional infringement of each of the Asserted Patents.  IMD infringed each of the Asserted Patents with reckless disregard of Plaintiffs' patent rights.  IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the Asserted Patents.  Further, IMD's acts of infringement of the Asserted Patents were not consistent with the standards of commerce for its industry.

33.    As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that are not presently known to Plaintiffs.

34.    Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

35.    Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this action.

36.    Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

37.    IMD will continue to infringe Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

### IV.    FIRST CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 6,641,591

38.    Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-37 above.

39.    This is a claim for patent infringement under 35 U.S.C. § 271.

40.     Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the '591 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

41.     For example, each of the Accused Products infringes at least Claim 1 of the '591 Patent because it is a system for treating the skin surface of a patient.  Each of the Accused Products includes a handpiece that, when used with one of the tips, forms a working end that defines a skin interface portion for contacting skin.  The handpiece has one port that is in communication with a treatment media source, and a second port that is in communication with a vacuum source.  The vacuum source is able to remove tissue (e.g., exfoliated skin) and treatment media that may have been deposited on the patient's skin through the skin interface portion of the handpiece.  Each of the Accused Products can be used with tips that include a substantially sharp edge for abrading skin.

42.     Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused Products) from IMD have also infringed the '591 Patent by, for example, using those infringing products.

43.     Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '591 Patent by, for example, using those infringing products during the term of the '591 Patent.

44.     Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe the '591 Patent by, for example, using products that infringe the '591 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

45.     IMD's acts of infringement of the '591 Patent were undertaken without permission or license from Plaintiffs.

46.     IMD's actions constitute willful and intentional infringement of the '591 Patent.  IMD infringed the '591 Patent with reckless disregard of Plaintiffs' patent rights.  IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '591 Patent.  Further, IMD's acts of infringement of the '591 Patent were not consistent with the standards of commerce for its industry.

47.     As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

48.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

49.     Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

50.     Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

51.     IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

### V.     SECOND CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 7,789,886

52.     Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-511 above.

53.     This is a claim for patent infringement under 35 U.S.C. § 271.

54.     Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the

'886 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.



55.     For example, each of the Accused Products infringes at least Claim 11 of the '886 Patent.   Each of the Accused Products includes a handpiece that forms a working surface.  This working surface of the handpiece includes an aperture that is spaced from numerous abrasive structures that are configured to abrade the skin surface.   An outer periphery of the handpiece encircles both the abrasive structures and the aperture.  The aperture in the tip of the handpiece is in communication with a vacuum.

56.     When in use, the working surface of the handpiece is translated relative to the patient's skin surface.  The continuous application of a vacuum through the aperture draws the patient's skin against the outer periphery and abrasive structures of the handpiece to abrade the patient's skin surface.  Debris that results from the skin abrasion is simultaneously aspirated away from the working surface by the vacuum while the patient's skin surface is being abraded.

-10-

57.     Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused Product) from IMD have also infringed the '886 Patent by, for example, using those infringing products.

58.     Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '886 Patent by, for example, using those infringing products during the term of the '886 Patent.

59.     Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe the '886 Patent by, for example, using products that infringe the '886 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

60.     IMD's acts of infringement of the '886 Patent were undertaken without permission or license from Plaintiffs.

61.     IMD's actions constitute willful and intentional infringement of the '886 Patent.  IMD infringed the '886 Patent with reckless disregard of Plaintiffs' patent rights.  IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '886 Patent.  Further, IMD's acts of infringement of the '886 Patent were not consistent with the standards of commerce for its industry.

62.     As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

63.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

64.     Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

-11-

65.     Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

66.     IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

## VI.     THIRD CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 8,066,716

67.     Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-666 above.

