# EXHIBIT M

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. _____

EDGE SYSTEMS LLC,
a California limited liability company,

       Plaintiff,

   v.

VENUS CONCEPT USA INC.,
a Delaware corporation,

       Defendant.

_____/

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Edge Systems LLC ("Edge") hereby complains of Venus Concept USA Inc. ("Defendant") and alleges as follows:

### I.      THE PARTIES

1.      Edge is a California limited liability company having a principal place of business at 2277 Redondo Avenue, Signal Hill, California, 90755.

2.      Edge manufactures spa and skin treatment products, including Edge's HydraFacial® hydradermabrasion systems and Delphia™ microdermabrasion systems, and sells and distributes them throughout the United States, including in this Judicial District.

3.      Plaintiff is informed and believes and, based thereon, alleges that Venus Concept USA Inc. is a Delaware corporation having a principal place of business at 4556 N. Hiatus Rd., Sunrise, Florida 33351.

## II.    JURISDICTION AND VENUE

4.      This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq*.  Accordingly, this Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within Florida and this judicial district.  For example, Defendant has a principal place of business in this judicial district at 4556 N. Hiatus Rd., Sunrise, Florida 33351.  Plaintiff is informed and believes and, based thereon, alleges that Defendant also sells and/or offers for sale infringing products in this district and/or sells into the stream of commerce knowing such products would be sold in Florida and this district, and these acts form a substantial part of the events or omissions giving rise to Edge's claims.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement by selling and/or offering to sell infringing products in this judicial district and Defendant has a regular and established place of business in this judicial district.

## III.    GENERAL ALLEGATIONS

7.      Edge is a worldwide leader in microdermabrasion and hydradermabrasion systems.  Edge has spent considerable time, effort and money to develop its proprietary technology, including the HydraFacial MD® hydradermabrasion system.

8.      To protect its substantial investment, Edge owns various patents throughout the world.

9.      On September 7, 2010, the USPTO duly and lawfully issued U.S. Patent No. 7,789,886 ("the '886 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR

CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '886 Patent is attached hereto as **Exhibit 1**.

10.     On November 29, 2011, the USPTO duly and lawfully issued U.S. Patent No. 8,066,716 ("the '716 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '716 Patent is attached hereto as **Exhibit 2**.

11.     On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '513 Patent is attached hereto as **Exhibit 3**.

12.     On October 18, 2016, the USPTO duly and lawfully issued U.S. Patent No. 9,468,464 ("the '464 Patent"), titled "METHODS FOR TREATING THE SKIN USING VACUUM." A true and correct copy of the '464 Patent is attached hereto as **Exhibit 4**.

13.     On October 3, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,775,646 ("the '646 Patent"), titled "DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM." A true and correct copy of the '646 Patent is attached hereto as **Exhibit 5**.

14.     Edge is the owner of all right, title, and interest in the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent.

15.     Defendant makes, uses, sells, offers to sell, and/or imports into the United States the Venus Glow ("Accused Product"). For example, as advertised in **Exhibit 6**, Defendant has offered its "Q4 Special Promo," shown below.

_____

## Q4 SPECIAL PROMO



- List Price: $25,000
- Special Promo Price: $12,500 cash only.
  $5,000 down to reserve. They get 100 tips for free.
  For tip re-orders, $450 for 50 or $1,800 for 250.
- Delivery of device in mid-December
- It's a Class I device, no Medical Director/physician needed.
- No solutions/serums to offer in Q4. Our preliminary protocol
  will suggest use of distilled water.
- No demo units, so we're creating a demo video to show.

16.     The Accused Product, shown below, infringes each of the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent (collectively, the "Asserted Patents").



17.     Defendant advertises that it has received "[g]lobal selling rights from Korean company Daonic." Plaintiff is informed and believes, and based thereon, alleges that the Accused Product is the same product as Daonic's Clear-Z product.

18.     The Accused Product is a system for treating the skin surface of a patient.  The Accused Product includes a handpiece, an example of which is shown in the photograph below.



