# EXHIBIT N

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

_____

EDGE SYSTEMS LLC,

                Plaintiff,

          v.

CARTESSA AESTHETICS, LLC,

                Defendant.

_____

Civil Action No. 1:20-cv-6082

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff Edge Systems LLC ("Edge" or "Plaintiff") hereby complains of Defendant Cartessa Aesthetics, LLC ("Defendant" or "Cartessa") and alleges as follows:

## I.   THE PARTIES

1.     Edge is a California limited liability company having a principal place of business at 2277 Redondo Avenue, Signal Hill, California, 90755.

2.     Plaintiff is informed and believes, and thereon alleges, that Defendant Cartessa Aesthetics, LLC is a New York limited liability company having a principal place of business at 175 Broadhollow Road, Suite 185 Melville, NY 11747.

## II.   JURISDICTION AND VENUE

3.     This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, _et seq._

4.     This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within New York and this judicial district. For example, Defendant has a principal place of business in this judicial district at 175 Broadhollow

Road, Melville, NY 11747. Plaintiff is informed and believes, and thereon alleges, that Defendant also sells and/or offers for sale infringing products in this judicial district and/or sells such products into the stream of commerce knowing they will be sold in New York and this judicial district.

6.        Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Defendant has a regular and established place of business in this judicial district and because Defendant has committed acts of infringement by selling and/or offering to sell infringing products in this judicial district. Venue is also proper because Defendant resides in this district.

### III. GENERAL ALLEGATIONS

### A.        The Edge Patents and Technology

7.        Edge is a worldwide leader in the design, development, manufacture and sale of high-quality skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems. These systems rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with a therapeutic solution, called a "serum," that moisturizes and protects the treated skin surface. Edge markets and sells these systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians and aestheticians at medical spas.

8.        Edge's flagship system is its revolutionary HydraFacial MD® system, which is the premier hydradermabrasion system sold in the United States. Edge's revolutionary HydraFacial MD® system is protected by numerous United States patents. In addition to the HydraFacial MD® system, Edge designs, develops, manufactures and sells other patented hydradermabrasion systems, including the HydraFacial® Tower™, the HydraFacial® Allegro™, the HydraFacial® Wave™, the HydraFacial® Elite™, HydraFacial® Nectre™ and the

HydraFacial® Core™ systems. These Edge hydradermabrasion systems are referred to herein collectively as "the HydraFacial® Systems."

9. On November 4, 2003, the USPTO duly and lawfully issued U.S. Patent No. 6,641,591 ("the '591 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '591 Patent is attached hereto as **Exhibit 1**.

10. On November 29, 2011, the USPTO duly and lawfully issued U.S. Patent No. 8,066,716 ("the '716 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '716 Patent is attached hereto as **Exhibit 2**.

11. On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '513 Patent is attached hereto as **Exhibit 3**.

12. On January 24, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,550,052 ("the '052 Patent"), titled "CONSOLE SYSTEM FOR THE TREATMENT OF SKIN." A true and correct copy of the '052 Patent is attached hereto as **Exhibit 4.**

13. On October 3, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,775,646 ("the '646 Patent"), titled "DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM." A true and correct copy of the '646 Patent is attached hereto as **Exhibit 5**.

14. Edge is the owner of all right, title, and interest in the '591 Patent, the '716 Patent, the '513 Patent, the '052 Patent and the '646 Patent (collectively, the "Asserted Patents").

15.     The '591 Patent, the '716 Patent, the '513 Patent and the '646 Patent (collectively "the Shadduck Patents") expired in August 2020.  Defendant introduced its infringing Skinwave system in 2019 and therefore infringed the Shadduck Patents while those patents were in effect.

**B.     Defendant's Infringing Skinwave System and Aqua Scaling Tips**

16.     Defendant is in the business of sourcing aesthetic medical devices manufactured by others, including hydradermabrasion devices that compete with Edge's HydraFacial® Systems.  Defendant markets and sells these medical devices throughout the United States to end users, such as dermatologists, plastic surgeons, cosmetic physicians and aestheticians at medical spas.

