**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| EDGE SYSTEMS LLC, | ) | Civil Action No. 4:20-cv-04335 |
| Plaintiff, | ) | |
| v. | ) | |
| AGELESS SERUMS LLC, | ) | |
| Defendant. | ) | |

## EDGE SYSTEMS LLC'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES

# TABLE OF CONTENTS

**Page No.**

I.      STAGE OF PROCEEDINGS AND ISSUES TO BE DECIDED .....................1

II.     BACKGROUND ...............................................................................................1

    A.      The California Litigation................................................ 1

    B.      The Litigation In This Court ......................................... 3

III.    SUMMARY OF ARGUMENT........................................................................4

IV.     STANDARDS OF REVIEW ...........................................................................5

V.      AGELESS' COUNTERCLAIMS SHOULD BE DISMISSED UNDER
THE FIRST-TO-FILE RULE .........................................................................6

VI.     THIS COURT SHOULD DISMISS AGELESS' ANTITRUST
COUNTERCLAIM FOR FAILURE TO STATE A CLAIM ...........................7

    A.      Ageless Has Failed To Plausibly Allege Any Relevant
Antitrust Market .......................................................... 7

    B.      Ageless Has Failed To Plausibly Allege Edge Has Market
Power In Any Relevant Antitrust Market .................................... 10

        1.      Ageless' Allegations Do Not Plausibly Show Market
Power.................................................................... 10

        2.      Ageless' Patent Allegations Do Not Plausibly Allege
Market Power ........................................................ 11

        3.      Ageless Has Not and Cannot Plausibly Allege Any
Unlawful Tie ......................................................... 12

        4.      Ageless Has Not Plausibly Alleged Harm to
Competition and Antitrust Injury......................................... 15

VII.    THIS COURT SHOULD STRIKE AGELESS' PATENT MISUSE
AND ANTITRUST AFFIRMATIVE DEFENSES ........................................15

VIII.   THIS COURT SHOULD DISMISS THE UNFAIR COMPETITION
AND TORTIOUS INTERFERENCE CLAIMS TO THE EXTENT
THEY ARE BASED UPON ALLEGED ANTITRUST VIOLATIONS ........15

IX.     THIS COURT SHOULD DISMISS ALL COUNTERCLAIMS
AGAINST BEAUTY HEALTH ....................................................................16

# TABLE OF CONTENTS
## (cont'd)

**Page No.**

X.    THIS COURT SHOULD DISMISS ALL COUNTERCLAIMS AGAINST MR. CARNELL ...................................................................16

    A.    The Antitrust Counterclaim Against Mr. Carnell ........................ 16

    B.    The "Defamation And False Advertising" Counterclaim Against Mr. Carnell .................................................................... 16

    C.    The Unfair Competition Counterclaim Against Mr. Carnell ....... 18

    D.    The Tortious Interference Counterclaim Against Mr. Carnell ...................................................................................... 18

XI.    CONCLUSION .............................................................................18

# TABLE OF AUTHORITIES

**Page No(s).**

*In re Amerijet Int'l, Inc.*,
  785 F.3d 967 (5th Cir. 2015) ............................................................ 5, 6

*Apple, Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) .................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................6

*Chawla v. Shell Oil Co.*,
  75 F. Supp. 2d 626 (S.D. Tex. Nov. 3, 1999) .......................................... 7, 8, 9, 10

*Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ...........................................................17

*Crossland v. Canteen Corp.*,
  711 F.2d 714 (5th Cir. 1983) ...........................................................12

*Estrada v. Caliber Home Loans, Inc.*,
  172 F. Supp. 3d 1108 (C.D. Cal. 2016) ..............................................16

*Ferris Mfg. v. Thai Care, Co., Ltd.*,
  No. 4:17-CV-01024-O, 2019 WL 3206121 (N.D. Tex. July 16, 2019) ...............13

*Firstliner Indus., Inc. v. Ground and Pipe Techs., L.L.C.*,
  No. CIV.A. G-05-587, 2005 WL 2861002 (S.D. Tex. Oct. 31, 2005) ............... 5, 6

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ............................................. 16, 17

*Herrera v. Utilimap Corp.*,
  No. CIV.A. H-11-3851, 2012 WL 3527065 (S.D. Tex. Aug. 14, 2012) ................6

*Holly Hunt Enters., Inc. v. JL Design, Inc.*,
  Case No. 2:18-cv-8218-GW-(MRWx), Dkt. 29
  (C.D. Cal. Jan. 17, 2019) (submitted to this Court as Dkt. 46, Ex. 4) ..................16

*Illinois Tool Works Inc. v. Independent Ink, Inc.*,
  547 U.S. 28 (2006) ............................................................... 10, 11

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
  342 U.S. 180 (1952) ..................................................................5

*Paladin Assocs., Inc. v. Montana Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ...........................................................14

## TABLE OF AUTHORITIES
### (*cont'd*)

**Page No(s).**

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
  227 F.3d 489 (5th Cir. 2000) ...................................................17

*Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*,
  802 F. Supp. 1544 (S.D. Tex. 1991) .............................. 7, 15

*Rohm and Haas Co. v. Dawson Chemical Co., Inc.*,
  557 F. Supp. 739 (S.D. Tex. 1983) .......................................14

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
  53 F.3d 1073 (9th Cir. 1995) ..................................................13

