# EXHIBIT 1

Craig S. Summers (SBN 108688)
craig.summers@knobbe.com
Ali S. Razai (SBN 246922)
ali.razai@knobbe.com
Karen M. Cassidy (SBN 272114)
karen.cassidy@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

David G. Kim (Bar No. 307821)
david.kim@knobbe.com
KNOBBE, MARTENS, OLSON &
BEAR, LLP
1925 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 551-3450
Facsimile: (310) 551-3458

*Attorneys for Plaintiff*
EDGE SYSTEMS LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company, | ) Civil Action No. 2:20-cv-09669 |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR CONTRIBUTORY TRADEMARK INFRINGEMENT; FALSE DESIGNATION OF ORIGIN; INDUCED BREACH OF CONTRACT; TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS, AND UNFAIR COMPETITION** |
| AGELESS SERUMS LLC, a Texas limited liability company, | ) |
| Defendant. | ) |
| | ) **DEMAND FOR JURY TRIAL** |

Plaintiff Edge Systems LLC, ("Edge" or "Plaintiff") hereby complains of Defendant Ageless Serums LLC ("Ageless" or "Defendant") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This is an action for trademark infringement, tortious interference with contractual relations, and unfair competition under federal, state, and common law.

2. This Court has original subject matter jurisdiction over the claims for trademark infringement and federal unfair competition pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. §§ 1116, 1117, 1121(a) and 1125, as these claims arise under the laws of the United States. This Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3. This Court has personal jurisdiction over Ageless because Ageless has a continuous, systematic, and substantial presence within this judicial district, including by inducing infringement of Edge's trademark rights in this judicial district and by inducing Edge's customers in this judicial district to breach contracts with Edge. Ageless's actions in California, and this district, include but are not limited to selling serum products directly to consumers and/or retailers in this district and instructing those consumers and/or retailers to use the serum products in a manner that infringes Edge's trademark rights. Ageless's actions have also interfered with contractual relationships between Edge and its customers by causing Edge's customers in this judicial district to breach their agreements with Edge regarding the use of Edge's trademarks. These acts form a substantial part of the events or omissions giving rise to Edge's claims.

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(d), and 1400(b).

## II.  THE PARTIES

5.     Plaintiff Edge is a California corporation having its principal place of business at 2165 E. Spring Street, Long Beach, California 90806.

6.     Edge is informed and believes, and thereon alleges, that Defendant Ageless Serums LLC is a Texas limited liability company having its principal place of business at 6140 Highway 6, Suite 226, Missouri City, Texas 77459.

7.     Edge is informed and believes, and thereon alleges, that Ageless has committed the acts alleged herein within this judicial district.

## III.  GENERAL ALLEGATIONS

### A.     The Edge Trademark and Trademark Licenses

8.     Edge is a worldwide leader in the design, development, manufacture, and sale of high-quality skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems.  These systems rejuvenate skin by cleansing and exfoliating the skin surface, extracting debris from pores, and then nourishing the skin's surface with a therapeutic solution, called a "serum," that moisturizes and protects the treated skin surface.  Edge's flagship system is its revolutionary HydraFacial MD® system, which is the premier hydradermabrasion system sold in the United States.  Edge's HydraFacial MD® system is so revolutionary that it is protected by numerous United States patents.  In addition to the HydraFacial MD® system, Edge designs, develops, manufactures, and sells other patented hydradermabrasion systems, including the HydraFacial® Tower™, the HydraFacial® Allegro™, the HydraFacial® Wave™, the HydraFacial® Elite™, HydraFacial® Nectre™, and the HydraFacial® Core™ systems.  These Edge hydradermabrasion systems are referred to herein collectively as "the HydraFacial® Systems."

/ / /

9.     Edge also designs, develops, manufactures, and sells high-quality serums for use in the HydraFacial® Systems.  These serums include Activ-4®, Antiox+®, Antiox-6®, Beta-HD® Clear, and the HydraFacial Dermabuilder® serums.   These Edge serums are referred to herein collectively as "the HydraFacial® Serums."

10.     The combination of technology and therapeutic skin care benefits that are realized when the HydraFacial® Systems and the HydraFacial® Serums are used together has led to widespread public attention and acclaim.   For example, Edge's HydraFacial® Systems have received the "Best Equipment for the Face" award numerous times over the years from Les Nouvelles Esthétiques & Spa magazine, which is one of the most prestigious publications in the skin care and spa industry.

