# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

| | |
|---|---|
| Present: The Honorable | FERNANDO L. AENLLE-ROCHA<br>UNITED STATES DISTRICT JUDGE |
| V. Vallery | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceeding:** (IN CHAMBERS) ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSE [DKT. 15]

## Ruling

Before the court is Plaintiff Edge Systems LLC's ("Edge" or "Plaintiff") Motion to Dismiss Defendant Ageless Serums LLC's ("Ageless" or "Defendant") counterclaims and strike Ageless' ninth affirmative defense for unlawful tying and illegality. Dkt. 15. For the reasons set forth below, the court GRANTS Edge's Motion with 20 days' leave to amend.

## Background

Edge is a California corporation that designs and manufactures "skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems." Dkt. 1 ("Compl.") ¶¶ 5, 8.[1] Edge alleges it has continuously used the mark "HYDRAFACIAL®" to advertise and promote its hydradermabrasion systems since 2005 and registered the mark on April 9, 2013 as Trademark Registration No. 4,317,059. Id. ¶¶ 11-12. Edge contracts with customer-licensees pursuant to a license agreement (the "Trademark License Agreement" or "Agreement"). Id. ¶ 20; Dkt. 1-2. Under the Trademark License Agreement, Edge authorizes customer-licensees to use the HYDRAFACIAL® mark in connection with the sale and promotion of hydradermabrasion treatments, "so long as those treatments are performed solely using genuine HydraFacial® Systems and genuine HydraFacial® Serums."

---

[1] While the subject motion concerns Ageless' counterclaims and affirmative defense, the court includes details from the operative Complaint solely for additional context and does not presume the allegations in the Complaint are true.

Page 1 of 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

Compl. ¶ 20.

    Ageless is a Texas limited liability company that develops serums for use with hydradermabrasion systems and is a customer-licensee of Edge. *Id.* ¶¶ 6, 21. According to Edge, Ageless urges Edge's customers to use Ageless' serums with Edge's hydradermabrasion equipment instead of Edge's own serums. *Id.* ¶¶ 21, 31-32. Edge contends Ageless is aware that if an Edge customer-licensee uses Ageless' serums with Edge's systems, the customer-licensee is in violation of its Trademark License Agreement with Edge. *Id.* ¶¶ 28-30.

    Edge filed the Complaint on October 21, 2020, alleging six causes of action against Ageless for: (1) contributory trademark infringement; (2) unfair competition and contributory false designation of origin; (3) inducing breach of contract; (4) tortious interference with contractual relations; (5) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) common law unfair competition. *Id.* ¶¶ 41-88.

    Ageless filed the operative First Amended Answer and Counterclaims ("FAAC") on December 15, 2020, in which it asserts the following counterclaims against Edge: (1) "violation of antitrust laws"; (2) unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq.* and California common law, based in part on "unlawful tying"; (3) defamation and false advertising; and (4) tortious interference with business relations. Dkt. 14 at 13 ("FAAC Counterclaims") ¶¶ 13-36. Ageless also asserts affirmative defenses, including its ninth affirmative defense that Edge has violated federal and state antitrust laws. *Id.* (Affirmative Defenses) ¶ 9.[2]

    Ageless alleges Edge's Trademark License Agreement constitutes an unlawful tying agreement. FAAC Counterclaims at ¶ 15. According to Ageless, the Agreement provides that a customer-licensee may purchase Edge's skincare equipment only on condition the customer-licensee also purchases Edge's serums. *Id.* Ageless further alleges Edge "has market power in the market for the equipment it sells, including the HydraFacial equipment,"

---

[2] Ageless asserts "Edge's claims are barred because they are illegal and constitute unlawful tying in violation of federal and state antitrust laws." Dkt. 14 at 10 ("FAAC Affirmative Defenses") ¶ 9. Ageless cites to "the California Copyright Act *§ 16700 et. seq.*" (italics in original), by which Ageless presumably intended to cite the Cartwright Act, California's state antitrust statute, codified at Cal. Bus. & Prof. Code § 16700 *et seq.* The analysis under the Cartwright Act mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001). Thus, the court will only address Ageless' claims under the Sherman Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

and that Edge has "restrained commerce" and "exclude[d] competition." *Id.* at ¶¶ 16-17.

On December 20, 2020, Edge filed the present motion to dismiss Ageless' (1) antitrust counterclaim, (2) unfair competition claim to the extent it relies on violations of antitrust law, and (3) tortious interference claim. Dkt. 15. Edge simultaneously moves to strike Ageless' affirmative defense based on alleged violations of federal and state antitrust laws. *Id.*

The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15.

