# EXHIBIT 4

1  JAMES E. DOROSHOW (SBN 112920)
   JDoroshow@FoxRothschild.com
2  **FOX ROTHSCHILD LLP**
   Constellation Place
3  10250 Constellation Blvd, Suite 900
   Los Angeles, CA 90067
4  Telephone: (310) 598-4150
   Facsimile: (310) 556-9828
5
6  Attorneys for Defendant & Counterclaim
   Plaintiff, AGELESS SERUMS LLC
7
8              **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
10                 **WESTERN DIVISION**
11
   EDGE SYSTEMS LLC, a California      | Case No. 2:20-cv-09669
12 limited liability company,          |
                                        | Judge: Hon. Fernando M. Olguin
13                       Plaintiff,     |
                                        | **DEFENDANT AGELESS SERUMS LLC'S**
14       v.                            | **THIRD AMENDED: (1) ANSWER TO**
                                        | **PLAINTIFF EDGE SYSTEMS LLC'S**
15 AGELESS SERUMS LLC, a Texas         | **COMPLAINT; AND**
   limited liability company,          | **(2) COUNTERCLAIMS**
16                                      |
                       Defendant.       |
17
18                                      | **[DEMAND FOR JURY TRIAL]**
19                                      | Complaint Filed: October 21, 2020
20
21
22
23
24
25
26
27
28

                              1

AGELESS SERUMS LLC, a Texas
limited liability company,,

              Counterclaim Plaintiff,

      v.

EDGE SYSTEMS LLC, a California
limited liability company; THE
BEAUTY HEALTH COMPANY, a
Delaware corporation; THE
HYDRAFACIAL COMPANY, a
California corporation; CLINT E.
CARNELL, an individual; and DOES 1
through 100, inclusive

              Counterclaim Defendants.

     For its Third Amended Answer to the Complaint of Edge Systems LLC ("Edge" or "Plaintiff"), Defendant Ageless Serums LLC ("Ageless" or "Defendant") responds and alleges as follows:

## I. <u>JURISDICTION AND VENUE</u>

     1.    In response to paragraph 1, Ageless admits that the Complaint purports to include claims for trademark infringement, tortious interference with contractual relations, and unfair competition under federal, state and common law, but denies that there is any grounds or basis (factual or legal) for these claims.

     2.    In response to paragraph 2, Ageless admits the allegations in this paragraph are legally accurate at this time subject to Ageless's right to challenge jurisdiction if one or more of the claims are determined to lack merit or are dismissed by this Court.

     3.    In response to paragraph 3 of the Complaint, Ageless admits that it does business in California, but denies that Ageless has committed any wrongful or illegal action in doing so, including, but not limited to, in a manner that infringes, interferes or violates any of Edge's claimed rights.  Except as expressly admitted in this response, the allegations in paragraph 3 of the Complaint are denied.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

4.     In response to paragraph 4 of the Complaint, Ageless admits that venue is proper in this judicial district.  Ageless otherwise denies the allegations of paragraph 4 of the Complaint.

## II.     THE PARTIES

5.     In response to paragraph 5 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

6.     In response to paragraph 6 of the Complaint, Ageless admits that it is a Texas limited liability company with a principal place of business at the address alleged. Ageless lacks sufficient information or knowledge what Edge knows or believes and therefore denies the balance of the remaining allegations in this paragraph.

7.     In response to paragraph 7 of the Complaint, Ageless lacks sufficient information and knowledge to know what specific "acts" Edge is referring thereto and therefore denies the allegations in this paragraph at this time.

## III.     GENERAL ALLEGATIONS

### A.     Edge Trademark and Trademark Licenses

8.     In response to paragraph 8 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

9.     In response to paragraph 9 of the Complaint, Ageless is informed and believes that Edge designs and sells one or more of the serums described in this paragraph, but lacks sufficient knowledge or information to respond to the remaining allegations in this paragraph and therefore denies them at this time.

10.     In response to paragraph 10 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

11.     In response to paragraph 11 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

12.     In response to paragraph 12 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

13.     In response to paragraph 13 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

14.     In response to paragraph 14 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

15.     In response to paragraph 15 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

16.     In response to paragraph 16 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

17.     In response to paragraph 17 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

18.     In response to paragraph 18 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

19.     In response to paragraph 19 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

20. In response to paragraph 20 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

**B.    Alleged Infringement of Edge's HydraFacial Mark**

21. In response to paragraph 21 of the Complaint, Ageless admits that it is in the business of selling serums for use with hydrodermabrasion systems. Ageless admits that it promotes and sells serum that can be used as replacement for serums sold by others, including Edge. Ageless denies the remaining allegations in this paragraph.

22. In response to paragraph 22 of the Complaint, Ageless admits that Edge brought suit against Ageless in or about 2017. Ageless lacks sufficient knowledge or information about when or what Edge claims to have "discovered," and denies this allegation. Ageless also denies that it had done anything "improper," and therefore denies the remaining allegations in this paragraph of the Complaint.

23. In response to paragraph 23 of the Complaint, Ageless lacks sufficient knowledge or information as to what "rights" Edge is referring to in the first sentence of paragraph 23 of the Complaint, and therefore denies this sentence. Ageless admits the remaining allegations of paragraph 23 of the Complaint.

24. In response to paragraph 24 of the Complaint, Ageless denies the allegations in this paragraph.

25. In response to paragraph 25 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

26. In response to paragraph 25 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in this paragraph and therefore denies them at this time.

27. In response to paragraph 27 of the Complaint, Ageless admits the allegations in this paragraph to the extent it relates to the present.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

28.     In response to paragraph 28 of the Complaint, Ageless lacks sufficient knowledge or information to respond to this paragraph and therefore denies this paragraph at this time.

29.     In response to paragraph 28 of the Complaint, Ageless lacks sufficient knowledge or information to respond to this paragraph and therefore denies this paragraph at this time.

30.     In response to paragraph 30 of the Complaint, Ageless denies the allegations in this paragraph.

31.     In response to paragraph 31 of the Complaint, Ageless admits it instructs its customers how to use Ageless Serums, but denies it instructs them to do so.  Ageless admits the remaining allegations of this paragraph.

32.     In response to paragraph 32 of the Complaint, Ageless denies the allegations of this paragraph.  Ageless merely engages in lawful comparative advertising and promotion to demonstrate that its serum is of higher quality than serums used by Edge and others.

33.     In response to paragraph 33 of the Complaint, Ageless denies that is infringing any Edge mark or misleading or instructing its customers or anyone else about doing so.  Ageless admits the remaining allegations in this paragraph.

34.     In response to paragraph 34 of the Complaint, Ageless denies the allegations in this paragraph.

35.     In response to paragraph 35 of the Complaint, Ageless denies the allegations in this paragraph.

36.     In response to paragraph 36 of the Complaint, Ageless denies the allegations in this paragraph.

37.     In response to paragraph 37 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations in the first sentence of this paragraph and therefore denies them at this time.  Ageless denies the remaining allegations in this paragraph.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

38.     In response to paragraph 38 of the Complaint, Ageless denies the allegations in this paragraph.

39.     In response to paragraph 39 of the Complaint, Ageless denies the allegations in this paragraph.

40.     In response to paragraph 40 of the Complaint, Ageless denies the allegations in this paragraph.

## IV.   COUNT I

## ALLEGED CONTRIBUTORY TRADEMARK INFRINGEMENT

41.     In response to paragraph 41 of the Complaint, Ageless repeats and re-alleges its responses to paragraphs 1-40 of this Answer as if set forth fully herein.

42.     In response to paragraph 42 of the Complaint, Ageless denies the allegations in this paragraph.

43.     In response to paragraph 43 of the Complaint, Ageless denies the allegations in this paragraph.

44.     In response to paragraph 44 of the Complaint, Ageless denies the allegations in this paragraph.

45.     In response to paragraph 45 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations what Ageless's individual customers are authorized or not authorized to do and therefore denies the allegations in this paragraph, including, but not limited to, the allegation claiming what knowledge Ageless has about its customers' authorization or lack thereof.

46.     In response to paragraph 46 of the Complaint, Ageless denies the allegations in this paragraph.

47.     In response to paragraph 47 of the Complaint, Ageless denies the allegations in this paragraph.

48.     In response to paragraph 48 of the Complaint, Ageless denies the allegations in this paragraph.

49.     In response to paragraph 49 of the Complaint, Ageless denies the allegations

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

in this paragraph.

50.     In response to paragraph 50 of the Complaint, Ageless denies the allegations in this paragraph.

51.     In response to paragraph 51 of the Complaint, Ageless denies the allegations in this paragraph.

52.     In response to paragraph 52 of the Complaint, Ageless denies the allegations in this paragraph.

53.     In response to paragraph 53 of the Complaint, Ageless denies the allegations in this paragraph.

## V.  COUNT II

## ALLEGED FEDERAL UNFAIR COMPETITION AND CONTRIBUTORY FALSE DESIGNATION OF ORIGIN

54.     In response to paragraph 54 of the Complaint, Ageless repeats and re-alleges its responses to paragraphs 1-53 of this Answer as if set forth fully herein.

