EXHIBIT 5

Craig S. Summers (SBN 108688)
Craig.summers@knobbe.com
Paul A. Stewart (SBN 153467)
paul.stewart@knobbe.com
Ali S. Razai (SBN 246922)
ali.razai@knobbe.com
Sean M. Murray (SBN 213655)
sean.murray@knobbe.com
Karen M. Cassidy (SBN 272114)
Karen.cassidy@knobbe.com
David G. Kim (SBN 307821)
David.kim@knobbe.com
Ashley C. Morales (SBN 306621)
ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
EDGE SYSTEMS LLC

# THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company,<br><br>            Plaintiff,<br><br>      v.<br><br>AGELESS SERUMS LLC, a Texas limited liability company,<br><br>            Defendant. | ) Civil Action No. 2:20-cv-09669 FLA<br>) (PVCx)<br>)<br>) Hon. Fernando L. Aenlle-Rocha<br>)<br>)<br>) **MEMORANDUM OF LAW IN**<br>) **SUPPORT OF EDGE SYSTEMS**<br>) **LLC'S MOTION TO DISMISS THE**<br>) **THIRD AMENDED**<br>) **COUNTERCLAIMS AND TO**<br>) **STRIKE RELATED AFFIRMATIVE**<br>) **DEFENSE**<br>)<br>) Date: Friday, August 6, 2021<br>) Time: 1:30 PM<br>) Courtroom: 6B<br>) |

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ...................................................................................1

II.   PROCEDURAL BACKGROUND ..........................................................2

III.  ARGUMENT .........................................................................................3

    A.   Legal Standard .............................................................................3

    B.   This Court Should Dismiss Ageless' Antitrust
        Counterclaim Against All Parties And Strike Ageless'
        Corresponding Affirmative Defense.............................................3

        1.   Ageless Fails to Plausibly Allege Any Relevant
             Antitrust Market ................................................................3

             a.   Ageless' Deficient and Inconsistent
                  Descriptions of the Alleged Tying Market ............4

             b.   Ageless' Deficient and Inconsistent
                  Descriptions of the Alleged Tied Market...............7

             c.   Ageless' Inconsistent Descriptions of the
                  Geographic Scope of the Alleged Markets ............8

        2.   Ageless Fails to Plausibly Allege Edge Has
             Market Power in Any Relevant Antitrust Market .........10

              a.   Ageless' Market Allegations Do Not
                  Plausibly Show Market Power ............................10

              b.   Ageless' Patent Allegations Do Not
                  Plausibly Allege Market Power ...........................13

        3.   Ageless Has Not and Cannot Plausibly Allege Any
             Unlawful Tie.....................................................................14

         4.   Ageless Fails to Plausibly Allege Harm to
             Competition .....................................................................19

         5.   Ageless Fails to Plausibly Allege Antitrust Injury.........19

    C.   The Court Should Strike Ageless' Ninth Affirmative
        Defense Of "Unlawful Tying and Illegality"............................20

    D.   This Court Should Dismiss All Counterclaims Against
        Beauty Health...............................................................................20

# TABLE OF CONTENTS
## (*Cont'd*)

Page No.

E. This Court Should Dismiss All Counterclaims Against Mr. Carnell ...................................................................21

    1. The Antitrust Counterclaim Against Mr. Carnell ..........21

    2. The "Defamation And False Advertising" Counterclaim Against Mr. Carnell ...............................21

    3. The Unfair Competition Counterclaim Against Mr. Carnell ...................................................................22

    4. The Tortious Interference Counterclaim Against Mr. Carnell ...................................................................23

F. This Court Should Deny Ageless Leave to Amend .................23

IV. CONCLUSION .............................................................................24

# TABLE OF AUTHORITIES

**Page No(s).**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Management, Inc.*,
    744 F.3d 595 (9th Cir. 2014) .......................................................... 15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 3

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
    No. SACV1200144JVSRNBX, 2013 WL 12143935
    (C.D. Cal. Jan. 7, 2013) ................................................................... 9, 10

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) .......................................................... 15, 22

*Cook, Perkiss and Liehe, Inc v. N. Cal. Collection Serv. Inc.*,
    911 F.2d 242 (9th Cir. 1990) .......................................................... 22, 23

*Disney Enters., Inc. v. VidAngel, Inc.*,
    No. 216CV04109ABPLAX, 2017 WL 6883685
    (C.D. Cal. Aug. 10, 2017) .................................................................. 10

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
    11 Cal. 4th 376, 393 (1995) ................................................................ 23

*Entrepreneur Media, Inc. v. Dermer*,
    No. SACV181562JVSKESX, 2019 WL 4187466
    (C.D. Cal. July 22, 2019) .................................................................... 18

*Estrada v. Caliber Home Loans, Inc.*,
    172 F. Supp. 3d 1108 (C.D. Cal. 2016) ............................................... 21

*Fireworks Lady & Co., LLC v. Firstrans Int'l Co.*,
    No. CV1810776CJCMRWX, 2019 WL 6448943
    (C.D. Cal. Aug. 8, 2019) .................................................................... 24

*Flip Flop Shops Franchise Co., LLC v. Neb*,
    No. CV 16-7259-JFW (EX), 2017 WL 2903183
    (C.D. Cal. Mar. 14, 2017) .................................................................. 24

*Gauvin v. Trombatore*,
    682 F. Supp. 1067 (N.D. Cal. 1988) ................................................... 21

**TABLE OF AUTHORITIES**
*(Cont'd)*

Page No(s).

