# EXHIBIT 6

THIS LICENSE AGREEMENT (the "Agreement") is made effective as of _____ (the "Effective Date") between Edge Systems LLC dba The HydraFacial Company, a California limited liability company ("Licensor") and, {{QUOTE_ACCOUNT}} ("Licensee").

Recitals

A. Licensor is the owner of the trademarks listed in Exhibit A attached hereto, including, without limitation, the service marks for HydraFacial® treatments and Perk® treatments.

B. Licensee is purchasing HydraFacial system and equipment and/or Perk system and equipment to be utilized in Licensee's business ("Purchased Equipment").

Subject to the terms and conditions set forth in this Agreement, Licensor and Licensee agree as follows:

1. <u>Grant of License</u>

    1.1. Licensor grants to Licensee the nonexclusive, royalty free right to reproduce and display the trademarks listed in Exhibit A attached hereto (collectively "Licensed Trademarks") solely in connection with the advertising and promotion of HydraFacial treatments and/or Perk treatments only within the Licensee's Territory as defined below. In addition, Licensor may grant to Licensee these same or lesser rights, with respect to select trademarks for use in marketing campaigns for future products or services. Any such future license grant shall be made in a written notice from Licensor setting forth the trademarks, how they are to be used in connection with what products or services, and the duration of the license. With respect to these future trademarks, Licensor shall have at least the same rights of inspection, approval and control of use as it has with respect to the Licensed Trademarks, and Licensee shall have no less than the same duties to permit inspection by Licensor and to seek approval for use as it bears with the Licensed Trademarks.

    (a) The immediately preceding grant of license notwithstanding, none of the Licensed Trademarks shall be used by the Licensee within any of its Internet domain names and Licensee is not permitted to use the HydraFacial trademark in paid search advertisement copy.  Furthermore, none of the Licensed Trademarks shall be used by the Licensee unless Licensee solely and exclusively uses Licensor's serums and/or consumables in the operation of the Purchased Equipment. Any display or reproduction of the Licensed Trademarks must include the trademark symbol ™ or registered trademark symbol ®, as they are shown in Exhibit A, after each occurrence, and each page of the document, website, or electronic media where any of the Licensed Trademarks appears must state that the trademark "is a trademark of Edge Systems LLC." Licensee shall make no other use of any of the current and future Licensed Trademarks without the express prior written consent of Licensor. Licensee has no right to sublicense any of the Licensed Trademarks. Licensee shall not do, or cause any act to be done by others, whether during or after the term of this Agreement, to contest, impair, or invalidate any of the Licensor's rights in the Licensed Trademarks, or in any registrations derived from those trademarks.  Any breach of the provisions of this Section 1.1.a shall immediately result in termination of this license.

    Initials:

    (b) The license granted pursuant to this Agreement is only granted to the Licensee. If Licensee transfers the Purchased Equipment to a third party, the third party must contact the Licensor to purchase a new license.  Licensor shall not unreasonably deny the granting of such a new license.

    Initials:

2. <u>Permitted Uses</u>

    2.1. Licensor retains the right to approve the form and format in which the Licensee shall display and reproduce the Licensed Trademarks. Specifically, Licensee shall only display and reproduce the Licensed Trademarks in the form and format approved by the Licensor, and within the Licensee's Territory. In order to protect and preserve the Licensor's rights in the Licensed Trademarks, Licensee agrees that: (a) prior to the first use by the Licensee of any of the Licensed Trademarks, Licensee shall obtain Licensor's approval for such use; (b) any subsequent material alteration or material modification in Licensee's use of any of the Licensed Trademarks shall be approved in

advance by the Licensor; (c) Licensor reserves the right, upon fourteen (14) days advance notice, to inspect and approve or disapprove Licensee's then current and past uses of the Licensed Trademarks to confirm that they are used solely in connection with the Purchased Equipment and on products within the class(es) for which the respective trademark has been registered by Licensor, and in the form and format previously approved by the Licensor.

3. Purchase of Skin Serums and Consumables

    3.1. In recognition that the HydraFacial system and equipment and the Perk system and equipment only function properly and effectively with the use of Licensor's serum solutions and consumables, Licensee agrees to purchase the serum solutions and consumables used in the Purchased Equipment solely and exclusively from Licensor or its authorized distributor in good standing. Any unauthorized use of solutions other than Licensor's is not allowed, will void the warranty, and will result in an automatic termination of this License Agreement.

