Case 4:20-cv-04335   Document 84   Filed on 02/11/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 11, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDGE SYSTEMS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-CV-4335 |
| | § | |
| AGELESS SERUMS LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## **MEMORANDUM OPINION ON CLAIM CONSTRUCTION**

This is a patent infringement case in which the accused infringer, Ageless Serums, LLC ("Ageless"), seeks judicial declarations of noninfringement and invalidity. (Dkt. 35 at p. 8–9). The patents-in-suit are held by Plaintiff Edge Systems, LLC ("Edge"). (Dkt. 34 at p. 1–2).

On January 5, 2022, the Court held a *Markman* hearing at which the parties proposed meanings for several terms that are used in the patents-in-suit and that the parties have asked the Court to construe. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("[T]he construction of a patent, including terms of art within its claim, is exclusively within the province of the court."). The parties have also filed written briefing.

Having carefully considered the parties' arguments, the evidence, and the applicable law, the Court construes the disputed claim terms as stated below.

## I.     LEGAL STANDARD GOVERNING CLAIM CONSTRUCTION

The claims of a patent define the scope of the patented invention and function to forbid "not only exact copies of an invention, but products that go to the heart of an invention [while avoiding] the literal language of the claim by making a noncritical change." *Id.* at 373–74 (citations and quotation marks omitted). Claim construction is "a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (brackets and quotation marks omitted).

Claim construction requires a determination as to how a person of ordinary skill in the relevant art would understand a claim term in the context of the entire patent, including the specification and prosecution history, at the time of invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–14 (Fed. Cir. 2005). "There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013). "Properly viewed, the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. But the Court must be mindful that, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). "It is not appropriate to leave to the jury the task of resolving claim construction

disputes." *Cobalt Boats, LLC v. Brunswick Corporation*, 773 Fed. App'x 611, 614 (Fed. Cir. 2019). Accordingly, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *O2 Micro,* 521 F.3d at 1361.

The Court begins its analysis by considering the language of the claims themselves, keeping in mind that "claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1314–15 (quotation marks omitted). The specification, being "the single best guide to the meaning of a disputed term[,]" is "always highly relevant to the claim construction analysis" and will "usually" be "dispositive[.]" *Id*. at 1315. The Court should also consider the patent's prosecution history, if that history is in evidence. *Id*. at 1317. The prosecution history "represents an ongoing negotiation between the [Patent and Trademark Office] and the applicant" and, as a result, "often lacks the clarity of the specification[;]" but, nevertheless, it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id*. Put another way, "[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

On the other hand, the Federal Circuit rejects constructions that "improperly add a limitation appearing [in] the specification and the drawings, but not appearing in the unambiguous language of the claim." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1343 (Fed. Cir. 2001). The Court may also rely on "extrinsic" evidence, which is defined as "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quotation marks omitted). Extrinsic evidence is generally seen "as less reliable than the patent and its prosecution history in determining how to read claim terms[.]" *Id.* at 1318. However, dictionaries, while technically a form of extrinsic evidence, "are worthy of special note." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n.6 (Fed. Cir. 1996). "Judges . . . may . . . rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.*

## II. THE PATENTS-IN-SUIT

Six patents form the basis of this litigation. Those patents deal with hydradermabrasion systems and methods used to rejuvenate the skin. Rejuvenation is facilitated by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with a therapeutic solution that moisturizes and protects the treated skin surface. The patent numbers at issue are: 6,641,591 ("the '591 patent"); 8,337,513 ("the '513 patent"); 7,678,120 ("the '120 patent"); 7,789,886 ("the '886 patent"); 9,468,464 ("the '464 patent"); and 9,550,052 ("the '052 patent").

At the *Markman* hearing, the parties grouped the first five patents together and discussed the '052 patent separately. The first five patents belong to the same patent family and are referred to as the Shadduck patents. They claim priority to the same provisional patent application and share the same specification. Four Shadduck patents, the '513 patent; the '120 patent; the '886 patent; and the '464 patent, are continuations of the fifth Shadduck patent '591[1]. The Court will group the patents in the way the parties did in their *Markman* presentations and will address the terms in the order in which the parties did in their *Markman* presentations.

### III. THE DISPUTED CLAIM TERMS

The parties have asked the Court to construe fifteen terms contained in the patents-in-suit. However, having heard the parties' arguments at the *Markman* hearing and reviewed the record, the Court concludes that only two terms—abrade and sharp—require discussion. Addressing every claim of a challenged patent individually is not necessary where multiple claims are "substantially similar and linked to the same abstract idea." *Interactive Wearables, LLC v. Polar Electro Oy*, 501 F. Supp. 3d 162, 171 (E.D.N.Y. 2020). Thus, where the claims asserted in the patent "contain only 'minor differences in terminology [but] require performance of the same basic process,' they should rise or fall

---

[1] The '513 patent is a divisional of the '886 patent. Since the '886 patent is a continuation of the '591 patent, the '513 patent is also a continuation of the '591 patent. Similarly, the '464 patent is a continuation of the '513 patent. A divisional patent application results when an examiner places a restriction requirement on a patent application. The restriction requirement states that two or more independent and distinct inventions are present. As a result, the patent practitioner separates the additional invention into a second patent application that receives the benefit of the filing date of the original application. 35 U.S.C. §121. A continuation application is an application for an invention that was disclosed in a prior patent application. The application does not contain new subject matter from which was included in the prior application. 35 U.S.C. §120.

together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (quoting *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1291 (Fed. Cir. 2013) (plurality opinion)).