68.     This is a claim for patent infringement under 35 U.S.C. § 271.

69.     Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the '716 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

70.     For example, each of the Accused Products infringes at least Claim 15 of the '716 Patent.  Each of the Accused Products is a system for treating the skin surface of a patient.  Each of the Accused Products includes a handpiece with a main body and a working end at the distal end of the main body.  The handpiece includes abrading structures that are configured to selectively abrade skin.  The handpiece also includes an aperture or opening at or near the working end that is in fluid communication with a vacuum source in each of the Accused Products.  The vacuum source in each of the Accused Products is adapted to apply suction to the aperture to draw debris away from the patient's skin surface.  Additionally, the working end of the handpiece includes an inflow port configured to deliver flowable media to the skin surface during treatment.  The working end of the handpiece also includes a non-abrasive outer periphery that generally circumscribes an interior area that

-12-

includes the abrading structures, the aperture, and the inflow port. The outer periphery of the handpiece is configured to contact the patient's skin surface during treatment. Further, the flowable media delivered through the inflow port is configured to pass through the abrading structures before being removed away from the working end via the aperture of the handpiece.

71. Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused Products) from IMD have also infringed the '716 Patent by, for example, using those infringing products.

72. Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '716 Patent by, for example, using those infringing products during the term of the '716 Patent.

73. Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe the '716 Patent by, for example, using products that infringe the '716 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

74. IMD's acts of infringement of the '716 Patent were undertaken without permission or license from Plaintiffs.

75. IMD's actions constitute willful and intentional infringement of the '716 Patent. IMD infringed the '716 Patent with reckless disregard of Plaintiffs' patent rights. IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '716 Patent. Further, IMD's acts of infringement of the '716 Patent were not consistent with the standards of commerce for its industry.

76. As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

77. Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

78. Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

79. Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

80. IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

## VII.  FOURTH CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 8,337,513

81. Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-80 above.

82. This is a claim for patent infringement under 35 U.S.C. § 271.

83. Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the '513 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

84. For example, each of the Accused Products infringes at least Claim 1 of the '513 Patent.  Each of the Accused Products is a system for treating skin and includes a handpiece that has a main body and a working end along the distal end of the main body.  The handpiece includes an outer periphery extending along its distal end, and substantially the entire circumference of the outer periphery is configured to contact the patient's skin surface during treatment.  Further, the handpiece is configured to be used with tips that are supplied with each of the Accused Products.  When used with the

-14-

handheld device, at least some of the tips include the following features: a plurality of surface elements that extend distally from the working end of the handheld device and are positioned within the interior area circumscribed by the outer periphery; each surface element having at least one sharp edge that is configured to abrade skin when the handpiece is moved relative to the skin surface. The handheld device also includes an aperture or opening along the working end that is configured to be placed in fluid communication with a vacuum source via a passageway. When the vacuum source is activated, the passageway is configured to convey debris away from the working end.

85. Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused Products) from IMD have also infringed the '513 Patent by, for example, using those infringing products.

86. Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '513 Patent by, for example, using those infringing products during the term of the '513 Patent.

87. Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe the '513 Patent by, for example, using products that infringe the '513 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

88. IMD's acts of infringement of the '513 Patent were undertaken without permission or license from Plaintiffs.

89. IMD's actions constitute willful and intentional infringement of the '513 Patent. IMD infringed the '513 Patent with reckless disregard of Plaintiffs' patent rights. IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '513 Patent. Further, IMD's acts of infringement of the '513 Patent were not consistent with the standards of commerce for its industry.

90.     As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

91.     Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

92.     Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

93.     Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

94.     IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

## VIII.  <u>FIFTH CLAIM FOR RELIEF</u>
## <u>INFRINGEMENT OF U.S. PATENT NO. 9,468,464</u>

95.     Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-94 above.

96.     This is a claim for patent infringement under 35 U.S.C. § 271.

97.     Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the '464 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

98.     For example, use of each of the Accused Product infringes at least Claim 1 of the '464 Patent.  Each of the Accused Products includes a handpiece with a main body, a housing, and a working end.  The working end of the handpiece is configured to contact the patient's skin surface, and can be used with a tip that comprises a perimeter along the distal end of the handpiece.  The

handpiece has a first aperture or opening arrangement that includes a port at or near the working end that is in fluid communication with a vacuum source that is housed in each of the Accused Products through a passageway in the distal end of the handpiece. The handpiece has a second aperture or opening arrangement that includes a second port at or near the working end that is in fluid communication with a treatment media source in each of the Accused Products.