19.     The handpiece (i.e., handheld device) of the Accused Product has (1) a port that can be attached to a vacuum source that is housed in the Accused Product, and (2) a port that can attach to at least one fluid source that is housed in the Accused Product.  The handpiece in the Accused Product defines a skin interface portion.

20.     Plaintiff is informed and believes, and based thereon alleges, that the distal end of the handpiece of the Accused Product has an abrading structure with at least one substantially sharp edge for abrading skin.



21.     When the Accused Product is in use, the vacuum creates a seal between the skin interface portion of the handpiece and the patient's skin.



22.     The Accused Product deposits fluid, for example a skin treatment media that may be housed in the product, on the patient's skin through the port in the handpiece.



23.      Plaintiff is informed and believes, and based thereon alleges, that the vacuum source at least aids in depositing the fluid onto the patient's skin.

24.     Defendant's advertisement states that the Accused Product "[r]emoves impurities from the stratum corneum, exfoliates, extracts, and hydrates the skin." Plaintiff is

informed and believes, and based thereon alleges, that the handpiece of the Accused Product exfoliates the stratum corneum (the outer layer of the skin) by abrading the patient's skin, which results in skin cells and/or debris that, along with fluid deposited on the patient's skin by the handpiece of the Accused Product, are carried away from the skin by the suction from the vacuum source into a waste container that is housed in the Accused Product.

25.     An end-user of the Accused Product directly infringes the Asserted Patents by using the product.  A distributor of the Accused Product directly infringes the Asserted Patents by selling and/or offering for sale the Accused Product.

26.     Plaintiff is informed and believes and, based thereon, alleges that Defendant actively induces end-users and distributors of the Accused Product to purchase the Accused Products and directly infringe the Asserted Patents.  Defendant had actual knowledge of the Asserted Patents at least by virtue of the filing of this Complaint and, despite this knowledge, it continues to provide manuals, assembly instructions, and/or marketing materials, for example the materials attached as **Exhibit 6**, to end-users of the Accused Product to use the product to infringe the Asserted Patents and also provides such materials to its distributors to infringe the Asserted Patents by selling and/or offering for sale the Accused Product.

27.     Plaintiff is informed and believes and, based thereon, alleges that Defendant is aware that end-users of the Accused Product would infringe the Asserted Patents by, for example, using the Accused Product during the term of the Asserted Patents, and that its distributors would infringe the Asserted Patents by, for example, selling and/or offering for sale the Accused Product during the term of the Asserted Patents.

28.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has the specific intent to induce its customers to infringe the Asserted Patents by, for example, using,

selling, and/or offering for sale the Accused Product, which infringes each of the Asserted Patents.

29.     Defendant's acts of infringement of the Asserted Patents were undertaken without permission or license from Plaintiff.

30.     Defendant's actions constitute willful and intentional infringement of each of the Asserted Patents.  Defendant infringed each of the Asserted Patents with reckless disregard of Plaintiff's patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the Asserted Patents.  Further, Defendant's acts of infringement of the Asserted Patents were not consistent with the standards of commerce for its industry.

31.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiff.

32.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interest and costs as fixed by this Court.

33.     Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this action.

34.     Due to the aforesaid infringing acts, Plaintiff has suffered great and irreparable injury, for which Plaintiff has no adequate remedy at law.

35.     Defendant will continue to infringe Plaintiff's patent rights to the great and irreparable injury of Plaintiff, unless enjoined by this Court.

## IV.    CLAIM FOR RELIEF

## PATENT INFRINGEMENT

36.    Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-35 above.

37.    This is a claim for patent infringement under 35 U.S.C. § 271.

38.    Plaintiff is informed and believes and, based thereon, alleges that Defendant has knowingly and intentionally infringed and continues to infringe the '886 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

39.    For example, the Accused Product infringes at least Claim 11 of the '886 Patent. When in use, the Accused Product embodies a method of treating a patient's skin.

40.    The Accused Product includes a handpiece that forms a working surface. This working surface of the handpiece includes an abrasive structure that is configured to abrade the skin and an aperture that is in communication with a vacuum source. The handpiece has an outer periphery that encircles both the abrasive structure and the aperture.