17.     One of the competing hydradermabrasion devices used, sold, offered for sale, and/or imported into the United States by Defendant is known as the Skinwave system.  Defendant has offered the Skinwave system for sale on its website.  An example of one of Defendant's advertisements for the Skinwave system is attached hereto as **Exhibit 6**,

18.     Defendant promotes and offers to sell the Skinwave system on its website.  *See* https://www.cartessaaesthetics.com/skinwave (last visited December 11, 2020) (**Exhibit 6**). Defendant's website states that it "teamed up with Eunsung Global manufacturer to exclusively bring Skinwave to the US."  The Skinwave system sold by Defendant is manufactured by Eunsung Global ("Eunsung") and is structurally and functionally the same as a hydradermabrasion system sold by Eunsung under the name "Hydra Touch H2."  *See* http://esglobal.co.kr/en/products-intro/facial-care/hydra_touch_h2/ (last visited December 11, 2020) (**Exhibit 7**). Defendant's Skinwave system and the Hydra Touch H2 are collectively referred to as the "Skinwave System."

19.     The Skinwave System is a hydradermabrasion device for treating the skin surface of a patient.  The Skinwave System, shown in the image below, includes a handpiece that is configured to receive a replaceable tip at the end of the handpiece.  Defendants refer to this tip as the "Aqua Scaling Tip."



**Fig. 1**

20.     The Aqua Scaling Tip includes several openings.  Fluid may be delivered, and waste may be suctioned away, through these openings.



**Fig. 2:** Aqua Scaling Tip (small)

21.     The Aqua Scaling Tip is made of hard plastic and includes a working surface with a pattern of raised surfaces and ports.  The raised surfaces include edges that are sharp enough to abrade and exfoliate skin.  *See* **Exhibit 7** (the Skinwave System "exfoliat[es]").



Hard Plastic Structures

**Fig. 3:** Aqua Scaling Tip (small) (black highlights added).

22.     The Skinwave System includes a manifold and a console that allows a user to control the selection of solutions, flow of solutions and vacuum suction.  *See* **Exhibit 7** ("4 different solution selection," "Solution emission in 3 different levels," and "Level adjustable Vacuum.").  The Skinwave System also includes a vacuum source that creates suction for drawing the patient's skin against the Aqua Scaling Tip.  Eunsung's website explains that, "by sucking waste materials, it is possible to remove wastes from the pores without scratching or scratching [sic] the skin."  *Id*.



**Fig. 4:** Skinwave System (Exhibit 7).

-6-

23.     The Skinwave System delivers fluid from treatment media containers to the skin.  Defendants sells skin treatment media including "solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2)."  **Exhibit 6**.

24.     Defendant's Aqua Scaling Tips can be attached and detached to the handpiece of the Skinwave System.  Exemplary Aqua Scaling Tips are shown below.

 

**Fig. 6:** Skinwave Handpiece (Ex. 6) (left);  **Fig. 5** (Aqua Scaling Tip) (Ex. 6) (right).

25.     Defendant either had actual knowledge of the Asserted Patents (or their respective applications) when it began offering for sale and selling the infringing Eunsung-manufactured products, or it acted with willful blindness to its infringement.  Defendant's supplier Eunsung had actual knowledge of Plaintiff's patent portfolio – and the '591, '513, and '716 patents specifically – at least as early as April 25, 2014 and February 1, 2017, when Edge sent a letter and emails to Eunsung concerning sales of Eunsung hydradermabrasion products in the United States.  **Exhibits 8** and **9**.  Plaintiff is informed and believes, and thereon alleges, that when Defendant "teamed up with [Eunsung] to exclusively bring Skinwave to the US," it conducted due diligence concerning Eunsung and any allegations of patent infringement made against its hydradermabrasion products.  In conducting such due diligence, Defendant would

have been made aware of Edge's allegations concerning the '591, '513, and '716 patents. The applicability of these patents to the Skinwave System is apparent from the face of the patents.

26.     In addition, Defendant was a competitor in the aesthetic skin resurfacing equipment industry when it launched its Skinwave System. Defendant therefore knew that Plaintiff was an industry leader.

27.     Further, Plaintiff and Defendant are members of some of the same trade organizations and attend some of the same trade shows. For example, Plaintiff and Defendant both had booths at "The Aesthetic Show" held in Las Vegas July 11-14, 2019. *See* **Exhibit 10** at 46, 60. The conference program included a summary which identified Plaintiff as having 68 issued or pending patents and provided a link to Plaintiff's website. *Id*. at 60. The conference map indicates that Plaintiff's and Defendant's trade show booths were located within 100 feet of each other. *Id*. at 38.