*Sherwin–Williams Co. v. Dynamic Auto Images, Inc.*,
  No. SACV161792JVSSSX, 2017 WL 3081822
  (C.D. Cal. Mar. 10, 2017) ............................................. 14, 15

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  536 F. Supp. 2d 1191 (C.D. Cal. 2008) ...................................8

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
  679 F. Supp. 2d 1120 (C.D. Cal. 2009) .................................17

*United States v. Bestfoods*,
  524 U.S. 51 (1998) .................................................................16

*Vargas v. HWC General Maintenance, LLC*,
  No. CIV.A. H-11-875, 2012 WL 948892 (S.D. Tex. Mar. 20, 2012) ...................6

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*,
  751 F.2d 721 (5th Cir. 1985) ............................................. 5, 6

## OTHER AUTHORITIES

Fed. R. Civ. P. 12................................................................. 1, 3, 6

J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:41
  (5th ed.) ................................................................................13

## I.  <u>STAGE OF PROCEEDINGS AND ISSUES TO BE DECIDED</u>

On July 12, 2021, Defendant Ageless Serums asserted in this action an antitrust counterclaim and three other tort-based counterclaims against Edge Systems, its parent company, and its Chief Executive Officer.  These four counterclaims are identical to the counterclaims Ageless first asserted against these same parties in the Central District of California on November 30, 2020.  The California court has already dismissed those counterclaims once for failure to state a claim, and a second motion to dismiss for failure to state a claim has been fully briefed and is under submission.

Edge now moves to dismiss Counts I through IV of Ageless' counterclaim under the first-to-file rule.  These counterclaims should not be litigated simultaneously in two courts.  In addition, Edge moves to dismiss Ageless' counterclaims for failure to state a claim – the same basis on which the California court has already dismissed the counterclaims once and has been asked to dismiss them again.  Finally, Ageless has asserted affirmative defenses for "patent misuse" and for "unlawful tying and illegality," both of which merely incorporate by reference the antitrust counterclaim.  Edge moves to strike these two affirmative defenses under Fed. R. Civ. P. 12(f).

On September 3, 2021, Ageless filed a Second Amended Answer and Counterclaim. Dkt. 67.  Ageless made no amendments to the counterclaims or affirmative defenses at issue on this motion.  Accordingly, Edge is proceeding with this motion in accordance with the previously stipulated briefing schedule.

## II.  <u>BACKGROUND</u>

### A.  <u>The California Litigation</u>

Edge designs, develops, manufactures, and sells high-quality skin resurfacing and rejuvenation systems.  Ex. 1 ¶ 7.  These systems rejuvenate skin by cleansing and exfoliating the skin surface, extracting debris from pores, and then nourishing the skin's surface with a therapeutic solution known as a "serum."  *Id.*  Edge sells its systems and serums under its registered HydraFacial® trademark.  *Id.* ¶¶ 9-10.  In addition, Edge licenses its customers to provide treatments to consumers under the HydraFacial® mark.

*Id.* ¶ 17.   Edge's trademark license agreement requires its customers to use only HydraFacial® systems and HydraFacial® serums when providing treatments to the public under the HydraFacial® mark.  *Id.  See also* Ex. 6 (copy of Edge's Trademark License Agreement).

Ageless sells its own serums to Edge's customers.  Ex. 1 ¶ 21.  Edge alleges that Ageless induces those customers to market their treatments as HydraFacial® treatments even when the customers are using Ageless' serums as a substitute for genuine Edge HydraFacial® serums.  *Id.* ¶¶ 31-38.  On October 21, 2020, Edge sued Ageless in the Central District of California, its home forum, for inducing Edge's customers to infringe Edge's HydraFacial® mark and to breach their trademark license agreements with Edge.  *Id.* ¶¶ 42-53, 63-70.  On November 30, 2020, Ageless filed counterclaims alleging antitrust violations, unfair competition, defamation and false advertising, and tortious interference with business relations.  Ex. 2.  Ageless alleged that Edge's trademark license agreements unlawfully tied the sale of Edge's HydraFacial® systems to the sale of Edge's HydraFacial® serums.  *Id.* ¶ 15.

On Edge's motion, the California court dismissed Ageless' counterclaims for failure to state a claim.  Ex. 3.  The court held that Edge's trademark license agreement did not condition the sale of Edge's HydraFacial® systems upon the purchase of Edge's HydraFacial® serums.  *Id*. at 6.  Instead, the court held, the agreement merely required the use of genuine HydraFacial® products by any customer who markets its treatments as HydraFacial® treatments.  *Id*. at 6-8.  The court also dismissed other Ageless counterclaims and struck Ageless' antitrust defense.  *Id.* at 8.

Ageless then filed an amended counterclaim, this time naming Edge's parent company Beauty Health Company and Edge's CEO Clint Carnell, as additional counterclaim defendants.  Ex. 4.  Ageless' latest counterclaim in California is essentially identical to the counterclaim it later filed in this Court.  *Compare* Ex. 4 *with* Dkt. 35.  Edge has again moved to dismiss Ageless' antitrust counterclaim for failure to state a claim and to strike Ageless' antitrust defense, raising the same arguments Edge raises in the present

motion.  Ex. 5 at 3-20.  Edge has also moved to dismiss the counterclaims against Beauty Health and Mr. Carnell, again raising the same arguments Edge raises in the present motion.  *Id.* at 20-23.  The motion in California has been fully briefed and is under submission.