11.     Since 2005, Edge has continuously used the mark HYDRAFACIAL® in connection with the advertising, promotion, and sale of its high-quality hydradermabrasion systems.  Edge has spent considerable time, effort, and money developing HYDRAFACIAL® as a trademark and ensuring that the public associates the HYDRAFACIAL® mark with Edge and Edge's high-quality hydradermabrasion systems, serums, and treatments.

12.     On April 9, 2013, Edge registered the HYDRAFACIAL® Mark with the United States Patent and Trademark Office, on the Principal Register, and is the owner of U.S. Trademark Registration No. 4,317,059 for the mark HYDRAFACIAL® ("the HYDRAFACIAL® Mark"). The HYDRAFACIAL® Mark is registered for and used in connection with medical apparatus and instruments for peeling and resurfacing tissue, as well as medical spa services, namely, minimally and non-invasive cosmetic and body fitness therapies.   A true   and   correct   copy   of   the   Certificate   of   Registration   for   the HYDRAFACIAL® Mark is attached hereto as Exhibit 1.

/ / /

13. The registration for the HYDRAFACIAL® Mark is incontestable.

14. Edge advertises its hydradermabrasion systems and serums under the HYDRAFACIAL® Mark throughout the United States at trade shows and seminars, and through trade publications, social media, search engine optimization, emails, and webinars. Edge has spent millions of dollars advertising and promoting its hydradermabrasion systems and the treatments performed with those systems under the HYDRAFACIAL® Mark.

15. In addition to Edge's own sales, marketing, and advertising, Edge has received widespread unsolicited media attention featuring Edge, its HydraFacial® Systems and Serums, and HydraFacial® treatments, thus reinforcing the public's association between Edge and the HYDRAFACIAL® Mark. For example, *People Magazine, Allure*, *The Hollywood Reporter, Tampa Bay Times*, *New Beauty*, *OK! Magazine*, *Star Magazine*, *Elle Beauty Book*, *Harper's Bazaar Magazine*, *Essence*, *Simply Her*, *Examiner.com*, and *In Style* have featured Edge and its HydraFacial® Systems and Serums and HydraFacial® treatments. Edge and its HydraFacial® Systems and Serums and HydraFacial® treatments have also been featured on *Good Day L.A., The Doctors, KLBK News, Great Day Houston,* and *Real Housewives of Beverly Hills*.

16. Promotional materials and advertisements for Edge's hydradermabrasion systems and treatments sold under the HYDRAFACIAL® Mark have been widely distributed throughout the United States, establishing and reinforcing in consumers' minds the association between Edge, its hydradermabrasion systems and treatments, and the HYDRAFACIAL® Mark. As a result of Edge's substantial efforts, the HYDRAFACIAL® Mark has become extremely well known and valuable to Edge as an identifier of the company, Edge's HydraFacial® Systems and Serums, and Edge's

HydraFacial® treatments. The HYDRAFACIAL® Mark has become synonymous in consumers' minds with Edge.

17. Edge sells its HydraFacial® Systems and Serums to customers across the United States, including dermatologists, plastic surgeons, and health spas. These customers offer and provide HydraFacial® treatments at thousands of locations throughout the United States, including in all 50 states. In connection with each sale of a HydraFacial® System, and pursuant to Edge's trademark licensing program, Edge allows its customers to use and take advantage of the HYDRAFACIAL® Mark when offering and providing HydraFacial® treatments, so long as those customers perform the treatments using Edge's genuine HydraFacial® Systems and Edge's genuine HydraFacial® Serums.

18. As a result of the widespread use, advertising, promotion, media exposure, and display of the HYDRAFACIAL® Mark, (a) the public has come to recognize and identify hydradermabrasion systems and serums and treatments bearing the HYDRAFACIAL® Mark as emanating from Edge, (b) the public recognizes that hydradermabrasion systems and serums and treatments bearing the HYDRAFACIAL® Mark constitute high-quality systems, serums, and treatments that conform to the exacting specifications created, authorized, and approved by Edge, and (c) the HYDRAFACIAL® Mark has established strong secondary meaning and extensive goodwill.