## Discussion

### I. Legal Standards

#### A. Motion to Dismiss under Rule 12(b)(6)

The standard for evaluating a motion to dismiss a counterclaim is the same as for a motion to dismiss a complaint. *See, e.g., Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120, 1122 (C.D. Cal. 2008) (evaluating motion to dismiss counterclaims under Rule 12(b)(6)). Under Fed. R. Civ. P. 12(b)(6), a party may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." The purpose of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of the claims asserted in the complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).

A district court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts "to support a cognizable legal theory." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter … to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (internal citations omitted). "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Legal conclusions, however, "are not entitled to the assumption of truth" and "must be supported by factual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

allegations." *Iqbal*, 556 U.S. at 679. A court must normally convert a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment if it considers evidence outside the pleadings. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*[3]

### B. Motion to Strike Affirmative Defenses under Rule 12(f)

"Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987) (citing *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)). Fed. R. Civ. P. 12(f) permits a court to strike an insufficient defense. *Id.* at 263. The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by disposing of those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)).

On a motion to strike, the court must treat as admitted all material factual allegations underlying the challenged defenses and all reasonable presumptions that can be drawn therefrom. *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981) (citation omitted). The grounds for a motion to strike must appear on the face of the pleading under attack or from matter which the court may judicially notice. *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). If an affirmative defense is stricken, such as for failure to plead sufficient facts, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 440, 441-42 (C.D. Cal. 2013).

### II. Sufficiency of Antitrust Counterclaim

#### A. Legal Standard

Sections 4 and 16 of the Clayton Act, codified in 15 U.S.C. §§ 15(a), 26, create causes of action for private parties to seek damages and injunctive relief for violations of the

---

[3] Because the Trademark License Agreement forms the basis of Ageless' counterclaims and affirmative defense and Ageless refers extensively to the Agreement in its counterclaims, the court incorporates the Agreement (Dkt. 1-2) into Ageless' counterclaims. *See Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

federal antitrust laws. Section 1 of the Sherman Act, codified in 15 U.S.C. § 1 ("Section 1"), proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations …."

To establish a claim under Section 1, a plaintiff must show: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce in interstate or foreign commerce; (3) which actually injures competition; and (4) that the plaintiff suffered "antitrust injury," that is, that the plaintiff was harmed by the defendant's anticompetitive contract, combination, or conspiracy, and that this harm flowed from an "anti-competitive aspect of the practice under scrutiny." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012).

"A tying arrangement is a device used by a competitor with market power in one market to extend its market power to an entirely distinct market. To accomplish this objective, the competitor agrees to sell one product (the tying product) but only on the condition that the buyer also purchase a different product (the tied product), or at least agrees that he will not purchase the tied product from any other supplier." *Paladin Assocs. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (internal quotation marks and citation omitted). Tying is unlawful under Section 1 "on the theory that, if the seller has market power over the tying product, the seller can leverage this market power through tying arrangements to exclude other sellers of the tied product.'" *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1089 (9th Cir. 2009) (quoting *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008)).

"Tying can be either a per se violation or a violation under the rule of reason." *See Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1157 (9th Cir. 2001).[4] "A per se tying violation 'is proscribed without examining the actual market conditions, when the seller has such power in the tying product or service market that 'the existence of forcing is probable,' … and there is 'a substantial potential for impact on competition.' A tying arrangement which is not unlawful per se may be invalidated under the 'rule of reason' if the party challenging the tie demonstrates that it is 'an unreasonable restraint on competition in the relevant market.' Both per se rules and the Rule of Reason are employed to form a

---

[4] A plaintiff that fails to state a per se unlawful tying claim may still prevail under the rule of reason. *See Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29 (1984), *overruled on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 31 (2006). "[T]he inquiry mandated by the Rule of Reason is whether the challenged agreement is one that promotes competition or one that suppresses competition." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 691 (1978).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

judgment about the competitive significance of the restraint." *Id.* (internal quotation marks and citations omitted).

Tying arrangements are unlawful per se where a plaintiff shows: (1) the defendant tied together the sale of two distinct products or services; (2) the defendant possesses sufficient economic power, i.e., market power, in the tying product market to coerce its customers into purchasing the tied product; and (3) the tying arrangement affects a "not insubstantial volume of commerce" in the tied product market, such that there is reduced competition in the market for the tied product. *Blough*, 574 F.3d at 1089 (brackets omitted); *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 46 (2006) ("[I]n all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product.").