55.     In response to paragraph 55 of the Complaint, Ageless denies the allegations in this paragraph.

56.     In response to paragraph 56 of the Complaint, Ageless denies the allegations in this paragraph.

57.     In response to paragraph 57 of the Complaint, Ageless denies the allegations in this paragraph.

58.     In response to paragraph 58 of the Complaint, Ageless denies the allegations in this paragraph.

59.     In response to paragraph 59 of the Complaint, Ageless denies the allegations in this paragraph.

60.     In response to paragraph 60 of the Complaint, Ageless denies the allegations in this paragraph.

61.     In response to paragraph 61 of the Complaint, Ageless denies the allegations in this paragraph.

## VI.    COUNT III

## ALLEGED INDUCING BREACH OF CONTRACT

62.    In response to paragraph 62 of the Complaint, Ageless repeats and re-alleges its responses to paragraphs 1-61 of this Answer as if set forth fully herein.

63.    In response to paragraph 63 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations of this paragraph and therefore denies them at this time.

64.    In response to paragraph 64 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations of this paragraph and therefore denies them at this time.

65.    In response to paragraph 65 of the Complaint, Ageless lacks sufficient knowledge or information about the terms of Edge's alleged contracts or Trademark License Agreements with any of its individual customers or licensees in the past or present, and therefore denies the allegations in this paragraph at this time.

66.    In response to paragraph 66 of the Complaint, Ageless denies the allegations in this paragraph.

67.    In response to paragraph 67 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations of this paragraph and therefore denies them at this time.

68.    In response to paragraph 68 of the Complaint, Ageless denies the allegations in this paragraph.

69.    In response to paragraph 69 of the Complaint, Ageless denies the allegations in this paragraph.

70.    In response to paragraph 70 of the Complaint, Ageless denies the allegations in this paragraph.

## VII.   COUNT IV

## ALLEGED TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

71.     In response to paragraph 71 of the Complaint, Ageless repeats and re-alleges its responses to paragraphs 1-70 of this Answer as if set forth fully herein.

72.     In response to paragraph 72 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations of this paragraph and therefore denies them at this time.

73.     In response to paragraph 73 of the Complaint, Ageless lacks sufficient knowledge or information to respond to the allegations of this paragraph and therefore denies them at this time.

74.     In response to paragraph 74 of the Complaint, Ageless lacks sufficient knowledge or information about the allegations in the first sentence of this paragraph and therefore denies them at this time.  Ageless denies the remaining allegations in this paragraph of the Complaint.

75.     In response to paragraph 75 of the Complaint, Ageless lacks sufficient knowledge or information about the terms of Edge's alleged contracts or Trademark License Agreements with any of its individual customers or licensees, and therefore denies the allegations in this paragraph at this time.

76.     In response to paragraph 76 of the Complaint, Ageless denies the allegations in this paragraph.

77.     In response to paragraph 77 of the Complaint, Ageless denies the allegations in this paragraph.

78.     In response to paragraph 78 of the Complaint, Ageless denies the allegations in this paragraph.

## VIII.  COUNT V
## ALLEGED UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17200 *et seq.*

79.     In response to paragraph 79 of the Complaint, Ageless repeats and re-alleges its responses to paragraphs 1-78 of this Answer as if set forth fully herein.

80.     In response to paragraph 80 of the Complaint, Ageless denies the allegations

123709225.1

in this paragraph.

81. In response to paragraph 81 of the Complaint, Ageless denies the allegations in this paragraph.

82. In response to paragraph 82 of the Complaint, Ageless denies the allegations in this paragraph.

## IX.    COUNT VI

## ALLEGED CALIFORNIA COMMON LAW UNFAIR COMPETITION

83. In response to paragraph 83 of the Complaint, Ageless repeats and re-alleges its responses to paragraphs 1-82 of this Answer as if set forth fully herein.

84. In response to paragraph 84 of the Complaint, Ageless denies the allegations in this paragraph.

85. In response to paragraph 85 of the Complaint, Ageless denies the allegations in this paragraph.

86. In response to paragraph 86 of the Complaint, Ageless denies the allegations in this paragraph.

87. In response to paragraph 87 of the Complaint, Ageless denies the allegations in this paragraph.

88. In response to paragraph 88 of the Complaint, Ageless denies the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

By asserting these affirmative defenses, Ageless does not admit that it necessarily bears the burden of proof or persuasion for any of the defenses or issues alleged below. Moreover, at this time, Ageless has insufficient information and knowledge upon which to form a belief as to whether additional defenses are or may later become available to it. Ageless reserves the right to amend its responses to the Complaint to add, delete, or modify defenses based upon additional facts and legal theories which it may or will learn, including that which may be divulged through clarification of the Complaint, through discovery, through change or clarification of governing law, or through further analysis

of Edge's allegations and claims in this litigation. Subject to the foregoing, for its affirmative defenses in this action, Ageless hereby presently asserts and alleges the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1. Edge's Complaint, including one or more claims alleged therein, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Waiver, Estoppel, Unclean Hands, And/Or Laches)

2. The equitable doctrines of waiver, estoppel, unclean hands, and/or laches bar at least one or more of Edge's claims for damages and other relief. Among other grounds supporting these defenses, as alleged in Edge's Complaint (¶ 22), Edge asserts it has known of what it describes as "Ageless's improper use of Edge's Mark since at least August 2017," but nevertheless waited until filing this lawsuit until October 21, 2020. Edge has also violated federal and state antitrust and unfair competition law by illegally trying to prevent Ageless from competing with Edge.

## THIRD AFFIRMATIVE DEFENSE

### (Lack of Standing and Injury)

3. Edge lacks standing, including because it has not suffered economic injury. As alleged in Ageless' Answer and below in Ageless' Counterclaim, Ageless is not responsible for any injury Edge claims to have suffered for any of the allegations and claims asserted in its Complaint.

## FOURTH AFFIRMATIVE DEFENSE

### (Absence of Irreparable Harm)

4. Edge's claims for injunctive relief are barred because Edge has not suffered irreparable harm and has an adequate remedy at law. Even in the unlikely event Ageless is determined to be liable for some or all of Edge's claims, Edge has an adequate remedy at law for monetary damages that does not permit equitable or injunctive relief.

123709225.1

## FIFTH AFFIRMATIVE DEFENSE

### (Inequitable Relief)

5.  Edge's claims for injunctive relief are barred because such relief would be inequitable.  Given the facts alleged in Ageless' Counterclaims below (including Edge's antitrust and unfair competitive practices), it would be inequitable to award any of the equitable relief Edge seeks in its Complaint.

## SIXTH AFFIRMATIVE DEFENSE

### (Innocent Infringement)

6.  Edge's claims for relief are barred because any alleged infringement was innocent and not willful.

## SEVENTH AFFIRMATIVE DEFENSE

### (Absence of Confusion)

7.  Edge's claims for relief are barred because Ageless' alleged use of Edge's claimed mark is not likely to cause any form of confusion.  There is no proof that Ageless has created any confusion in the marketplace by advertising or selling its products.  Thus, there is no support for a claim of trademark infringement or any of the other claims in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

### (Fair Use)

8.  Edge's claims are barred against Ageless under the fair use doctrine.  Ageless is entitled by law to compare its products with Edges' products without violating any law. In its website, Ageless clearly states that Edge has a trademark for its name and the products it sells.  *See* also Counterclaim at para. 8.

## NINTH AFFIRMATIVE DEFENSE

### (Unlawful Tying and Illegality)

9.  One or more of Edge's claims are barred because they are illegal and constitute unlawful tying in violation of federal and state antitrust laws.  *See e.g.* Sherman Act *15 U.S.C. § 1* and the Clayton Act *(15 U.S.C. § 114),* as well as State law *(see e.g.,* the

13

California Cartwright Act *§ 16700 et. seq.* and *§ 16727). See also* Counterclaim at para. 10.

## **TENTH AFFIRMATIVE DEFENSE**

### **(No Trademark or Claim)**

10.    One or more of Edge's claims are barred, in whole or in part, because Edge's claims do not constitute trademark infringement or give rise to any other claim alleged in the Complaint.

## **ELEVENTH AFFIRMATIVE DEFENSE**

### **(No Causation)**

11.  Ageless is not the cause of any of the claims alleged or relief sought in the Complaint.  Any of the injuries Edge claims to have suffered, were not caused by Ageless.  For example, Edge's customers-licensees choose not to purchase Edge's products, but instead to purchase Ageless' products.  Ageless did not cause them to do so.  They made this decision on their own.  *See* also Counterclaim at para. 11 below.

## **TWELFTH AFFIRMATIVE DEFENSE**

### **(No Damages)**

12.  Edge's claims are barred because there has been no damage in any amount by reason of any act alleged against Ageless.  *See* Affirmative Defense No. 3 above.

## **THIRTEENTH AFFIRMATIVE DEFENSE**

### **(Reservation of Additional Defenses)**

13.  Ageless presently has insufficient knowledge or information on which to form a belief as to whether there may be additional, as yet unstated, affirmative defenses. Thus, subject to discovery and other proceedings and developments in this action, Ageless expressly reserves its right to assert additional affirmative defenses when and if they are appropriate.