*Golden Boy Promotions LLC v Haymon*,
No. CV153378JFWMRWX, 2017 WL 460736
(C.D. Cal. Jan. 26, 2017) ..................................................................10, 11

*Holly Hunt Enters., Inc. v. JL Design, Inc.*,
Case No. 2:18-cv-8218-GW-(MRWx), Dkt. 29
(C.D. Cal. Jan. 17, 2019) ..........................................................................21

*Humana Inc. v. Mallinckrodt ARD LLC*,
No. CV1906926DSFMRW, 2020 WL 3041309
(C.D. Cal. Mar. 9, 2020) ............................................................................11

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006) .....................................................................................13

*Korea Suplply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..............................................................................23

*N. Pac. Ry. Co. v. United States*,
356 U.S. 1 (1958) .......................................................................................17

*nSight, Inc. v. PeopleSoft, Inc.*,
No. C-04-3836 MMC, 2005 WL 1287553
(N.D. Cal. June 1, 2005) ............................................................................22

*Packaging Sys., Inc. v. PRC–Desoto Int'l, Inc.*,
268 F.Supp.3d 1071 (C.D. Cal. 2017).....................................3, 4, 5, 19

*Paladin Assocs., Inc. v. Montana Power Co.*,
328 F.3d 1145 (9th Cir. 2003).................................................14, 17, 18

*Radaro Inc. v. ShiftPixy Inc.*,
No. SACV201143JVSADSX, 2020 WL 7315461
(C.D. Cal. Oct. 21, 2020) ............................................................................3

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990)......................................................................15

*Rick-Mik Enters. v. Equilon Enters. LLC*,
532 F.3d 963 (9th Cir. 2008)......................................................................14

*Sandler Partners, LLC v. Masergy Commc'ns, Inc.*,
No. cv-19-6841-JFW(MAAX), 2020 WL 3051253
(C.D. Cal. Feb. 25, 2020) ....................................................................15, 16

**TABLE OF AUTHORITIES**
(*Cont'd*)

Page No(s).

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
  53 F.3d 1073 (9th Cir. 1995) ................................................................. 16

*Sherwin–Williams Co. v. Dynamic Auto Images, Inc.*,
  No. SACV161792JVSSSX, 2017 WL 3081822
  (C.D. Cal. Mar. 10, 2017) ..................................................................... 17

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .................................................................. 3

*Spectrum Sports Inc. v. McQuillan*,
  506 U.S. 447 (1993) .............................................................................. 18

*Sterling v. National Basketball Ass'n*,
  No. CV 14-4192 FMO (SHX), 2016 WL 1204471
  (C.D. Cal. Mar. 22, 2016) ..................................................................... 19

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
  536 F. Supp. 2d 1191 (C.D. Cal. 2008) ............................................. 8, 9

*Top Rank, Inc. v. Haymon*,
  No. CV154961JFWMRWX, 2015 WL 9948936
  (C.D. Cal. Oct. 16, 2015) ........................................................ 11, 12, 19

*TYR Sport Inc. v. Warnaco Swimwear Inc.*,
  679 F. Supp. 2d 1120 (C.D. Cal. 2009) ............................................... 22

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................................ 20

*Water, Inc. v. Everpure, Inc.*,
  No. CV 09-3389 ABC (SSX), 2009 WL 10670419
  (C.D. Cal. Oct. 28, 2009) ............................................................ *passim*

*West L.A. Pizza, Inc. v. Domino's Pizza, Inc.*,
  2:07–cv–07484–FMC–MANx, 2008 WL 11424181
  (C.D. Cal. Feb. 26, 2008) ....................................................................... 5

**OTHER AUTHORITIES**

J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* §
  25:41 (5th ed.) ...................................................................................... 16

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f), Counterdefendants Edge Systems LLC ("Edge"), Beauty Health Company ("Beauty Health"), and Clint E. Carnell ("Mr. Carnell") submit this memorandum in support of their Motion to Dismiss Defendant Ageless Serums LLC's ("Ageless'") Third Amended Counterclaims (Dkt. 41), and to Strike Ageless' Ninth Affirmative Defense.

## I. <u>INTRODUCTION</u>

Despite amending multiple times, Ageless still fails to plead the fundamental elements of its counterclaims and antitrust defense. For example, Ageless still fails to define a relevant antitrust market, much less plausibly allege Edge has market power in that market. To the contrary, Ageless now identifies numerous competing products and competitors, with no estimate of the market shares of such competitors.

Ignoring this Court's prior ruling, Ageless also continues to rely on Edge's trademark agreements as purported unlawful tying. Ageless now argues that Edge's agreements constitute tying based on Edge's communications with its trademark licensees and the mere fact that Edge's products display Edge's trademark. None of Ageless' new allegations justify any departure from the Court's ruling. Nor do Ageless' new allegations cure the other numerous deficiencies previously identified by Edge, including Ageless' failure to show harm to competition or antitrust injury.

Ageless also purports to assert all of its counterclaims against Edge's parent, Beauty Health, and Edge's CEO, Clint Carnell. However, the only specific allegation against Beauty Health is that it is Edge's parent. And the only allegation against Mr. Carnell (apart from the baseless tying allegations) is that he engaged in classic puffery by describing third-party serums as "inferior" and "lower quality" as compared to Edge's serums. As a matter of law, that puffery is not actionable.

Ageless has now had ***three*** opportunities to amend its counterclaims, with full knowledge of Edge's challenge and the deficiencies in Ageless' claims. Ageless has had many opportunities to amend and assert plausible counterclaims and defenses, and nothing suggests Ageless will be able to do so. Accordingly, the Court should dismiss Ageless' antitrust-related counterclaims, dismiss the claims against Beauty Health and Mr. Carnell, and strike Ageless' Ninth Affirmative Defense without leave to amend.

## II. <u>PROCEDURAL BACKGROUND</u>

Ageless first asserted its counterclaims and its "unlawful tying and illegality" defense on November 30, 2020. D.I. 11. After two unsuccessful meet and confers, and one Ageless amendment, Edge moved to dismiss Ageless' First Amended Counterclaims and strike Ageless' antitrust defense. D.I. 16. On May 11, 2021, this Court granted Edge's motion but provided Ageless leave to amend. D.I. 33.

Ageless filed a Second Amended Counterclaim on June 2, 2021. D.I. 36. Edge met and conferred with Ageless and explained that Ageless' Second Amended Counterclaim resolved none of the deficiencies Edge identified in Ageless' previous pleading. Stewart Decl., ¶ 2. In response, Ageless requested another opportunity to amend its pleadings. *Id*. Edge agreed and the parties filed a joint stipulation permitting Ageless to file a Third Amended Counterclaim, which the Court granted on June 22, 2021. D.I. 40.

Ageless filed a Third Amended Counterclaim on June 25, 2021. D.I. 41. Edge then met and conferred with Ageless yet again and explained that Ageless' amendments still failed to resolve any of the deficiencies in Ageless' previous pleading. Stewart Decl., ¶ 3. Because Ageless has resolved none of the numerous deficiencies in its pleading, and there is no indication Ageless is able or willing to do so, Edge now brings this motion to dismiss and strike.