4. Training & Competency Obligations

    4.1. In connection with the Licensee's purchase of the Purchased Equipment, the Licensee shall be trained initially by the Licensor or the Licensor's authorized distributor (or where applicable, by both) in the proper operation and maintenance of the Purchased Equipment, at no cost to the Licensee. Further, should new or improved treatments or maintenance procedures be developed, the Licensee shall be entitled to request training in those procedures, which training shall be provided by the Licensor or the Licensor's authorized distributor (or where applicable, by both), at no cost to the Licensee. Thereafter, and subject to the terms of any warranties offered by the Licensor, it shall be the sole responsibility of the Licensee to maintain the Licensee's competency to operate and maintain the Purchased Equipment, and to keep Purchased Equipment in good working order in accordance with the Licensor's standards. The Licensee may request subsequent refresher training and initial training for new employees; however, at the discretion of the Licensor, the Licensee may be required to reimburse the Licensor or the Licensor's authorized distributor (or where applicable, both) for the cost of such subsequent refresher training or initial training of new employees. Should it come to the attention of the Licensor or the Licensor's authorized distributor that the Licensee has failed to properly operate or maintain the Purchased Equipment, the Licensor, at its discretion, may require the Licensee to undergo refresher training. At the Licensor's discretion, the Licensee may be required to reimburse the Licensor or the Licensor's authorized distributor (or both) for the cost of this refresher training. Further, should it come to the attention of the Licensor or the Licensor's authorized distributor that the Licensee has repeatedly failed to properly operate or maintain the Purchased Equipment, or that the Licensee has caused injury to anyone in the course of use or maintenance of the Purchased Equipment, or that the Licensee has either failed to or refused to undergo refresher training, then at the Licensor's discretion, this license may be immediately terminated upon dispatch of a notice pursuant to the provisions of Section11 of this Agreement.

Initials:

5. Improved Treatments

    5.1. If Licensor develops new or improved treatments utilizing the HydraFacial system or the Perk system, Licensee shall be permitted to use these new or improved treatments as long as Licensee complies with the terms of this Agreement.

6. Representations & Warranties

    6.1. Licensor represents and warrants that: (i) it has full power and authority to enter into this Agreement and to perform all of its obligations and grant the rights it is granting hereunder without violating the legal or equitable rights of any third party; (ii) there are no agreements or arrangements, whether written or oral, that would be breached by Licensor as a result of its execution or performance of this Agreement; and (iii) the Licensed Trademarks do not, to the knowledge of Licensor, infringe on any third party's trademark rights or violate any applicable law or regulation. Licensee represents and warrants that: (i) it has full power and authority to enter into this Agreement and to perform all of its obligations hereunder without violating the legal or equitable rights of any third party; and (ii) there are no agreements or arrangements, whether written or oral, that would be breached by Licensee as a result of its execution or performance of this Agreement.

7. <u>Limitation of Warranties</u>

    7.1. Licensor shall not be deemed to make, or to have made, any warranties concerning the Purchased Equipment or the Licensed Trademarks, except as expressly stated in this Agreement or otherwise in writing and identified as warranties.

8. <u>Terms of Agreement</u>

    8.1. Subject to the provisions of this Agreement with regard to default or breach, this Agreement is effective as of the Effective Date first stated above, and unless terminated sooner, will continue in force for a period of twelve (12) full calendar months, on condition that the Licensee uses the Purchased Equipment, Licensor's serum solutions and consumables, and uses the Licensed Trademarks as required by this Agreement. This Agreement will automatically renew for successive twelve (12) month terms on condition that the Licensee uses the Purchased Equipment and Licensor's serum solutions and consumables and uses the Licensed Trademarks during the renewal term as required by this Agreement. The provisions immediately above notwithstanding, either party to this Agreement may terminate it with or without cause upon sending written notice to the other party two (2) full calendar months prior to the termination date.

9. <u>Territory</u>

    9.1. The Licensee's rights under this Agreement can be exercised only within the following zip code jurisdictions ("Licensee's Territory") and on one company web page, Internet site, and Licensee's social media channels, but may not be listed on discount sites such as Amazon Local, Groupon, or the like, which in each case is used by Licensee in connection with Licensee's trade name. The Licensor retains the right to have Licensee remove social media listings under Licensee's control at any time and at its sole discretion. It is agreed by Licensee that the duration of social media listing does not give Licensee any rights to such listing. If Licensee relocates the Purchased Equipment to another location, Licensee must contact Licensor to obtain a new license.