### 1. Abrade

The term "abrade," and variations including "abrading," "abrade the skin," "abrading structure," "abrasive structure," and "abrasive surface" appear in the '591 patent in claims 1, 10, 15, 16, 17; the '120 patent in claim 1; the '513 patent in claims 1 and 10; and the '886 patent in claims 1, 11 and 15. "Abrade" and its variations are used to describe how Shadduck devices move across the patient's skin to exfoliate or remove superficial layers of the skin. Edge proposes the Court construe "abrade" according to its ordinary meaning and allow the jury to rely on the Court's construction of this single word whenever a variation of "abrade" appears in the claims. Dkt. 74 at p. 2. Edge claims the ordinary meaning is to "remove a portion of the skin surface by friction." *Abrade*, *Merriam-Webster dictionary*. Ageless proposes that the Court define variations of "abrade" in two groups.

In the first group of "abrading structure," "abrasive surface," and "abrading surface" Ageless argues they mean "rasp-like or sandpaper-like structure/surface" because the inventor defined "abrasive structure" very narrowly in order to distinguish over the prior art reference. Dkt. 76 at p. 2. In the second group which consists of "abrading" and "abrasive" Ageless defines them as "wearing away by scraping." Ageless also argues that these larger phrases are means-plus-function limitations subject to 35 U.S.C §112 ¶ 6, and

are indefinite. This opinion will focus on claim construction, as Ageless reserves the right to argue indefiniteness at the summary judgement stage.

The specification explains that the invention involves removing skin by exfoliating it. Dkt. 74 at p. 9. ("a sectional view of working end 20 shows the technique of the present invention in exfoliating or removing skin surface layers"); ("the operator then can exfoliate another slightly overlapping or adjacent path by repeating the above steps until surface removal is completed"). Thus, in describing how the Shadduck device abrades the skin, the Shadduck specification explains that the device is moved across the patient's skin to exfoliate or remove superficial layers of the skin.

On the other hand, Ageless claims that "abrading structure" and "abrasive surface" are described in the specification as "a rasp-like or sandpaper-like structure/surface." Dkt. 76 at p. 9.

> The skin interface has a series of primary ridge elements 255a and valley elements 255b together the secondary notches or grooves 260 as defined above with similar dimensional parameters. This embodiment differs however in that the apexes of ridge elements 255a are substantially sharp edge as are the edged of the notches 260. Thus, these primary surface elements 255a and secondary surface elements thereby define teeth therebetween that seem well suited to abrading skin layers.

Dkt. 76–1 at 7:58-66. Ageless then goes on to explain these disclosures indicate that the claimed "abrading structure"/"abrasive structure"/"abrading surface" are reminiscent of sharp edges and teeth. Further, the commonly understood definition of "abrade" is "to scrape or rub off; wear away by scraping or rubbing." Dkt. 76–16 at p. 4. Thus, by

definition, "abrading"/"abrasive" include wearing away by scraping – such as, e.g., in the manner that sandpaper or a rasp would operate.

Ageless further argues that during prosecution of the '591 patent, the Applicant and named inventor, John Shadduck, amended independent claim 1 to include the recitation "an abrading structure with substantially sharp edges for abrading tissue" to overcome prior art the Examiner cited in rejecting the originally filed claims. Dkt. 76–15 at EDGE-PAT-AGELESS_0001875. Mr. Shadduck then argued that the "Karkar" prior art reference "does not teach of the abrasive structure carried by the Applicant's instrument and working surface in accordance with the present invention...In contrast, the Applicant discloses an instrument with a working surface that carries sharp-edged apices in a rasp-like or sandpaper-like structure for abrading tissue and teaches away from the apparatus of Karkar." Dkt. 76-15 at EDGE-PAT-AGELESS_0001879-1880. Because of the inventor's representation, Ageless argues the inventor described to the United State Patent and Trademark Office what abrasive structure he envisioned in order to avoid prior art and obtain his patent: "a rasp-like or sandpaper-like structure."

The Court is not persuaded by the argument. Mr. Shadduck stated that "the Applicant discloses an instrument with a working surface that carries sharp-edged apices in a rasp-like or sandpaper-like structure for abrading tissue and teaches away from the apparatus of Karkar." Dkt. 78–21 at p. 7. The key to this sentence is the highlighted word *discloses*. In this sentence, Mr. Shadduck accurately described to the examiner that his patent application "discloses" a rasp-like or sandpaper-like structure. He said nothing about

8 / 13

the claims or their scope. That which is disclosed in the specification is not to be inserted into the claims. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). Additionally, Ageless' construction may confuse the jury by suggesting that abrasion is a harsh and painful process similar to using a woodworking rasp or sandpaper on a patient's skin. This is contrary to the Shadduck patents, which explain that the removal of skin is performed in a "controllably gentle manner that is below any threshold of significant pain." Dkt. 74–2 at 5:23-25. Although tempting to adopt Edge's construction of "abrade," due to its simple construction and ease of being understood in context of the claims and specification, the Court will decline to adopt either parties' interpretation of "abrade." Accordingly, "abrade" is to be construed by its plain and ordinary meaning, as described in detail below.