99.    Each of the Accused Product is specifically designed to treat a patient's skin surface. For example, when in use the handpiece in each of the Accused Products is positioned against the patient's skin surface. Activating the vacuum source in each of the Accused Products facilitates the delivery of a liquid treatment media to the patient's skin surface through the second port. The used liquid treatment media is aspirated away from the patient's skin surface through the first port and the passageway at the distal end of the handpiece. Simultaneously, activating the vacuum source facilitates the delivery of the treatment media to the patient's subsurface skin tissue and the delivery of the treatment media hydrates or puffs up the adjacent skin surface at the treatment site to facilitate the treatment method.

100.    Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused Products) from IMD have also infringed the '464 Patent by, for example, using those infringing products.

101.    Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '464 Patent by, for example, using those infringing products during the term of the '464 Patent.

102.    Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe

the '464 Patent by, for example, using products that infringe the '464 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

103.    IMD's acts of infringement of the '464 Patent were undertaken without permission or license from Plaintiffs.

104.    IMD's actions constitute willful and intentional infringement of the '464 Patent.  IMD infringed the '464 Patent with reckless disregard of Plaintiffs' patent rights.  IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '464 Patent.  Further, IMD's acts of infringement of the '464 Patent were not consistent with the standards of commerce for its industry.

105.    As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

106.    Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

107.    Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

108.    Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

109.    IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

### IX.    SIXTH CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 9,550,052

110.    Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-1099 above.

111.    This is a claim for patent infringement under 35 U.S.C. § 271.

-18-

112.     Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the '052 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused MD Product.

113.     For example, the Accused MD Product infringes at least Claim 11 of the '052 Patent.  The Accused MD Product is a system for performing a skin treatment procedure that includes a manifold, a handpiece assembly, and a variety of tips.  The Accused MD Product includes a manifold that is in fluid communication with at least two fluid containers that are configured to contain a liquid treatment material for a skin treatment procedure.  The Accused MD Product has a handpiece assembly that can be used with one of a variety of tips that are included with the Accused MD Product and are configured to contact a patient's skin surface during the treatment procedure.  The Accused MD Product includes a supply conduit that places the manifold in fluid communication with the handpiece assembly; the distal end of the supply conduit is configured to be attached to the handpiece assembly.  The manifold of the Accused MD Product is configured to control the flow of treatment material from the separate fluid containers through the supply conduit.  The Accused MD Product is configured to permit a user to select the treatment material from the separate fluid containers for delivery from the supply conduit.  The handpiece assembly is also in fluid communication with a waste conduit that is operatively coupled to a vacuum source of the Accused MD Product to remove waste away from the skin surface during the treatment procedure.

114.     Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused MD Product) from IMD have also infringed the '052 Patent by, for example, using those infringing products.

-19-

115.   Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '052 Patent by, for example, using those infringing products during the term of the '052 Patent.

116.   Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe the '052 Patent by, for example, using products that infringe the '052 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

117.   IMD's acts of infringement of the '052 Patent were undertaken without permission or license from Plaintiffs.

118.   IMD's actions constitute willful and intentional infringement of the '052 Patent. IMD infringed the '052 Patent with reckless disregard of Plaintiffs' patent rights. IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '052 Patent. Further, IMD's acts of infringement of the '052 Patent were not consistent with the standards of commerce for its industry.

119.   As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

120.   Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

121.   Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

122.   Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

123.   IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

-20-

## X.   SEVENTH CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 9,775,646

124.   Plaintiffs incorporate by reference and reallege each of the allegations set forth in Paragraphs 1-1233 above.

125.   This is a claim for patent infringement under 35 U.S.C. § 271.

126.   Plaintiffs are informed and believe and, based thereon, allege that IMD has knowingly and intentionally infringed and continues to infringe the '646 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

127.   For example, each of the Accused Products infringes at least Claim 13 of the '646 Patent.  Each of the Accused Products is a system for treating a patient's skin surface and includes a handpiece with a main body, a housing, and a working end.  The working end of the handpiece has a distal end that is configured to contact the patient's skin surface.  The perimeter along the distal end of the working end of the Accused Product is configured to contact the patient's skin surface.  When used with one of the tips supplied with each of the Accused Products, a skin interface is positioned within the perimeter of the handpiece and configured to contact the patient's skin surface during use.  In addition, the handpiece has a first aperture or opening arrangement that includes a first port at or near the working end that is in fluid communication through a passageway with a vacuum source, which is housed in each of the respective Accused Products through a passageway.  The handpiece also has a second aperture or opening arrangement that includes a second port at or near the working end that is in fluid communication with a treatment media source that is housed in each of the respective Accused Products.  In each of the Accused Products, when the handpiece is positioned along the patient's skin surface and the vacuum source is activated, a treatment media is delivered to the patient's

-21-

skin surface through the passageway and the second port.  Simultaneously, the used treatment media is aspirated away from the working end of the handpiece through the first port.

128.    Plaintiffs are informed and believe and, based thereon, allege that IMD's customers that purchased infringing products (e.g., the Accused Products) from IMD have also infringed the '646 Patent by, for example, using those infringing products.

129.    Plaintiffs are informed and believe and, based thereon, allege that IMD knew that its customers would infringe the '646 Patent by, for example, using those infringing products during the term of the '646 Patent.

130.    Plaintiffs are informed and believe and, based thereon, allege that IMD had the specific intent to induce and did induce its customers to infringe the '646 Patent by, for example, using products that infringe the '646 Patent. Plaintiffs are informed and believe that this inducement continues to this day.

131.    IMD's acts of infringement of the '646 Patent were undertaken without permission or license from Plaintiffs.

132.    IMD's actions constitute willful and intentional infringement of the '646 Patent.  IMD infringed the '646 Patent with reckless disregard of Plaintiffs' patent rights.  IMD knew, or it was so obvious that IMD should have known, that its actions constituted infringement of the '646 Patent.  Further, IMD's acts of infringement of the '646 Patent were not consistent with the standards of commerce for its industry.

133.    As a direct and proximate result of IMD's acts of infringement, IMD has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiffs.

134.    Pursuant to 35 U.S.C. § 284, Plaintiffs are entitled to damages for IMD's infringing acts and treble damages together with interests and costs as fixed by this Court.

135.    Pursuant to 35 U.S.C. § 285, Plaintiffs are entitled to reasonable attorneys' fees for the necessity of bringing this claim.

136.    Due to the aforesaid infringing acts, Plaintiffs have suffered great and irreparable injury, for which Plaintiffs have no adequate remedy at law.

137.    IMD will continue to infringe and induce infringement of Plaintiffs' patent rights to the great and irreparable injury of Plaintiffs, unless enjoined by this Court.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment and seek relief as follows:

A.    That the Court enter judgment in favor of Plaintiffs and against IMD on all claims for relief alleged herein;

B.    An Order adjudging IMD to have infringed and induced infringement of the Asserted Patents under 35 U.S.C. § 271;

C.    A preliminary and permanent injunction enjoining IMD, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with IMD, from (1) making, using, selling, offering to sell, and/or importing any of the Accused Products, and (2) infringing the Asserted Patents in violation of 35 U.S.C. § 271, either directly or indirectly, including inducing or contributing to their infringement;

D.    An Order that IMD pay to Plaintiffs actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by IMD, in accordance with 35 U.S.C. § 284;

E.    An Order for a trebling of damages and/or exemplary damages because of IMD's willful misconduct pursuant to 35 U.S.C. § 284;

F.    An Order adjudging that this case is exceptional under 35 U.S.C. § 285 and ordering IMD to pay to Plaintiffs their reasonable attorney fees incurred in this action;

G.  An Order awarding pre-judgment and post-judgement interest and costs as fixed by the Court; and

H.  Such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 1, 2017        By:  /s/ *Ali S. Razai*
                                        Brenton R. Babcock
                                        Paul A. Stewart
                                        Ali S. Razai

                                        Attorneys for Plaintiffs
                                        EDGE SYSTEMS LLC and
                                        AXIA MEDSCIENCES, LLC

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 1, 2017    By: /s/ *Ali S. Razai*
                                Brenton R. Babcock
                                Paul A. Stewart
                                Ali S. Razai

                                Attorneys for Plaintiffs
                                EDGE SYSTEMS LLC and
                                AXIA MEDSCIENCES, LLC