Aperture in communication with vacuum

Outer periphery

Abrasive structure

The vacuum gently pulls the skin into the tip to open up the pores, exfoliates and extracts impurities from the stratum corneum.

While the skin is being pulled into the tip, the 360-degree rotating tip spreads the solution evenly on the skin.

41.     When in use, the working surface of the handpiece is translated relative to the patient's skin surface.  The continuous application of a vacuum through the aperture draws the patient's skin against the outer periphery and the abrasive structure of the handpiece to abrade the patient's outer layer of the patient's skin.  Plaintiff is informed and believe, and based thereon alleges, that debris that results from the skin abrasion is aspirated away from the working surface by the vacuum while the patient's skin surface is being abraded.

42.     An end-user of the Accused Product directly infringes the '886 Patent by using the product.  A distributor of the Accused Product directly infringes the '886 Patent by selling and/or offering for sale the Accused Product.

43.     Plaintiff is informed and believes and, based thereon, alleges that Defendant actively induces end-users and distributors of the Accused Product to purchase the Accused Product and directly infringe the '886 Patent.  Defendant had actual knowledge of the '886 Patent at least by virtue of the filing of this Complaint and, despite this knowledge, it continues to provide manuals, assembly instructions, and/or marketing materials, for example the materials attached as **Exhibit 6**, to end-users of the Accused Product to use the product to infringe the '886 Patent and also provides such materials to its distributors to infringe the '886 Patent by selling and/or offering for sale the Accused Product.

44.     Plaintiff is informed and believes and, based thereon, alleges that Defendant is aware that end-users of the Accused Product would infringe the '886 Patent by, for example, using the Accused Product during the term of the '886 Patent, and that its distributors would infringe the '886 Patent by, for example, selling and/or offering for sale the Accused Product during the term of the '886 Patent.

45.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has the specific intent to induce its customers to infringe the '886 Patent by, for example, using, selling, and/or offering for sale the Accused Product, which infringes the '886 Patent.

46.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has knowingly and intentionally infringed and continues to infringe the '716 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

47.     For example, the Accused Product infringes at least Claim 15 of the '716 Patent. The Accused Product is a system for treating the skin surface of a patient.  The Accused Product includes a handpiece with a main body and a working end at the distal end of the main body. The handpiece includes an abrading structure that is configured to selectively exfoliate a patient's skin by abrading it.  The handpiece also includes an aperture or opening at or near the working end that is in fluid communication with a vacuum source in the Accused Product.  The vacuum source in the Accused Product is adapted to apply suction to the aperture to draw debris away from the patient's skin surface.  Additionally, the working end of the handpiece includes an inflow port configured to deliver flowable media to the skin surface during treatment.  The working end of the handpiece also includes a non-abrasive outer periphery that generally circumscribes an interior area that includes the abrading structures, the aperture, and the inflow port.  The outer periphery of the handpiece is configured to contact the patient's skin surface during treatment.  Further, the flowable media delivered through the inflow port is configured to pass through the abrading structures before being removed away from the working end via the aperture of the handpiece.



Aperture in communication with vacuum

Outer periphery

Abrasive structure

Inflow port

The vacuum gently pulls the skin into the tip to open up the pores, exfoliates and extracts impurities from the stratum corneum.

While the skin is being pulled into the tip, the 360-degree rotating tip spreads the solution evenly on the skin.

48.     An end-user of the Accused Product directly infringes the '716 Patent by using the product.  A distributor of the Accused Product directly infringes the '716 Patent by selling and/or offering for sale the Accused Product.

49.     Plaintiff is informed and believes and, based thereon, alleges that Defendant actively induces end-users and distributors of the Accused Product to purchase the Accused Product and directly infringe the '716 Patent.  Defendant had actual knowledge of the '716 Patent at least by virtue of the filing of this Complaint and, despite this knowledge, it continues to provide manuals, assembly instructions, and/or marketing materials, for example the materials attached as **Exhibit 6**, to end-users of the Accused Product to use the product to infringe the '716 Patent and also provides such materials to its distributors to infringe the '716 Patent by selling and/or offering for sale the Accused Product.

50.     Plaintiff is informed and believes and, based thereon, alleges that Defendant is aware that end-users of the Accused Product would infringe the '716 Patent by, for example, using the Accused Product during the term of the '716 Patent, and that its distributors would

infringe the '716 Patent by, for example, selling and/or offering for sale the Accused Product during the term of the '716 Patent.

51.      Plaintiff is informed and believes and, based thereon, alleges that Defendant has the specific intent to induce its customers to infringe the '716 Patent by, for example, using, selling, and/or offering for sale the Accused Product, which infringes the '716 Patent.

52.      Plaintiff is informed and believes and, based thereon, alleges that Defendant has knowingly and intentionally infringed and continues to infringe the '513 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

53.      For example, the Accused Product infringes at least Claim 1 of the '513 Patent. The Accused Product is a system for treating skin and includes a handpiece that has a main body and a working end along the distal end of the main body.  The handpiece includes an outer periphery extending along its distal end, and substantially the entire circumference of the outer periphery is configured to contact the patient's skin surface during treatment.  The working end of the handpiece has at least one surface element that extends distally and is positioned within the interior area circumscribed by the outer periphery, the surface element having at least one sharp edge that is configured to abrade skin when the handpiece is moved relative to the skin surface.  The handpiece also includes an aperture or opening along the working end that is configured to be placed in fluid communication with a vacuum source via a passageway.  When the vacuum source is activated, the passageway is configured to convey debris away from the working end.



Opening in communication with vacuum source

Outer periphery

Surface element

The vacuum gently pulls the skin into the tip to open up the pores, exfoliates and extracts impurities from the stratum corneum.

While the skin is being pulled into the tip, the 360-degree rotating tip spreads the solution evenly on the skin.

54.     An end-user of the Accused Product directly infringes the '513 Patent by using the product.  A distributor of the Accused Product directly infringes the '513 Patent by selling and/or offering for sale the Accused Product.

55.     Plaintiff is informed and believes and, based thereon, alleges that Defendant actively induces end-users and distributors of the Accused Product to purchase the Accused Product and directly infringe the '513 Patent.  Defendant had actual knowledge of the '513 Patent at least by virtue of the filing of this Complaint and, despite this knowledge, it continues to provide manuals, assembly instructions, and/or marketing materials, for example the materials attached as **Exhibit 6**, to end-users of the Accused Product to use the product to infringe the '513 Patent and also provides such materials to its distributors to infringe the '513 Patent by selling and/or offering for sale the Accused Product.

56.     Plaintiff is informed and believes and, based thereon, alleges that Defendant is aware that end-users of the Accused Product would infringe the '513 Patent by, for example, using the Accused Product during the term of the '513 Patent, and that its distributors would

infringe the '513 Patent by, for example, selling and/or offering for sale the Accused Product during the term of the '513 Patent.

57.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has the specific intent to induce its customers to infringe the '513 Patent by, for example, using, selling, and/or offering for sale the Accused Product, which infringes the '513 Patent.

58.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has knowingly and intentionally infringed and continues to infringe the '464 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

59.     For example, use of the Accused Product infringes at least Claim 1 of the '464 Patent.

60.     The Accused Product includes a handpiece with a body that has a housing with a working end positioned along a first end of the body.  The working end of the handpiece has a distal end that is configured to contact the patient's skin surface.  The working end of the handpiece includes a perimeter at its distal end.

61.     The handpiece has a first aperture or opening arrangement that includes a port at or near the working end that is in fluid communication through a passageway with a vacuum source that is housed in the Accused Product.  The handpiece has a second aperture or opening arrangement that includes a second port at or near the working end that is in fluid communication with a treatment media source that is housed in the Accused Product.



First port in communication with vacuum source

Perimeter

Second port in communication with treatment media source

The vacuum gently pulls the skin into the tip to open up the pores, exfoliates and extracts impurities from the stratum corneum.

While the skin is being pulled into the tip, the 360-degree rotating tip spreads the solution evenly on the skin.

62.     The Accused Product is specifically designed to treat a patient's skin surface. For example, when in use, the handpiece in the Accused Product is positioned against the patient's skin surface.

63.     Plaintiff is informed and believe, and based thereon alleges, that activating the vacuum source in the Accused Product simultaneously facilitates the delivery of a liquid treatment media to the patient's skin surface through the second port and aspirates away spent media from the patient's skin surface through the first port and the passageway at the distal end of the handpiece.

64.     Plaintiff is informed and believe, and based thereon alleges, that activating the vacuum source facilitates the delivery of the treatment media to the patient's subsurface skin tissue and causes adjacent skin to puff up to facilitate the treatment method.

65.     An end-user of the Accused Product directly infringes the '464 Patent by using the product. A distributor of the Accused Product directly infringes the '464 Patent by selling and/or offering for sale the Accused Product.

66.     Plaintiff is informed and believes and, based thereon, alleges that Defendant actively induces end-users and distributors of the Accused Product to purchase the Accused Product and directly infringe the '464 Patent.  Defendant had actual knowledge of the '464 Patent at least by virtue of the filing of this Complaint and, despite this knowledge, it continues to provide manuals, assembly instructions, and/or marketing materials, for example the materials attached as **Exhibit 6**, to end-users of the Accused Product to use the product to infringe the '464 Patent and also provides such materials to its distributors to infringe the '464 Patent by selling and/or offering for sale the Accused Product.

67.     Plaintiff is informed and believes and, based thereon, alleges that Defendant is aware that end-users of the Accused Product would infringe the '464 Patent by, for example, using the Accused Product during the term of the '464 Patent, and that its distributors would infringe the '464 Patent by, for example, selling and/or offering for sale the Accused Product during the term of the '464 Patent.

68.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has the specific intent to induce its customers to infringe the '464 Patent by, for example, using, selling, and/or offering for sale the Accused Product, which infringes the '464 Patent.

69.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has knowingly and intentionally infringed and continues to infringe the '646 Patent, either literally or under the doctrine of equivalents, through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Product.

70.     For example, the Accused Product infringes at least Claim 1 of the '646 Patent. The Accused Product includes a handpiece for treating a patient's skin surface.  The handpiece includes a body that has a housing and a working end at the distal end of the body.  The working

end of the handpiece has a perimeter at its distal end that is configured to contact the patient's skin surface. The handpiece has a skin interface portion that is positioned within the perimeter of the handpiece and configured to contact the patient's skin surface during use.

71.     The handpiece has a first aperture having at least one first port that is located at or near the working end. The first port is in fluid communication through a passageway with a vacuum source that is housed in the Accused Product. The passageway ("waste passageway") in communication with the first port leads to a waste container that is also in the Accused Product.

72.     The handpiece also has a second aperture or opening arrangement that includes a second port along or near the working end. The second port is in fluid communication with a treatment media source that is housed in the Accused Product.

73.     Plaintiff is informed and believes and, based thereon, alleges that the vacuum source is configured to create a vacuum within the waste passageway and the working end, and the vacuum is configured to simultaneously deliver a treatment media from the treatment media source to the working end and remove used treatment media away from the working end via the passageway.

74.     Plaintiff is informed and believes and, based thereon, alleges that when the handpiece is positioned along the patient's skin surface and the vacuum source is activated, a treatment media is delivered to the patient's skin surface through the passageway and the second port because of the vacuum generated along the working end by the vacuum source, while used treatment media is aspirated away from the working end of the handpiece through the first port by the same suction force generated by the vacuum source.



First port in communication with vacuum source

Perimeter

Skin interface

Second port in communication with treatment media source

The vacuum gently pulls the skin into the tip to open up the pores, exfoliates and extracts impurities from the stratum corneum.

While the skin is being pulled into the tip, the 360-degree rotating tip spreads the solution evenly on the skin.

75.     An end-user of the Accused Product directly infringes the '646 Patent by using the product.  A distributor of the Accused Product directly infringes the '646 Patent by selling and/or offering for sale the Accused Product.

76.     Plaintiff is informed and believes and, based thereon, alleges that Defendant actively induces end-users and distributors of the Accused Product to purchase the Accused Product and directly infringe the '646 Patent.  Defendant had actual knowledge of the '646 Patent at least by virtue of the filing of this Complaint and, despite this knowledge, it continues to provide manuals, assembly instructions, and/or marketing materials, for example the materials attached as **Exhibit 6**, to end-users of the Accused Product to use the product to infringe the '646 Patent and also provides such materials to its distributors to infringe the '646 Patent by selling and/or offering for sale the Accused Product.

77.     Plaintiff is informed and believes and, based thereon, alleges that Defendant is aware that end-users of the Accused Product would infringe the '646 Patent by, for example, using the Accused Product during the term of the '646 Patent, and that its distributors would

infringe the '646 Patent by, for example, selling and/or offering for sale the Accused Product during the term of the '646 Patent.

78.     Plaintiff is informed and believes and, based thereon, alleges that Defendant has the specific intent to induce its customers to infringe the '646 Patent by, for example, using, selling, and/or offering for sale the Accused Product, which infringes the '646 Patent.

79.     Defendant's actions constitute willful and intentional infringement of the Asserted Patents.  Defendant infringed the Asserted Patents with reckless disregard of Plaintiff's patent rights.  Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the Asserted Patents.  Further, Defendant's acts of infringement of the Asserted Patents were not consistent with the standards of commerce for its industry.

80.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages in an amount that is not presently known to Plaintiff.

81.     Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

82.     Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

83.     Due to the aforesaid infringing acts, Plaintiff has suffered great and irreparable injury, for which Plaintiff has no adequate remedy at law.

84.     Defendant will continue to infringe and induce infringement of Plaintiff's patent rights to the great and irreparable injury of Plaintiff, unless enjoined by this Court.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seek relief as follows:

A.     That the Court enter judgment in favor of Plaintiff and against Defendant on all claims for relief alleged herein;

B.     An Order adjudging Defendant to have infringed and induced infringement of the Asserted Patents under 35 U.S.C. § 271;

C.     A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from (1) making, using, selling, offering to sell, and/or importing the Accused Product, and (2) infringing the Asserted Patents in violation of 35 U.S.C. § 271, either directly or indirectly, including inducing or contributing to their infringement;

D.     An Order that Defendant pay to Plaintiff actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, in accordance with 35 U.S.C. § 284;

E.     An Order for a trebling of damages and/or otherwise increasing damages because of Defendant's willful misconduct pursuant to 35 U.S.C. § 284;

F.     An Order adjudging that this case is exceptional under 35 U.S.C. § 285 and ordering Defendant to pay to Plaintiff its reasonable attorney fees incurred in this action;

G.     An Order awarding pre-judgment and post-judgement interest and costs as fixed by the Court; and

H.     Such other and further relief as this Court may deem just and proper.

## VI.    DEMAND FOR JURY TRIAL

Plaintiff Edge Systems, LLC hereby demands a trial by jury of all issues so triable.


Respectfully submitted,

Dated:   October 26, 2018          By: *s/ Richard Guerra*

Richard Guerra, Esq.
Fla. Bar No. 689521
Email: rguerra@brickellip.com
Rafael Perez, Esq.
Fla. Bar No. 543101
Email: rperez@brickellip.com
The Brickell IP Group, PLLC
1101 Brickell Avenue
South Tower, Suite 800
Miami, Florida 33131

Paul A. Stewart, Esq. (*pro hac vice to be submitted*)
Email:  paul.stewart @knobbe.com
Ali S. Razai, Esq. (*pro hac vice to be submitted*)
Email:  ali.razai@knobbe.com
Josepher Li, Esq. (*pro hac vice to be submitted*)
Email: josepher.li@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff,*
EDGE SYSTEMS LLC