28.     Defendant was therefore familiar with Plaintiff and its aesthetic skin-resurfacing products when it launched its Skinwave System for aesthetic skin resurfacing.

29.     Given this familiarity, Defendant necessarily would have researched Plaintiff and its patent portfolio before introducing the infringing Skinwave System. As part of that research, Defendant would have visited Plaintiff's website, where at least the '591,'513, and '716 Patents were, and remain, prominently listed. *See* https://hydrafacialco.com/patents/ (last visited December 14, 2020) (**Exhibit 11**).

30.     At a minimum, Defendant had actual knowledge of the Asserted Patents no later than about September 16, 2020, when it received a letter from Plaintiff informing Defendant of the Asserted Patents and its infringement thereof.

31.     Defendant has infringed and infringes the '052 Patent, and it infringed each of the Shadduck Patents before the patents expired.

32.     Plaintiff has never authorized Defendant's offer for sale, importation or sale of the Skinwave System, associated serums or associated tips.

33.     Defendant's acts of infringement were willful, intentional, and deliberate. Defendant has infringed each of the Asserted Patents with reckless disregard for Plaintiff's patent rights.  Defendant knew, or should have known, that its actions constituted infringement of the Asserted Patents.

## IV. COUNT I

## INFRINGEMENT OF THE '591 PATENT

34.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-33 above.

35.     Defendant knowingly and intentionally infringed the '591 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '591 Patent.

36.     For example, as set forth in the claim chart below, the Skinwave System infringed at least Claim 1 of the '591 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 1. A system for treating the skin surface of a patient, comprising: | The Skinwave System is a system for treating the skin surface of a patient. For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |
| (a) an instrument body with a distal working end that defines a skin interface portion for contacting the skin; | <br>**Fig. 6**<br><br>The Skinwave System has a handpiece that includes an instrument body and a distal working end with a tip (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.* https://www.facebook.com/cartessaaesthetics/videos/361807448055124/ https://www.facebook.com/cartessaaesthetics/videos/311527229734983/ and https://www.youtube.com/watch?v=nFwmtIaJ0U&feature=youtu.be (all last visited December 11, 2020) (collectively, "the Skinwave Videos"). |

(b) a first aperture arrangement in said skin interface consisting of at least one port in communication with a treatment media source;

First Aperture Arrangement

Port



**Fig. 3**

The Skinwave System has a first aperture arrangement that delivers treatment media from a treatment media source to the skin through a port (i.e. the port is "in communication" with the treatment media source). *See* Figs. 1 & 3.

Treatment Media Sources



**Fig. 1**

(c) a second aperture arrangement in said skin interface consisting of at least one port in communication with a vacuum source for removing treatment media and removed tissue from the skin interface; and

Second Aperture Arrangement          Exemplary Ports



**Fig. 3**

The Skinwave System has a second aperture arrangement with eight ports located near the periphery. These ports are connected to a vacuum source. *See* Figs. 1 & 3.

When activated, the vacuum source creates a vacuum that suctions used treatment media and abraded skin particles through the ports and deposits them in a debris receptacle located on the back of the device. *See* **Exhibit 6** & **Exhibit 7**. The vacuum source is located inside the device casing.



**Fig. 1**

| (d) wherein the skin interface comprises an abrading structure with substantially sharp edges for abrading tissue. | The tip is made of hard plastic and comprises a configuration with substantially sharp edges that abrade skin when the tip is translated across the skin. *See* Fig. 3.<br><br><br><br>**Fig. 3** |
|---|---|

37.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.  Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

38.     Defendant's infringement was willful.  Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

39.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## V.  COUNT II

## INFRINGEMENT OF THE '513 PATENT

40.      Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-39 above.

41.      Defendant knowingly and intentionally infringed the '513 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '513 Patent.

42.      For example, as set forth in the claim chart below, the Skinwave System infringed at least Claim 1 of the '513 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 1. A system for treating skin, comprising: | The Skinwave System is a system for treating the skin surface of a patient.  For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| | |
|---|---|
| a handheld device comprising a main body and a working end along a distal end of the main body; | The Skinwave System includes a handheld device having a distal working end with a tip (e.g., the Aqua Scaling Tip). *See* **Exhibit 6**.<br><br><br><br>**Fig. 6** |
| an outer periphery extending along the distal end of the handheld device; | <br>**Fig. 6**<br><br><br>**Fig. 3** |

| at least one surface element extending distally from the working end of the handheld device, said at least one surface element being positioned within an interior area circumscribed by the outer periphery; | Surface Elements<br><br>**Fig. 3**<br><br>As shown, surface elements extend distally from the working end, and are positioned within the outer periphery. *See* Fig. 3. |
|---|---|
| wherein the at least one surface element comprises at least one sharp edge configured to abrade skin when said handheld device is moved relative to a skin surface; and | The surface elements are made of hard plastic and comprise a configuration with sharp edges that abrade skin when the tip is translated across the skin surface. *See* Fig. 3. |
| at least one opening along the working end of the handheld device; | The Skinwave System has eight openings located near the periphery of the working end of the handheld device. *See* Fig. 3.<br><br>Exemplary Openings<br><br>**Fig. 3** |

-16-

wherein the at least one opening is configured to be placed in fluid communication with a vacuum source via a passageway, said passageway being configured to convey debris away from the working end when said vacuum source is activated; and

The Skinwave System includes a vacuum source. *See* **Exhibit 6** and **Exhibit 7**. When activated, the vacuum source creates a vacuum that suctions used treatment media and removed skin particles through the openings and deposits them in a debris receptacle located on the back of the device. *Id*. When in use the vacuum will draw the skin against the outer periphery.

Passageway



**Fig. 1**

Waste



**Fig. 4**

The vacuum source is located inside the device casing.

| wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure. | As shown below, in **Fig. 7** (an imprint of the Aqua Scaling Tip (small) purchased from Cartessa) the entire outer periphery contacts the skin surface when used during a treatment procedure.  **Fig. 7** The entire circumference of the outer periphery contacts the skin during use. *See e.g.,* Fig. 7, the Skinwave Videos**.** |

43.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.  Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

44.     Defendant's infringement was willful.  Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

45.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

# VI. COUNT III

## INFRINGEMENT OF THE '716 PATENT

46.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-45 above.

47.     Defendant knowingly and intentionally infringed the '716 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '716 Patent.

48.     For example, the Skinwave System infringed at least Claim 11 of the '716 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 11. A system for treating a skin surface of a patient, comprising: | The Skinwave System is a system for treating the skin surface of a patient.   For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| | |
|---|---|
| a handheld device comprising a main body and a working end attached to a distal end of the main body, said main body defining a longitudinal axis, said working end comprising an abrading structure, wherein said abrading structure comprises a plurality of abrading elements configured to abrade skin, wherein each abrading element comprises a sharp edge; and | The Skinwave System has a handheld device having a distal working end with a tip (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See* **Exhibit 6**.<br><br><br>**Fig. 6**<br><br>The tip is made of hard plastic and comprises a configuration with a plurality of elements with sharp edges that abrade skin when the tip is translated across the skin surface (the abrading elements). *See* Fig. 3.<br><br><br>**Fig. 6**    **Fig. 3** |

at least one aperture along the working end, said at least one aperture being in fluid communication with a vacuum source adapted to apply suction to all of the at least one aperture in order to draw abraded skin away from the working end,

The Skinwave System has at least one aperture located along the working end. *See* Fig. 3. These apertures are connected to a vacuum source. *See* **Exhibit 6** and **Exhibit 7**.

Exemplary Apertures



**Fig. 3**

When activated, the vacuum source creates a vacuum that suctions used treatment media and abraded skin particles through the apertures and deposits them in a debris receptacle located on the back of the device.

Passageway



**Fig. 1**



| | |
|---|---|
| | **Fig. 4**<br><br>The vacuum source is located inside the device casing. |
| wherein the at least one aperture and the abrading elements are located completely within a raised outer periphery of the working end. | **Fig. 3**<br><br>As can be seen in the image, an outer periphery encircles the abrading elements and apertures. *See* Fig. 3. |

49.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages. Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

50.     Defendant's infringement was willful.  Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

51.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## VII. COUNT IV

## INFRINGEMENT OF THE '646 PATENT

52.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-51 above.

53.     Defendant infringed the '646 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '646 Patent.

54.     For example, as set forth in the claim chart below, the Skinwave System infringed at least Claim 1 of the '646 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 1. A handheld device for treating a skin surface, comprising: | The Skinwave System is a system for treating the skin surface of a patient using a handheld device.  For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| | |
|---|---|
| a body comprising a housing; |  |

The rest of the content is within the second image context.

| | |
|---|---|
| a working end portion positioned along a first end of the body, the working end portion comprising a distal end configured to contact a skin surface, wherein the working end portion comprises a perimeter along the distal end configured to contact the skin surface, a skin interface positioned along the interior of the perimeter, wherein the skin interface is configured to contact the skin surface during use; | **Fig. 6**<br><br>The Skinwave System has a working end with a tip (e.g., the Aqua Scaling Tip) at the distal end. *See* **Exhibit 6**. The distal end of the working end (the tip) contacts the skin during use. *See e.g.,* **Exhibit 6**, the Skinwave Videos.<br><br>As shown below, the tip has a perimeter encircling a skin interface. *See* Fig. 3. |



| | |
|---|---|
| **Fig. 6** | **Fig. 3** |

| | |
|---|---|
| a first aperture arrangement comprising at least one first port located along or near the working end portion, the at least one first port being in fluid communication with a vacuum source via at least one waste passageway extending through the housing; and | The Skinwave System has a first aperture arrangement with eight ports positioned near the perimeter along the working end portion. *See* Fig. 3. These ports are connected to a vacuum source. *See* **Exhibit 6** & **Exhibit 7**.<br><br><br><br>**Fig. 3**<br><br>When activated, the vacuum suctions used treatment media and abraded skin particles through the first ports and deposits them in a debris receptacle located on the back of the device. *See* **Exhibit 6** & **Exhibit 7**. The vacuum source is located inside the device casing. |



**Fig. 1**



**Fig. 4**

| | |
|---|---|
| a second aperture arrangement comprising at least one second port located along or near the working end portion, the at least one second port being in fluid communication with a hydration treatment media source; | The Skinwave System has a second aperture arrangement that delivers treatment media from a treatment media source to the skin through a port positioned in the center of the working end (i.e. the port is "in fluid communication" with the treatment media source). *See* Fig. 3, **Exhibit 6** & **Exhibit 7**. |



Second Port

**Fig. 3**

Treatment Media

**Fig. 4**

Passageway

Treatment Media Sources

**Fig. 1**

| wherein the vacuum source is configured to create a vacuum within the at least one waste passageway and the working end portion, and wherein the vacuum source is configured to simultaneously deliver a treatment media from the hydration treatment media source to the working end portion and remove spent treatment media away from the working end portion via the at least one waste passageway; | The vacuum source of the Skinwave System creates a vacuum within the waste passageway and the working end portion. This vacuum source delivers a treatment media from the hydration treatment media source (i.e., the solution bottle) to the working end portion. Simultaneously, the vacuum source also removes spent (i.e., used) treatment media away from the working end portion through the waste passageway. |
| --- | --- |
| wherein, when the vacuum source is activated and the working end portion of the device is positioned along a skin surface, hydration treatment media is delivered to the skin surface through the at least one passageway and the at least one second port due to the vacuum generated along the working end portion by the vacuum source, and spent treatment media is, at least partially, simultaneously aspirated away from the working end portion through the at least one first port by the same suction force generated by the vacuum source. | When the vacuum source is activated and the working end portion is positioned along a skin surface, treatment media is delivered to the skin surface through the second port due to the vacuum generated along the working end portion by the vacuum source. At the same time, spent (i.e., used) treatment media is aspirated away from the working end portion through the first ports by the same suction force generated by the vacuum source. |

55.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.  Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

56.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## VIII.    COUNT V

### INFRINGEMENT OF THE '052 PATENT

57.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-56 above.

58.     Defendant knowingly and intentionally infringes the '052 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System.

59.     For example, as set forth in the claim chart below, the Skinwave System infringes at least Claim 1 of the '052 Patent.

| Claim Language | Accused Product |
|---|---|
| 1.   A   system   for performing   a   skin treatment procedure, the system comprising: | The Skinwave System is a system for treating the skin surface of a patient.  For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| | |
|---|---|
| a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid; | <br>**Fig. 1**<br><br>The Skinwave System includes a manifold to which at least a first and second fluid container are attached, placing them in fluid communication therewith. *See* **Exhibit 6** & **Exhibit 7**. The Skinwave System has a console which controls the manifold, allowing users to select "Solution emission in 3 different levels," and control "4 different solution selection[s]." *See* **Exhibit 7**. |
| a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The Skinwave System has a handpiece with a tip (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.,* **Exhibit 6**, the Skinwave Videos.<br><br><br>**Fig. 6** |

| | |
|---|---|
| a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | <br>Supply Conduit<br>Distal End Coupled to Handpiece<br><br>**Fig. 1**<br><br>The Skinwave System has a supply conduit, coupled to the handpiece, which connects the handpiece to the manifold, placing the two in fluid communication. *See* **Exhibit 6** & **Exhibit 7**. |
| wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The Skinwave System has a manifold which is configured to control the flow of treatment material from the fluid containers through the supply conduit. *See* **Exhibit 6** & **Exhibit 7**.<br><br><br>Manifold<br><br>**Fig. 1** |
| a vacuum source; | The Skinwave System has a vacuum source. *See* **Exhibit 6** & **Exhibit 7**. The vacuum is located inside the device casing. |
| a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject | The Skinwave System has a waste conduit connected to the handpiece and a vacuum source. *See* **Exhibit 6** & **Exhibit 7**. When activated, the vaccum source suctions used treatment media and abraded skin particles (waste) through the waste conduit and deposits them in a waste receptacle located on the back of the device. *Id.* |

during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and



**Fig. 1**

**Fig. 4**

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and

The Skinwave System delivers treatment media from a fluid containers, through the supply conduit, to the skin. *See* **Exhibit 6** & **Exhibit 7**.



**Fig. 1**



**Fig. 4**

The user can select fluids for delivery through the supply conduit. *Id*. For example Defendant's website explains:

Three nutrient-rich solutions optimize skin revitalization. Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid to address top skincare needs: exfoliating, oil control and moisturization. Dial-up the volume of one of these solutions to offer a more customizable treatment.

| | |
|---|---|
| wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. | In use, the vacuum source of the Skinwave System creates a vacuum within the waste passageway and the tip. This vacuum source delivers a treatment media from the fluid containers to the tip. Simultaneously, the vacuum source also removes spent treatment media (i.e., waste) away from the working end portion through the waste passageway. |

60.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.  Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

61.     Defendant's infringement is willful.  Pursuant to 35 U.S.C. § 284, Edge is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

62.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Edge is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

63.     Due to the aforesaid infringing acts, Plaintiff has suffered irreparable injury, for which Plaintiff has no adequate remedy at law.

64.     Unless enjoined by this Court, Defendant will continue to infringe Plaintiff's patent rights and cause Plaintiff further irreparable injury.

## IX.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following relief:

A.     A judgment in favor of Plaintiff and against Defendant on all claims alleged herein;

B.     A judgment that Defendant has infringed the Shadduck Patents under 35 U.S.C. § 271 during the term of the Shadduck Patents;

C.     A judgment that Defendant has infringed the '052 Patent under 35 U.S.C. § 271;

D.     A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from (1) making, using, selling, offering to sell, and/or importing into the

United States the Skinwave System, and (2) infringing the '052 Patent in violation of 35 U.S.C. § 271;

      E.    An accounting of all Defendant's gains, profits, and advantages derived from its infringement of the Asserted Patents in violation of 35 U.S.C. § 271, and an Order that Defendant pay to Plaintiff actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, in accordance with 35 U.S.C. § 284;

      F.    An order trebling or otherwise increasing damages pursuant to 35 U.S.C. § 284 because of Defendant's willful infringement;

      G.    An order finding this case exceptional under 35 U.S.C. § 285 and ordering Defendant to pay Plaintiff its reasonable attorney fees incurred in this action;

      H.    Pre-judgment and post-judgement interest and costs as fixed by the Court; and

      I.    Such other and further relief as this Court may deem just and proper.

# X.   DEMAND FOR JURY TRIAL

Plaintiff Edge Systems, LLC hereby demands a trial by jury of all issues so triable.

Dated:   __December 14, 2020__          By:  _/s/ Karen M. Cassidy_                              

> Craig S. Summers (*pro hac vice pending*)
> Email: craig.summers@knobbe.com
> Ali S. Razai (*pro hac vice pending*)
> Email: ali.razai@knobbe.com
> Sean M. Murray (*pro hac vice pending*)
> Email: sean.murray@knobbe.com
> Karen M. Cassidy (*pro hac vice pending*)
> Email: karen.cassidy@knobbe.com
> **KNOBBE, MARTENS, OLSON & BEAR, LLP**
> 2040 Main Street, Fourteenth Floor
> Irvine, CA  92614
> Telephone: (949) 760-0404
> Facsimile: (949) 760-9502
>
> *Attorneys for Plaintiff*,
> EDGE SYSTEMS LLC