## B.    The Litigation In This Court

In addition to owning the HydraFacial® trademark, Edge also owns six relevant patents relating to its HydraFacial® systems and methods of using those systems.  Dkt. 1 ¶¶ 10-16.  In December 2020, Edge sued Ageless in this Court, Ageless' home forum, for inducing infringement of Edge's patents through Ageless' sales of its serums for systems. *Id.* ¶¶ 35-78.  Edge chose this Court because it is the only court with proper venue in this patent case.

On July 12, 2021, more than seven months after filing its counterclaims in California, Ageless filed identical counterclaims in this Court.  Dkt. 35.  Ageless again alleges that Edge has violated the antitrust laws by requiring its customers to purchase Edge HydraFacial® serums as a condition for purchasing Edge HydraFacial® systems.  *Id.* ¶¶ 26-51.  Ageless also alleges again that Edge has engaged in unfair competition by, among other things, engaging in the same alleged antitrust conduct.  *Id.* ¶¶ 53-56.  Ageless also alleges "defamation and false advertising" and "tortious interference with business relations," *id*. ¶¶ 58-75, 77-83, again relying on the same allegations as in California.  In addition, as in California, Ageless has added Beauty Health and Mr. Carnell to its counterclaims.  *Id.* ¶¶ 6-7.  Finally, Ageless repeats from California its antitrust affirmative defense, and ads an affirmative defense of patent misuse based on the same allegations.  *Id.* (Sixth and Twelfth Defenses).  On September 3, 2021, Ageless re-asserted these same counterclaims and affirmative defenses verbatim in a Second Amended Answer and Counterclaim.  Dkt. 67.

Edge now seeks dismissal of Ageless' counterclaims, Counts I through IV, based on the first-to-file rule.  In addition, as in the California action, Edge seeks dismissal under Fed. R. Civ. P. 12(b)(6) of the following Ageless counterclaims: (a) the antitrust

counterclaim against Edge, (b) the unfair competition and tortious interference counterclaims against Edge, to the extent that they are based upon alleged antitrust misconduct, and (c) all counterclaims against Beauty Health and Mr. Carnell.  Edge also seeks to strike Ageless' antitrust and patent misuse defenses.

## III.  SUMMARY OF ARGUMENT

Ageless has filed the same counterclaims in two different courts, seven months apart.  This is precisely the type of conduct that the first-to-file rule was designed to prevent.  No party should be permitted to harass its competitors with multiple suits in multiple courts alleging the same claims against the same parties arising from precisely the same factual allegations.  Accordingly, Ageless' second-filed counterclaims in this Court should be dismissed under the first-to-file rule.

In addition, Ageless' purported counterclaims fail to state a claim.  For example, Ageless' antitrust counterclaim for alleged tying never clearly identifies the relevant market for the tying product.  To the extent Ageless is asserting that Edge's HydraFacial® branded products alone constitute the relevant market, Ageless' counterclaim fails as a matter of law because a single brand rarely, if ever, constitutes the relevant market.  Ageless also fails to plausibly allege market power in any relevant market.  To the contrary, Ageless' counterclaim lists numerous products that compete with Edge's HydraFacial® systems but provides no allegations of market share or market power of any of these competitors.

Ageless also fails to, and indeed cannot, plausibly allege that Edge in fact tied sales of its HydraFacial® serums to sales of its HydraFacial® systems.  To the extent Ageless is relying upon Edge's trademark license agreement for the HydraFacial® mark, that argument already has been correctly rejected by the California court.  To the extent Ageless is relying upon an email from Edge to its trademark licensees, Ageless' allegations again fail as a matter of law.  Like the trademark license agreement, this email does not condition the purchase of Edge's systems upon the purchase of Edge's serums.  Instead, the email

provides preferred pricing to customers who purchase both.  As a matter of law, that is not unlawful tying.

Ageless' counterclaims against Beauty Health also should be dismissed.  Beauty Health recently acquired Edge, but the counterclaims contain no particularized allegations against Beauty Health.  The counterclaims merely assert in conclusory fashion that Beauty Health participated in all of the conduct alleged.  As a matter of law, that is insufficient to state any claim against Beauty Health.

Ageless' counterclaims against Edge's CEO, Clint Carnell, also should be dismissed.  Ageless' primary allegation against Mr. Carnell is that he defamed Ageless by describing Ageless' serums as "inferior" and of "lower quality" than Edge's serums.  However, this type of vague boasting is non-actionable puffery as a matter of law.

Finally, Ageless' affirmative defenses of patent misuse and antitrust tying should be stricken.  These defenses, by their express terms, merely incorporate Ageless' antitrust counterclaim.  They thus fail for the same reasons as the counterclaim.

## IV.  <u>STANDARDS OF REVIEW</u>

Whether to dismiss a claim under the first-to-file rule is committed to the sound discretion of the district court, *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952), based upon principles of comity and sound judicial administration.  *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015).  The rule is designed "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."  *Id.*  Where both actions substantially overlap, it is ordinarily an abuse of discretion for the second-filed court to proceed with adjudicating the case before it on the merits.  *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985).  *See also Firstliner Indus., Inc. v. Ground and Pipe Techs., L.L.C.*, No. CIV.A. G-05-587, 2005 WL 2861002 at *2 (S.D. Tex. Oct. 31, 2005) ("There is no conceivable reason that the rule should not be applied" when there is complete overlap between claims).

To survive a motion to dismiss under Rule 12(b)(6), a complaint or counterclaim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(f) permits this Court to strike any "insufficient" defense. Fed. R. Civ. P. 12(f). The same plausibility standard from *Iqbal* that governs motions to dismiss also governs motions to strike. *Herrera v. Utilimap Corp.*, No. CIV.A. H-11-3851, 2012 WL 3527065 at *3 (S.D. Tex. Aug. 14, 2012); *Vargas v. HWC General Maintenance, LLC*, No. CIV.A. H-11-875, 2012 WL 948892 at *2 (S.D. Tex. Mar. 20, 2012).

## V. <u>AGELESS' COUNTERCLAIMS SHOULD BE DISMISSED UNDER THE FIRST-TO-FILE RULE</u>

Application of the first-to-file rule here is simple. Ageless first filed its counterclaims in California on November 30, 2020. Ageless did not file its substantially identical counterclaims in this Court until July 12, 2021, more than seven months later. Allowing Ageless' counterclaims to proceed here would result in needless duplication and could result in conflicting rulings. *See Amerijet*, 785 F.3d at 976. "There is no conceivable reason that the rule should not be applied." *Firstliner*, 2005 WL 2861002 at *2. Accordingly, this Court should dismiss Ageless' counterclaims.[1]

During conferences of counsel, Ageless argued that the first-to-file rule is entirely inapplicable when the same party, here Ageless, has filed the same claims in two different courts. Ageless apparently contends that the first-to-file rule applies only when the two courts are faced with an affirmative claim, such as patent infringement, and a mirror image claim such as a claim for a declaration of no infringement. Ageless cited no support for this novel theory, and it is entirely baseless. The first-to-file rule is the only doctrine that prevents a party like Ageless from harassing its competitor by filing the same claims over

---

[1] This Court also has discretion to transfer or stay Ageless' counterclaims. *West Gulf Maritime*, 751 F.2d at 728 n.1.

and over again in multiple courts.  Ageless cannot seriously believe it is entitled to do this.  Permitting such conduct would violate every policy underlying the first-to-file rule.

## VI.  <u>THIS COURT SHOULD DISMISS AGELESS' ANTITRUST COUNTERCLAIM FOR FAILURE TO STATE A CLAIM</u>

### A.  <u>Ageless Has Failed To Plausibly Allege Any Relevant Antitrust Market</u>

Ageless' antitrust counterclaim is based upon its assertion that Edge has tied the purchase of its HydraFacial® systems to the purchase of its HydraFacial® serums.  Dkt. 35 ¶¶ 26-51.  A tying claim requires, among other things, plausible allegations showing "sufficient ***market power*** by the seller in the market for the tying product to enable it to appreciably restrain trade in the market for the tied product."  *Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F. Supp. 1544, 1549 (S.D. Tex. 1991).[2]  "To analyze a tying claim, the relevant product market for ***both*** the tying and tied products must be identified."  *Chawla v. Shell Oil Co.*, 75 F. Supp. 2d 626, 636 (S.D. Tex. Nov. 3, 1999).  "A key in determining the relevant market includes an analysis of the ***cross-elasticity of demand*** for the product in question and all of its potential substitutes."  *Id*. at 642.  "In other words, the outer boundaries of a product market are determined by the ***reasonable interchangeability*** of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Id*.

Despite all the briefing in California, Ageless still fails to plausibly define the relevant antitrust markets.  To the contrary, Ageless' counterclaim is all over the map in its references to what market or markets may be at issue.   For example, the counterclaim alleges that Edge ties the sale and use of its "patented Equipment" to the purchase of serums, suggesting that Edge's products alone form the relevant tying market.  Dkt. 35 ¶ 32. The counterclaim also accuses Edge of trying to "expand its patent monopoly," suggesting that Ageless is relying upon an (unidentified) technology market defined by Edge's patents.  *Id.* ¶ 22.  The counterclaim also references a "hydrodermabrasion market"

---

[2] All emphasis is added unless otherwise noted.

without explaining what products are in that market. *Id.* ¶ 41.  Elsewhere, the counterclaim references the "relevant market for hydrodermabrasion systems *Edge* manufactures and sells," *id.* ¶ 15, again suggesting that Ageless believes that Edge's products alone define the relevant market.  Accordingly, it is fatally unclear whether Ageless is alleging the existence of a market for (1) Edge's patented equipment; (2) Edge's patents or technology; (3) "hydradermabrasion systems," or (4) "hydradermabrasion systems Edge manufactures and sells."  Simply put, Ageless' allegations of the relevant tying market are "hopelessly muddled," warranting dismissal.  *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1195 (C.D. Cal. 2008).

Ageless injects even more confusion by alleging that "[i]n addition to Edge's patented products, there are alternate products and systems for *noninvasive skin resurfacing and rejuvenation treatments* available in the United States."  Dkt. 35  ¶ 28. This suggests yet another possible market – that of noninvasive skin surfacing and rejuvenation treatments.  According to Ageless itself, these "alternate products and systems" include microdermabrasion, micro needling, chemical peels and intense pulsed light.  *Id*.  Ageless then purports to identify certain disadvantages of such products relative to Edge's products. For example, Ageless alleges that Edge's "HydraFacial method is gentler, less painful and more effective" than "microdermabrasion."  *Id*.  *See also id.* (alleging chemical peels are "not [] for everyone").  But the mere fact that Edge's products are preferable in some ways to some consumers does not plausibly address whether the other products are reasonably interchangeable or the cross-elasticity of demand.  An allegation of consumer preference for one product over another fails as a matter of law to define a relevant market. *See Chawla*, 75 F. Supp. 2d at 642.  Indeed, Ageless' admission of so many competing products suggests healthy competition.

Moreover, Ageless' on-again, off-again assertion that Edge's HydraFacial® system alone defines the relevant market is fatally flawed.  First, it directly contradicts Ageless' allegation that microdermabrasion, micro needling, chemical peels, and intense pulsed light all compete with Edge's HydraFacial® system.  Second, "[a] single product *rarely*

constitutes a market for antitrust purposes." *Chawla*, 75 F. Supp. 2d at 642.  "Even where brand loyalty is intense, courts reject the argument that a single branded product constitutes a relevant market." *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1194-95 (N.D. Cal. 2008).  Ageless has identified no special circumstances that would warrant an exception to this rule, particularly in view of the competing systems it has identified in its own pleading.

Ageless' allegations are equally deficient and inconsistent with respect to the market for the alleged tied product.  In one part of its counterclaim, Ageless alleges the "relevant market" is "Edge's Serums consisting of those serums that ***Edge alleges it manufactures and sells*** in the United States and which Edge demands its customers-licensees use to the exclusion of any competitive product….." Dkt. 35 ¶ 39.  Ageless alleges no plausible facts explaining why the serum market should be limited to the specific serums ***Edge*** manufactures and sells.  Elsewhere, Ageless alleges there is reduced competition in the "market for the Tied Product, *i.e.*, serums that could otherwise be sold and used with Edge's equipment." *Id.* ¶ 42.  Ageless never identifies the serum products and manufacturers that would be within such an alleged market and never defines its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand. Instead, Ageless injects even more confusion elsewhere in its counterclaim, referring to a "consumables and services market" providing profits that Ageless should allegedly be sharing with competitors.  *Id.* ¶ 50.

Ageless' allegations are likewise unclear as to what competitors are in the market for the alleged tied product.  Ageless initially alleges that Edge allows "Murad Inc., ZO Skin Health Inc. and Paul Nassif M.D. Inc." to sell serums for use with Edge's "HydraFacial Equipment and treatments" and that Edge "prohibits other actual or potential competitors (like ***Ageless, Zemits, OOMNEX and Adonyss***) from selling serums….." *Id.* ¶ 39.  Later, however, Ageless alleges that in "addition to Ageless, other companies ***compete*** with Edge in the manufacture and sale of HydraFacial serums," specifically identifying "***Zemits, OOMNEX and Adonyss***, that advertise they can be used with any hydradermabrasion equipment, including Edge's HydraFacial Systems." *Id.* ¶ 47.

Ageless also provides inconsistent and confusing allegations regarding the geographic scope of the relevant markets. Ageless repeatedly references international markets and competitors. *See, e.g., id.* ¶ 26. (referencing that Edge is "worldwide leader"); *id.* ¶ 28 (discussing Edge's "international footprint" and competitive resistance from "cheaper Chinese serums…especially in the developing world"); *id.* ¶ 45 (discussing competition in the "Greater Chinese market"); ¶ 9 (relying on allegation that Edge's "products are available in over 87 countries"). Separately, however, Ageless alleges that "the relevant market for purposes of this Counterclaim is the United States." *Id.* ¶ 15. Even crediting that final allegation, and ignoring Ageless' inconsistent allegations above, Edge never plausibly alleges or explains why the relevant antitrust markets should be ***limited*** to the United States. Edge's allegations are insufficient to plausibly allege antitrust claims.

Here, as in California, Ageless' allegations also attempt to rely on the existence of Edge's patents as a shortcut to avoid allegations showing the existence of a plausible relevant antitrust market. However, as discussed more fully below, the Supreme Court in *Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006), rejected such presumptions and shortcuts based on the mere existence of patents. Markets often contain multiple brands that are separately patented by different manufactures. Ageless cannot selectively sweep certain products and competitors out of the market merely by asserting one competitor's products are "patented." Ageless' pleading makes no attempt to address the scope of Edge's patents and how that scope purportedly excludes competitors entirely from the market.

## B.   Ageless Has Failed To Plausibly Allege Edge Has Market Power In Any Relevant Antitrust Market

### 1.   Ageless' Allegations Do Not Plausibly Show Market Power

"In order to show market power, a plaintiff first must define the relevant market." *Chawla*, 75 F. Supp. 2d at 642. As discussed above, Ageless has not plausibly defined any relevant antitrust market. Thus, Ageless cannot plausibly allege market power. *Id.*

Ageless' failure to provide plausible, fact-based market power allegations is telling, particularly since Ageless' pleading references **numerous** alleged competitors and potential competitors.   Indeed, in a misguided attempt to show a **lack** of competition, Ageless attaches patent infringement complaints that, if anything, show the **opposite**. Specifically, Ageless identifies direct competitors in its counterclaim and characterizes these patent defendants as "potential competitors."   Dkt. 35 ¶¶ 37, 41.  Ageless' complaint and attachments thus identify the following as alleged potential competitors for the sale of equipment: (1) Image MicroDerm, Inc.; (2) Aesthetic Skin Systems LLC; (3) Bio-Therapeutic, Inc., (4) Naumkeag Spa & Medical Supplies, LLC, (5) Hydradermabrasion Systems, (6) Aesthetic Skin Systems, LLC, (7) Image Microderm Inc., (8) Venus Concept USA, Inc., and (9) Cartessa Aesthetics, LLC.  *See* Dkt. 35 ¶¶ 37, 41, Exs. F-N.

Ageless never attempts to estimate the market shares of these numerous competitors, much less show Edge's purported market power **forced** customers to accept serums they did not want.  Absent market power by Edge, a consumer that desires to use a different serum can readily purchase the underlying equipment from a different manufacturer.

## 2. Ageless' Patent Allegations Do Not Plausibly Allege Market Power

Most of Ageless' allegations of market power relate to Edge's patents and are based upon Ageless' apparent belief that alleging a competitor has many patents is sufficient to allege market power.   However, the Supreme Court has unequivocally rejected the argument that patents establish market power:

> Congress, the antitrust enforcement agencies, and most economists have all reached the conclusion that a patent does not necessarily confer market power upon the patentee.  Today, we reach the same conclusion, and therefore hold that, in **all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product**.

*Illinois Tool Works*, 547 U.S. at 45-46.  As discussed above, Ageless does not plausibly allege market power in any properly defined market.  Ageless' patent allegations cannot fill that fatal deficiency.

Moreover, Ageless' patent allegations do not withstand any scrutiny. For example, Ageless merely lists eight of Edge's patents. That Edge has eight patents is hardly unusual or informative of whether Edge has market power over any specific products in any specific markets. Ageless also attaches nine patent infringement complaints from the last decade—one of which was directed to Ageless. *See* Dkt. 35 ¶ 41, Exs. F-N. Ageless never explains how those lawsuits establish market power in any particular defined antitrust market. To the contrary, as discussed, Ageless' own complaint identifies the patent defendants as potential competitors. Dkt. 35 ¶¶ 37, 41. Ageless vaguely alleges that the patents constitute a "blocking book" of patents, but never explains what products they allegedly block, or how. It is common to have multiple similar patents issue as the patentee and examiner negotiate the scope of various claims during prosecution. Ageless simply cites the patent numbers, vaguely alleges the patents are "strikingly similar," and leaves the Court (and Edge) to guess how these patents purportedly result in market power. Dkt. 35, ¶ 40.

### 3.   Ageless Has Not and Cannot Plausibly Allege Any Unlawful Tie

In order to successfully allege an unlawful tie, Ageless must plausibly allege customers-licensees were ***forced*** to accept the alleged tied products. "To be actionable under the antitrust laws, a tie must result from ***actual coercion*** based on the economic power of the defendant over the tying product." *Crossland v. Canteen Corp.*, 711 F.2d 714, 723 (5th Cir. 1983). Ageless attempts to plead three theories of alleged tying, none of which are sufficient to survive this motion to dismiss.

***First***, Ageless points to Edge's Trademark License Agreement as purportedly constituting an illegal tie. *See* Dkt. 35 ¶ 16. Thus, Ageless alleges that Edge is tying equipment with serum, and relies on the Trademark License Agreement as establishing such a tie. *Id*. However, as the California court held in rejecting Ageless' argument, nothing in the Agreement requires purchasers of Edge's systems to also purchase Edge's serums: "Neither the grant of license nor the provision requiring the purchase of Edge's serums requires a purchaser of Edge's equipment to also purchase Edge's serum." Ex. 3 at 7. The California court correctly found that "nothing in the Agreement precludes a

customer from purchasing Edge's equipment without purchasing Edge's serums." *Id*. Rather, the Agreement merely requires trademark licensees to use Edge's HydraFacial® serums if they choose to market their treatments as licensed HydraFacial® treatments. *Id.* at 6-7.

Ageless attempts to circumvent that ruling by now alleging that "not only are a customer's-licensees' right to use the HydraFacial Mark terminated if a competitor's serum is used," but a customer-licensee's right to use "Edge's Tower machines" is precluded because the machine "prominently displays Edge's HydraFacial Mark on Edge's Equipment." Dkt. 35 ¶ 17. Thus, Ageless theorizes "if the right to use the HydraFacial Mark is terminated," a "customer-licensee must also discontinue use of the HydraFacial Equipment that it purchased because the HydraFacial Mark cannot be removed from it." *Id*. In short, Ageless alleges that when Edge terminates a HydraFacial® trademark license, Edge's former licensee is legally barred by trademark law from using its HydraFacial® equipment because that equipment displays the HydraFacial® mark. *Id*.

Ageless' argument is unavailing as it directly contradicts a fundamental principle of trademark law known as the "first sale" or "exhaustion" rule. Under this doctrine, the purchaser of goods bearing a trademark is entitled to continue using and may even resell the trademark-bearing goods without the trademark owner's consent. *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074-75 (9th Cir. 1995); *Ferris Mfg. v. Thai Care, Co., Ltd.*, No. 4:17-CV-01024-O, 2019 WL 3206121 at *4 (N.D. Tex. July 16, 2019); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:41 (5th ed.). "Trademark rights are 'exhausted' as to a given item upon the first authorized sale of that item." *McCarthy* § 25:41. Accordingly, Edge's customers are free as a matter of law to continue using their Edge machines, bearing Edge's HydraFacial® mark, without a license from Edge. If this were not true, consumers could not drive their legitimately purchased Ford cars without scraping off all of Ford's trademarks.

**Second**, Ageless points to a communication by Edge to Edge's **trademark licensees** that use the "HydraFacial® brand" warning them against using "inferior, third party

serums" that give clients "an inferior (or even worse, possibly harmful) experience, which – in turn – damages the HydraFacial **brand** and lessens our collective success." Dkt. 35 ¶ 24. Such conduct is not substantively different from the conduct the California court held was **not** a tie. Ex. 3 at 7. Like the California court previously observed with regard to the Trademark License, at most, Edge's communications encourage or require "licensees of Edge's **trademarks** to purchase Edge's serums to use the HydraFacial® **mark** in connection with their skincare services." *Id*. Nowhere does Ageless explain how Edge's communications require a purchaser of Edge's **equipment** to also purchase Edge's **serum**. "Of course, where the buyer is free to take either product by itself there is no tying problem.'" *Rohm and Haas Co. v. Dawson Chemical Co., Inc.*, 557 F. Supp. 739, 834 (S.D. Tex. 1983).

Ageless also relies upon Edge's preferred pricing program which was described in the same email to trademark licensees. The email states that providers "who use third party serums will no longer receive our preferred pricing." Dkt. 35 ¶ 24. However, the fact that Edge offered preferred pricing to customers who purchase Edge equipment and serums does not constitute tying. *See, e.g., Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1160 (9th Cir. 2003) (emphasis added) ("We have not found evidence of coercion where a defendant used a package discount to encourage buyers to take both products."). Indeed, such "allegations actually suggest that economic incentives—not coercive economic power—led to the" accused conduct. *Sherwin–Williams Co. v. Dynamic Auto Images, Inc.*, No. SACV161792JVSSSX, 2017 WL 3081822 at *7 (C.D. Cal. Mar. 10, 2017). Moreover, Ageless never attempts to connect Edge's email with any particular markets, much less a market in which Edge has market power. *Paladin Assocs.*, 328 F.3d 1145 at 1160 ("[T]he Supreme Court has not found evidence of coercion where the plaintiff failed to show that the defendant possessed market power in the tying product market and wielded that power to compel the purchase of another product.").

4.    **Ageless Has Not Plausibly Alleged Harm to Competition and Antitrust Injury**

Ageless' counterclaim is also deficient because Ageless fails to plausibly allege harm to competition in the market for the tied product.  Indeed, Ageless fails to plausibly plead any alleged tied market.  Thus, Ageless fails to "allege any facts which would indicate the degree of commerce that may have been foreclosed by the alleged tying arrangement." *Rockbit*, 802 F. Supp. at 1550 (dismissing claim).

Moreover, "[t]o have standing, a plaintiff must demonstrate that it suffered antitrust injury, i.e., injury of the type the antitrust laws were designed to prevent and that flows from that which makes the defendants' acts unlawful." *Rockbit*, 802 F. Supp. at 1548. Because Ageless has not plausibly alleged harm to competition in any market, Ageless has not and cannot show that it was injured from any such competitive harm.  "[T]he antitrust laws are concerned with injury to competition, not competitors." *Id*. at 1551.

## VII.   THIS COURT SHOULD STRIKE AGELESS' PATENT MISUSE AND ANTITRUST AFFIRMATIVE DEFENSES

Ageless' sixth affirmative defense of patent misuse merely incorporates by reference its allegations from its antitrust counterclaim. Dkt. 35 at 9.  Similarly, Ageless' twelfth affirmative defense of "unlawful tying and illegality" merely incorporates by reference its antitrust counterclaim. *Id*. at 11.  Thus, these defenses fail as a matter of law for the same reason that Ageless' antitrust counterclaim fails as a matter of law.

## VIII.  THIS COURT SHOULD DISMISS THE UNFAIR COMPETITION AND TORTIOUS INTERFERENCE CLAIMS TO THE EXTENT THEY ARE BASED UPON ALLEGED ANTITRUST VIOLATIONS

Ageless' unfair competition and tortious interference counterclaims are based in part upon Ageless' allegations of unlawful tying in violation of the antitrust laws. Dkt. 35 ¶¶ 53, 81.  To the extent they are based upon allegations of antitrust violations, these counterclaims should be dismissed for the same reasons as the antitrust counterclaim itself.

## IX.  THIS COURT SHOULD DISMISS ALL COUNTERCLAIMS AGAINST BEAUTY HEALTH

Ageless' counterclaim alleges that Beauty Health acquired Edge on December 8, 2020.  Dkt. 35 ¶ 14.  The counterclaim also alleges in conclusory fashion that "Beauty Health actively participated in the conduct alleged below." *Id.* ¶ 6.  No other, more specific allegations are made against Beauty Health.  Neither of Ageless' allegations against Beauty Health provides any basis for maintaining any claims against Beauty Health.

First, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  Thus, the allegation that Beauty Health acquired Edge is no basis for imposing liability on Beauty Health.  Second, the "trick" of "[l]umping defendants together, without identifying a factual basis for liability for each, is not permissible." *Holly Hunt Enters., Inc. v. JL Design, Inc.*, Case No. 2:18-cv-8218-GW-(MRWx), Dkt. 29 at 3 (C.D. Cal. Jan. 17, 2019) (submitted to this Court as Dkt. 46, Ex. 4).  *See also Estrada v. Caliber Home Loans, Inc.*, 172 F. Supp. 3d 1108, 1117 (C.D. Cal. 2016); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).  Accordingly, as in *Holly Hunt*, *Estrada*, and *Gauvin*, Beauty Health should be dismissed from this case.

## X.  THIS COURT SHOULD DISMISS ALL COUNTERCLAIMS AGAINST MR. CARNELL

### A.  The Antitrust Counterclaim Against Mr. Carnell

As discussed above, the antitrust counterclaim should be dismissed against all counterdefendants, including Mr. Carnell.  Moreover, Ageless has not and cannot plead that Mr. Carnell, the CEO of a publicly traded corporation, is somehow the alter ego of that corporation.

### B.  The "Defamation And False Advertising" Counterclaim Against Mr. Carnell

Ageless' counterclaim purports to allege a claim for "defamation and false advertising" against Mr. Carnell and the other counterdefendants.  Most of the allegations

of defamation and false advertising are directed against oral statements by unnamed employees of Edge.  *See* Dkt. 35 at ¶¶ 61-65.  However, the counterclaim does make a single allegation of defamation or false advertising against Mr. Carnell.  *See id.* ¶ 24.

In particular, Ageless alleges that Mr. Carnell sent an email to Edge's customers about the use of third-party serums in Edge's HydraFacial systems.  *Id.*  In that email, Mr. Carnell referred to "inferior" third-party serums.  *Id.*  Ageless similarly alleges that Mr. Carnell or others have represented to customers that Ageless' serums are of "lower quality" than Edge's serums.  *Id.*  ¶ 23.

However, the Fifth Circuit has squarely held that this very type of "boasting" in advertising is non-actionable puffery.  *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498-99 (5th Cir. 2000).  Thus, in *Pizza Hut*, the advertising slogan "Better Ingredients. Better Pizza" was held to be mere puffery.  *Id.*  Describing one's own product as "better" than the competition is plainly indistinguishable from describing a competitor's product as inferior.  Indeed, the courts have held that statements of inferiority or superiority are non-actionable puffery.  *See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245-46 (9th Cir. 1990) ("Advertising which merely states in general terms that one product is superior is not actionable."); *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1137 (C.D. Cal. 2009) ("an inferior product" is mere puffing).

Application of these principles here is straight-forward.  Ageless alleges that Mr. Carnell described third-party serums as "inferior" and of "lower quality" than Edge's own serums.  As in each of the cases cited above, this is classic puffery as a matter of law. Accordingly, this Court should dismiss the defamation and false advertising claim against Mr. Carnell.[3]

---

[3] The counterclaim also alleges that Mr. Carnell described "third party serums" as "possibly harmful."  Dkt. 35 ¶ 24.  However, the counterclaim contains no plausible allegations that Mr. Carnell ever characterized Ageless' serums, as opposed to serums of third parties, as harmful.

C.    **The Unfair Competition Counterclaim Against Mr. Carnell**

Ageless' unfair competition claim against Mr. Carnell is based explicitly upon the alleged antitrust "tying" violation and "false statements about the quality of Ageless' serum." Dkt. 35 ¶ 53.  As just discussed, Ageless still has not pled a plausible antitrust counterclaim, and Mr. Carnell's allegedly "false" statements about Ageless' serums are non-actionable puffery.  Thus, the unfair competition counterclaim against Mr. Carnell should be dismissed.

D.    **The Tortious Interference Counterclaim Against Mr. Carnell**

The final purported cause of action in Ageless' counterclaim is tortious interference with business relations.  Dkt. 35 ¶¶ 77-83.  This tort, too, merely incorporates Ageless' antitrust, defamation / false advertising, and unfair competition counterclaims.  Dkt. 35 ¶ 81.  Accordingly, this counterclaim against Mr. Carnell should also be dismissed.

## XI.  CONCLUSION

All of Ageless' counterclaims should be dismissed under the first-to-file rule because Ageless filed the same counterclaims in California more than seven months ago. In addition, Ageless' antitrust counterclaim against all parties should be dismissed for failure to state a claim.  Further, the Counterclaims against Beauty Health and Mr. Carnell should be dismissed for failure to state a claim.  Finally, the patent misuse and antitrust affirmative defenses should be dismissed for the same reasons as the antitrust counterclaim.

Respectfully submitted,

BAKER BOTTS, L.L.P.


Dated:   September 7, 2021          By:  /s/ Paul R. Morico
                                        Paul R. Morico
                                        State Bar No. 00792053
                                        Brandon Chen
                                        State Bar No. 24095814
                                        One Shell Plaza
                                        910 Louisiana Street
                                        Houston, Texas 77002
                                        Telephone: (713) 229-1234

Facsimile: (713) 229-1522
paul.morico@bakerbotts.com
brandon.chen@bakerbotts.com

OF COUNSEL:

Craig S. Summers (*Admitted pro hac vice*)
Email: craig.summers@knobbe.com
Paul A. Stewart (*Admitted pro hac vice*)
Email: paul.stewart@knobbe.com
Ali S. Razai (*Admitted pro hac vice*)
Email: ali.razai@knobbe.com
Sean M. Murray (*Admitted pro hac vice*)
Email: sean.murray@knobbe.com
Stephen W. Larson (*Admitted pro hac vice*)
Email: stephen.larson@knobbe.com
Karen M. Cassidy (*Admitted pro hac vice*)
Email: karen.cassidy@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff*
EDGE SYSTEMS LLC