19. Edge has provided the public with notice of its rights in the HYDRAFACIAL® Mark by using the federal trademark registration symbol "®" in connection with the mark.

20. Edge protects the goodwill associated with the HYDRAFACIAL® Mark and maintains its reputation for high-quality products associated with HydraFacial® treatments by, for example, authorizing the use of the HYDRAFACIAL® Mark solely for treatments that exclusively use genuine

- 5 -

HydraFacial® Systems in combination with genuine HydraFacial® Serums. Pursuant to the terms of Edge's Trademark License Agreement ("the Trademark License Agreement"), Edge licenses its customer-licensees to advertise, market, promote, sell, and/or offer to sell hydradermabrasion treatments under the HYDRAFACIAL® Mark so long as those treatments are performed solely using genuine HydraFacial® Systems and genuine HydraFacial® Serums. A sample Trademark License Agreement is attached hereto as Exhibit 2.

**B.   Infringement of Edge's HydraFacial Mark**

21.   Ageless is in the business of promoting and selling serums for use with hydradermabrasion systems manufactured by others, including the Edge hydradermabrasion systems. In particular, as it relates to this action, Ageless specifically targets customers using Edge's HydraFacial® System by advertising knock-off versions of Edge's HydraFacial® Serums, including Edge's Activ-4™, Gly-Sal, Beta-HD™, Antiox+™, Antiox-6™, and Dermabuilder™ serums ("the Ageless Serums"), and instructing Edges' customer-licensees to substitute these knock-off serums in place of Edge's high-quality, genuine HydraFacial® Serums.

22.   This is not the first time that Ageless has attempted to trade upon Edge's hard-earned reputation in the industry and the goodwill associated with the HYDRAFACIAL® Mark. For example, in 2017, Edge discovered that Ageless was improperly using Edge's HYDRAFACIAL® Mark in various places on its website, without Edge's consent and without use of the "®" symbol, or any other acknowledgement that Edge owns the HYDRAFACIAL® Mark. Ageless's website at that time also improperly included photographs that clearly and prominently displayed other Edge registered trademarks. Edge was forced to bring suit against Ageless in 2017 to stop Ageless's improper use of Edge's HYDRAFACIAL® Mark.

/ / /

23.     Ageless, through at least its managing partner, Rene Chlumecky, has been aware of Edge's rights in the HYDRAFACIAL® Mark for nearly a decade. From February 28, 2011 to March 12, 2012, Mr. Chlumecky was employed by Edge as an independent Sales Representative.  As a Sales Representative for Edge, Mr. Chlumecky was familiar with the HYDRAFACIAL® Mark and the hydradermabrasion systems, serums, treatments, and services offered and sold under that mark.

24.     As a Sales Representative for Edge, Mr. Chlumecky was also familiar with the Trademark License Agreement and its terms.

25.     The Trademark License Agreements in place during the period when Mr. Chlumecky was an Edge Sales Representative included the following terms, in which the term "Licensor's Skin Solutions" means "Edge's HydraFacial® Serums":

- "[N]or shall any of the Licensed Trademarks be used by the Licensee unless Licensor's Skin Solutions are used in the operation of the HydraFacial System." *See* 2011 Trademark License Agreement – Revision B (Ex. 3) at ¶ 1; 2011 Trademark License Agreement – Revision C (Ex. 4) at ¶ 1.

- "In recognition that the HydraFacial™ System equipment only functions properly and effectively with the use of Licensor's Skin Solutions, Licensee agrees to purchase the Skin Solutions used in the HydraFacial™ System(s) from Licensor or its authorized distributor in good standing." *See* 2011 Trademark License Agreement – Revision B (Ex. 3) at ¶ 2; 2011 Trademark License Agreement – Revision C (Ex. 4) at ¶ 2.

- "[T]his Agreement . . . will continue in force . . . on condition that the Licensee uses the HydraFacial™ System and Skin Solutions . . . ."  2011 Trademark License Agreement – Revision C (Ex. 4) at ¶ 5.

26.     The Trademark License Agreement currently in place includes similar clauses:

- "Furthermore, none of the Licensed Trademarks shall be used by the Licensee unless Licensee solely and exclusively uses Licensor's serums and/or consumables in the operation of the Purchased Equipment." *See* 2020 Trademark License Agreement (Ex. 2) at ¶ 1.1.(a).

- "In recognition that the HydraFacial system and equipment and the Perk system and equipment only function properly and effectively with the use of Licensor's serum solutions and consumables, Licensee agrees to purchase the serum solutions and consumables used in the Purchased Equipment solely and exclusively from Licensor or its authorized distributor in good standing." *See* 2020 Trademark License Agreement (Ex. 2) at ¶ 3.1.

- "Any unauthorized use of solutions other than Licensor's is not allowed . . .and will result in an automatic termination of this License Agreement." *Id.*

27. Ageless is not an authorized provider or distributor of Edge's HydraFacial® Serums.

28. Ageless is aware that if one of Edge's customer-licensees uses an Ageless Serum instead of an authentic HydraFacial® Serum when offering or providing a treatment using an Edge HydraFacial® System, then the license to use the HYDRAFACIAL® Mark is terminated and the customer-licensee can no longer offer and sell its treatments under the HYDRAFACIAL® Mark.

29. Ageless is aware that HydraFacial® System users are not licensed to use the HYDRAFACIAL® Mark if they are using Ageless Serums in their treatments.

30. Ageless is aware that unlicensed use of the HYDRAFACIAL® Mark constitutes infringement of Edge's trademark rights.

31. Ageless instructs its customers to use Ageless Serums in HydraFacial® Systems. For example, the Ageless website provides conversion tables entitled "Hydrafacial Users Conversion Product Steps" and "QUICK

Conversion for Hydrafacial <sub>tm</sub> Users," shown below, which identify Ageless Serums that should be substituted for HydraFacial® Serums.  *See* Figure 1, https://www.agelessserums.com/ageless-facial-protocols.html (last visited October 20, 2020) (Ex. 5); *see also* Figure 2, https://www.agelessserums.com/compare-hydrafacial-to-ageless-serums.html (last visited October 20, 2020) (Ex. 6).

## Hydrafacial Users Conversion Product Steps

| Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|--------|--------|--------|--------|--------|
| Active 4 | GlySal | Beta HD | Antiox6 | Dermabuilder |

### Ageless Serums

| Skin Deep Prep | Glycolic Acid Topically Applied | Salicylic Wash | Ageless Antioxidant Plus | Peptide Infusion |
|--------|--------|--------|--------|--------|

Fig. 1

## QUICK Conversion for Hydrafacial tm Users

* Notation Hydrafacial is a trademarked name and should be noted throughout the website.

| Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|--------|--------|--------|--------|--------|
| Active-4 | Gly-Sal | Beta HD | Antiox6 / Plus | Dermabuilder |

### Ageless Serums Compatable

| Skin Deep Prep | Pro-Gel Glycolic Acid Applied Topically Manually Removed | Salicylic Wash | Ageless Antioxidant Plus | Peptide Infusion |
|--------|--------|--------|--------|--------|

Rejuvenate the facial by massaging for 5-10 minutes

Fig. 2

/ / /

- 9 -

32.     Edge is informed and believes, and based thereupon alleges, that Ageless actively encourages its customers to use the HYDRAFACIAL® Mark in connection with treatments using Ageless Serums in HydraFacial® Systems.

33.     The Ageless website includes a "Most Commonly Asked Questions" page.  One of the items on that page states that a customer "received a letter from Edge stating that my spa could not use the Hydrafacial name in our advertising."   Ageless responded by providing guidance, purporting to be grounded in trademark law, instructing and  intending to mislead its customers to use the HYDRAFACIAL®  Mark in an infringing manner when providing treatments with the HydraFacial® System using Ageless Serums. *See* Figure 3, https://www.agelessserums.com/most-commonly-asked-questions.html        (last visited October 20, 2020) (Ex. 7).

I received a letter from Edge stating that my spa could not use the Hydrafacial name in our advertising.

Have you seen any advertisements where other product trademark names are used? Sprint verse AT&T come to mind. There are a few legal laws that apply, Nominative Fair Use, Comparative Advertising and Descriptive Fair Use. Helpful site : http://www.lexology.com/library/detail.aspx?g=827a4138-3206-4fc1-9b77-c785c5576230

1. **The trademark owner's product or service must not be readily identifiable without use of the trademark.**  It is recognized that there are times when it is necessary for a company to refer to a third-party product or service by its trademark.  It can simply factually state it provides facials with the Hydrafacial@ (trademark).

2. **The company must use only as much of the mark as is necessary to identify the product, or service.**  PDQ physical therapists can state that they utilize Bowflex® fitness equipment.  However, unless they have a specific agreement with the trademark owner (Nautilus, Inc.), it cannot use any logos, tag lines or catch phrases used in connection with those products.  It also cannot make repeated reference to the trademark or use it in a font or size that is designed to make the third party's mark stand out from the remainder of the ad.

3. **The company must do nothing that would suggest any sponsorship or endorsement by the trademark owner that does not exist.** Use of the third party's mark must accurately portray the relationship between the user and the trademark owner.  If there is no direct relationship then the advertisement must not imply anything different.The law allows you to accurately and factually identify the products or services that you are using in your business.

The correct statement would be:
PDQ uses quality equipment, including Bowflex® equipment.

Comparative advertising and Descriptive fair use, there are rules that need to be followed. Comparative advertising is described as "advertising that compares alternative brands on objectively measurable attributes or price, and identifies the alternative brand by name, illustration or other distinctive information." **Comparative advertising is encouraged in the United States as it gives consumers important information and promotes product improvement and innovation.**

Fig. 3

34.     When Edge's customers use the HYDRAFACIAL® Mark to advertise, market, promote, sell, and/or offer to sell treatments using Ageless Serums, consumers are likely to be confused and deceived into mistakenly believing that they are receiving authentic HydraFacial® treatments with authentic Edge HydraFacial® Serums, when they are not.

35.     Due to the Ageless customers' continued and improper use of Edge's HydraFacial Mark when providing treatments with Ageless Serums as set forth above, a person seeking a HydraFacial® treatment is likely to be deceived and misled into believing that the treatment being provided is a genuine HydraFacial® treatment using genuine HydraFacial® Serums, when they are not.

36.     Edge is informed and believes, and based thereupon alleges, that Ageless intended for the Ageless customers to pass off their hydradermabrasion treatments using Ageless Serums as genuine HydraFacial® treatments using Edge's high-quality HydraFacial® Serums to misappropriate the immense goodwill that Edge has spent enormous time, effort, and expense to cultivate in the marketplace.  Ageless's intent is evident from its actions to encourage and induce Ageless customers to continue using the HYDRAFACIAL® Mark and falsely advertise their treatments as genuine HydraFacial® treatments, despite knowledge that the customers are using Ageless Serums instead of HydraFacial® Serums.

37.     It is vital to Edge's business to protect its customers and consumers and the integrity of its brand by ensuring that the public is not deliberately misled or mistakenly confused as to the source of goods or services provided under the HYDRAFACIAL® Mark.  If consumers purchase hydradermabrasion services under the HYDRAFACIAL® Mark that use Ageless's relatively lower-quality products, it will tarnish the market for authentic HydraFacial® services using authentic HydraFacial® Serums.

38. Ageless induces Edge's customers to infringe the HYDRAFACIAL® Mark when offering services with Ageless Serums. The infringing use of the HYDRAFACIAL® Mark confuses the relevant public and severely damages Edge's hard-earned reputation, goodwill, and its market-leading brand.

39. Ageless's acts complained of herein have caused Edge to suffer substantial loss and irreparable injury. Edge will continue to suffer substantial loss and irreparable injury unless and until Ageless is enjoined from its wrongful infringement of Edge's HydraFacial Mark.

40. Ageless's acts complained of herein have been willful and deliberate.

## IV. COUNT I
## CONTRIBUTORY TRADEMARK INFRINGEMENT

41. Edge repeats and re-alleges the allegations of paragraphs 1-40 of this Complaint as if set forth fully herein.

42. The Ageless customers' unauthorized use of the HYDRAFACIAL® Mark as alleged herein has caused, and will likely continue to cause confusion, mistake, and/or deception in the relevant consumer market.

43. The Ageless customers' unauthorized use of the HYDRAFACIAL® Mark as alleged herein constitutes infringement of a federally registered trademark in violation of 15 U.S.C. § 1114.

44. Ageless has intentionally induced its customers using HydraFacial® Systems to infringe the HYDRAFACIAL® Mark by inducing and causing them to use the HYDRAFACIAL® Mark in connection with hydradermabrasion treatments using Ageless Serums instead of HydraFacial® Serums.

45. Ageless was and continues to be aware that its customers using HydraFacial® Systems are not authorized to hold out their treatments as

HYDRAFACIAL® treatments when such treatments are performed using non-HydraFacial® Serums, including the Ageless Serums.

46. Ageless intends to induce and encourage, and continues to intend to induce and encourage, its customers to advertise, market, promote, sell, and/or offer to sell treatments under the HYDRAFACIAL® Mark when such treatments are provided with Ageless Serums, in direct contravention of Edge's trademark rights.

47. Ageless was, and continues to be, aware that by following the instructions and guidance on the Ageless website, the Ageless customers are deceptively advertising, marketing, promoting, selling, and/or offering to sell treatments using Ageless Serums under the HYDRAFACIAL® Mark.

48. Ageless instructs and encourages its customers to use the HYDRAFACIAL® Mark in connection with treatments using HydraFacial® Systems and Ageless Serums.

49. Edge is informed and believes, and thereon alleges, that Ageless continues to supply Ageless Serums to Ageless customers it knows to be infringing Edge's HYDRAFACIAL® Mark.

50. Ageless has acted in bad faith and is willfully encouraging, inducing, and contributing to the infringement of Edge's HYDRAFACIAL® Mark by Ageless customers.

51. Ageless's activities constitute willful and intentional indirect infringement of Edge's trademark rights in disregard of Edge's rights in the HYDRAFACIAL® Mark and were done despite Ageless's knowledge that the use of the HYDRAFACIAL® Mark in connection with treatments using Ageless Serums was and is in direct contravention of Edge's rights.

52. Edge is informed and believes, and thereon alleges, that Ageless has derived and received, and will continue to derive and receive, gains, profits, and advantages by inducing and contributing to Ageless customers'

- 13 -

infringement of the HYDRAFACIAL® Mark in an amount that is not presently known to Edge. By reason of Ageless's inducement of and contribution to the unauthorized and infringing use of the HYDRAFACIAL® Mark by the Ageless customers, Edge has been damaged and is entitled to monetary relief in an amount to be determined at trial.

53. Due to Ageless's and its customers' infringing acts, Edge has suffered and continues to suffer great and irreparable injury, for which Edge has no adequate remedy at law. Edge is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) that requires Ageless to stop inducing and/or contributing to Ageless customers' infringement of the HYDRAFACIAL® Mark.

## V. COUNT II
## FEDERAL UNFAIR COMPETITION AND CONTRIBUTORY FALSE DESIGNATION OF ORIGIN

54. Edge repeats and re-alleges the allegations of paragraphs 1-53 of this Complaint as if set forth fully herein.

55. Through the actions complained of herein, Ageless is unfairly competing with Edge in violation of 15 U.S.C. § 1125(a).

56. Through the actions complained of herein, Ageless induces and contributes to its customers' infringing use of the HYDRAFACIAL® Mark without Edge's consent, which constitutes a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, in violation of 15 U.S.C. § 1125(a).

57. Ageless's inducement of its customers to engage in acts of unfair competition and false designation of origin has been willful and without regard to Edge's rights.

58. Edge has been damaged by Ageless's conduct in an amount to be determined at trial.

/ / /

59. Edge is entitled to its reasonable attorneys' fees for the necessity of bringing this action.

60. Due to Ageless's actions as alleged herein, Edge has suffered and continues to suffer great and irreparable injury, for which Edge has no adequate remedy at law.

61. Ageless will continue its unlawful actions as alleged herein unless and until enjoined by this Court.

## VI.  COUNT III
## INDUCING BREACH OF CONTRACT

62. Edge repeats and re-alleges the allegations of paragraphs 1-61 of this Complaint as if set forth fully herein.

63. Edge had valid and enforceable Trademark License Agreements with its customer-licensees, whereby Edge licensed its customer-licensees to use the HYDRAFACIAL® Mark in connection with hydradermabrasion services and treatments performed using Edge's HydraFacial® Systems and HydraFacial® Serums.

64. Edge continues to have valid and enforceable Trademark License Agreements with its customer-licensees, whereby Edge licenses its customers to use the HYDRAFACIAL® Mark in connection with hydradermabrasion services and treatments performed using Edge's HydraFacial® Systems and HydraFacial® Serums.

65. Ageless was and continues to be aware of the contractual relationships between Edge and its customer-licensees, including the Trademark License Agreements, at least because Ageless founder Rene Chlumecky, as a former Edge employee, gained knowledge of Edge's Trademark License Agreements during his employ.

66. Edge is informed and believes, and thereon alleges, that Ageless intended and continues to intend for Edge's customer-licensees to breach their

respective Trademark License Agreements with Edge. For example, Ageless has and continues to intentionally induce Edge's licensees to breach their respective Trademark License Agreements by encouraging Edge's licensees to falsely designate their treatments as HYDRAFACIAL® treatments, despite substituting Ageless Serums for HydraFacial® Serums, in violation of the Trademark License Agreement.

67. As a result of Ageless's inducement, Edge's customer-licensees have advertised, marketed, promoted, sold, and/or offered for sale hydradermabrasion treatments under the HYDRAFACIAL® Mark using Ageless Serums in their HydraFacial® Systems, despite explicit contractual provisions in the Trademark License Agreement to the contrary.

68. Unless and until Ageless is enjoined by this Court, Ageless will continue to induce Edge's customer-licensees who have valid Trademark License Agreements with Edge to breach their respective agreements with Edge by substituting Ageless Serums for HydraFacial® Serums for use with their HydraFacial® Systems and continuing to advertise, market, promote, sell, and/or offer for sale their hydradermabrasion treatments under the HYDRAFACIAL® Mark, despite explicit contractual provisions in the Trademark License Agreement to the contrary.

69. As a foreseeable, direct and proximate result of the Edge licensee's breach of contract, Edge has and will continue to suffer damage and irreparable injury to its rights.

70. Ageless's willful acts of inducing breach of contract constitute fraud, oppression, and malice. Accordingly, Edge is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

/ / /

# VII.  COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

71.    Edge repeats and re-alleges the allegations of paragraphs 1-70 of this Complaint as if set forth fully herein.

72.    Edge has valid and enforceable Trademark License Agreements with its customers, whereby Edge licenses its customers to use the HYDRAFACIAL® Mark in connection with hydradermabrasion services and treatments performed using Edge's HydraFacial® Systems and HydraFacial® Serums.

73.    Edge has a protectable interest in its contractual relationships with its licensees and, specifically, has a protectable interest in its Trademark License Agreements.

74.    Edge's customer-licensees who have offered, sold, and provided hydradermabrasion treatments under the HYDRAFACIAL® Mark using Ageless Serums in their HydraFacial® Systems have breached the Trademark License Agreements with Edge.  Edge's customer-licensees were induced by Ageless to breach the Trademark License Agreements.

75.    Ageless was aware of the contractual relationships between Edge and its licensees, including the Trademark License Agreements, at least because Ageless founder Rene Chlumecky, as a former Edge employee, had knowledge of Edge's Trademark License Agreements during his employ.

76.    Edge is informed and believes, and thereon alleges, that Ageless intended for Edge's licensees to breach their respective Trademark License Agreements with Edge.  For example, Ageless has intentionally induced Edge's licensees to breach their respective Trademark License Agreements by encouraging Edge's licensees to falsely designate their treatments as HYDRAFACIAL® treatments, despite substituting Ageless Serums for HydraFacial® Serums in violation of the Trademark License Agreement.

77.   As a foreseeable, direct and proximate result of the Edge licensee's breach of contract, Edge has suffered damage and irreparable injury to its rights. Edge will continue to suffer such damage and injury unless and until Ageless is enjoined by this Court.

78.   Ageless's willful acts of tortious interference constitute fraud, oppression, and malice.  Accordingly, Edge is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## VIII.  COUNT V

## UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200 *et seq.*

79.   Edge repeats and re-alleges the allegations of paragraphs 1-78 of this Complaint as if set forth fully herein.

80.   Ageless's acts as alleged herein, including trademark infringement and tortious interference with contractual relations, constitute unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code §§ 17200 *et seq.*

81.   Edge is informed and believes, and thereon alleges, that Ageless has derived and received, and will continue to derive and receive, gains, profits, and advantages from Ageless's unfair competition in an amount that is not presently known to Edge.

82.   By its actions, Ageless has injured and violated the rights of Edge and has irreparably injured Edge, and such irreparable injury will continue unless Ageless is enjoined by this Court.

## IX.  COUNT VI

## CALIFORNIA COMMON LAW UNFAIR COMPETITION

83.   Edge repeats and re-alleges the allegations of paragraphs 1-82 of this Complaint as if set forth fully herein.

/ / /

84.     Ageless's acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

85.     By virtue of the acts complained of herein, Ageless has willfully and intentionally caused a likelihood of confusion among the purchasing public in this judicial district and elsewhere, thereby unfairly competing with Edge in violation of the common law of the State of California.

86.     Ageless's aforementioned acts have damaged Edge in an amount to be determined at trial.

87.     Ageless has irreparably injured Edge. Such irreparable injury will continue unless Ageless is enjoined by this Court from further violating Edge's rights, for which Edge has no adequate remedy at law.

88.     Ageless's willful acts of unfair competition under California common law constitute fraud, oppression, and malice.  Accordingly, Edge is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment in its favor and against Defendant for the following relief:

A.     An Order adjudging Ageless to have contributorily infringed the HydraFacial Mark;

B.     An Order adjudging Ageless to have competed unfairly with Edge in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

C.     An Order adjudging Ageless to have induced breach of contract;

D.     An Order adjudging Ageless to have tortiously interfered with Edge's contractual relations.

E.     A preliminary and permanent injunction enjoining Ageless, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Ageless, from inducing breach of contract

and from tortiously interfering with Edge's contractual relations, including but not limited to marketing and selling Ageless Serums for use with HydraFacial® Systems, without providing HydraFacial® System users with actual written notice that: they are prohibited from (1) using the HYDRAFACIAL® Mark in any manner in connection with hydradermabrasion treatments that use Ageless Serums with a HydraFacial® System; (2) using the HYDRAFACIAL® Mark in any manner in connection with hydradermabrasion treatments that use Ageless Serums with a HydraFacial® System constitutes infringement of the HYDRAFACIAL® Mark; (3) using the HYDRAFACIAL® Mark in any manner in connection with hydradermabrasion treatments that use Ageless Serums with a HydraFacial® System is a breach of, and will result in termination of, their Trademark License Agreement with Edge to use the HYDRAFACIAL® Mark, and (4) such trademark infringement and breach of the Trademark License Agreement subjects them to potential liability to Edge.

F.     A preliminary and permanent injunction enjoining Ageless, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Ageless, from inducing, instructing, or encouraging its customers to falsely designate the origin of their hydradermabrasion treatments, misrepresenting by any means whatsoever, directly or indirectly, the source or sponsorship of their hydradermabrasion treatments, and causing a likelihood of confusion or injuries to Edge's business reputation.

G.     An Order adjudging Ageless to have competed unfairly with Edge in violation of California Business & Professions § 17200 *et seq.*;

H.     An Order adjudging Ageless to have unfairly competed with Edge under the common law of the State of California;

I.     A preliminary and permanent injunction enjoining Ageless, its officers, directors, agents, servants, employees, and attorneys, and those persons

in active concert or participation with Ageless, from unfairly competing with Edge in any manner.

J.    An accounting to determine for any and all profits derived by Ageless and all damages sustained by Edge by virtue of Ageless's acts complained of herein.

K.    An Order adjudging that Ageless's actions complained of herein be deemed willful, and further, that Plaintiff be entitled to enhanced damages pursuant to 15 U.S.C. § 1117;

L.    An Order adjudging this to be an exceptional case under 15 U.S.C. § 1117 and ordering Ageless to pay to Edge its reasonable attorney fees incurred in this action;

M.    An Order that Ageless acted with malice, oppression, or fraud and awarding Edge punitive damages under California law;

N.    An Order awarding pre-judgment and post-judgement interest and costs as fixed by the Court; and

O.    Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 21, 2020    By: */s/ Ali S. Razai*
                                Craig S. Summers
                                Ali S. Razai
                                Karen M. Cassidy
                                David G. Kim

                                *Attorneys for Plaintiff*
                                EDGE SYSTEMS LLC

- 21 -

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 21, 2020     By: */s/ Ali S. Razai*
                                   Craig S. Summers
                                   Ali S. Razai
                                   Karen M. Cassidy
                                   David G. Kim

                                   *Attorneys for Plaintiff*
                                   EDGE SYSTEMS LLC

33591905

- 22 -