### B. Existence of a Tying Condition

"It is well settled that there can be no unlawful tying arrangement absent proof that there are, in fact, two separate products, the sale of one (i.e., the tying product) being conditioned upon the purchase of the other (i.e., the tied product)." *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1352 (9th Cir. 1982). As the Supreme Court has observed, "where the buyer is free to take either product by itself there is no tying problem …." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 6 n.4 (1958).

Edge argues Ageless' antitrust counterclaims fail because the Trademark License Agreement does not condition purchase of Edge's equipment on purchase of Edge's serum. Dkt. 16 ("Mot. Br.") at 11-12. According to Edge, "There simply is not a word in the trademark license suggesting that dermatologists and other customers may not purchase Edge's equipment unless they also purchase Edge's serums." *Id.*

Ageless responds it has pleaded Edge sells two separate products, Edge's hydradermabrasion equipment and Edge's serum, and that the Trademark License Agreement establishes an unlawful tie between the two products. Opp. 9-12. According to Ageless, the clear language of the agreement "states that the equipment (the 'tying product' is to be used solely and exclusively by purchasing Edge's serum (the 'tied product') so that Edge's system will 'function properly and effectively.'" Opp. 11 (quoting Compl. Ex. 2 at ¶ 3.1).

After reviewing the Trademark License Agreement, the court agrees with Edge. While Ageless argues the terms of the Trademark License Agreement condition the purchase of Edge's equipment on the purchase of Edge's serums, Opp. 11, FAAC Counterclaims at ¶ 15, the Agreement does not contain any such limitation and only governs a licensee's authorization to use Edge's <u>trademarks</u>. The "Grant of License" provision states, in relevant part:

Licensor grants to Licensee the nonexclusive, royalty free <u>right to reproduce</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

> and display the trademarks listed in Exhibit A attached hereto (collectively "Licensed Trademarks") solely in connection with the advertising and promotion of HydraFacial treatments and/or Perk treatments only within the Licensee's Territory as defined below. In addition, Licensor may grant to Licensee these same or lesser rights, with respect to select trademarks for use in marketing campaigns for future products or services. …

Dkt. 1-2 (Ex. 2) at § 1, ¶ 1.1.

The purported tying provision, meanwhile, states that the agreement, which grants the customer a license to use Edge's trademarks, is conditioned upon the trademark "Licensee" purchasing Edge's serums from Edge or one of Edge's authorized distributors. *Id.* ¶ 3.1. The provision reads, in full:

> In recognition that the HydraFacial system and equipment and the Perk system and equipment only function properly and effectively with the use of Licensor's serum solutions and consumables, Licensee agrees to purchase the serum solutions and consumables used in the Purchased Equipment solely and exclusively from Licensor or its authorized distributor in good standing. Any unauthorized use of solutions other than Licensor's is not allowed, will void the warranty, and will result in an automatic termination of this License Agreement.

Dkt. 1-2 (Exhibit 2) ¶ 3.1 (underline added). Under this term of the Agreement, if a customer-licensee uses non-Edge serums with Edge's equipment, the Agreement automatically terminates, and the licensee may no longer use Edge's marks. *Id.*

Neither the grant of license nor the provision requiring the purchase of Edge's serums requires a purchaser of Edge's equipment to also purchase Edge's serum. These provisions only require licensees of Edge's trademarks to purchase Edge's serums to use the HydraFacial® mark in connection with their skincare services. Indeed, the Agreement is silent as to equipment purchasers who do not license Edge's mark, and nothing in the Agreement precludes a customer from purchasing Edge's equipment without purchasing Edge's serums. Ageless' allegations and arguments that the Trademark Licensing Agreement imposes any limitations on the purchase or use of Edge's equipment, thus, fail.

Because Ageless' antitrust counterclaims are predicated on the existence of a tying arrangement between Edge's equipment and its serums, "the facts as pleaded do not fit the definition of a tying arrangement," and Ageless' antitrust counterclaims and affirmative defense of violation of antitrust laws fail. *See RealPage, Inc. v. Yardi Sys.*, No. CV-11-00690-ODW (JEMx), 2011 U.S. Dist. LEXIS 90095, at *14-15 (C.D. Cal. Aug. 11, 2011) (dismissing tying claim for failure to allege plausibly existence of a tying condition); *see SEC,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

902 F. Supp. at 1165.[5]

Edge further argues Ageless' counterclaim fails on several additional dispositive grounds, namely, that Ageless fails to allege: (1) Edge ties two products in separate markets; (2) Ageless has suffered antitrust injury; (3) the existence of relevant antitrust markets as to either the tying or the tied product; (4) Edge enjoys market power with respect to the tying product; and (5) Edge has harmed competition. Mot. Br. at 2-4, 14-16. As Ageless has failed to allege the existence of an agreement that imposes a tying condition, the court need not address the parties' arguments as to these remaining grounds.

For the foregoing reasons, the court GRANTS Edge's Motion to Dismiss Ageless' first counterclaim for violation of antitrust laws and second counterclaim for unfair competition, to the extent the latter is premised on violation of antitrust laws. The court further GRANTS Edge's Motion to Strike Ageless' ninth affirmative defense for violation of antitrust laws, finding "there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." See SEC, 902 F. Supp. at 1165. Defendant Ageless is granted 20 days' leave to amend to allow it the opportunity to plead sufficient facts to state these counterclaims and this affirmative defense.

### III. Ageless' Tortious Interference With Business Relations Claim

The elements of tortious intentional interference with contract are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Guidiville Band of Pomo Indians v. NGV Gaming, LTD.*, 531 F.3d 767, 774 (9th Cir. 2008) (citation omitted).

The elements of tortious intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant. *Packaging Sys. v. PRC-Desoto*

---

[5] Plaintiff Edge additionally argues its trademarks cannot qualify as a separate tying product under *Krehl*, 664 F.2d 1348 (9th Cir. 1982). Mot. Br. 11-14. Ageless responds the counterclaim does not allege Edge's trademark, but rather Edge's skincare device, is the tying product. Opp. at 11-13. As Ageless expressly asserts it is not alleging the existence of a tie between Edge's serums and its trademarks, the court need not address the parties' arguments regarding *Krehl*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

*Int'l, Inc.*, 268 F. Supp. 3d 1071, 1089-90 (C.D. Cal. 2017) (citing *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)). In addition to these elements, a plaintiff must show the defendant's conduct was wrongful by some legal measure other than the fact of the interference itself. *Della Penna v. Toyota Motor Sales, U.S.A.*, Inc., 11 Cal. 4th 376, 393 (1995). Wrongful, in this context, means the act of interference "is independently unlawful, that is, [] it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

Ageless does not specify whether its claim is for tortious interference with contract or tortious interference with prospective economic advantage. However, Edge argues Ageless fails to bring either claim because Ageless does not identify any actual or prospective contract with which Edge allegedly interfered. Mot. Br. at 20-21.[6] To the extent Ageless intends to bring a tortious interference with prospective economic advantage claim, Edge also argues such claim would fail because Ageless fails to allege Edge engaged in any wrongful conduct as the means of interference. *Id.*

The court agrees with Edge. The FAAC does not identify any contractual or prospective business relationship with which Edge allegedly interfered. *See* FAAC Counterclaims at ¶¶ 29-36. Although Ageless states it is prepared to allege these specific relationships as well as Edge's knowledge, acts of interference, and disruption of customer relationships in an amended counterclaim, Ageless implicitly concedes it has not done so in the current pleading. Opp. at 22. Instead, Ageless argues Edge has engaged in "obvious hypocrisy" since it has not met the same standard for its "Inducement to Breach Contract" claim. *Id.* Although a failure to plead all necessary elements of its inducement to breach contract claim may support a challenge to Plaintiff's corresponding claim, Plaintiff's failure to meet the pleading standards would not excuse Ageless from sufficiently pleading this cause of action in the FAAC.

Accordingly, the court GRANTS Edge's Motion to Dismiss Ageless' tortious interference claim with 20 days' leave to amend.

**Conclusion**

For the foregoing reasons, the court GRANTS Edge's Motion to Dismiss Ageless' first counterclaim for violation of antitrust laws, second counterclaim for unfair competition claim to the extent it relies on violations of antitrust law, and fourth counterclaim for tortious

---

[6] Ageless argues Edge's Complaint suffers from the same defect but does not cite any authority for the proposition that Ageless is entitled to avoid dismissal because Edge's Complaint purportedly does not name specific contractual relationships in connection with Edge's interference claim. Opp. at 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:20-cv-09669-FLA (PVCx) | Date | May 11, 2021 |
| Title | Edge Systems LLC v. Ageless Serums LLC | | |

interference with business relations, and GRANTS Edge's Motion to Strike Ageless' ninth affirmative defense for unlawful tying and illegality. Ageless shall have 20 days from the date of this order to file an amended answer and counterclaims.

IT IS SO ORDERED.

_____ : _____

Initials of Preparer   vrv