## **COUNTERCLAIMS**

For is Counterclaims against Counterclaim-Defendants Edge Systems LLC, the Beauty Health Company, the Hydra Facial Company, Clinton E. Carnwell, and Does 1

through 100 (collectively "Edge"), Counterclaim Plaintiff Ageless Serums LLC ("Ageless") states and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over these Counterclaims pursuant to *28 U.S.C. Sections 1331, 1338, 2201* and *2202*, as well as the *Lanham Act, 35 U.S.C. Sections 1051 et seq.*

2. This Court has personal jurisdiction over Edge because Counterclaim-Defendant has invoked the jurisdiction of this Court by filing the Complaint herein. The remaining Counter-Defendants are believed to actively conduct business in the State of California and have voluntarily agreed to enter an appearance in this action in any event.

3. Venue is proper in this District pursuant to *28 U.S.C. Section 1391.*

## THE PARTIES

4. Counterclaimant Ageless is a limited liability corporation organized and existing under the laws of Texas with its principal place of business at 6140 Highway 6, Suite 226, Missouri City, Texas 77459.

5. Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant Edge is a California corporation having its principal place of business at 2165 E. Spring Street, Long Beach, California 90806.

6. Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant The HydraFacial Company ("HydraFacial") is a California corporation, having its principal place of business at 2165 E. Spring Street, Long Beach, California 90806. Ageless has been advised by HydraFacial's counsel that HydraFacial is simply a name Edge uses as a d/b/a and is not an independent, separate existing legal entity. If this is in fact the case, Ageless has agreed for now to dismiss HydraFacial from this action without prejudice.

7. Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant The Beauty Health Company ("Beauty Health") is a Delaware corporation, having its principal place of business at 2165 E. Spring Street, Long Beach, California

123709225.1

90806. Ageless is informed and believes, and on that basis alleges, that Beauty Health actively participated in the conduct alleged below.

8. Ageless is informed and believes, and thereon alleges, that Counterclaim Defendant Clint E. Carnell ("Carnell") is an individual residing in Long Beach, California. Ageless is further informed and believes, and thereon alleges, that Carnell served as the Chief Executive Officer of HydraFacial, and is currently the Chief Executive Officer of Beauty Health. Ageless is informed and believes, and on that basis alleges, that Carnell actively participated in the conduct alleged below.

9. Ageless is currently unaware of the identity of those parties named herein as Does 1 through 100 and the specific role they may have played in the conduct alleged below. Nevertheless, Ageless is informed and believes, and thereon alleges, that each of these parties is responsible for some or all of the conduct alleged below and therefore liable to Ageless for one or more of the claims alleged below. Ageless will amend this Counterclaim once the identity of these parties and their conduct and role becomes fully known to Ageless. Unless otherwise alleged, all Counterclaim Defendants are hereinafter sometimes collectively referred to as "Edge."

## EDGE'S HISTORY AND GROWTH

10. Edge was founded in 1997. Edge holds itself out today as the first United States manufacturer to design and sell microdermabrasion systems and to have created the category of hyrdrodermabrasion. As alleged further below, Ageless is informed and believes, and on that basis alleges, that Edge owns a blocking book of patents for the HydraFacial systems it created and sold. According to Edge, Edge's HydraFacial Systems are patented products with 38 awarded and 18 patents pending. In addition, according to Edge, its products are available in over 87 countries with over 17,000 delivery services globally and millions of treatments performed each year. Edge has experienced significant growth since the company was originally founded in 1997. As alleged below, Edge has also been part of a large number of acquisitions and mergers

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

with public companies who have significant resources which have also contributed to a large increase in revenue and increased market power for Edge.

11.     For example, in December 2016, two healthcare-focused private equity firms, Linden Capital Partners ("Linden") and DW Healthcare Partners ("DWHP"), jointly acquired Edge with a reported "vision to invest in the global expansion of the HydraFacial brand." At that time, Ageless is informed and believes that Counter-Defendant Carnell was named as CEO of Edge. Ageless is further informed Linden and DWHP have helped Edge to expand internationally and to sell at least 18,000 systems worldwide at minimum. In 2016, at the time of the Linden/DWHP acquisition, Ageless is informed Edge had 140 employees and generated $48 million in net annual sales. From that point forward, however, revenue grew under the leadership of Carnell and Linden/DWHP, with revenue climbing to over $66 million in 2017. Edge has reported that there was a growth of 52% in annualized sales and 38% annualized EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) growth between 2016 and 2019. Thereafter, Edge's share of the hydrodermabrasion market growth continued to climb to $119 million by 2020.

12.     HydraFacial Equipment is offered and sold by Edge to mom-and-pop spas to the most luxurious hotel destinations such as The Mandarin Oriental and the Four Seasons. Edge has recently announced that it believes it can reach 12% of the United States population, and that "demand has returned swiftly after company Covid-related spa shutdowns." Edge has also recently announced that it expects "rapid growth for the foreseeable future," with revenue to rise 57% in 2021 and 38% by 2022, "with profits also continuing to grow." Edge now projects it should reach $250 million through the sale of its Equipment and consumables (including its serums) to $250 million by 2022, and increasing thereafter.

13.     In May 2017, Edge announced a name change and became known as The HydraFacial Company. After changing its name, Counterclaim Defendant Carnell became CEO of The HydraFacial Company.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

14.     In 2020, a public company named Vesper Healthcare ("Vesper") acquired HydraFacial at a purchase price consisting of $975 million payable at closing, and up to an additional $75 million subject to certain contingencies.

15.     On December 8, 2020, Counterclaim-Defendant Beauty Health (a publicly traded company) acquired HydraFacial under the terms of a merger agreement. Pursuant to the merger agreement, the aggregate merger consideration payable to the stockholders of HydraFacial was paid in a combination of stock and cash equal to $975,000,000, subject to certain adjustments. HydraFacial is now part of the Beauty Healthcare Company, which is publicly traded on NASDAQ under the symbol "SKIN". When Beauty Healthcare merged with HydraFacial, Counter-Defendant Carnell was appointed CEO of Beauty Health and, Ageless is informed and believes, and on that basis alleges, that he continues to operate as CEO of Beauty Health to the present day.

## GENERAL ALLEGATIONS

16.     In its Complaint, Edge maintains that "it is a *worldwide leader* in the design, development, manufacturer, and sale of skin resurfacing systems and rejuvenation systems, including microdermabrasion and hydrodermabrasion systems." *See* Complaint at para. 8. (Emphasis supplied). As part of these systems, Edge claims to be able to rejuvenate skin by using a *separate product* which it calls a "therapeutic solution, called a 'serum,' that moisturizes and protects the treated skin surface." *Id.* Edge also alleges that its "flagship system is its revolutionary HydraFacial MD® system, which is the *premier hydrodermabrasion system* sold in the United States." *Id.* (emphasis supplied). Edge further alleges that "Edge's HydraFacial MD® System [and Edge's other hydrodermabrasion systems] are *so revolutionary* that [they are] protected by numerous United States patents." *Id.* (emphasis supplied). Based upon these allegations and other information Edge provided to its customers-licensees (including Edge's allegations that appear in Edge's Complaint (*see* Compl. at 8-20 which are incorporated herein by this reference), Ageless is informed and believes, and on that basis alleges, that Edge and the other Counter Defendants in this action have obtained market power for the HydraFacial

123709225.1

Systems they sell in the United States, including having obtained a competitive advantage not shared by its competitors in the relevant market for hydrodermabrasion systems Edge manufactures and sells. Even though Edge sells its products worldwide, the relevant profit for purposes of this Counterclaim is the United States. Because Edge owns a blocking book of patents, and because the HydraFacial Systems are considered to be a unique product, Edge's competitors (actual and potential) according to Edge are prohibited from selling products using Edge's patented technology. Ageless is further informed and believes, and on that basis alleges, that in contrast to its Equipment, Edge does not have market power for the serums it manufactures and sells which are sold separately from Edge's HydraFacial Systems. As explained further below, there can be no question that Edge's Systems and serums are offered and sold as separate products. This is established, among others, by Edge's License Department, blocking book of patents, and by the conditions and penalties Edge imposes on its customers-licensees if they do not purchase and use Edge's serums with Edge's Systems. Ageless is also informed and believes, Edge is able to sell its Equipment at significantly higher price than its competitors yet still generate significant revenues and profits by the sale of its patented HydraFacial Systems, with consumer demand according to Edge increasing despite Edge's higher pricing.

17. **Separate Products.** The fact that Edge sells its Serums as a separate product separate from its HydraFacial Systems is unquestionably proven, among others, by the terms of Edge's Trademark-License Agreements. As previously alleged in Ageless Second Amended Complaint (Dkt No. 36 at 16), Edge sells its Systems to customers across the United States pursuant to "trademark licensing programs," which allows Edge's customers-licensees to use and take advantage of the "HYDRAFACIAL" Mark (hereinafter the "HydraFacial Mark") when offering and *providing HydraFacial treatments, provided Edge's customers-licensees render the treatments by exclusively purchasing and using Edge's HydraFacial Systems with Edge's Serums*. *Id.* As also previously shown, Edge has attached to its Complaint as Exhibit 2 what it characterizes

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

as a "sample Trademark License Agreement" that it alleges it enters into with its customers-licensees and requires its customers-licensees to sign as a condition of selling, using and promoting Edge's HydraFacial System and Edge's Mark, conditional upon "…*the Licensee solely and exclusively uses Licensor's [Edge's] serums and/or consumables in the operation of the Purchased Equipment.*" *See* Compl., Exh. 2, para. 1.1(a) (emphasis supplied). In accord, *see id.* at para. 3.1. Should any customer-licensee fail to comply with the terms of the Agreement and only use Edge's Serums with the use of Edge's Equipment, the license and other rights granted under the Trademark License Agreement provide that the right to use Edge's Mark shall immediately terminate; other rights are forfeited (including warranties); and Edge is entitled to certain stated relief (including the right to collect monetary damages, injunctive relief and the payment of attorney fees should it prevail in the resolution or litigation of any dispute). *Id.* at paras. 1.1(a), 10.1 and 16. *See also* Complaint at para. 25 and 26. Thus, by the terms of Edge's License Agreement, *Edge itself confirmed that its Equipment and Serum are sold as separate products*. The fact that there are two separate products at issue in this case is also proven by the fact Edge charges a *separate price* for its Serums as part of the purchase and use of Edge's Equipment and the rendition of HydraFacial treatments using Edge and its customers-licensees offer consumers.

18. What Edge fails to address in its Complaint, however, is that not only are a customer's-licensee's right to use the HydraFacial Mark terminated if a competitor's serum is used, there are other consequences if a customer-licensee does not purchase and use Edge's Serums with Edge's HydraFacial Equipment that proves that an illegal tie has occurred under federal and State antitrust laws. This includes, but is not limited to, a customer-licensee's ability to use Edge's Tower machines (such as the HydraFacial MD system) (one of Edge's "Tying Products") which prominently displays Edge's HydraFacial Mark on Edge's Equipment. The HydraFacial Mark that customers-licensees are prohibited from using or displaying if they purchase serum from anyone other than Edge includes a flat screen monitor that displays a user interface screen where

the HydraFacial Mark appears. Ageless is informed and believes, and thereon alleges, that the display of the HydraFacial Mark on the user interface screen is preprogrammed. As such, Ageless is informed and believes, and on that basis alleges, that a customer-licensee cannot remove the Edge Mark from the flat screen monitor after its purchase of Edge's HydraFacial Equipment, even though Edge claims its License Agreement requires that a customer-licensee stop all use of the Edge Mark if a consumer-licensee uses or purchases serum from a third party. Therefore, if the right to use the HydraFacial Mark is terminated, Ageless is informed and believes, and on that basis alleges, that a customer-licensee must also discontinue use of the HydraFacial Equipment that it purchased because the HydraFacial Mark cannot be removed from it. These circumstances result in customers-licensees having to use Edge's Serum (the "Tied Product") in order to use Edge's Equipment (the "Tying Product") since as a practical matter Edge's HydraFacial Mark cannot be removed from Edge's Equipment. A copy of an image of Edge's HydraFacial MD Equipment is shown on **Exhibit A** hereto showing how the HydraFacial Mark appears, among others, on the preprogrammed flat screen monitor.

19. Edge also imposes additional conditions and penalties on customers-licensees that not only result in the forfeiture of their ability to use the HydraFacial Mark if they do not use Edge's Serum with Edge's Equipment (as the License Agreement mandates). For example, as part of Edge's so-called "Authenticity Campaign," Ageless is informed and believes, and on that basis alleges, that Edge sent an email to its customer-licensees on or about August 13, 2020 ***advising them that their license to use the Edge System would be revoked if anyone purchased or used a third party's serum, such that Edge's customer licensees not only forfeit their right to use Edge's HydraFacial Mark, but are also unable to market or provide HydraFacial services or treatments.*** As such, Edge's customers-licensees are required to purchase only Edge's Serums as a condition of using the HydraFacial Equipment which they purchased from Edge for the exact purpose they buy Edge's Equipment, *i.e.,* to provide HydraFacial services and treatments. Other benefits of owning HydraFacial Equipment are also revoked by Edge in the event

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

its customer-licensees purchase and use third party serums with Edge's HydraFacial Equipment.  This includes the loss of preferred pricing, removal from Edge's "Find a Provider" site and loss of device support, training and education, and so-called LINQ benefits (which include free marketing materials, giveaways, and business building tools).  Therefore, in effect, a customer/licensee is required to purchase Edge's Serum from Edge as a condition of not only using Edge's Mark, ***but also as a condition of purchasing and using Edge's Equipment for the exact purpose for which they acquired it***.  Otherwise, by reason of Edge tying the purchase of Edge's Equipment to the purchase and use of Edge's Serums, the HydraFacial Equipment is rendered worthless and cannot be purchased unless a customer-licensee purchases Serum solely from Edge.  A copy of the Carnell August 13, 2020 Edge email reflecting the terms of the Authentic Campaign is quoted fully below at paragraph 24 of this Counterclaim.

20.     For its part, Counterclaimant Ageless has designed, developed and sold high-quality serums that can be used, among others, for use with Edge's HydraFacial Systems (hereinafter the "Ageless Serums")  As is its legal right, like others, Ageless lawfully and fairly competes in the sale of serums it sells with those serums sold by Edge. To avoid any possible confusion, Ageless also prominently displays a notation on its website that the term HydraFacial "is a trademarked name and should be noted throughout the website."  By lawfully engaging in comparative advertising and the sale of Ageless Serums, Ageless is not engaged in direct or indirect trademark infringement or violating any other intellectual property (patent or otherwise) Edge maintains it owns.  In fact, Edge has never sued Ageless for direct infringement of any of its patents because of the sale by Ageless of any of its Serums.

21.     Apart from Edge's efforts to try to expand its market share and to establish monopoly power for the sale of Edge's Serums that Edge has already obtained for Edge's patented Equipment and because of the other reasons discussed below, the sale and advertisement of Ageless' and other competitor's serums is according to Edge impermissible for use with Edge's patented Equipment.  Stated differently, because of

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

Edge's illegal tie Ageless and other actual or perceived competitors are prohibited from offering or selling their serums for use with Edge's patented Equipment—thereby unlawfully depriving them of the ability to sell their serums to consumers at competitive prices and to profit from sale of their serums.  At the same time, consumers and Edge's customers-licensees would otherwise be free to purchase any serum they desired if Edge did not seek to improperly expand its market power and patent monopoly by tying the sale and use of Edge's patented Equipment to the purchase and use of a product (*i.e.*, Edge's Serums) that is either unpatented and/or non-infringing.

22.     By demanding consumers, including Edge's customers-licensees, to purchase Edge's Serums as a condition of using Edge's Equipment, Edge's Trademark License Agreement combined with the additional conditions Edge has imposed under the terms of its Authenticity Campaign are, among others, illegal because they constitute an unlawful tie in violation of United States and California antitrust and unfair business practices laws, including, but not limited to, the *Sherman Act* (*15 U.S.C. Section 1*), the *Clayton Act* (*15 U.S.C. Section 14), Business and Professions Code §§ 17200 et. seq.,* and California's *Cartwright Act Sections 16720 and 16727.*

23.     Based upon Edge's illegal effort to try to expand its patent monopoly by prohibiting the purchase of serums from anyone other than Edge, Edge deprives Ageless and Edge's other competitors from profiting from the sale and use of their serums for use with Edge's patented Equipment in spite of the fact that there have been many consumer testimonials attesting to their belief that Ageless' Serums are better and of higher quality than Edge's Serums.

24.     To further prevent consumers and Edge's customers-licensees from using third party serums, Edge has also falsely represented to them that Ageless' Serums are "inferior" and of "lower quality" than Edge's Serum (in fact may be "harmful" to them), and should not be purchased or used by consumers or Edge's customers-licensees when purchasing and operating Edge's HydraFacial Equipment and the treatments provided by them.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS
123709225.1

25.     Thus, as part of Edge's so-called "Authenticity Campaign," HydraFacial customers were sent an August 13, 2020 email from Edge and Beauty Health and their CEO (Counterclaim Defendant Clint E. Carnell) a video link of Carnell which appears  at https://vimeo.com/446939770/53853b87ea?utm_source=Elite+ML+LAUNCH+Announcement+7.27.2020&utm_campaign=5da70ce5cd-EMAIL_CAMPAIGN_2020_02_24_07_03_COPY_01&utm_medium=email&utm_term=0_ac68df26ed-5da70ce5cd-583560574&mc_cid=5da70ce5cd&mc_eid=[1a71e34242.  This August 13, 2020 email communication is reproduced below:



HydraFacial Nation,

Now more than ever, the HydraFacial® brand will play a critical role for your business - as our investments in our brand and in you are driving business through our collective doors and enhancing your capabilities and offerings.  During the past several months (while navigating through this trying pandemic which has affected us all), The HydraFacial Company has increased our social reach and awareness, has received over **1 Billion media impressions YTD**, and remains the top facial treatment search term based on Google search comparisons.  To ensure this momentum continues and that the brand stays strong, The HydraFacial Company is introducing a **new authenticity campaign** – with the simple goal of protecting our consumers, our brand, and you -- by making sure that the HydraFacial experience remains true and exceptional.   Please listen in as Clint Carnell, CEO, introduces this new initiative and then read below for more detail:

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

As Clint stated, unfortunately some providers are promoting HydraFacials but using **inferior, third party serums**. This gives those clients an **inferior** (**or, even worse, possibly harmful**) experience, which - in turn - damages the HydraFacial brand and lessens our collective success.   Emphasis supplied. That can't happen. We have the highest quality standards for our serums, and we constantly re-invest in our brand and tools, trainings, and new products to help bring customers into your practices.   For those of you that are good partners in building the HydraFacial brand (and the VAST majority of you <u>are</u> good partners), we thank you and will continue to support you with all the following programs. For any offending providers who use third party serums (**and bring this risk and harm to the HydraFacial family), the following changes will take place:**

• **Preferred Pricing**. Providers who use third party serums will no longer receive our preferred pricing. **The new price list for these providers can be seen here.** [Emphasis supplied.]

• **Customer Acquisition and Provider Status**. Providers using third party serums will also be removed from our "Find a Provider" site, **and their**

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

*licenses will be revoked such that they are no longer able to market or provide HydraFacial services.* [Emphasis supplied.]

- **Device Support.** *Using non-HydraFacial serums voids the warranty on your device, and we will no longer service or repair devices in which third party serums are used. Offending providers will also NOT be eligible to receive the new Elite ML upgrade, with enhanced protocols and additional treatment categories.* [Emphasis supplied.]

- **Training & Education.** *Offending providers will no longer be able to access our online resources such as Insider and Connect, nor will they be eligible to participate in live training events such as HFX, Sprout, or Jump Start.* [Emphasis supplied.]

**Rewards**. *Third party serum users will have their LINQ status reset, and they will be ineligible for LINQ benefits (including any free marketing materials, giveaways, and business building tools).* [Emphasis supplied.] These actions are necessary for us to *protect the brand* and the experience that so many of us have all spent so much time building together. Emphasis supplied. Ensuring that our customers' experiences are best in class and keeping the trust of those customers who believe they are receiving a HydraFacial are our top priorities. As Clint said, the money you spend on consumables directly supports our marketing efforts to help drive new clients to your practices – and new client acquisition is one of the biggest expenses for a provider. Our good partners have nothing to worry about – but *if it's possible that YOU have not been following our brand authenticity standards and you don't want to lose all of these benefits*, the time to change is now! We are committed to this partnership and want to make sure that you are too. [Emphasis supplied.]

**Let's Do This Together!**

The HydraFacial Company

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

# COUNTERCLAIM COUNT I
# (VIOLATION OF FEDERAL AND CALIFORNIA ANTITRUST LAWS— SHERMAN ACT §1; CLAYTON ACT §§ 3 AND 14; AND CALIFORNIA CARTWRIGHT ACT §§16720, 16726)

26.     Ageless repeats and re-alleges the allegations of paragraphs 1-25 of this Counterclaim as if set forth fully herein.

**A.     THE RELEVANT MARKETS**

**1.     The HydraFacial Equipment (The "Tying Product")**

27.     Edge claims it is a "***worldwide leader***" in the design, development, manufacture, and sale of high-quality resurfacing and rejuvenation systems, including hydra-dermabrasion systems.  Emphasis supplied.  Edge calls its Equipment and the treatments that are offered with it to provide treatments "HydraFacial" — which takes its name from the root word hydrate.  According to Edge, HydraFacial treatments include a 3-stage process that can be completed within a 30-minute session.  This process includes rejuvenating skin by cleaning and exfoliating the skin surface, extracting debris, and then "nourishing" the skin's surface with solutions called "serums."  This regiment, according to Edge, uses a ***patented medical-grade hydrodermabrasion device***, including a patented vortex technology hand piece, that Edge claims "gently" vacuums out pores while pushing in, and activates and enhances the skin by moisturizing, brightening, and protecting it.  Among other guidance, Edge's User Guide states the HydraFacial handpiece works with Edge's HydraFacial Systems "to store serum and control serum flow allowing for personalized treatments."

28.     The use of serums as part of the treatment is included with a HydraFacial treatment ***only if the customer pays an additional price for the serum***.  Thus, Edge unquestionably offers and sells its serums as a ***separate product***.  According to Edge, its patented cleaning, rejuvenation, and resurfacing process that is performed as part of a HydraFacial treatment uses Edges' patented, proprietary machines – including what Edge characterizes as its "flagship" product, *i.e.* Edge's HydraFacial MD.  This Equipment and

123709225.1

other patented Edge HydraFacial Equipment according to Edge provides a treatment that Edge maintains is the "***most effective type of facial you can get***."  Emphasis added.  Edge markets and sells its Systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas.  Unlike Botox, Edge's HydraFacial treatments are noninvasive, meaning that they do not require surgery or other invasive treatment as part of a HydraFacial treatment.

29.  In addition to Edge's patented products, there are alternate products and systems for noninvasive skin resurfacing and rejuvenation treatments available in the United States.  They include:

• ***Microdermabrasion*** (which uses a crystal or diamond-tip device to sand the skin in order to remove the thick, outer layers).  However, unlike the manual extractions performed through sanding in microdermabrasion, HydraFacial uses a vacuum tip to cleanse and remove impurities.  As such, Edge maintains that its HydraFacial method is gentler, less painful and more effective.  According to Edge: "[as] Edge expands its international footprint, it will meet some resistance from the cheaper Chinese serums and alternative products like microdermabrasion, especially in the developing world.  Continued esthetician and favorable media coverage will be essential ***to keeping the brand premium*** in international expansion."  Emphasis supplied.  Thus, Edge claims, among others, that it has strong brand recognition in the United States and throughout the world.

• Other forms of non-invasive skin rejuvenation treatments also include ***micro needling***, also known as collagen therapy.  This process helps rejuvenate the skin using tiny needles that pierce the outermost layer, which forces the skin to produce more collagen.  However, the primary drawback of micro needling is it has been reported to cause scarring and to come with a higher risk of infection.

• ***Chemical peels*** can also be used as a possible alternate to HydraFacials.  Both HydraFacial and chemical peels work by removing dead skin cells.  Chemical peels employ acids, however.  As such, they have been reported to not be for everyone.  Due to

123709225.1

the acids chemical peels use, they are generally not recommended for those with certain skin disorders. Also, while chemical peels may be effective for those with lighter skin tones, HydraFacial is reported to be recommended for people of any skin tone. Chemical peels also need to be avoided if a person is nursing, pregnant, or has eczema, dermatitis, rosacea or psoriasis. On the other hand, it is reported HydraFacials can be used by people with hyper-sensitive skin, and that it is actually recommended for treating rosacea and dry, peeling skin.

- **_Intense pulsed light ("IPL")_** is also known as a possible alternate choice for HydraFacials. IPL is a photo rejuvenation cosmetic skin procedure that employs laser-like pulses of non-coherent light to fix sunspots, age spots, blotches, large pores, and other common skin conditions. These lights penetrate into the skin and cause the collagen and blood vessels to constrict, which may help to reduce the appearance of redness and age lines. IPL treatments are also reported to have drawbacks. For one, they allegedly don't work on all discolorations. Side effects have also been reported to include redness, enlarged pores, and the appearance of aged skin for several weeks following treatment. Some people have also reported that the treatment affected their teeth that had fillings, causing discomfort similar to chewing on tinfoil. IPL treatments are also reported not to be a good choice for people with surface discoloration, rosacea, and other skin issues.

30. In its Complaint in this action (Dkt. 1 at 8), Edge alleges that its:

"flagship system is its revolutionary HydraFacial MD system**, which is the premier hydra-dermabrasion system sold in the United States. Edge's HydraFacial system is so revolutionary that is protected by numerous United States patents**. In addition to the HydraFacial system, Edge designs, develops and manufactures and sells **other patented hydra-dermabrasion system**s, including the HydraFacial Tower, HydraFacial Allegro, the HydraFacial Wave, the HydraFacial Elite, the HydraFacial Nectre and the HydraFacial Core systems" (which Edge defines as "the HydraFacial Systems"). *Id*. (Emphasis supplied.)

31. Ageless is informed and believes, and on that basis alleges, that Edge has consistently charged a much higher price for its patented HydraFacial Systems than its

competitors without reducing demand for its Equipment.  On information and belief, Edge charges as much as $25,000 to $30,000 per System.  The sale of Edge's Equipment according to Edge accounts for roughly 49% of Edge's sales.  By contrast, Ageless is informed and believes, and on that basis alleges, that other hydrodermabrasion skin resurfacing and rejuvenation equipment is sold at a significantly lower prices despite high market even though they competitive products are used for a similar purpose with some similar qualities and intended results.  For example, Ageless is informed and believes, and on that basis alleges, that a company called Cosmetic Solutions sells its equipment at a price ranging from only a couple of hundred dollars to less than $12,000.  In this Counterclaim, Edge's HydraFacial Systems (Equipment) and the treatment they provide are what Ageless alleges are the "Tying Product(s)."

32.     Like its Equipment, Ageless is informed and believes, and on that basis, alleges that HydraFacial treatments generally cost more than competitive treatments.  For example, Ageless is informed and believes, and on that basis, alleges that as a general rule of thumb, HydraFacials costs anywhere between $150 and $300 per treatment (with serums added at a separate price only if the consumer wants to include them as part of their treatment).  By comparison, microdermabrasion is less, at approximately $75 to $200 per session.  Similarly, chemical peels can go as little as $150 per peel.  Ageless is informed and believes, and on that basis alleges, that despite higher pricing this too has not affected what Edge alleges is rising consumer demand for Edge's treatments.

33.     In fact, according to Edge and market analysis, given HydraFacials established brand, customer loyalty and Edge's monopoly over what it claims is unique, patented Equipment, Edge claims it is able to implement "value creation levels," including "annual price increases" for its products.  In addition, because of Edge's brand recognition, customer loyalty and patents, Edge is able to charge higher prices not only for Edge's Equipment, but also for its treatments.  This can be proven by, among others, the growing increase in sales and revenue obtained by Edge in the United States despite the depressed 2020 levels that were caused by Covid.  Despite not having market power

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

for its Serums, Edge now seeks to use its market power for its Equipment, by tying the purchase and use of its Equipment to the purchase and use of its Serums not only to increase Edge's profits and revenue, but to exclude competition in the Tied market.

**2.**    **Edge's HydraFacial Serums (The "Tied Product")**

34.    In its Complaint (Dkt. 1 at 9), Edge alleges that: "Edge also designs, develops, manufactures, and sells high quality serums for use in the HydraFacial Systems. These serums include Activ-4, Antiox+, Antiox-6, Beta-HD Clear, and the HydraFacial Dermabuilder serums." Edge's Serums are hereinafter collectively referred to as "the HydraFacial Serums" or "Tied Product(s)".

35.    Skin care serums are generally fat-based formulations that have gathered steam in cosmetic care products. Their popularity and high demand stems, among other factors, on the back of higher hydrating characteristics than most products use for moisturizing. Ageless is informed that demand for serums is very high and increasing even though it is a discretionary (not essential) product for consumers. Unlike its competitors, Edge has stated that (other than during the COVID period) Edge has not suffered from a decline in sales, revenue or demand.

36.    Edge's unpatented HydraFacial Serums and noninfringing serums sold by third parties can both be used with Edge's Systems so Equipment and in the rendition of HydraFacial treatments. Currently, however, competitors cannot sell their competing products, including because Edge maintains it is able to prohibit it because Edge has a blocking book of patents covering Edge's Equipment. Thus, Edge has the ability to both control prices and exclude competition for the Tied Product.

37.    As shown in the picture attached hereto as **Exhibit B**, Edge's Equipment has serum ports that store the serum for use as part of a HydraFacial treatment. What in part makes Edge's treatment unique according to Edge is the application of serums as moisturizers as part of a single, 30-minute HydraFacial treatment through the use of a patented Vortex Technology hand piece that is sold with Edge's Equipment. A

31

picture depicting how Edge's Systems look and how it cleans and removes impurities and applies moisturizers as part of a 30-minute HydraFacial treatment is attached hereto as **Exhibit C**.

38.   For its part, Ageless sells Serums that can be used with Edge's HydraFacial Systems. In its Complaint, Edge alleges as much: "Ageless is in the business of promoting and selling serums for use with hydra-dermabrasion systems manufactured by others, including the Edge hydra-dermabrasion systems." Dkt. 1 at 21. Edge does not allege that its Equipment patents or any other patent prohibits Ageless from selling its Serums with Edge's HydraFacial Equipment or as part of a HydraFacial treatment.  In fact, Edge has never sued Ageless (or, as far as Ageless is aware, any other third party) for direct patent infringement by offering or selling competitive serums.  Edge however has recently filed a lawsuit in Texas claiming Ageless has induced patent infringement ***by third parties*** who are potential competitors to Edge for the sale of what Edge alleges in the Texas action (as in this action) are unique, patented HydraFacial Systems. See *Edge Systems LLC v. Ageless Serums LLC*, Civ. Action No. 4:20-cv-04335 (S.D. Tex.) (hereinafter the "Texas Action").  A copy of the Complaint in the Texas Action is attached hereto as **Exhibit N**.

39.   As shown, Edge's HydraFacial Systems and Edge's HydraFacial Serums are indisputably sold as separate products.  As alleged above, this is evidenced, among other reasons, by the terms of the Edge License Agreements attached to Edge's Complaint which state, among other terms, that: "[in] recognition that the HydraFacial system and equipment and the Perk system and equipment ***only operate properly and effectively with the use of Licensor's [Edge's] serum and solutions and consumables, Licensee agrees to purchase solutions used in the Purchased Equipment solely and exclusively from Licensor or its authorized distributor in good standing.***"   Complaint Exh. 2 at 3.1 and Exh. 3 at 2 (emphasis supplied). Edge  also charges  a ***separate price*** for  the use of  Edge's Serums as part of

123709225.1

a HydraFacial treatment. As also alleged above, Edge also currently has an Authenticity Campaign *that requires its customers-licensees to purchase separately Edge's Serums as a condition of providing HydraFacial treatments and services*. Thus, by the terms and conditions found in Edge's contracts and its stated policies, it is indisputable that Edge's HydraFacial Systems (or Equipment) are sold separately from Edge's Serums.

40. The relevant market for the "Tied Product" in this Counterclaim is Edge's Serums consisting of those Serums that Edge alleges it manufactures and sells and which Edge demands its customers-licensees use to the exclusion of any competitive product (hereinafter the "Tied Product(s)"). There are a number of other actual or potential competitors that sell serums that could otherwise be used with Edge's HydraFacial Systems instead of Edge's Serums. In fact, Ageless is informed and believes, and on that basis alleges, that Edge currently allows a limited number of third parties to sell serums for use with its HydraFacial Equipment and treatments (including Murad Inc., ZO Skin Health Inc. and Paul Nassif M.D. Inc.). At the same time, Edge prohibits other potential competitors (like Ageless, Zemits, OOMNEX and Adonyss) from selling serums even though they could in fact be "properly and effectively" used with Edge's patented HydraFacial Systems at competitive prices. Ageless is informed and believes, and on that basis alleges, that third-party serums can in fact be used properly as a substitute for Edge's Serums with the same results as Edge's Serums as part of a HydraFacial treatment. A copy of a section from Ageless' website showing the compatibility of Ageless Serums sold at competitive prices which can be used as a substitute for HydraFacial Serums is attached hereto as **Exhibit D**.

### 3. Edge's Market Power

41. **Blocking Book of Patents:** Edge's patent portfolio includes a "blocking book" of strikingly similar patents containing system, apparatus, and method claims relating to hydrodermabrasion technology, including, but not limited

to, at least the following eight patents:  U.S. Patent No. 6,641,591; U.S. Patent No. 7,678,120; U.S. Patent No. 7,789,886; U.S. Patent No. 8,337,513; U.S. Patent No. 9,468,464; U.S. Patent No. 9,550,052; U.S. Patent No. 8,066,716; and U.S. Patent No. 9,775,646.

42.     In an effort to stifle competition and monopolize the hydrodermabrasion market for the record sales of Edge's Equipment, Edge has waged a decade-long campaign to aggressively enforce these patents.  Over the past ten years, Edge has brought no less than ten different patent infringement lawsuits in four different jurisdictions against eight different defendants.  True and correct copies of the Complaints filed in these cases are attached hereto as **Exhibits E through N**: (1) *Edge Systems LLC v. Bio-Therapeutic, Inc.*, C.A. No. 2:11-cv-04993-JFW (C.D. Cal.) – filed 6/13/11 (**Exhibit E**); (2) *Edge Systems LLC v. Image Microderm Inc.*, C.A. No. 2:14-cv-04428 (C.D. Cal.) – filed 6/9/14 (**Exhibit F**); (3) *Edge Systems LLC v. Naumkeag Spa & Medical Supplies, LLC*, C.A. No. 2:14-cv-04663 (C.D. Cal.) – filed 6/17/14 (**Exhibit G**); (4) *Edge Systems LLC v. Aguila*, C.A. No. 1:14-cv-24517-KMM (S.D. Fla.) – filed 11/2/14 (**Exhibit H**); (5) *Edge Systems LLC v. Ageless Serums LLC*, C.A. No. 2:17-cv-02720 (C.D. Cal.) – filed 4/10/17 (**Exhibit I**); (6) *Edge Systems LLC v. Aesthetic Skin Systems LLC*, C.A. No. 2:17-cv-04597 (C.D. Cal.) – filed 6/22/17 (**Exhibit J**); (7) *Edge Systems LLC v. Image Microderm Inc.*, C.A. No. 2:17-cv-8699 (C.D. Cal.) – filed 12/1/17 (**Exhibit K**); (8) *Edge Systems LLC v. Venus Concept USA Inc.*, C.A. No. 18-cv-62588-UU (S.D. Fla.) – filed 10/26/18 (**Exhibit L**); (9) *Edge Systems LLC v. Cartessa Aesthetics, LLC*, C.A. No. 2:20-cv-06082 (E.D.N.Y.) – filed 12/14/20 (**Exhibit M**); (10) *Edge Systems LLC v. Ageless Serums LLC*, C.A. No. 4:20-cv-04335 (S.D. Tex.) – filed 12/22/20 (**Exhibit N**).

43.     **Edge's Claimed High Brand Recognition and Customer Loyalty:**  Edge also claims to have ***high brand*** recognition and ***customer loyalty*** that also allows it to preclude competition in the Tied Product market.  Ageless is informed and believes, and on that basis alleges, Edge is also charges more for its Equipment than any competitor.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

At the same time, by tying the purchase and use of its Equipment to the purchase of Edge's Serums, there is reduced competition in the market for the Tied Product, *i.e.* serums that could otherwise be sold and used with Edge's Equipment. As a result, there is a substantial amount of actual or potential business measured by dollar-volume that is foreclosed to competition because of Edge's illegal tie.

44.     According to Edge, it operates a "razor and blade" model with "highly attractive blended gross margins of 75%." The "razor" according to Edge is its ***HydraFacial Equipment (which it calls a "delivery machine") estimated at $25K-30K per unit and accounting for "roughly 49% of sales.***" Emphasis supplied. In addition, what Edge calls the "razorblade," Edge states that **10% of the $200/session [or treatment] fee comes from the use of consumables (including serums) that HydraFacial sells to estheticians. Edge further states: "[t]heir recurring revenue (the sale of consumables like serum) currently represents 51% of sales and will grow bigger as a % of sales as the install base of delivery equipment expands**." Emphasis supplied. For 2022 alone, Edge has stated it projects with 18,000 units already sold and 3,000 users ($30,000 each), and $8,500 consumables (including serum) per unit, HydraFacial ***"will reach $250 million in revenue just by keeping up with its past performance."*** Emphasis supplied. Thus, it is clearly Edge's intent and business model to try to sell more of its high cost HydraFacial Equipment in a market it monopolizes to try to increase revenue for the sale of its unpatented Serums. Edge is now seeking to accomplish this by illegally tying the purchase and use of its Equipment conditioned upon the purchase and use of Edge's Serums.

45.     Edge has further advertised: "[w]hile the upfront cost of a HydraFacial delivery machine and training time is fairly high, **the economics gained by the esthetician are highly compelling.**" Edge has stated that a standard $200 HydraFacial treatment yields a 90% gross margin/$180 gross profit to the esthetician," ***and that adding consumables (like serums) can lead to greater profits***. Edge further promotes its products by claiming that an esthetician can expect a large amount of annual revenue:

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

"[a]ssuming 60 treatments per month at a $200 session, that's $144,000 of revenue **or $129,600 of profit a year for the esthetician**." Emphasis supplied.

46.    Edge also maintains that "HydraFacial is known for its **strong customer loyalty**" which is a further barrier to competition.  Emphasis supplied.  Edge also claims that there is not serious competition in the Tying Product market  According to Edge "while there are very few direct competitors to HydraFacial, Chinese knockoffs known as HydraPeel (or AquaPeel) exist. **However, these competitors have failed to gain any meaningful traction outside of the Greater Chinese market.  Likewise, alternative procedures such as microdermabrasion have not mounted a serious challenge.**" Emphasis supplied.

47.    While Edge claims to be the industry leader in the hydrodermabrasion market (and thereby have market power in the market for the sale and use of its patented Equipment and the treatments they are designed to provide), there are numerous companies that would otherwise be able to compete with Edge at competitive prices in the tied market.  Among other competitors, Edge has alleged that its competitors include Image MicroDerm, Inc. and Aesthetic Skin Systems LLC which offer to perform services and treatments that compete with Edge's HydraFacial Systems and, Edge is informed and believes, who charge a lower price.

48.    In addition to Ageless, other companies compete with Edge in the manufacture and sale of HydraFacial serums.  Some of these other serum manufacturers and sellers not only include Ageless but others like Zeemits, OOMNEX and Adonyss that advertise they can be used with any hydrodermabrasion equipment, including Edge's HydraFacial Systems.

49.    Edge further claims it has **high brand recognition** which allows it to keep its product pricing higher than its competitors and is a further barrier to competition even though others charge less for their products and services.  Thus, Edge maintains "…**branding power matters a LOT in the beauty industry (think Hermes or Louis Vuitton) with high price inelasticity, and HydraFacial is the undisputed leader.**"

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

Emphasis supplied.

50.    Similarly, Edge further maintains that: "**[g]iven HydraFacial's established brand and leading market position, it has unique value creation levels it can pull, including annual price increase for consumables [like serums].**" Emphasis supplied. Nevertheless, because of Edge's contracts and Authenticity Campaign, the purchase and use of Edge's HydraFacial Equipment is conditioned upon a customer-licensee only purchasing and using Edge's Serums -- which stifles competition of competitive products for the purchase and use of competitive products and has an onerous effect on an appreciable number of buyers in the serum market.  Edge's efforts to expand its patents to non-patented and non-infringing products constitutes an illegal tie in violation of federal and State law.  *See Sherman Act § 1; Clayton Act §§ 3 and 14; Cartwright Act §§ 16720 and 16727*; and *California Business and Performance Code  §§ 17200 et seq.*

51.    Ageless is further informed and believes, and on that basis alleges, that because of Edge's unlawful tying agreements and policies, Edge has restrained commerce, including by enabling Edge to exclude competition, and to set prices higher for Edge Equipment and treatments than those of third parties who could otherwise sell competitive products and offer treatments at a lower price.  At the same time, this conduct has precluded Ageless and other actual or potential competitors from selling serums to Edge's customers-licensees at a significant loss to Ageless and other competitors.  Because of Ageless' illegal tie, there is significant loss to Ageless and other competitors which would otherwise allow these parties to share in the lucrative consumables and services markets that Edge states represents has allowed it to earn $125 million in revenue in 2020 alone, with increased sales and profits thereafter. Obviously, these sales and profits could be shared  if Edge did not prohibit the sale of unpatented, non-infringing serums for use with Edge's patented HydraFacial Equipment.  Not only are competitors harmed by Edge's illegal conduct. Consumers are also harmed by Edge's conduct by being unable to purchase and use third party products and services at a competitive price which many prefer to the purchase of Edge's products and treatments.

Thus, Edge's unlawful use of its market power in one market to try to expand it to a second market in which it does not have market power results in harm to competitors, consumers and creates consumer welfare loss. A substantial amount of commerce is thereby affected by Edge's illegal tying.

52. Because of Edge's unlawful and anticompetitive conduct, Ageless has suffered and is entitled to monetary damages (including compensation for pecuniary losses), trebled pursuant to 28 U.S.C. § 15, as well as injunctive relief (including a court order restraining Edge from continuing to tie separate products).

## COUNTERCLAIM COUNT II
## (UNFAIR COMPETITION UNDER CALIFORNIA
## BUSINESS &PROFESSIONS CODE SECTIONS 17200 *et seq.*
## AND COMMON LAW)

53. Ageless repeats and re-alleges the allegations of paragraphs 1-52 of this Counterclaim as if set forth fully herein.

54. Edge's conduct as alleged above, including, but not limited to, its unlawful tying and false statements about the quality of Ageless' serum, constitutes unfair competition under *California Business & Professions Code Sections 17200 et seq.* and state common law.

55. Because of Edge's unfair conduct, Ageless is informed and believes, and thereon alleges, that Edge has derived and received, and will continue to derive and receive, gains, profits, and advantages from Edge's unfair competition in an amount not presently known by Ageless.

56. By its actions, Edge has injured and violated the rights of Ageless and has irreparably injured Ageless, and such irreparable injury will continue unless Edge is enjoined by this Court.

57. Ageless' willful acts of unfair competition under California common law constitute oppression, malice, defamation, and false advertising. Accordingly, in addition to monetary damages, Ageless is entitled to exemplary damages pursuant to *Cal. Civ.*

*Code Section 3294(a).*

## **COUNTERCLAIM COUNT III**
## **(DEFAMATION AND FALSE ADVERTISING)**

58.     Ageless repeats and re-alleges the allegations of paragraphs 1-57 of this Counterclaim as if fully set forth herein.

59.     The development of Ageless Serums began in 2014.  Three commercially available HydraFacial base formulations were analyzed, and include Active4, BetaHD, and Antioxidant.  An outside chemist analyzed the ingredients and reformulated the serums in order to improve upon updated standards, such as aqua solubility.  These became the Ageless Serums.  The manufacturer of the Ageless Serums is registered with the U.S. Food and Drug Administration (FDA) and is fully licensed for cosmetic manufacturing.  As a licensed manufacturer, Ageless must adhere to strict CGMP controls to ensure batch consistency and quality for the Ageless Serums and standards of the Independent Cosmetic Manufacturers and Distributors (ICMAD), Society of Cosmetic Chemists (SCC), and the Better Business Bureau.  The manufacturing facility has clean manufacturing and filling rooms, as well as full R&D, QA and analytical labs.

60.     Ageless is informed that, on several instances, an Edge representative or Edge and its employees have characterized Ageless Serums as "inferior," "less effective," and even potentially "harmful" to consumers and Edge's customers and by making similar false statements (including, but not limited to, as part of Counter-Defendants' Trademark License Agreement and Edge's Authenticity Campaign discussed above).  These statements are false and known to be false by Counter Defendants since Ageless Serums are not "inferior" to Edge's serums, "less effective," "less efficient" or potentially "harmful."  Ageless does not presently know all names of the specific Edge employees or representatives who made these false statements about Ageless' products (other than those identified in these Counterclaims such as Counter Defendant Carnell), but only knows from what Ageless customers have informed Ageless that these were either Edge employees or representatives.

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

61.     In addition to these statements, Ageless is aware that Edge has also described Ageless Serums as "lower quality products" or by using similar descriptions. This too is false since Ageless Serums are not of a "lower quality" than Edge's Serums and Edge knows it.  Edge has also made false and defamatory statements about Ageless Serums in at least its Trademark License Agreement.  For example, Section 3.1 of the Agreement states that "the HydraFacial system and equipment…*only function properly and effectively* with the use of Licensor's serum solutions and consumables," thus suggesting that other serum solutions and consumables, such as Ageless Serums, do not and will not allow these serums or consumables to function "properly" or "effectively" with HydraFacial Systems when in fact they do.  *See* Exhibit 2 of Complaint [D.I.1] at Section 3.1 (emphasis supplied); *see also* Exhibit 3 of Complaint [D.I.1] at Section 2, Exhibit 4 of Complaint [D.I.1] at Section 2.  These statements are, as alleged above, false since the HydraFacial System and Equipment do function "properly" and "effectively" with Ageless Serums.

62.     Ageless is informed and believes, and on that basis alleges, that in approximately November, 2020, a Hala Tailfour of Aurora Medi Spa, East Lansing, Michigan was approached by a HydraFacial representative who aggressively marketed HydraFacial serums to her and characterized the Ageless serums as "inferior."

63.     Upon information and belief, on approximately November 11, 2020, a Daniel and Melissa Coats of Cocoa Beach Spa, Melbourne, Florida, were emailed a letter from HydraFacial informing them among other things that their license to use any HydraFacial Marks had been terminated, that their LINQ status had been reset and that they would no longer receive loyalty pricing, and their warranty on their HydraFacial device was revoked.  The letter also discussed the "Authenticity Campaign" message that was emailed to all HydraFacial customers on August 13, 2020, which included a video of Edge's CEO Carnell and written materials which characterized serums, such as Ageless Serums, as "inferior, third party serums."

64.     Upon information and belief, on approximately January 29, 2021, a Bonnie

Benedetto of Philadelphia, Pennsylvania was approached by a HydraFacial representative and received similar statements from Edge and its employees.

65.     Upon information and belief, on or about March 2, 2021, Marissa Hervey of St. Petersburg, Florida informed Rene Chlumecky of Ageless that the CEO of Edge had sent out a video that asked all of Edge's customers to stop using "non HydraFacial products" or risk losing their licensing rights.  Ageless believes that this video described above is the same video described above regarding Edge's "Authenticity Campaign."

66.     Also, upon information and belief, on approximately August 28, 2020, Gale Pingleton of Clearwater, Florida contacted Rene Chlumecky of Ageless regarding Edge's "Authenticity Campaign" and expressed her disappointment that Edge would characterize persons who use Ageless Serums as "offenders" and that she believed Ageless Serums were "very good" and not inferior products as characterized by Edge.

67.     By its actions (including under the terms of its Trademark License Agreement and its Authenticity Campaign), Ageless is informed and believes, and on that basis alleges, that Edge has deliberately induced one or more of Ageless' customers-licensees to terminate their business relations with Ageless.

68.     There is not now and has never been legal justification or right for Edge to have engaged in such unfair, illegal actions.

69.     Because of Edge's unlawful and unfair conduct as alleged herein, Ageless has lost customers and profits, revenue and other benefits it might otherwise have obtained.

70.     Edge's acts complained of herein have caused Ageless to suffer substantial monetary loss and irreparable injury.  Ageless will continue to suffer substantial loss and irreparable injury unless and until Edge is enjoined from continuing to interfere with Ageless' ability to sell its serums to customers-licensees.

71.     Edge's acts complained of herein have been willful and deliberate, thereby entitling Ageless to exemplary damages.

72.     Edge's statements about Ageless and the quality of its products are false, and

known to be false by Edge.

73.    Edge was at all times relevant hereto that its statements were false and/or unsupported and knew that the statements made by it would and did cause serious injury to Ageless.

74.    In truth, Ageless' products are not of "inferior quality" to Edge's serum. Instead Ageless' serums work equally well (if not better) with Edge's Equipment than Edge's serum do, and create equal, if not superior, skin care results.

75.    Edge's acts complained of herein have caused Ageless to suffer substantial monetary loss and irreparable injury.  Ageless will continue to suffer substantial loss and irreparable injury unless and until Edge is enjoined from defaming Ageless and making false statements about it.

76.    Edge's acts complained of herein entitle Ageless to compensatory damages and other relief and, because they have been willful and deliberate, entitle Ageless to exemplary damages.

## COUNTERCLAIM COUNT IV
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

77.    Ageless repeats and re-alleges the allegations of paragraphs 1-76 of this Counterclaim as if fully set forth herein.

78.    Ageless has valuable business relations with third parties who have purchased Ageless' products, which have led to economic benefit to Ageless and the probability of future economic benefit to Ageless.

79.    At all times relevant hereto, Ageless is informed and believes, that Edge has been aware of some or all of these valuable business relationships.  In fact, as alleged above, Edge and its representatives have communicated with several of Ageless' customers to deter them from continuing to do business with Ageless.

80.    By its actions (including under the terms of its Trademark License Agreement and Authenticity Campaign), Ageless is informed and believes, and on that basis alleges, that Edge has deliberately induced one or more of Ageless' customers-

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS
123709225.1

licensees to terminate their business relations with Ageless.

81.     There is not and has never been legal justification or right for Edge to have engaged in such unfair, illegal actions.

82.     Because of Edge's unlawful and unfair conduct as alleged herein (including because of its antitrust violations, unfair competition, and defamation), Ageless has lost customers and profits, revenue, and other benefits it might otherwise have obtained.

83.     Edge's acts complained of herein have caused Ageless to suffer substantial monetary loss and irreparable injury.  Ageless will continue to suffer substantial loss and irreparable injury unless and until Edge is enjoined from continuing to interfere with Ageless' ability to sell its serums to customers-licensees.

84.     Edge's acts complained of herein have been willful and deliberate, thereby entitling Ageless to exemplary damages.

## **PRAYER FOR RELIEF**

Wherefore, Ageless prays for entry of judgment as follows:

1.      dismissing Edge's complaint with prejudice;

2.      declaring that Ageless has not infringed or induced infringement of any of Edge's asserted trademarks;

3.      declaring that Edge has no legal right in any of the asserted Marks, or the right to stop Ageless or anyone else from using such Marks in internet advertising or otherwise;

4.      declaring that Edge has not caused anyone to breach any of Edge's contracts, including any of the terms of Edge's Trademark License Agreements;

5.      declaring that Ageless has not engaged in any act of unfair competition, false advertising, or receipt of stolen goods;

6.      declaring that Edge has suffered no injury, including injury to its business reputation or loss of potential customers-licensees, as a result of Ageless' use of the Asserted Marks;

7.      enjoining Counter Defendants, as well as their agents, servants, employees,

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

and attorneys, and all persons in active concert or participation with them, from continuing to make false statements about Ageless or any of its products and from or disparaging Ageless or any of its products, directly or indirectly charging infringement, or instituting any further action for infringement of the Asserted Marks or any similar marks against Ageless, its officers, directors, principals, agents, employees, or its customers-licensees;

8.     enjoining Counter Defendants as well as their agents, servants, employees, and attorneys and all persons in active concert or participation with them from interfering with Ageless' existing or potential business relations or from engaging in any conduct that is based upon the claims Ageless has asserted in its Counterclaims in this action;

9.     finding each Counter Defendant liable for Ageless' damages and trebled damages requested by Ageless and requiring them to pay Ageless' damages in a sum to be proven at trial;

10.     awarding Ageless treble damages, including pursuant to 15 U.S.C. Section 15 and State law, for Counter Defendants' misconduct, including but not limited to, Counter Defendants' illegal tying in violation of federal and State antitrust laws;

11.     awarding Ageless punitive and exemplary damages against all Counter Defendants;

12.     awarding Ageless its reasonable attorneys' fees and costs; and

13.     awarding Ageless such other and further relief as the Court deems just and proper.

Dated:  June 25, 2021              FOX ROTHSCHILD LLP


                                   By:_____/s/James E. Doroshow_____
                                        James E. Doroshow
                                        Attorneys for Defendant & Counterclaim
                                        Plaintiff, AGELESS SERUMS LLC

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1

1

## **DEMAND FOR JURY TRIAL**

2    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant and

3 Counterclaimant Ageless hereby demands a trial by jury as to all issues properly so tried.

4

5 Dated: June 25, 2021              FOX ROTHSCHILD LLP

6

7

8                      By:        */s/James E. Doroshow*
                          James E. Doroshow
9                          Attorneys for Defendant & Counterclaim
                          Plaintiff, AGELESS SERUMS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AGELESS SERUMS' THIRD AMENDED ANSWER TO
EDGE'S COMPLAINT AND COUNTERCLAIMS

123709225.1