/ / /

# III. ARGUMENT

## A. Legal Standard

To survive a dismissal motion under Rule 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief." *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotations and citations omitted).

Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). A motion to strike is appropriate when a defense is insufficient as a matter of law. *Radaro Inc. v. ShiftPixy Inc.*, No. SACV201143JVSADSX, 2020 WL 7315461 at *2 (C.D. Cal. Oct. 21, 2020).

## B. This Court Should Dismiss Ageless' Antitrust Counterclaim Against All Parties And Strike Ageless' Corresponding Affirmative Defense

### 1. Ageless Fails to Plausibly Allege Any Relevant Antitrust Market

Ageless' tying counterclaim is still deficient at the outset because Ageless has still not defined any relevant antitrust market. "An antitrust complaint must define the relevant market for both the tying product and the tied product." *Packaging Sys., Inc. v. PRC–Desoto Int'l, Inc.*, 268 F.Supp.3d 1071, 1083 (C.D. Cal. 2017). A product market comprises "products that have reasonable interchangeability for the purposes for which they are produced—price, use and qualities considered." *Id* at 1084. Pursuant to these guidelines, "the relevant market must include the group or groups of sellers or producers who have actual

or potential ability to deprive each other of significant levels of business." *Id*. (internal quotations omitted). A complaint is "facially unsustainable" and should be dismissed where "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Id*.

### a. Ageless' Deficient and Inconsistent Descriptions of the Alleged Tying Market

Despite Edge's prior motion to dismiss, the parties' numerous meet and confers, and Ageless' many opportunities to amend, Ageless still fails to plausibly define relevant antitrust markets. Indeed, despite Edge repeatedly citing the above case law, Ageless does not even attempt to reference to the rule of reasonable interchangeability. To the contrary, Ageless' Third Amended Counterclaim ("TAC") is all over the map in its references to what market or markets may be at issue. For example, the TAC alleges Edge ties the sale and use of its "patented Equipment" to the purchase of serums, without identifying which products are "patented" and the subject of Ageless' allegations. D.I. 41 ¶ 21. The TAC specifically also accuses Edge of trying to "expand its patent monopoly," suggesting that Ageless is targeting an (unidentified) technology market defined by Edge's patents. The TAC also repeatedly references a "hydrodermabrasion market" without explaining what products are in that market, much less plausibly alleging why those products are reasonably interchangeable. *See* D.I. 41 ¶¶ 11, 47. Elsewhere, the TAC references the "relevant market for hydodermabrasion systems *Edge* manufactures and sells," D.I. 41 ¶ 16, suggesting that Ageless believes that Edge's products alone define the relevant market. In a section purporting to specifically describe "THE RELEVANT MARKETS," Ageless initially states Edge is a worldwide leader

-4-

in "high-quality resurfacing and rejuvenation systems, *including* hydradermabrasion system." *Id*. ¶ 27. Ageless also discusses a patented "HydraFacial handpiece" that Ageless alleges "works *with* Edge's HydraFacial systems" to "store serum and control serum flow allowing for personalized treatments."

Accordingly, it is fatally unclear whether Ageless is alleging a market for (1) Edge's patented equipment; (2) Edge's patents; (3) "hydradermabrasion systems," (4) "high-quality resurfacing and rejuvenation systems, *including* hydra-dermabrasion systems"; (5) "*Edge's* HydraFacial Systems"; or (6) Edge's HydraFacial Systems *and* Edge's HydraFacial handpieces. Indeed, nowhere does Ageless identify what products are within or outside of any of these markets, much less plausibly allege such a market with reference to the rule of reasonable interchangeability and cross-elasticity of demand.

Instead, Ageless injects even more confusion, alleging that "[i]n addition to Edge's patented products, there are alternate products and systems for *noninvasive skin resurfacing and rejuvenation treatments* available in the United States." D.I. 41 ¶ 29. This suggests yet another possible market – that of noninvasive skin surfacing and rejuvenation treatments. Ageless then purports to identify certain disadvantages of such products relative to Edge's products. For example, Ageless alleges that Edge's "HydraFacial method is gentler, less painful and more effective" than "microdermabrasion." *Id*. But the mere fact that Edge's products are *better* in some ways does not plausibly address whether other products are reasonably interchangeable or the cross-elasticity of demand. A complaint is fatally deficient where, as here, "Plaintiff['s] alleged market definitions completely fail to consider the concept of cross-elasticity of demand…. These deficiencies in market definition are alone sufficient to warrant dismissal of Plaintiff[s'] claims." *West L.A. Pizza*, ///

1    *Inc. v. Domino's Pizza, Inc.*, 2:07–cv–07484–FMC–MANx, 2008 WL
2    11424181 at *6 (C.D. Cal. Feb. 26, 2008).

3         Ageless includes similar confusing allegations regarding other products,
4    such as "micro needling" and "[c]hemical peels," alleging for example, that both
5    "Hydrafacial and chemical peels work by removing dead skin cells," but that
6    chemical peels "have been reported to not be for everyone."  D.I. 41 ¶ 29.  The
7    mere fact that a product may not "be for everyone" does not address cross-
8    elasticity of demand.

9         Ageless similarly vaguely alleges that "intense pulsed light" ("IPL") is
10   "also known as a possible ***alternate choice*** for HydraFacials."  *Id*.  Ageless then
11   confusingly alleges that IPLs are "***not*** a good choice for people with surface
12   discoloration, rosacea and other skin issues."  *Id*.  None of these allegations
13   plausibly address whether or not this product is within the relevant antitrust
14   market based on the rule of reasonable interchangeability and cross-elasticity of
15   demand.  Indeed, it is not even clear from Ageless' vague and inconsistent
16   allegations whether Ageless is attempting to plead that IPLs are within the
17   relevant antitrust market.

18        Ageless' allegations are likewise unclear as to what competitors are in the
19   alleged antitrust market.  Ageless first identifies Image MicroDerm, Inc. and
20   Aesthetic Skin Systems LLC as offering to "perform services and treatments
21   that compete with Edge's HydraFacial Systems…."  D.I. 41 ¶ 47.  But Ageless
22   also attaches Edge's patent infringement complaints against third parties that
23   Ageless identifies as "potential competitors to Edge" for the sale of Edge's
24   HydraFacial Systems.  D.I. 41 ¶ 38.  Such alleged competitors include (1) Bio-
25   Therapeutic, Inc., (2) Naumkeag Spa & Medical Supplies, LLC, (3)
26   Hydradermabrasion Systems, (4) Aesthetic Skin Systems, LLC, (5) Image
27   Microderm Inc., (6) Venus Concept USA, Inc., and (7) Cartessa Aesthetics,
28   LLC.  *See* D.I. 41, Exs. G, H, J, K, L, M     Such alleged competitors include

even (8) Ageless, which is accused of patent infringement for its sale of "Ageless Glow MD," a system for treating a patient's skin.  *See* D.I. 41, Ex. I. Ageless never clearly identifies these companies as competing in any specific relevant antitrust market, never identifies the specific products within the market, and never plausibly alleges why the rule of rule of reasonable interchangeability and cross-elasticity of demand would support any alleged market definition.

### b. Ageless' Deficient and Inconsistent Descriptions of the Alleged Tied Market

Ageless' allegations are equally deficient and inconsistent with respect to the market for the alleged tied product.  In one part of the TAC, Ageless alleges the "relevant market" is "Edge's Serums consisting of those serums that ***Edge alleges it manufactures and sells*** and which Edge demands its customers-licensees use to the exclusion of any competitive product….."  D.I. 41 ¶ 40. Ageless alleges no plausible facts explaining why the serum market should be limited to the specific serums ***Edge*** manufactures and sells.  Elsewhere, Ageless alleges there is reduced competition in the "market for the Tied Product, i.e., serums that could otherwise be sold and used with Edge's equipment."  D.I. 41 ¶ 43.  Ageless never identifies the serum products and manufacturers that would be within such an alleged market and never defines its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand.  Instead, Ageless injects even more confusion elsewhere in its TAC, referring to a "consumables and services market" providing profits that Ageless should allegedly be sharing with competitors.  D.I. 41 ¶ 51.

Courts routinely hold that such confusing and inconsistent allegations are insufficient to plausibly allege a relevant antitrust market.  *See, e.g., Water, Inc. v. Everpure, Inc.*, No. CV 09-3389 ABC (SSX), 2009 WL 10670419 at *7 (C.D. Cal. Oct. 28, 2009) ("merely peppering the Complaint with characterizations of

the products at issue does not allege the relevant market"); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191, 1195 (C.D. Cal. 2008) (finding allegations "hopelessly muddled as to what product market (or markets) are at issue here.").

Indeed, Ageless' allegations are likewise unclear as to what competitors are in the market for the alleged tied product. Ageless initially alleges that Edge allows "Murad Inc., ZO Skin Health Inc. and Paul Nassif M.D. Inc." to sell serums for use with Edge's "HydraFacial Equipment and treatments" and that Edge "prohibits other potential competitors (like ***Ageless, Zemits, OOMNEX and Adonyss***) from selling serums....." D.I. 41 ¶ 40.

Later, however, Ageless alleges that in "addition to Ageless, other companies ***compete*** with Edge in the manufacture and sale of HydraFacial serums," specifically identifying "***Zeemits, OOMNEX and Adonyss***, that advertise they can be used with any hydradermabrasion equipment, including Edge's HydraFacial Systems." D.I. 41 ¶ 48. Ageless' allegations are thus inconsistent and unclear: do these companies compete and sell products within the alleged antitrust market, and/or is the market for serums limited to serum sales for Edge's specific "HydraFacial Equipment"? Ageless never explains. Such allegations are insufficient to plausibly allege antitrust claims.

### c. Ageless' Inconsistent Descriptions of the Geographic Scope of the Alleged Markets

With regard to both the alleged tying and tied markets, Ageless provides inconsistent and confusing allegations regarding geographic scope. Ageless repeatedly references international markets and competitors:

- Ageless argues Edge is a "worldwide leader" in high-quality resurfacing and rejuvenation systems, including hydra-dermabrasion systems, including hydradermabration systems. D.I. 41 ¶ 27.

- Ageless points to an alleged statement by Edge that as Edge "expands its international footprint" it will meet "some resistance" from "cheaper Chinese serums…especially in the developing world." D.I. 41 ¶ 29.
- When alleging there is not serious competition in the "Tying Product market," Ageless purports to quote statements regarding the ineffectiveness of competitors in the "Greater Chinese market." D.I. 41 ¶ 46.
- Ageless relies on an allegation that Edge's products are "available in over 87 countries with over 17,000 delivery services globally," D.I. 41 ¶ 10.

Ageless does allege that Edge markets its products "throughout the United States," D.I. 41 ¶ 28. Ageless also alleges that "the relevant profit [sic, market] for purposes of this Counterclaim is the United States." D.I. 41 ¶ 16. Even crediting those allegations, and ignoring Ageless' =inconsistent allegations above, Edge never plausibly alleges or explains why the relevant antitrust markets should be *limited* to the United States. *See id.*; *see also Water, Inc.*, 2009 WL 10670419 at *7 (rejecting conclusory allegation of geographic market that "reveal[ed] nothing about the area of effective competition since it places no boundaries around where retailers can find alternative sources of supply.").

Ageless' market allegations are therefore woefully deficient. "[I]f [Ageless] intends to pursue an antitrust claim, it has to be clear about the market in which the alleged antitrust violation occurred, and be consistent about how the various parties at issue are involved in that market." *Ticketmaster*, 536 F. Supp. 2d at 1197. "Since [Ageless] ha[s] not sufficiently alleged a relevant market, the Court cannot determine whether [Edge's] alleged actions violate antitrust statutes." *Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, No.

-9-

SACV1200144JVSRNBX, 2013 WL 12143935 at *3 (C.D. Cal. Jan. 7, 2013). "Market definition is ***crucial***. Without a definition of the relevant market, it is impossible to determine market share." *Golden Boy Promotions LLC v Haymon*, No. CV153378JFWMRWX, 2017 WL 460736 at *10 (C.D. Cal. Jan. 26, 2017). Without more, the Court should dismiss Ageless' claims.

## 2. Ageless Fails to Plausibly Allege Edge Has Market Power in Any Relevant Antitrust Market

Despite Edge's prior motion to dismiss, the parties' numerous meet and confers, and Ageless' many opportunities to amend, Ageless still fails to plausibly allege market power. Ageless' "failure to plead market power is not surprising, since it also failed to plead the relevant market." *Water, Inc.*, 2009 WL 10670419 at *8. "[S]ince a relevant market was not properly defined, the market power inquiry ***cannot*** be made." *Blizzard Entm't* , 2013 WL 12143935 at *3.

### a. Ageless' Market Allegations Do Not Plausibly Show Market Power

"Market power may be demonstrated through either of two types of proof: (1) direct evidence of the injurious exercise of market power, i.e., restricted output and supracompetitive prices; or (2) circumstantial evidence pertaining to the structure of the market." *Golden Boy Promotions*, 2017 WL 460736 at *9. "To demonstrate market power circumstantially, a plaintiff must: (1) define the relevant market, (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Id.*; *see Disney Enters., Inc. v. VidAngel, Inc.*, No. 216CV04109ABPLAX, 2017 WL 6883685 at *7 (C.D. Cal. Aug. 10, 2017) (same).

/ / /

Ageless never alleges Edge restricted output in any particular market, much less identifies allegations plausibly supporting such a conclusion. *See Humana Inc. v. Mallinckrodt ARD LLC*, No. CV1906926DSFMRW, 2020 WL 3041309 at *6 (C.D. Cal. Mar. 9, 2020) (dismissing complaint that "fail[ed] to allege Defendant restricted output"); *Top Rank, Inc. v. Haymon*, No. CV154961JFWMRWX, 2015 WL 9948936 at *8 (C.D. Cal. Oct. 16, 2015) (same).

Ageless also fails to plausibly allege market power circumstantially. As discussed above, Ageless does not even define any particular market, much less show Edge has a dominant **share** of that market. Without "a definition of the relevant market, it is **impossible** to determine market share." *Golden Boy Promotions*, 2017 WL 460736 at *10. Nor does Ageless show there are significant barriers to entry and that existing competitors lack the capacity to increase their output in the short run. Ageless vaguely alleges that Edge's "strong customer loyalty" and "high brand recognition" are "barrier[s] to competition" with Edge. D.I. 41 ¶¶ 46, 49. But that does not address the ability of a new competitor to enter a relevant antitrust **market** or expand output in such a market. *See Golden Boy Promotions*, 2017 WL 460736 at *9.

Ageless' failure to provide such allegations is telling, particularly since Ageless' pleading references **numerous** alleged competitors and potential competitors. Indeed, in a misguided attempt to show a **lack** of competition, Ageless attaches patent infringement complaints that, if anything, show the **opposite**. Specifically, Ageless identifies direct competitors in its counterclaim and characterizes the patent defendants as "potential competitors." D.I. 41 ¶¶ 38, 47. Ageless' complaint and attachments thus identify the following as alleged potential competitors for the sale of equipment: (1) Image MicroDerm, Inc.; (2) Aesthetic Skin Systems LLC; (3) Bio-Therapeutic, Inc., (4) Naumkeag Spa & Medical Supplies, LLC, (5) Hydradermabrasion Systems, (6) Aesthetic

Skin Systems, LLC, (7) Image Microderm Inc., (8) Venus Concept USA, Inc., (9) Cartessa Aesthetics, LLC; and even (10) Ageless, which is accused of patent infringement for its sale of "Ageless Glow MD," a system for treating a patient's skin. *See* D.I. 41, ¶¶ 38, 47, Ex. G-M.

Ageless never attempts to estimate the market shares of these numerous competitors, much less show Edge's purported market power ***forced*** customers to accept serum they did not want. Absent market power, a consumer that desires to use a different serum can readily purchase equipment from a different manufacturer.

Moreover, none of Ageless' market allegations plausibly show that Edge has market power. For example, Ageless alleges that Edge has "high brand recognition and customer loyalty…." D.I. 41 ¶ 43. But that does not show restricted output, supracompetitive prices, or that Edge owns a dominant share of the market and significant barriers to entry and expansion. Brand recognition and customer loyalty are common—indeed, Ageless does not address whether any of the other alleged competitors enjoy that benefit.

Ageless also points to Edge's allegation that "it is a ***worldwide*** leader in the design, development, manufacturer, and sale of skin resurfacing systems and rejuvenation systems…." D.I. 41 ¶ 16. That does not plausibly plead market power. *Water, Inc.*, 2009 WL 10670419 at \*8 (allegation that defendant "number one in the industry in branded gasoline stations" inadequate to allege market power). Indeed, Ageless' allegation is not specific to any particular defined antitrust market, much less a market in the ***United States***. *See Top Rank, Inc. v. Haymon*, No. 15–4961–JFW (MRWx), 2015 WL 9948936 at \*8 (C.D. Cal. Oct. 16, 2015) (rejecting "allegations of the Haymon Defendants' market power [that were] completely disconnected from the relevant market definition.").

/ / /

**b.**  **Ageless' Patent Allegations Do Not Plausibly Allege Market Power**

Most of Ageless' new allegations of market power relate to Edge's patents and double down on Ageless' apparent belief that alleging a competitor has many patents is sufficient to establish market power. As Edge previously explained, the Supreme Court has unequivocally rejected the argument that patents establish market power:

> Congress, the antitrust enforcement agencies, and most economists have all reached the conclusion that a patent does not necessarily confer market power upon the patentee. Today, we reach the same conclusion, and therefore hold that, in ***all cases involving a tying arrangement, the plaintiff must prove that the defendant has market power in the tying product***.

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-46 (2006). As discussed above, Ageless does not plausibly allege market power in any properly defined market. Ageless' patent allegations cannot fill that fatal hole.

Moreover, Ageless' patent allegations make no sense. For example, Ageless merely lists Edge's patents without attempting to connect the patent claims to any specific Edge or third-party products. That Edge has eight patents is hardly unusual or informative of whether Edge has market power over any specific products in any specific markets. Ageless also attaches ten patent infringement complaints from the last decade—two of which are directed to Ageless. *See* D.I. 41 ¶¶ 38, 47, Ex. E-M. Ageless never explains how those lawsuits establish market power in any particular defined antitrust market. To the contrary, as discussed, Ageless' own complaint identifies the patent defendants as potential competitors. D.I. 41 ¶¶ 38, 47. Ageless never addresses whether any patent suit has ever excluded any competitor from selling any product. Ageless vaguely alleges that the patents constitute a "blocking book" of patents, but never explains what products they allegedly block, or how. It is

common to have multiple similar patents issue as the patentee and examiner negotiate the scope of various claims during prosecution. Ageless simply cites the patent numbers, vaguely alleges the patents are "strikingly similar," and leaves the Court (and Edge) to guess how these patents purportedly result in market power. D.I. 41, ¶ 41.

"A tying arrangement is a device used by a competitor with **market power** in one market to extend its market power to an entirely distinct market." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003). "A failure to allege power in the relevant market is a sufficient ground to dismiss an antitrust complaint." *Rick-Mik Enters. v. Equilon Enters. LLC*, 532 F.3d 963, 972 (9th Cir. 2008). The Court should dismiss Ageless' claims for failure to allege market power.

### 3. Ageless Has Not and Cannot Plausibly Allege Any Unlawful Tie

Despite Edge's prior motion to dismiss, the parties' numerous meet and confers, and Ageless' many opportunities to amend, Ageless still fails to identify any unlawful tie.

In order to establish a tie, Ageless must plausibly allege customers-licensees were forced to accept the alleged tied products. "***Essential***" to a tying claim is "proof that the seller ***coerced*** a buyer to purchase the tied product." *Paladin Assocs.*, 328 F.3d 1145 at 1159. "A plaintiff must present evidence that the defendant went beyond persuasion and coerced or forced its customer to buy the tied product in order to obtain the tying product." *Id.*

Here, Ageless alleged the opposite—that "Ageless' and Edge's customers-licensees are ***free*** to purchase any product they desire…." D.I. 14 ¶ 9. Ageless elaborated that the "decision by any customer-licensee to elect to purchase another serum other than Edge's serum" is "a decision independently made by the customer-licensee themselves depending, at least in part, upon which serum they believe is of higher quality." *Id.* ¶ 11.

Recognizing that such allegations are fatal to its claim, Ageless removed them from its Second and Third Amended Counterclaim. But "[a] party cannot amend pleadings to 'directly contradict' an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 600 (9th Cir. 2014); *see also Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) ("It would not be possible for Reddy to amend [its] complaint to allege a completely new injury that would confer standing to sue without contradicting any of the allegations of his original complaint. Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading."); *Sandler Partners, LLC v. Masergy Commc'ns, Inc.*, No. cv-19-6841-JFW(MAAX), 2020 WL 3051253 at *5 n.5 (C.D. Cal. Feb. 25, 2020). Ageless' admissions defeat Ageless' tying claim—Ageless cannot allege tying when its own pleading alleged the opposite.

Undaunted, Ageless attempts to plead three theories of alleged tying. ***First***, despite this Court's ruling, Ageless ***continues*** to point to Edge's Trademark Agreement as purportedly constituting an illegal tie. *See* D.I. 41 ¶ 17. Thus, Ageless continues to allege that Edge is tying equipment with serum, and continues to rely on the Trademark Agreement as establishing such a tie. *Id*. This Court correctly rejected Ageless' argument, observing that "[n]either the grant of license nor the provision requiring the purchase of Edge's serums requires a purchaser of Edge's equipment to also purchase Edge's serum." D.I. 33 at 7. The Court correctly found that "nothing in the Agreement precludes a customer from purchasing Edge's equipment without purchasing Edge's serums." *Id*.

Ageless attempts to circumvent that ruling by now alleging that "***not only*** are customer's-licensees' right to use the HydraFacial Mark terminated if a competitor's serum is used," but a customer-licensee's right to use "Edge's

Tower Machines" is precluded because the machine "includes a flat screen monitor that displays a user interface screen where the HydraFacial Mark appears." D.I. 41 ¶ 18. Thus, Ageless theorizes "if the right to use the HydraFacial Mark is terminated," a "customer-licensee must also discontinue use of the HydraFacial Equipment that it purchased because the HydraFacial Mark cannot be removed from it." *Id.*

Ageless' argument directly contradicts a fundamental principle of trademark law known as the "first sale" or "exhaustion" rule. Under this doctrine, the purchaser of goods bearing a trademark is entitled to continue using and may even resell the trademark-bearing goods without the trademark owner's consent. *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074-75 (9th Cir. 1995); J.T. McCarthy, *McCarthy on Trademarks & Unfair Competition* § 25:41 (5th ed.). "Trademark rights are 'exhausted' as to a given item upon the first authorized sale of that item." *McCarthy* § 25:41. Accordingly, Edge's customers are free as a matter of law to continue using their Edge machines, bearing Edge's HydraFacial mark, without a license from Edge. If this were not true, consumers could not drive their legitimately purchased Ford cars without scraping off all of Ford's trademarks.

**Second**, Ageless points to a communication by Edge to Edge's **trademark licensees** that use the "HydraFacial® brand" warning them against using "inferior, third party serums" that give clients "an inferior (or even worse, possibly harmful) experience, which – in turn – damages the HydraFacial **brand** and lessens our collective success." D.I. 41 ¶ 25. Such conduct is not substantively different from the conduct the Court previously held was **not** a tie. D.I. 33 at 7. Like the Court previously observed with regard to the Trademark License, at most, Edge's communications encourage or require "licensees of Edge's **trademarks** to purchase Edge's serums to use the HydraFacial® **mark** in connection with their skincare services." *Id.*. Nowhere does Ageless explain

how Edge's communications require a purchaser of Edge's **equipment** to also purchase Edge's **serum**.

Indeed, Ageless' own pleading confirmed that Edge is merely lawfully licensing and protecting its mark. Ageless previously alleged that "Ageless' and Edge's customer-licensees are **free to purchase any product they desire**, and if they decide to purchase Ageless' serum, Edge in fact terminates their right to use the HydraFacial mark. By doing so, Edge **thereby ensures** that there is **no trademark infringement** by continued use of the HydraFacial mark, including under the terms of the Trademark License Agreement...." D.I. 14 ¶ 9. Recognizing that such allegations are fatal to its claim, Ageless removed them from its Second and Third Amended Counterclaim. As discussed, Ageless cannot simply contradict its prior allegations.

Ageless' allegations are deficient, and Ageless' admission above, is fatal because "where the buyer is free to take either product by itself there is no tying problem." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 6 n.4 (1958). Indeed, none of Edge's communication constitutes a tie. For example, the mere fact that Edge allegedly provided preferred pricing to customers who purchase Edge equipment and serums does not constitute tying. *See, e.g., Paladin Assocs.*, 328 F.3d 1145 at 1160 ("We have not found evidence of coercion where a defendant used a package discount to encourage buyers to take both products."). Indeed, such "allegations actually suggest that economic incentives—not coercive economic power—led to the" accused conduct. *Sherwin–Williams Co. v. Dynamic Auto Images, Inc.*, No. SACV161792JVSSSX, 2017 WL 3081822 at *7 (C.D. Cal. Mar. 10, 2017); *see also Water, Inc.*, 2009 WL 10670419 at *6 ("rebates for buying both products were not themselves improper since package discounts are permissible to encourage buyers to buy both products"). Moreover, Ageless never attempts to connect Edge's communication with any particular markets, much less a market in which Edge has market power.

-17-

*Paladin Assocs.*, 328 F.3d 1145 at 1160 ("[T]he Supreme Court has not found evidence of coercion where the plaintiff failed to show that the defendant possessed market power in the tying product market and wielded that power to compel the purchase of another product.").

**Third**, Ageless asserts that Edge engaged in tying by filing a patent infringement lawsuit accusing Ageless of inducing infringement of Edge's patents. D.I. 41 ¶ 38. Indeed, at the parties' meet and confer, Ageless confirmed it is asserting that tying theory. Stewart Decl., ¶ 4. The *Noerr-Pennington* doctrine bars Ageless' attempt to base its antitrust claims on Edge's First Amendment right to assert patent infringement claims. *See Entrepreneur Media, Inc. v. Dermer*, No. SACV181562JVSKESX, 2019 WL 4187466 (C.D. Cal. July 22, 2019). Ageless does not even attempt to allege—as it must—that Edge's lawsuits constitute a "sham" such that that the "sham litigation" exception could apply. *See id*. at \*5-6. Further, Ageless never explains how the mere assertion of patent infringement claims against a competitor could be considered anticompetitive tying, much less the tying of any particular products in particular markets. The antitrust laws protect competition, not competitors. *See Spectrum Sports Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

Ageless vaguely alleges that "competitors cannot sell their competing products, including because Edge **maintains** it is able to prohibit it because Edge has a blocking book of patents covering Edge's equipment." D.I. 41 ¶ 36. But Ageless cannot plausibly allege that Edge engages in anticompetitive tying merely because Edge "maintains" that certain conduct infringes its patents. If anything, Ageless' cited patent infringement complaints demonstrate that, regardless of Edge's position, competitors can and do continue to sell products. To the extent those products infringe Edge's patents, that is an issue in Edge's patent infringement lawsuits.

/ / /

### 4.    Ageless Fails to Plausibly Allege Harm to Competition

Ageless' counterclaim is also deficient because Ageless fails to allege harm to competition in the market for the tied product.  To establish tying, "a plaintiff must allege and ultimately prove facts showing a significant negative impact on competition in the tied product market." *Packaging Sys.*, 268 F. Supp. 3d at 1086 (internal quotations omitted).  As discussed above, Ageless does not even define an antirust market for the tied product.  Accordingly, Ageless' counterclaim cannot plausibly allege harm to competition in any such market.

### 5.    Ageless Fails to Plausibly Allege Antitrust Injury

Ageless' antitrust counterclaim fails for the independent reason that it does not plausibly allege facts demonstrating antitrust injury.  "A plaintiff may only pursue an antitrust action if it can show "antitrust injury," i.e., "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Top Rank*, 2015 WL 9948936 at *5. "The four requirements for antitrust injury are: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Id*. (internal citations omitted).  "'Injury of the type antitrust laws were intended to prevent' means harm to competition, not harm to individual competitors." *Id*.  As this Court has stated, "claimants must plead and prove a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *Sterling v. National Basketball Ass'n*, No. CV 14-4192 FMO (SHX), 2016 WL 1204471, at *6 (C.D. Cal. Mar. 22, 2016) ("Sterling's claims of antitrust injury are not an injury to competition, but rather, disappointment that he lost ownership of the Clippers as a result of the probate court's order.").  Ageless' pleading satisfies none of the above requirements.  Ageless does not even properly define relevant antitrust markets,

-19-

and thus cannot show that harm to competition in such market harmed Ageless. Accordingly, the Court should dismiss Ageless' Counterclaim Count I. In addition, the Court should dismiss Ageless' Counterclaim Count II (unfair competition) and Count IV (tortious interference) to the extent those counterclaims are based on Ageless' deficient antitrust allegations. *See* D.I. 41 ¶¶ 53-57, 77-84.

**C.** **The Court Should Strike Ageless' Ninth Affirmative Defense Of "Unlawful Tying and Illegality"**

To the extent it is discernable at all, Ageless' "unlawful tying and illegality" defense is based on the same allegations as its antitrust counterclaim. It thus fails for the same reasons. *See* D.I. 41 ¶ 9. Indeed, even if Ageless' antitrust counterclaims were valid, Ageless nowhere includes allegations explaining why its antitrust allegations provide an affirmative defense to all of Edge's claims.

**D.** **This Court Should Dismiss All Counterclaims Against Beauty Health**

Ageless' counterclaim alleges that Beauty Health acquired Edge on December 8, 2020.[1] Dkt. 41 ¶ 15. The counterclaim also alleges in conclusory fashion that "Beauty Health actively participated in the conduct alleged below." *Id.* ¶ 7. No other, more specific, allegations are made against Beauty Health. Neither of Ageless' allegations against Beauty Health provides any basis for maintaining any claims against Beauty Health.

First, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Thus, the allegation that Beauty Health is the corporate parent of Edge is no

---

[1] Paragraph 15 of the counterclaim refers to edge by its fictitious business name, HydraFacial.

basis for imposing liability on Beauty Health.  Second, the "trick" of "[l]umping defendants together, without identifying a factual basis for liability for each, is not permissible."  *Holly Hunt Enters., Inc. v. JL Design, Inc.*, Case No. 2:18-cv-8218-GW-(MRWx), Dkt. 29 at 6 (C.D. Cal. Jan. 17, 2019) (attached to the Stewart Declaration as Ex. 1).  *See also Estrada v. Caliber Home Loans, Inc.*, 172 F. Supp. 3d 1108, 1117 (C.D. Cal. 2016); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).  Accordingly, as in *Holly Hunt*, *Estrada*, and *Gauvin*, Beauty Health should be dismissed from this case.

**E.**     **This Court Should Dismiss All Counterclaims Against Mr. Carnell**

       **1.**     **The Antitrust Counterclaim Against Mr. Carnell**

As discussed above, the antitrust counterclaim should be dismissed against all counterdefendants, including Mr. Carnell.  Moreover, Ageless has not and cannot plead that Mr. Carnell, the CEO of a publicly traded corporation, is somehow the alter ego of that corporation.

       **2.**     **The "Defamation And False Advertising" Counterclaim Against Mr. Carnell**

Ageless' counterclaim purports to allege a claim for "defamation and false advertising" against Mr. Carnell and the other counterdefendants.  Most of the allegations of defamation and false advertising are directed against oral statements by unnamed employees of Edge.  *See* Dkt. 41 at ¶¶ 62-66.  However, the counterclaim does make a single allegation of defamation or false advertising against Mr. Carnell.  *See id.* ¶ 25.

In particular, Ageless alleges that Mr. Carnell sent an email to Edge's customers about the use of third-party serums in Edge's HydraFacial systems.  *Id.*  In that email, Mr. Carnell referred to "inferior" third-party serums.  *Id.*  Ageless similarly alleges that Mr. Carnell or others have represented to customers that Ageless' serums are of "lower quality" than Edge's serums.  *Id.* at ¶ 24.

It is well-settled that statements which are mere "puffery" or "puffing" are not actionable. *Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *Cook, Perkiss and Liehe, Inc v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245-46 (9th Cir. 1990); *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1137 (C.D. Cal. 2009); *nSight, Inc. v. PeopleSoft, Inc.*, No. C-04-3836 MMC, 2005 WL 1287553 at *1 (N.D. Cal. June 1, 2005). It is equally well settled that "[a]dvertising which merely states in general terms that one product is superior is not actionable." *Cook, Perkiss and Liehe*, 911 F.2d at 246. For example, in *TYR Sport*, the statement by a party that it "was far ahead of all of its competitors in swimsuit technology" was deemed "the most innocuous form of puffing." *TYR Sport*, 679 F. Supp. 2d at 1137. And in the same case, the description of a competitor's product as "an inferior product" was likewise held to be mere puffing. *Id*. *See also nSight*, 2005 WL 1287553 at *1 (dismissing as puffing a statement that a party's services were "inferior"). Finally, it is well settled that whether a statement is mere puffery may be decided as a matter of law on a motion to dismiss. *Cook, Perkiss and Liehe*, 911 F.2d at 245.

Application of these principles here is straight-forward. Ageless alleges that Mr. Carnell described third-party serums as "inferior" and of "lower quality" than Edge's own serums. As in each of the cases cited above, this is classic puffery as a matter of law. Accordingly, this Court should dismiss the defamation and false advertising claim against Mr. Carnell.[2]

### 3. The Unfair Competition Counterclaim Against Mr. Carnell

Ageless' unfair competition claim against Mr. Carnell is based explicitly upon the alleged antitrust "tying" violation and "false statements about the

---

[2] The counterclaim also alleges that Mr. Carnell described "third party serums" as "possibly harmful." Dkt. 41 ¶ 25. However, the counterclaim contains no plausible allegations that Mr. Carnell ever characterized Ageless' serums as harmful.

quality of Ageless' serum." Dkt. 41 ¶ 54. As just discussed, Ageless still has not pled a plausible antitrust counterclaim, and the allegedly "false" statements about Ageless' serums are non-actionable puffery. Thus, the unfair competition counterclaim against Mr. Carnell should be dismissed.

### 4. The Tortious Interference Counterclaim Against Mr. Carnell

The final purported cause of action in Ageless' counterclaim is tortious interference. Dkt. 41 ¶¶ 77-84. As this Court has already held, to plead a claim for tortious interference, "a plaintiff must show the defendant's conduct was wrongful by some legal measure other than the fact of the interference itself." Dkt. 33 at 9 (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995)). "Wrongful, in this context, means the act of interference 'is independently unlawful, that is, [] it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.'" *Id*. (quoting *Korea Suplply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003)).

Ageless appears to recognize this requirement and pleads that the counterdefendants' conduct was "unlawful and unfair conduct as alleged herein (including because of its antitrust violations, unfair competition and defamation." Dkt. 41 at ¶ 82. Thus, Ageless merely incorporates by reference its allegations of antitrust violations, unfair competition, and defamation to support the "wrongful" requirement of tortious interference. However, as discussed above, Ageless has not plausibly pled any of these violations against Mr. Carnell. Thus, the tortious interference claim against Mr. Carnell should be dismissed.

### F. This Court Should Deny Ageless Leave to Amend

Ageless' allegations do not even approach the minimum that would be required to assert Ageless' antitrust claims and defense. This Court already provided Ageless two opportunities to amend, and nothing suggests Ageless

will be able to cure the numerous deficiencies in yet another amendment. Accordingly, the Court should dismiss the above challenged claims and strike Ageless' defense without leave to amend. *See Fireworks Lady & Co., LLC v. Firstrans Int'l Co.*, No. CV1810776CJCMRWX, 2019 WL 6448943 at *3 (C.D. Cal. Aug. 8, 2019) ("Because Plaintiff has failed to cure the deficiencies in this claim despite being given an opportunity to do so, and because the Court does not believe that Plaintiff can cure the deficiencies, the Court finds that granting further leave to amend would be futile."); *Flip Flop Shops Franchise Co., LLC v. Neb*, No. CV 16-7259-JFW (EX), 2017 WL 2903183 at *7 (C.D. Cal. Mar. 14, 2017) (denying leave to amend where party failed to adequately plead relevant market and "already had an opportunity to amend their counterclaim[s]").

## IV.  <u>CONCLUSION</u>

For the reasons discussed above, the Court should dismiss Ageless' antitrust counterclaim, dismiss Ageless' unfair competition and tortious interference counterclaims to the extent they are based on Ageless' deficient antitrust allegations, dismiss all claims against Beauty Health and Mr. Cornell, and strike Ageless' Ninth Affirmative Defense.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: July 9, 2021            By: */s/ Paul A. Stewart*
                                      Craig S. Summers
                                      Paul A. Stewart
                                      Ali S. Razai
                                      Sean M. Murray
                                      Karen M. Cassidy
                                      David G. Kim
                                      Ashley C. Morales

                                      Attorneys for Plaintiff
                                      EDGE SYSTEMS LLC