10. <u>Default or Breach</u>

    10.1. If Licensee fails to perform or observe any term, covenant or undertaking in this Agreement to be performed or observed by Licensee and such default continues for a period of thirty (30) days after Licensor gives Licensee notice of such failure to perform, Licensor may terminate this Agreement, and such termination will be without prejudice to any other rights or claims Licensor may have against Licensee. Because Licensee's breach of this Agreement may cause Licensor irreparable harm for which money is inadequate compensation, Licensor will be entitled to injunctive relief to enforce this Agreement, in addition to damages and other available remedies.

11. <u>Notices</u>

    11.1. Any notice required or permitted under this Agreement will be considered to be given or transmitted when sent by certified mail, postage prepaid, addressed to the party for whom it is intended at its address set forth on the signature page to this Agreement or to such other address as it may have furnished to the other party in accordance with this Section 11 at least ten (10) days prior to the date on which the required or permitted notice was sent; by facsimile, or electronic mail, which notice will be effective on electronic confirmation of receipt; or by courier or messenger service, which notice will be effective on receipt by recipient as indicated on the carrier's receipt.

12. <u>Amendments</u>

    12.1. This Agreement may be supplemented, amended or modified from time to time by (a) the Licensor with respect to new trademarks, but only by written notice from Licensor to Licensee or (b) by a writing signed by both parties.

Initials:

13. <u>Integration</u>

    13.1. This Agreement supersedes all prior and contemporaneous understandings or agreements of the parties with respect to the License. No party has been induced to enter into this Agreement by, nor is any party relying on, any representation or warranty outside those expressly set forth in this Agreement.

14. <u>Waiver</u>

    14.1. No waiver of a breach of this Agreement will be effective unless it is in writing and signed by the party waiving the breach. No waiver of any breach will be deemed a waiver of any other breach, whether similar or not, nor will any waiver constitute a continuing waiver unless the writing so specifies.

15. <u>Governing Law</u>

    15.1. This Agreement and any dispute arising from the relationship between the parties to this Agreement will be governed and determined by the laws of the State of New York without giving effect to conflict of laws principles thereof. Jurisdiction over any dispute that arises under or relates to this Agreement (whether contract, tort or both) will be set exclusively in a court of competent jurisdiction in New York, New York, and the parties expressly waive any right they may otherwise have to cause any such action or proceeding to be brought or tried elsewhere.

16. <u>Attorney's Fees</u>

    16.1. In any litigation or other proceeding by which any party either seeks to enforce its rights under this Agreement (whether in contract, tort or both) or seeks a declaration of any rights or obligations under this Agreement, the prevailing party shall be awarded reasonable attorneys' fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

17. <u>Severability</u>

    17.1. Any provision of this Agreement that in anyway contravenes the law of any state in which this Agreement is effective will, in that state, to the extent the law is contravened, be considered separable and inapplicable and will not affect any other provision or provisions of this Agreement, unless an essential purpose of this Agreement would be defeated by the loss of the illegal, unenforceable or invalid provision.

18. <u>Binding Effect</u>

    18.1. This Agreement will inure to the benefit of and be binding on the heirs, successors and assigns of Licensor and Licensee.

| LICENSEE: | LICENSOR: |
|---|---|
| Company: | The HydraFacial Company |
| Address: | |
| | 2165 E. Spring Street |
| | Long Beach, CA 90802 |
| | |
| | Name: |
| | Title: |

_____   _____
Signature             Date    Signature             Date

# EXHIBIT A

## REGISTERED TRADEMARKS

- Activ-4®
- Beta-HD®
- Antiox-6®
- DermaBuilder®
- Britenol®
- Edge for Life®
- HydraFacial®
- HydraFacial MD®
- HydraFacial MD CTGF®
- HydroPeel®
- My Life.My Time.My Skin®
- Skin Wellness for Life®
- SmartFacial®
- Soft As A Baby's®
- The Edge System®
- Vortex-Fusion®

## COMMON LAW TRADEMARKS

- Antiox+ With Even Tone and Firming™
- GlySal™
- RinseAway™
- Perk™
- Perk Cleanse with Benefits™
- Perk Hybrid Skin System™
- Skin Perk™
- Pulse-Fusion™
- Allegro™
- Elite™
- Tower™
- Elite with Perk™ Switch