### 2. Sharp

The term "sharp," and variations including "sharp edge," and "substantially sharp," appear in many of the asserted claims of the Shadduck patents. Dkt. 69–1 at 4–7, 8–10, 11–12, 14–16. Edge proposes the Court construe "sharp" as "sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin." Dkt. 74 at p. 5. The specification describes the invention as a gentle, controlled and painless removal of superficial skin layers. The abstract introduces the invention as a "periodic treatment for the removal of superficial skin layers." Dkt. 74–2 at Abstract. The patent boasts that the invention achieves the same results as a "deep skin removal treatment" through "limited depths of skin removal by [a] series of superficial treatments." *Id*. The specification criticizes the "pain

associated with deep abrasions," and emphasizes that "the method of the invention" allows for "painless abrasion." Ageless proposes construing "sharp" as "having a point or edge; not rounded or blunt; suitable for use in cutting." Dkt. 76 at p.10. Ageless proposes construing "substantially sharp" as "having a considerably pointed edge that is not rounded or blunt and that is suitable for use in cutting." *Id*.

The Court finds Ageless' "cutting" construction inconsistent with the specification and declines to adopt it. *Phillips*, 415 F.3d at 1316 ("A fundamental rule of claim construction is that terms in a patent document are construed with the meaning with which they are presented in the patent document. Thus claims must be construed so as to be consistent with the specification, of which they are a part.") (quoting *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003)). Accordingly, the Court will decline to adopt either parties' interpretation of "sharp," and instead will elect to construe "sharp" by its plain and ordinary meaning, as described in detail below.

### 3. Claim Construction in Other District Courts

The Federal Circuit has upheld *Markman* determinations that "declined to further construe [a] term because it was a 'straightforward term' that required no construction." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). Claim construction "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Multiple district judges have reviewed these terms and come to the same conclusion. One district judge found:

> Two of the disputed terms – "abrade" and "sharp" – fall squarely in [the 'straightforward term'] category. Despite etymological sparring by the parties, common meanings prove satisfactory at this juncture. Such a holding is consistent with courts which have reviewed these terms in the same or similar patents…"Abrade" is commonly understood in many contexts, including in relation to skin. The definitions urged by the parties fail to provide further enlightenment. Given the relative simplicity of the term abrade, the Court declines to construe it and instead assigns the term its plain and ordinary meaning.

Dkt. 81–1; *Summit 6, LLC* at 1291 ("'straightforward term' . . . required no construction"). Another district judge reviewed these terms in each of the Asserted Patents and found:

> The Court finds the terms "abrade," "abrasive," "abrading," and their other variations as used in the Asserted Patents are easily understood in the surrounding context of the claim language and specification. The Court finds no construction necessary for the term "abrade" and its variations in the context of the Asserted Patents.
>
> . . .
>
> The Court declines to construe the overall claim phrases that include the terms "sharp edge[s]" and/or "sharp element[s]." Although the Court is not particularly persuaded that these claim phrases need construction at all, it adopts Plaintiffs' proposal and construes the smaller terms "sharp edge[s]" / "sharp element[s]" as "edge[s]/element[s] sufficiently sharp to abrade skin."

11 / 13

*Edge Sys. LLC v. Aesthetic Skin Sys. LLC*, No. 17-cv-4597 (PSG) (AFM), DE 79 at 12, 16 (C.D. Cal Jan. 8, 2019). A third district judge similarly reviewed these terms. Although the parties reached an agreement about construction, the Court concluded:

> Ordinary jurors will have little difficulty determining whether or not an "edge" is "sharp"—or, to be more precise, whether something does, or does not, constitute a "sharp edge."

*Edge Sys., LLC v. Venus Concept USA Inc.*, No. 18-cv-62588, 2019 WL 3936379, at *6 (S.D. Fla. Aug. 20, 2019). Where patents are asserted in multiple patent-infringement suits, they should be interpreted consistently wherever possible. *See Markman v. Westview Instr., Inc.*, 517 U.S. 370, 390-91 (1996). "Abrade" and "sharp" can be easily understood by a jury and they have already been given their plain and ordinary meaning in multiple district courts around the country. The Court is not persuaded by the parties' arguments to construe claims otherwise. The Court will construe "abrade" and "sharp" according to their ordinary meaning and allow the jury to rely on the Court's construction of this single word whenever a variation of "abrade" or "sharp" appears in the claims.

## IV.     CONCLUSION

The foregoing opinion represents the Court's construction of "abrade" and "sharp," construing them according to their plain and ordinary meaning.

SIGNED at Houston, Texas, on 11th February, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE